# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

* * *

| | |
|---|---|
| GERALD HESTER, on behalf of himself and all others similarly situated, )<br><br>Plaintiff, )<br><br>vs. )<br><br>VISION AIRLINES, INC., )<br><br>Defendant. ) | Case No.: 2:09-cv-00117-RLH-RJJ<br><br>**O R D E R**<br><br>(Motion for Class Certification–#63;<br>Motion to Dismiss Counterclaims–#65) |

Before the Court is Plaintiff Gerald Hester's **Motion for Class Certification** (#63), filed July 31, 2009.  The Court has also considered Defendant Vison Airlines' Opposition (#67), filed August 18, 2009, and Hester's Reply (#70), filed August 28, 2009.

Also before the Court is Hester's **Motion to Dismiss Counterclaims** (#65), filed August 10, 2009.  The Court has also considered Vision Airlines' Opposition (#69), filed August 28, 2009, and Hester's Reply (#72), filed September 9, 2009.

## BACKGROUND

Since 2005 to the present, Defendant Vision Airlines has been providing air transportation services for the United States government.  Twice weekly, Vision Airlines transports individuals and cargo to and from Bagdad, Iraq and Kabul, Afghanistan.  Although this

AO 72
(Rev. 8/82)

1   service ultimately benefits the federal government, Vision Airlines does not contract directly with

2   the United States.  Initially, the federal government contracted with Computer Sciences

3   Corporation ("CSC") to provide transportation to Bagdad and Kabul.  CSC, in turn, subcontracted

4   with Capital Aviation, Inc., which then subcontracted with Vision Airlines to provide the air

5   transportation services.   Vision provided these services pursuant to its subcontract with Capital

6   Aviation until the summer of 2007, at which point it contracted with McNeil Technologies, Inc.,

7   who apparently stepped into the shoes of Capital Aviation.  Vision currently provides air

8   transportation services to Iraq and Afghanistan under its subcontract with McNeil Technologies.

9          According to Hester, the government pays CSC for the flights, who then pays

10  Capital Aviation, who then pays Vision Airlines.  Hester further alleges that as part of CSC's

11  subcontract, it provides Capital Aviation with hazard pay for the employees that operate the flights

12  to and from the Middle East.  Capital Aviation allegedly then provides that hazard pay to Vision

13  Airlines, who is required to remit the hazard pay to its crew members.

14         Hester alleges that starting in May 2005, he operated flights twice weekly to and

15  from Kabul International Airport.  Hester further alleges that from May 2005 to September 2005,

16  Vision collected hazard pay for its employees, but made only "sporadic payments" during that

17  time.  (Dkt. #63, Mot. 3.)  According to Hester, at the end of September 2005, Vision "decided to

18  retain [the] hazard pay for itself and fire[] all of the employees who were aware that Vision was

19  required to pay its employees hazard pay."  (*Id.*)  Thus, Hester alleges that from October 2005 until

20  the summer of 2007, Vision received hazard pay from Capital Aviation for its flights to Iraq and

21  Afghanistan, but did not forward any of these payments to its employees.  Finally, Hester alleges

22  Vision Airlines has received hazard pay from McNeil Technologies since the summer of 2007 to

23  the present, but has not remitted this money to its employees.

24         On January 20, 2009, Hester filed suit in this Court alleging (1) unjust enrichment;

25  (2) constructive trust; (3) money had and received; (4) quantum meruit; (5) conversion; (6)

26  injunctive relief; and (7) declaratory relief.  On July 2, 2009, Vision Airlines answered the

2

Complaint and brought the following counterclaims against Hester: (1) Breach of Employment Agreement; (2) breach of the Non-Competition and Non-Disclosure Agreement; (3) breach of the covenant of good faith and fair dealing; and (4) declaratory relief.  In July and August 2009, Hester filed his Motion for Class Certification and his Motion to Dismiss Counterclaims.  For the reasons discussed below, the Court grants both of these Motions.

### DISCUSSION

## I.   Motion for Class Certification

Plaintiff moves to certify the following class of persons pursuant to Rule 23 of the Federal Rules of Civil Procedure:

> All Vision employees who were crew members on flights to or from Iraq or Afghanistan from May 1, 2005, to the present.  Excluded from the Class are Vision, its directors of flight operations, corporate officers and directors, and their immediate family members.

Plaintiff claims the entire proposed class is entitled to the hazard pay Vision has allegedly retained for itself.

### A.   Legal Standard

A court can certify a federal class action under Rule 23(a) if the four prerequisites to certification are met:  (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation.  Fed. R. Civ. P. 23(a); *see also Amchem Prods, Inc. v. Windsor*, 521 U.S. 591, 613 (1997).  A district court may certify a class only if it is "satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a)" have been met.  *Gen. Tel. Co. Sw. v. Falcon*, 457 U.S. 147, 161 (1982).  To that end, the plaintiff must provide "enough evidence, by affidavits, documents, or testimony," to enable the Court to determine that certification is appropriate.  *In re Initial Pub. Offering Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006).  If the court is so satisfied, it must enter an order that "define[s] the class and the class claims, issues, or defenses," and it must appoint class counsel pursuant to Rule 23(g).  Fed. R. Civ. P. 23(c)(1)(B).

/

AO 72
(Rev. 8/82)

1      In addition to meeting the requirements of Rule 23(a), a plaintiff must also satisfy

2  one of the three subsections of Rule 23(b) before obtaining an order of certification.  *Dukes v.*

3  *Wal-Mart, Inc.*, 509 F.3d 1168, 1176 (9th Cir. 2007).  Of these subsections, Hester seeks

4  certification under Rule 23(b)(2) and Rule23 (b)(3).  Rule 23(b)(2) requires the Court to find that

5  "the party opposing the class has acted or refused to act on grounds that apply generally to the

6  class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the

7  class as a whole."  Rule 23(b)(3) requires the Court to find (1) "that the questions of law or fact

8  common to class members predominate over any questions affecting only individual members;"

9  and (2) "that a class action is superior to other available methods for fairly and efficiently

10  adjudicating the controversy."  The Court now considers the requirements of Rules 23(a) and 23(b)

11  in turn.

12      **B.      Rule 23(a)**

13          **1.      Numerosity (Rule 23(a)(1))**

14      Under Rule 23(a), a party may bring a claim as a class action if "the class is so

15  numerous that joinder of all members is impracticable."  Hester argues that joinder is

16  impracticable in this case because at least 127 people from 23 different states are entitled to hazard

17  pay from Vision Airlines.  To support this assertion, Hester has supplied Vision's payroll records

18  from June 2005 to October 2007, which indicate that 127 individuals were being paid for serving

19  as crew members on flights to Iraq and Afghanistan.  (Dkt. #63, Mot. Ex. G.)  Although these

20  records do not provide the names of these individuals, they do indicate that there are at least 127

21  such people.  (*Id.*)  Hester claims that many more individuals have served as crew members on

22  these flights, but that he cannot prove this fact because Vision Airlines refuses to produce all of its

23  payroll information.  In response, Vision argues that Hester has not satisfied the numerosity

24  requirement because the payroll records to which he refers include pilots, flight attendants,

25  mechanics, ground crew, and administrative personnel, all of which have different employment

26  agreements with Vision.  According to Vision, because "[e]ach of these contract groups contain

4

1   different compensation agreements" they cannot all be part of the class to which Hester seeks to

2   join them.  (Dkt. #67, Opp'n 11.)

3          Having considered the relevant evidence and analyzed the parties' arguments, the

4   Court finds that Hester has satisfied the numerosity requirement.  First, the Court finds Hester has

5   provided evidence to show that Vision Airlines employed at least 100 people to serve as crew

6   members on the flights to Iraq and Afghanistan.  The Court is satisfied that it is impracticable to

7   join this many people to a single lawsuit.  *See Jordan v. County of Los Angeles*, 669 F.2d 1311,

8   1319 (9th Cir. 1982) (certifying classes of 39, 64, and 71 class members); *Patrick v. Marshall*, 460

9   F. Supp. 23, 26 (N.D. Cal. 1978) (certifying a class with "at least 39 potential class members and

10  potentially more"); *Mazza v. AM. Honda Motor Co.*, 254 F.R.D. 610, 617 (C.D. Cal. 2008) ("As a

11  general rule, classes of forty or more are considered sufficiently numerous.").  The Court also

12  notes that the fact that these individuals reside in 23 different states bolsters Hester's argument on

13  this point.  *In re Rubber Chems. Antitrust Litig.*, 232 F.R.D. 346, 350–51 (N.D. Cal. 2005)

14  (finding that "geographically dispersed" class membership supports class certification).

15         Second, Vision Airlines has not provided evidence to effectively rebut the

16  documentation provided by Hester.  Vision does not provide this Court with any evidence to

17  support the assertion that its crew members were given different contracts depending on the nature

18  of their employment.  And even more important, Vision has not indicated that any of these

19  contracts, even if they differ from one another, do not contain provisions regarding hazard pay.

20  Thus, even if Vision's employees were employed under different contracts, each employee could

21  still be part of the putative class because Vision could have promised to give them all hazard pay.

22  In light of the evidence brought forth by Hester and the fact that Vision has not provided any

23  evidence in rebuttal, the Court finds Hester has satisfied the numerosity requirement.

24         **2.      Commonality (Rule 23(a)(2))**

25         Under Rule 23(a)(2), the court must determine that "there are questions of law or

26  fact common to the class" before it can grant a request for certification.  The commonality

AO 72
(Rev. 8/82)

1    requirement "has been construed permissively.  All questions of fact and law need not be common

2    to satisfy the rule.  The existence of shared legal issues with divergent factual predicates is

3    sufficient, as is a common core of salient facts coupled with disparate legal remedies within the

4    class." *Hanlon*, 150 F.3d at 1019 (quoted in *Dukes*, 509 F.3d at 1177).  The Ninth Circuit has also

5    noted that "[t]he commonality test is qualitative rather than quantitative—one significant issue

6    common to the class may be sufficient to warrant certification."  *Dukes*, 509 F.3d at 1177

7    (citations omitted).

8              Hester alleges he satisfies the commonality requirement because the same questions

9    of law and fact apply to the entire class—namely whether Vision "collected hazard pay on behalf

10   of its crew members" and whether Vision was "required to pay hazard pay to its employee who

11   were crew members."  (Dkt. #63, Mot. 7.)  Again, Vision Airlines argues in response that common

12   questions of law and fact do not exist among members of the class because the crew members at

13   issue consist of "flight attendants, pilots, mechanics, ground crew and administrative personnel"

14   that all have "different contracts and levels of pay along with differing duties, some of which

15   would not qualify as 'hazard pay' even assuming hazard pay were proper."  (Dkt. #67, Opp'n 13.)

16             The Court finds Hester has sufficiently proven that there are questions of law or

17   fact common to the entire class.  Hester has brought forth evidence to indicate that Vision Airlines

18   employed a number of crew members on the flights to Iraq and Afghanistan.  Thus, questions

19   regarding whether Vision Airlines was required to give hazard pay to these employees and whether

20   Vision Airlines wrongfully retained such pay apply to each of these crew members.  In so holding,

21   the Court is unpersuaded by Vision Airline's argument that the fact that the different Vision

22   employees have different employment contract destroys the commonality among them.  The issue

23   is not whether the employees have the same contract, the issue is whether the different

24   employment contracts required Vision to render hazard pay.  Although Vision alleges that certain

25   employees are not entitled to hazard pay, it does not indicate which employees these

26   /

1    are and it does not attach any employment contracts for the Court to reference.  Accordingly, the

2    Court finds that Hester has met the commonality requirement under Rule 23(a)(2).

3        **C.    Typicality (Rule 23(a)(3))**

4            In order to satisfy the typicality requirement, a plaintiff must show that "the claims

5    or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R.

6    Civ. P. 23(a)(3).  This is a permissive standard, meaning that a representative's "claims are

7    'typical' if they are reasonably coextensive with those of absent class members; they need not be

8    substantially identical."  *Hanlon*, 150 F.3d at 1020 (quoted in *Dukes*, 509 F.3d at 1184).  The

9    typicality requirement is satisfied if the claim "arises from the same event or practice or course of

10   conduct that gives rise to the claims of other class members, and if his or her claims are based on

11   the same legal theory."  *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996).  In addition,

12   the requirement may be satisfied even when "there is a disparity in the damages claimed by the

13   representative parties and the other class members." 7A Charles Alan Wright, Arthur R. Miller &

14   Mary Kay Kane, Federal Practice & Procedure § 1764 & n.13 (2d ed. 1995); *see also Macarz v.*

15   *Transworld Sys., Inc.*, 193 F.R.D. 46, 50–51 (D. Conn. 2000).

16           Hester alleges his claims are typical of the claims or defenses of the class because

17   he, like his fellow employees, served on Vision Airlines' flight crew and is therefore entitled to

18   collect hazard pay.  Vision argues, on the other hand, that Hester's claims are not typical because

19   Vision has filed counterclaims against Hester for violating his Employment Agreement and his

20   Employee Non-Competition and Non-Disclosure Agreement with Vision.  According to Vision,

21   Hester's claims are not typical of the class because, as a result of these counterclaims, he is subject

22   to unique defenses that could jeopardize the recovery of absent parties.  *Romero v. Producers*

23   *Dairy Foods, Inc.,* 235 F.R.D. 474 (E.D. Cal. 2006) (citing *Gary Plastic Packaging Corp. v.*

24   *Merrill Lynch*, 903 F.2d 176 (2nd Cir. 1990)).

25           The Court is not persuaded by this argument.  First, it is well-established that

26   "counterclaims do not defeat class certification."  *Davis v. Cash for Payday, Inc.*, 193 F.R.D. 518,

AO 72
(Rev. 8/82)

1    522 (N.D. Ill. 2000).  Counterclaims are individual defenses that do not bar class certification

2    because "litigation respecting individual counterclaims, if successful, would only reduce damage

3    awards; it would not affect a finding of liability."  *Haynes v. Logan Furniture Mart*, 503 F.2d

4    1161, 1165 n.4 (7th Cir. 1974).  More important, the Court does not see how these counterclaims

5    have any bearing on the recovery of hazard pay.  Based on the allegations in Vision's

6    counterclaims, Hester's alleged violations of the employment contracts relate solely to his post-

7    employment actions; they have no bearing on whether Vision Airlines should have given him or

8    his co-workers hazard pay for serving as crew members on the flights to the Middle East.

9    Accordingly, the Court finds Hester has sufficiently shown that he satisfies Rule 23(a)(3)'s

10   typicality requirement.

11                    **D.      Adequacy of Representation (Rule 23(a)(4))**

12            Under the adequacy-of-representation requirement, the Court must find that "the

13   representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P.

14   23(a)(4).  In addition to the plain language of the Rule, the Ninth Circuit has articulated two

15   criteria for determining adequacy: (1) "the proposed representative Plaintiffs do not have conflicts

16   of interest with the proposed class," and (2) "Plaintiffs are represented by qualified and competent

17   counsel."  *Dukes*, 509 F.3d at 1185 (citations omitted); *see also Walters v. Reno*, 145 F.3d 1032,

18   1046 (9th Cir. 1998); *Amchem Prods.*, 521 U.S. at 625.

19                            **1.      Hester's Conflict of Interest**

20            Vision Airlines alleges Hester cannot adequately serve as the class representative

21   because its counterclaims against Hester create a conflict of interest.  The Court disagrees.  A

22   conflict of interest arises in class actions when the representative party might have an incentive not

23   to zealously pursue claims on behalf of the class.  *See Dukes*, 509 F.3d at 1185.  A separate dispute

24   with a member of the class might create such a conflict; but here, Hester is engaged in a post-

25   employment dispute with Vision Airline, the very company he has named as a defendant in this

26   action.  This is in no way a conflict of interest.  Vision Airline's argument on this point fails.

AO 72
(Rev. 8/82)

### 2.      Competent Counsel

The adequacy-of-representation-of-counsel test requires the Court to analyze "whether plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation." *Griffin v. Carlin*, 755 F.2d 1516, 1533 (11th Cir. 1985).  Plaintiff's counsel allege they can serve as adequate counsel in this case based not only on their representation of Hester thus far but also based on their "considerable experience in complex commercial class action litigation in courts around the country." (Dkt. #63, Mot. 11.)  Counsel has provided the Court with a list of class action cases in which they have successfully represented large classes of plaintiffs.  Based on this evidence and the fact that Vision Airlines does not contest Hester's assertion that he has retained adequate counsel, the Court finds that Plaintiff's counsel will adequately represent the class in this case.

### III.      Rule 23(b)

The Court now considers Hester's request for certification pursuant to Rule 23(b)(3), under which a court may certify a class action if it finds that (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) the "class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  Subsection (b)(3) also enumerates four nonexhaustive "matters pertinent to these findings[:]"

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)–(D); *see also Amchem Prods.*, 521 U.S. at 615–16.

/

/

AO 72
(Rev. 8/82)

**A.      Predominance**

Under Rule 23(b)(3), the Court must find that "the questions of law or fact common to class members predominate over any questions affecting only individual members[.]"  A plaintiff satisfies the predominance test when she shows "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof."  *Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1233 (11th Cir. 2000) (internal quotation marks omitted).

In this case, members of the putative class are linked by two significant operative facts: they were all crew members on flights operated by Vision Airlines to and from the Middle East and they were all allegedly entitled to receive hazard pay.  Because these issues are applicable to the class as a whole, they are subject to generalized proof and predominate over issues requiring individualized proof.  In other words, whether Vision's crew members are entitled to hazard pay under their individual contracts is central to this case and therefore predominates over tangential issues such as the amount of hazard pay to which each type of employee is ultimately entitled. Because the important issues in this case apply to the class as a whole and predominate over individual issues, the Court finds Hester has satisfied the predominance requirement under Rule 23(b)(3).

**B.      Superiority**

To certify a class, the Court must also find that the class action is "superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3). The superiority inquiry "necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution," *Hanlon*, 150 F.3d at 1023 (citation omitted), the most obvious of which "is to remit the class members to the institution of individual actions," 7AA Wright, Miller, & Kane, *supra*, § 1779.  "If each class member has to litigate numerous and substantial separate issues to establish his or her right to recover individually, a class action is not 'superior.'" *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1192 (9th Cir. 2001) (citations omitted).

AO 72
(Rev. 8/82)

1         The Court finds that the class action is the superior method for effectively

2  adjudicating this dispute.  The factors outlined in subsection (b)(3) of Rule 23 lead the Court to

3  this conclusion.  First, the Court finds that the other class members have little interest in

4  controlling the prosecution or defense of separate actions because the same basic set of facts

5  applies to every class member.  The fact that none of the crew members have brought suit over this

6  matter supports this conclusion.  *See Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1191

7  (9th Cir. 2001) (the existence of litigation indicates that some interested parties view individual

8  actions as an acceptable way to proceed).  Second, Nevada is a convenient forum for litigating this

9  matter.  Vision Airlines has significant operations in this state, and it does not claim that it would

10  be inconvenienced by litigating this matter here.  Finally, and most important, class certification is

11  the most manageable method for addressing the claims brought in this case.  The interests of

12  judicial economy strongly favor certifying this action because it would be both inefficient and

13  expensive to litigate multiple cases involving the same set of facts in many different jurisdictions.

14  *See In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 700 (S.D. Fla. 2004)

15  (certifying class action because bringing many lawsuits in many different states would be "costly,

16  inefficient, and would burden the court system").  For each of these reasons, the Court finds the

17  class action is the superior method for addressing the claims in this litigation.

18         Because the Court certifies this class action under Rule 23(b)(3), it does not address

19  Hester's claim that certification is also proper under Rule 23(b)(2).

20  **IV.   Hester's Motion to Dismiss Counterclaims**

21      **A.   Legal Standard**

22         A court may dismiss a plaintiff's complaint for "failure to state a claim upon which

23  relief can be granted." Fed. R. Civ. P. 12(b)(6).  A properly pled complaint must provide "a short

24  and plain statement of the claim showing that the pleader is entitled to relief."  While a pleading

25  generally need not contain detailed allegations, it must allege sufficient facts "to raise a right to

26  relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A

AO 72
(Rev. 8/82)

1    complaint does not allege sufficient facts to raise a right to relief above the speculative level if it

2    contains nothing more than "labels and conclusions" or a "formulaic recitation of the elements of a

3    cause of action." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Papasan v. Allain*, 478

4    U.S. 265, 286 (1986)).  Instead, in order to survive a motion to dismiss, a complaint must contain

5    sufficient factual matter to "state a claim to relief that is plausible on its face."  *Iqbal*, 129 S. Ct. at

6    1949 (internal citation omitted).

7           In *Ashcroft v. Iqbal*, the Supreme Court provided a two-step approach for district

8    courts to apply when considering motions to dismiss.  First, the court must accept as true all

9    factual allegations in the complaint.  *Id.* at 1950.  A court does not, however, assume the truth of

10   legal conclusions merely because the plaintiff casts them in the form of factual allegations.  *Id.* at

11   1950; *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).  Mere recitals

12   of the elements of a cause of action, supported only by conclusory statements, also do not suffice.

13   *Iqbal*, 129 S. Ct. at 1949.  Second, the court must consider whether the factual allegations in the

14   complaint allege a plausible claim for relief.  *Id*. at 1950.  "A claim has facial plausibility when the

15   plaintiff pleads factual content that allows the court to draw a reasonable inference that the

16   defendant is liable for the alleged misconduct."  *Id.* at 1949.  Thus, where the complaint does not

17   permit the court to infer more than the mere possibility of misconduct, the complaint has

18   "alleged—but not shown—that the pleader is entitled to relief."  *Id.* (internal quotation marks

19   omitted).  When the claims in a complaint have not crossed the line from conceivable to plausible,

20   plaintiff's complaint must be dismissed.  *Twombly*, 550 U.S. at 570.

21           **B.    Vision Airlines' Counterclaims**

22           Vision Airlines brings counterclaims for (1) breach of the Employment Agreement;

23   (2) breach of the Employee Non-Competition and Non-Disclosure Agreement; (3) breach of the

24   covenant of good faith and fair dealing; and (4) declaratory relief.  Hester asks the Court to dismiss

25   these claims because, among other reasons, Vision Airlines has failed to adequately allege a claim

26   for relief under *Twombly*.  The Court considers this assertion with regard to each claim.

AO 72
(Rev. 8/82)

### 1.    Breach of Contract claims

Vision alleges Hester breached his Employment Agreement and his Employee Non-Competition and Non-Disclosure Agreement,[1] which Hester signed shortly before he began working as a pilot with Vision.  In order to state a breach of contract claim under Nevada law, a plaintiff must allege that (1) there was a valid contract; (2) the defendant breached that contract; and (3) the plaintiff suffered damages as a result of the breach.  *Brown v. Kinross Gold U.S.A., Inc.*, 531 F. Supp. 2d 1234, 1240 (D. Nev. 2008).

The Court finds Vision Airlines' contract claims fail because it does not allege facts sufficient to establish the three elements of a claim for breach of contract.  The vast majority of Vision's counterclaim consists of vague, unsupported assertions such as "Vision fully performed all of its obligations under the Employment Agreement" and "Hester has breached the Employment Agreement by failing to perform as agreed."  (Dkt. #47, Ans. 14.)  These allegations do not state a claim for relief that rises above the speculative level because they are conclusory assertions devoid of any factual support.

The Court does note, however, that Vision provides some factual information at the beginning of his counterclaim:

Hester has been directly and/or indirectly contacting Capital Aviation, Inc, Computer Sciences Corporation, and McNeil Technologies, Inc. . . . and discussing confidential and trade secret information of . . . Vision and attempting in part to convince such customers, contractors, and business associates of . . . Vision to enter into new contract with Hester and/or other related to [him]."

********

Hester has also released or discussed confidential and trade secret information to the press or the public at large in an attempt to defame, harass, and annoy . . . Vision.

---

[1] Based on Vision's counterclaims, the Court is unclear if there is more than one contract, or if a single contract contained Hester's employment agreement and his confidentiality and non-disclosure agreement.  For the purposes of this order, the Court assumes that there are two separate contracts.

AO 72
(Rev. 8/82)

1    Although these allegations contain some factual information, the Court finds that

2    they do not raise Vision's right to relief above the speculative level, at least as it pertains to its

3    counterclaim for breach of the Employment Agreement.  This is because these facts, even if taken

4    as true, do not establish that Hester violated the Employment Agreement.  Nowhere in the body of

5    the Counterclaim does Vision indicate the terms of the Employment Agreement or what provisions

6    of the agreement Hester allegedly violated.  Thus, in order for the Court to find that Vision stated a

7    claim for breach of the Employment Agreement, it would have to speculate regarding what the

8    contract contemplated and how it was breached.  This is not sufficient under *Twombly*.

9    Accordingly, the Court finds Vision has failed to adequately allege that Hester breached the

10   Employment Agreement.

11    Nonetheless, the Court does find that Vision has sufficiently alleged that Hester

12   violated the Employee Non-Competition and Non-Disclosure Agreement.  Vision specifically

13   claims that Hester contacted other companies that had outstanding contracts with Vision and asked

14   them to enter into competing agreements with him.  This factual allegation is sufficient to establish

15   a claim against Hester for violating the Employee Non-Competition and Non-Disclosure

16   Agreement because it clearly states how Hester competed against Vision Airlines.

17    The Court, however, dismisses Vision Airlines' claim for breach of the Employee

18   Non-Competition and Non-Disclosure Agreement because Vision does not adequately allege that

19   it was injured as a result of Hester's alleged breach.  As noted previously, in order to state a claim

20   for breach of contract, a plaintiff must allege that he suffered damages as a result of the

21   defendant's breach.  *Brown*, 531 F. Supp. 2d at 1240.  Rather than allege facts showing how

22   Hester's actions damaged Vision Airlines, Vision simply states that "[a]s a . . . result of Hester's

23   breach of contract . . . [it] has incurred damages in excess of $75,000."  (Dkt. #47, Ans. 14.)  This

24   allegation is purely speculative and does not state facts sufficient to establish that Vision was

25   injured as a result of Hester's actions.  For example, Vision does not allege that Hester's violation

26   of the Employee Non-Competition and Non-Disclosure Agreement caused it to suffer a tangible

14

financial loss or any other deprivation.  Because Vision does not provide these required facts, it has failed to state a claim for breach of the Confidentiality and Non-Disclosure Agreement. Accordingly, the Court dismisses this counterclaim.

     **2.**       **Breach of the Implied Covenant of Good Faith and Fair Dealing**

Vision Airlines also alleges Hester violated the implied covenant of good faith and fair dealing.  Under Nevada law, "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and execution." *A.C. Shaw Constr. v. Washoe County*, 784 P.2d 9, 9 (Nev. 1989) (quoting Restatement (Second) of Contracts § 205).  "[W]hen one party performs a contract in a manner that is unfaithful to the purpose of the contract . . . damages may be awarded against the party who does not act in good faith." *Hilton Hotels v. Butch Lewis Prods.*, 808 P.2d 919, 923 (Nev. 1991).

Vision has failed to sufficiently allege that Hester violated the implied covenant of good faith and fair dealing.  Rather than provide concrete facts showing how Hester violated this implied covenant, Vision simply states that Hester "owed a duty of good faith and fair dealing to Vision" and that he "breached his duty . . . by performing in a manner that was unfaithful to the purposes" of his contract with Vision.  (Dkt. #47, Ans. 16.)  This allegation fails as a matter of law: Vision Airlines cannot state a viable claim by simply giving a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  Instead, Vision must allege specific facts showing why Hester is liable under this cause of action.  *Id.*  By simply parroting Nevada law regarding the implied covenant of good faith and fair dealing and by failing to allege facts showing how Hester violated this implied covenant, Vision has failed to state a claim for relief that rises above the speculative level.

/

/

/

AO 72
(Rev. 8/82)

3.     **Declaratory Relief**

Finally, Vision Airlines brings a claim for declaratory relief requesting that the Court issue an order stating that Hester breached the Employee Non-Competition and Non-Disclosure Agreement, that he was paid in full under his Employment Agreement, and that he is not entitled to additional payments from Vision.  But because Vision has failed to state a viable contract claim under the Employment Agreement or the Employee Non-Competition and Non-Disclosure Agreement, it is not entitled to a declaratory judgment stating that Hester violated these contracts.  Accordingly, the Court dismisses Vision's counterclaim for declaratory relief.

**CONCLUSION**

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that Plaintiff's Motion for Class Certification (#63) is GRANTED.  Named Plaintiff, Gerald Hester, is CERTIFIED as the representative of the class defined as follows:

> All Vision employees who were crew members on flights to or from Iraq or Afghanistan from May 1, 2005, to the present.  Excluded from the Class are Vision, its directors of flight operations, corporate officers and directors, and their immediate family members.

IT IS FURTHER ORDERED that the issues of liability, actual damages, and declaratory and injunctive relief are CERTIFIED under Rule 23(b)(3).

IT IS FURTHER ORDERED that Plaintiff's counsel, David M. Buckner, Brett E. Von Borke, and Ross C. Goodman, are APPOINTED counsel for the class under Rule 23(g).

IT IS FURTHER ORDERED that a status conference in this matter is set for Friday, January 22, 2010, at 10:00am in Courtroom 6C of the Lloyd D. George United States Courthouse.  At this hearing, the Court will address the identification of class members and the means for giving class members notice of this lawsuit.

/

/

AO 72
(Rev. 8/82)

1        IT IS FURTHER ORDERED that Hester's Motion to Dismiss Vision Airlines'

2   Counterclaims is GRANTED in full.  Vision's counterclaims for breach of the Employment

3   Agreement, breach of the Employee Non-Competition and Non-Disclosure Agreement, breach of

4   the implied covenant of good faith and fair dealing, and declaratory relief are DISMISSED without

5   prejudice.

6

7        Dated: December 15, 2009.

8

9

10                       _____

11                 **ROGER L. HUNT**
                      **Chief United States District Judge**

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

AO 72
(Rev. 8/82)