Ross C. Goodman, Esq., Nevada State Bar No. 7722
GOODMAN LAW GROUP
520 South Fourth Street
Las Vegas, Nevada 89101
(702) 383-5088
(702) 385-5088 (Facsimile)

David M. Buckner, Esq., Florida State Bar No. 60550
Brett E. von Borke, Esq., Florida State Bar No. 44802
KOZYAK TROPIN & THROCKMORTON, PA
2525 Ponce de Leon, 9th Floor
Miami, Florida 33134
(305) 372-1800
(305) 372-3508 (Facsimile)

**ATTORNEYS FOR PLAINTIFF**

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| GERALD HESTER, on behalf of himself and all others similarly situated,<br><br>            Plaintiff,<br>v.<br><br>VISION AIRLINES, INC.,<br><br>            Defendant. | Case No.: 2:09-CV-00117-RLH-RJJ |

## THE CLASS' SUPPLEMENT IN SUPPORT OF ITS RENEWED MOTION TO COMPEL

Plaintiff Gerald Hester ("Plaintiff" or "Hester"), on behalf of the Class, hereby files the Class' Supplement in Support of its Renewed Motion to Compel ("Supplement"). Plaintiff filed the Renewed Motion to Compel ("Renewed Motion") on January 11, 2010, and the Renewed Motion has been ripe since February 18, 2010. Since the March 2, 2010 hearing on the Renewed Motion, counsel for the Class deposed Vision Airlines Inc.'s ("Vision") 30(b)(6) corporate representatives, William Acor ("Acor"), Chief Executive Officer, David Meers ("Meers"), Senior Executive Vice President, and Brian Daggett ("Daggett"), Air Bridge Program Manager,

311630                               1

on March 16, 17, and 18, 2010. The 30(b)(6) corporate representatives Vision produced were unprepared to testify and were unable to testify on all of the topics identified in the Notice of Deposition ("Plaintiff's Notice," attached hereto as Ex. A), including what efforts Vision undertook to gather documents responsive to Plaintiff's Narrowed Requests (Plaintiff's Narrowed Requests, attached hereto as Ex. B). Furthermore, these corporate representatives confirmed, as set forth in the Renewed Motion: (1) there are additional documents responsive to Plaintiff's Narrowed Requests that Vision withheld and failed to produce; and (2) Vision unilaterally redacted pertinent information, without any basis in privilege, from its documents, even though the Court has entered a protective order [D.E. 34] in this case. Accordingly, the Class files this Supplement to inform the Court about this newly discovered information, which further supports the arguments in the Renewed Motion.

I. ARGUMENT

A. **VISION'S 30(b)(6) WITNESSESS WERE UNPREPARED AND UNABLE TO TESTIFY ON WHAT EFFORTS VISION UNDERTOOK TO GATHER DOCUMENTS RESPONSIVE TO PLAINTIFF'S NARROWED REQUESTS**

Vision's 30(b)(6) corporate representatives were unprepared and unable to testify on what efforts Vision undertook to search for and produce documents responsive to Plaintiff's Narrowed Requests, even though this topic was clearly identified in Plaintiff's Notice. This, however, is not the first time Vision produced unprepared 30(b)(6) corporate representatives to testify in this litigation. Vision produced two unprepared 30(b)(6) corporate representatives for deposition on September 11, 2009, who were unable to testify about what efforts Vision undertook to search for and produce responsive documents. Now, after the taking of the depositions of five different 30(b)(6) corporate representatives, Vision has still failed to produce a witness capable of testifying on this subject, despite Vision's affirmative duty to adequately prepare and educate its 30(b)(6) witnesses to testify knowledgably on the topics identified in

311630                                  2

Plaintiff's Notice. This failure to adequately educate its 30(b)(6) witnesses on this topic constitutes a failure to appear and is sanctionable under Fed. R. Civ. P. 37(d).

Pursuant to Fed. R. Civ. P. 30(b)(6), a party may provide notice of matters for examination to an organization, including corporations. "That organization is then required to designate one or more persons to testify about the matters noticed, and such persons must 'testify about information known or reasonably available to the organization.'" *Pioneer Drive, LLC v. Nissan Diesel Am., Inc.*, 262 F.R.D. 552, 558 (D. Mont. 2009) (quoting Fed. R. Civ. P. 30(b)(6)). The purpose of this rule is to ensure efficient discovery with corporate entities, *Resolution Trust Corp. v. S. Union Co., Inc.*, 985 F.2d 196, 197 (5th Cir. 1993), and to prevent "floundering depositions of agents who lack authority over the matter, or knowledge about the matter." *Pioneer*, 262 F.R.D. at 558. Thus, "the corporate party . . . has an affirmative duty to educate and to prepare the designated representative for deposition," *id.*, because the designee must testify to more than just what the representative personally knows but speaks for the organization as a whole and must make efforts to do so. *United States v. Taylor*, 166 F.R.D. 356, 361 (M.D. N.C.), *aff'd*, 166 F.R.D. 367 (1996). "By its very nature, a Rule 30(b)(6) deposition notice requires the responding party to prepare a designated representative so that he or she can testify on matters not only within his or her personal knowledge, but also on matters reasonably known by the responding entity." *Great Am. Ins. Co. of New York v. Vegas Const. Co., Inc.*, 251 F.R.D. 534, 539 (D. Nev. 2008) (quoting *Alliance v. Dist. of Columbia*, 437 F. Supp. 2d 32, 37 (D. D.C. 2006). Accordingly, producing an unprepared 30(b)(6) witness is tantamount to failing to appear and is sanctionable under Fed. R. Civ. P. 37(d). *Black Horse Lane Assoc., L.P. v. Dow Chem. Corp.*, 228 F.3d 275, 304 (3d Cir. 2000) (affirming monetary sanction).

Here, Vision failed to produce a 30(b)(6) corporate representative able to testify knowledgably on the topics identified in Plaintiff's Notice, including what efforts Vision

311630                                    3

undertook to search for and produce documents responsive to Plaintiff's Narrowed Requests, because Vision did not prepare any of its 30(b)(6) corporate representatives. Daggett spent "[l]ess than an hour" preparing to testify as Vision's 30(b)(6) corporate representative, (30(b)(6) Dep. Trans. p. 39, attached hereto as Ex. C), reviewed only "one document" in preparation for the deposition (*id.* at p. 38), and did not speak with any other Vision personnel in preparation for the deposition (*id.* at p. 38-39). Meers spent only "ten minutes" preparing for the deposition, did not review any documents prior to the deposition (*id.* at 268), and did not undertake any additional efforts to prepare to testify as Vision's 30(b)(6) corporate representative. Similarly, Acor did "very little" to prepare to testify as Vision's 30(b)(6) corporate representative. (*Id.* at p. 531.) Specifically, he did not speak with Vision's counsel prior to testifying as Vision's 30(b)(6) corporate representative because Vision's counsel "was late for breakfast" on the morning of the deposition, did not speak with any Vision personnel to prepare for the deposition, and did not review any documents prior to the deposition. (*Id.*)

Vision's overall failure to prepare its 30(b)(6) corporate representatives prevented them from testifying knowledgeably about the topics identified in Plaintiff's Notice, including what efforts Vision undertook to search for and produce documents responsive to Plaintiff's Narrowed Requests. Specifically, topic eight in Plaintiff's Notice stated:

> Vision's efforts and procedures relating to or undertaken in the course of responding to document requests in this litigation, including: (a) the identities of all individuals from whom documents were requested and/or collected, as well as the identities of individuals who may be in possession of documents but from whom such documents have not yet been collected, (b) the locations from which documents were collected, and the locations from which documents have not yet been collected, (c) the decisions concerning whom to ask for documents and where to look for documents, (d) the review by attorneys, employees, or agents undertaken in determining the responsiveness of individual documents, (e) the internal monitoring of compliance with document requests, and (f) the physical production of documents and things.

Furthermore, topic ten stated, "Vision's efforts and procedures relating to and undertaken

in the course of collecting documents in response to Plaintiff's document requests." Despite clearly identifying these topics, none of Vision's 30(b)(6) witnesses were able to testify as to what action Vision undertook to obtain documents responsive to Plaintiff's Narrowed Requests. Rather, the 30(b)(6) witnesses could only testify as to what action they took in their individual capacities to gather responsive documents.[1] This, however, is not sufficient because Vision "has an affirmative duty to educate and to prepare the designated representative for deposition," because the designee testifies for the organization as a whole. *Resolution Trust Corp.,* 985 F.2d at 197. Here, Vision failed to adequately prepare its 30(b)(6) corporate representatives, because none of them were able to testify beyond their individual knowledge as to what documents Vision searched for and gathered in response to Plaintiff's Narrowed Requests. Vision's decision to produce unprepared 30(b)(6) witnesses is tantamount to failing to appear and is sanctionable under Fed. R. Civ. P. 37(d). *Black Horse,* 228 F.3d at 304.[2]

---

[1] Daggett testified that he had limited knowledge on topics eight and ten and could only testify about his, and not Vision's, efforts to search for and gather documents responsive to Plaintiff's Narrowed Requests. (Ex. C at pp. 21, 23.) Similarly, Meers testified that he could only discuss what actions he took individually and not Vision's collective efforts to gather documents responsive to Plaintiff's Narrowed Requests. (*Id.* at pp. 375-379.) Acor also testified that he had no knowledge on topic eight in Plaintiff's Notice (*id.* at p. 535), and when asked about what efforts Vision undertook to search for and produce documents responsive to Plaintiff's Narrowed Requests he instructed Plaintiff's counsel to speak with Daggett (*id.* at 594).

[2] At issue in this case is Vision's overall lack of production of documents to Plaintiff. This has been the subject of Plaintiff's Motion to Compel [D.E. 49] and Plaintiff's Renewed Motion to Compel [D.E. 93]. Topic twelve in Plaintiff's Notice states, "[l]aws, rules, regulations that govern Vision's retention or preservation of documents relating to its dealings with CSC, Capital Aviation, McNeil, or any branch, division, or agency of the United States government that relate to the Air Bridge or the Air Bridge Contract, and Vision's efforts to comply with such laws, rules, or regulations." The purpose of this topic was to help Plaintiff identify what types of documents Vision was required to retain as a government subcontractor and what types of documents Vision should have produced to Plaintiff – which, in large part, Vision has failed to do. Pursuant to Vision's contract with Capital Aviation, Inc. ("Capital Aviation"), it stated that "invoice documentation shall be made available at any time from the date of this Agreement until three (3) years after 'final' payment hereunder." (Capital Aviation Contract at p. 2, attached hereto as Ex. D.) Final payment was not made until sometime in 2009. Therefore, Vision should still have these documents available to produce to Plaintiff. Despite noticing this topic for deposition, none of Vision's witnesses were able to testify on this topic. (*See* Ex. C at pp. 24, 281, 536.) Again, this is another example of Vision's effort to prevent Plaintiff from ascertaining what type of documents Vision has in its possession and should have produced to Plaintiff.

**B.   VISION'S 30(b)(6) WITNESSES CONFIRMED THAT VISION HAS DOCUMENTS RESPONSIVE TO PLAINTIFF'S NARROWED REQUESTS THAT IT HAS NOT PRODUCED IN THIS LITIGATION**

Vision's 30(b)(6) witnesses confirmed that Vision has documents responsive to Plaintiff's Narrowed Requests that it has not produced in this litigation. In particular, Vision has not produced all of the modifications to its contract with McNeil Technologies, Inc. ("McNeil"), and has not produced its bid proposals or any of the communications surrounding its bid for the Air Bridge Contract that it provided to McNeil. Furthermore, Vision has not produced a single communication between it and McNeil that relates to the Air Bridge Contract, even though Vision's 30(b)(6) witnesses have testified to the existence of such documents and communications. Accordingly, the Court must order Vision to conduct a good faith search to locate all of the documents that Vision previously agreed to produce to Plaintiff.

Vision failed to produce to Plaintiff all of the modifications to its contract with McNeil. Specifically, Narrowed Request No. 2, states, "Vision has previously agreed to provide us with all contracts between or among any of Vision, Capital Aviation, CSC, and McNeil that relate to the Airbridge program, including any modifications and addendums to those contracts." With respect to its contract with McNeil, Vision produced only a heavily redacted version of the McNeil contract with no addendums or modifications. However, Meers testified that there were at least "22 or 24" modifications to the McNeil contract (Ex. C at p. 417), and that those modifications are currently in Vision's possession (*id.* at 418). Meers went on to testify that the McNeil contract is "an incrementally funded contract . . . [s]o it's been modified a number of times to increase funding." (*Id.*) These funding modifications are significant because each time the overall funding of the McNeil contract is increased the amount of the individual line items also increase, one of which is for hazard pay for Vision's employees. Even though Vision agreed to produce these documents it has failed to provide them to Plaintiff.

311630                                                              6

Furthermore, Meers testified that Vision submitted bid proposals to McNeil which it has not produced to Plaintiff. Vision previously agreed in Narrowed Request No. 3 to "provide us with any bids or proposals that relate to any or all of the contracts between or among any of Vision, Capital Aviation, CSC, or McNeil for the Airbridge Program." Meers testified that Vision prepared at least one, if not more, bid proposals that it submitted to McNeil for the Air Bridge Contract. (*Id.* at pp. 421-424.) Moreover, Meers also testified that there were communications between McNeil and Vision that related to Vision's bid proposal for the Air Bridge Contract. (*Id.* at p. 423.) Despite promising to provide Plaintiff with these documents, Vision has failed to produce them.

C. **VISION UNILATERALLY REDACTED PERTINENT INFORMATION FROM ITS DOCUMENTS EVEN THOUGH THE COURT HAS ENTERED A PROTECTIVE ORDER IN THIS CASE AND VISION HAS NO PRIVILEGE TO REDACT THAT INFORMATION**

Vision unilaterally redacted pertinent and responsive information from its documents even though the Court has entered a valid protective order in this case and Vision has no privilege to redact this information. Despite repeated requests for the basis of Vision's redactions, Vision has provided none to Plaintiff. Indeed, Vision has never produced a privilege log in this matter. Moreover, Vision's 30(b)(6) witnesses testified that Vision has the non-redacted versions of the documents in its immediate possession and control. (Ex. C. at pp. 473-74.) The effect of Vision's unilateral redaction of documents has rendered its production of documents nearly worthless, because Vision has removed all of the pertinent information or obscured much of it and left the Class with indecipherable bits and pieces of information.

Courts have consistently held that it is not appropriate for parties to unilaterally redact information from original documents without a recognized basis in privilege, which has been appropriately logged. For example, in *Howell v. City of New York*, No. CV-06-6347 (ERK)(VVP), 2007 WL 2815738, at *2 (E.D.N.Y. Sept. 25, 2007), the court held that "it is not

311630                                               7

the practice of this court to permit parties to selectively excise from otherwise discoverable documents those portions they deem not to be relevant. To do so would require a finding of 'good cause' based on a need 'to protect a party or person from annoyance, embarrassment, oppressions, or undue burden or expense.'"  Furthermore, the practice of unilateral redaction is disfavored because:

> the practice frequently gives rise to suspicion that relevant material harmful to the producing party has been obscured. It also tends to make documents confusing and difficult to use. All to[o] often, the practice results in litigation of collateral issues and in camera review of documents by the Court, with the result that the time of both counsel and the Court is wasted. These drawbacks ordinarily outweigh the minimal harm that may result from disclosure of some irrelevant material.

*Meditronic Sofamor Danek, Inc. v. Michelson,* No. 01-2373-GV, 2002 WL 33003691, at *5 (W.D. Tenn. Jan 20, 2002) (quoting *In re Medeva Sec. Litig.,* 1995 U.S. Dist. LEXIS 21895, at *8 (C.D. Cal. May 30, 1995)).

Here, Vision has redacted pertinent and relevant evidence without offering any explanation. For example, an examination of the document below reveals how Vision has redacted highly relevant and pertinent information from its invoices. The invoice below reflects the amounts Vision billed for "hazardous duty bonus" on behalf of its employees in January, February, and March 2007. (Vision Invoice, attached hereto as Ex. E.)  Vision has redacted all of the January numbers, left only six numbers in the February column, redacted all of the March numbers, and redacted all of the totals.

311630                                8

**Vision Airlines**
Phase III Air Bridge
Enter Data in Yellow Blocks

| Month of | January, 2007 | February, 2007 | March, 2007 | |
|---|---|---|---|---|
| Program Billing | Vision Total | Vision Total | Vision Total | Total |
| Aircraft (2) Lease/Debt Service | $ | $ | $ | $ |
| Insurance - Hull and Liability Standard | $ | $ | $ | $ |
| Flight Deck Crew | $ | $ 384.62 | $ | $ |
| Flight Deck Crew Benefits | $ | $ 86.46 | $ | $ |
| Hazardous Duty Bonus | $ | $ 120.19 | $ | $ |
| Crew Training | $ | $ | $ | $ |
| Cabin Crew | $ | $ | $ | $ |
| Cabin Crew Benefits | $ | $ 207.69 | $ | $ |
| Hazardous Duty Bonus | $ | $ 47.77 | $ | $ |
| General & Administration - Vision | $ | $ 80.13 | $ | $ |
| G & A Vision Discount | $ | $ | $ | $ |
| Total Fixed Cost Per Hour | $ | $ | $ | $ |
| Total Weekly Fixed Cost | $ | $ | $ | $ |

A review of this invoice makes clear that Vision is deliberately and intentionally preventing Plaintiff from ascertaining the amounts it billed for hazardous duty bonus and the other amounts it billed for the Air Bridge Program's line items. Plaintiff is left with only bits and pieces of information, as Vision has removed the amounts it billed for "hazardous duty bonus" in three of the four columns, which is the very subject matter of this litigation.[3]

Vision's redactions, however, are not isolated. Vision has unilaterally redacted numerous documents that it has produced in this case. As evidenced below, Vision has again redacted certain pertinent information from its invoices during the McNeil phase of the Air Bridge Contract. (McNeil Invoice, attached hereto as Ex. F.) All of the black boxes on the document below are redactions Vision made to the invoices it produced to Plaintiff. Again, Vision removed all of the financial information from the invoice

---

[3] Vision's redactions are entirely random and wholly inconsistent. Why Vision would redact the amounts for "hazardous duty bonus" for January and March, but leave them for February is utterly baffling and reflects the lack of any basis in privilege for these redactions.

311630                                                      9

1  depriving the Class of essential information necessary to prosecute this action.

[Redacted invoice image]

17        The financial information is highly relevant to the Class' claims because it impacts the Class' theory of liability, and Vision has raised it as a defense in its depositions. Specifically, Acor testified in his deposition that if the Class added up the line items for employee pay and hazardous duty bonus, that the Class would be able to determine the total amount of money Vision's employees were entitled to receive under the Air Bridge Contract. (Ex. C. at pp. 600-01.) The Class, however, cannot do that unless Vision provides it with the non-redacted documents with the financial information necessary to determine the amounts Vision billed for and the payments it ultimately received from the United States government.

      Furthermore, Vision uses its redactions as an offensive weapon to prevent the

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088

Class from understanding the few documents it has produced in this litigation. For example, the document below is so heavily redacted that Vision has completely obscured what the document is or how it relates to the litigation. (Vision Price Basis, attached hereto as Ex. G.) While the Class is able to determine that "hazardous duty bonus" for the "flight crew and cabin crew" were part of Vision's price basis, the Class is unable to determine what period of time this document relates to or what the other cost line items contained. Simply put, Vision's heavily redacted documents prevent the Class from prosecuting this case.



Moreover, Vision has not even attempted to advance any showing of "good cause" as to why it should be permitted to redact these documents, because it cannot. *Howell*, No. CV-06-6347 (ERK)(VVP), 2007 WL 2815738 at *2. Vision has also failed to provide the Class with a privilege log in this matter that would reflect the basis for

311630                                   11

Vision's unilateral redactions. Accordingly, Vision must be required to produce the non-redacted version of all documents redacted on any basis, as the Court has entered a valid protective order in this case.

## II. CONCLUSION

The Class is simply seeking to obtain the documents from Vision that Vision promised to produce to the Class in their non-redacted format. The Class cannot move this case forward until it receives the documents from Vision necessary to prepare its case for trial. Plaintiff respectfully requests that the Court grant its Renewed Motion to Compel.

Respectfully submitted,

KOZYAK TROPIN & THROCKMORTON, P.A.
Counsel for the Plaintiff
2525 Ponce de Leon, 9th Floor
Coral Gables, Florida 33134
Telephone: (305) 372-1800
Fax: (305) 372-3508

GOODMAN LAW GROUP
520 South Fourth Street
Las Vegas, Nevada 89101
(702) 383-5088
(702) 385-5088 (Facsimile)

By: /s/ David M. Buckner
David M. Buckner
Florida Bar No. 60550
Brett E. von Borke
Florida Bar. No. 0044802

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true copy of the foregoing has been served via the Court's CM/ECF system on April 9, 2010 on Harold P. Gewerter, Esq., 2705 Airport Drive, North Las Vegas, Nevada 89032.

By: /s/ David M. Buckner
David M. Buckner

311630