Ross C. Goodman, Esq., Nevada State Bar No. 7722
GOODMAN LAW GROUP
520 South Fourth Street
Las Vegas, Nevada 89101
(702) 383-5088
(702) 385-5088 (Facsimile)

David M. Buckner, Esq., Florida State Bar No. 60550
Brett E. von Borke, Esq., Florida State Bar No. 44802
KOZYAK TROPIN & THROCKMORTON, PA
2525 Ponce de Leon, 9th Floor
Miami, Florida 33134
(305) 372-1800
(305) 372-3508 (Facsimile)

**ATTORNEYS FOR PLAINTIFF**

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| GERALD HESTER, on behalf of himself and all others similarly situated,<br><br>      Plaintiff,<br>v.<br><br>VISION AIRLINES, INC.,<br><br>      Defendant. | Case No.: 2:09-CV-00117-RLH-RJJ |

<u>**THE CLASS'S REPLY IN SUPPORT OF THE CLASS'S SECOND MOTION FOR EXTENSION OF TIME**</u>

Defendant Vision Airlines, Inc. ("Vision"), continuing its effort to prevent the Class from obtaining the discovery necessary to prove its case and to run out the clock, has changed course and now opposes the Class's Second Motion For Extension of Time ("Second Motion"), even though Vision was unopposed to the Class's First Motion to Extend Time [D.E. 105] a mere two weeks earlier. Vision's Response to the Class's Second Motion ("Response") is not only disjointed and confusing, but it again intentionally misstates the facts, as Vision had done repeatedly in this case. Most glaringly, the undisputed evidence demonstrates that Vision has not

1

produced records "showing all payments . . . by upstream contractors" to Vision, as Vision claims. [D.E. 111 at p. 3.] Rather, as Vision is aware, it has redacted nearly all of the financial information from the invoices it submitted to Capital Aviation, Inc. ("Capital Aviation"), Computer Sciences Corporation ("CSC"), and McNeil Technologies, Inc. ("McNeil"), for the flights it operated to and from Baghdad, Iraq and Kabul, Afghanistan ("Air Bridge Program") and has failed to produce the vast majority of wire transfer receipts from the Capital Aviation/CSC phase ("CSC Phase") and none from the McNeil phase.

Furthermore, Vision disingenuously argues that the Class has sufficient documents to prepare its expert report by the April 29, 2010, deadline. This is simply not true, a fact of which Vision is very well aware, and precisely why Vision refuses to produce those documents it previously agreed to produce to the Class. Specifically, the Class's expert, Barry Mukamal ("Mukamal"), cannot complete his expert report by the April 29, 2010, deadline until Vision conducts a good faith search and provides the non-redacted documents that it previously agreed to produce to the Class that are responsive to the Narrowed Requests in the parties' December 21, 2010 letter agreement. *See* Letter from David Buckner to Harold Gewerter dated December 21, 2010 (attached as Ex. A). It is clear that Vision will not produce these documents until the Court grants the Class's Renewed Motion to Compel [D.E. 93], and orders Vision to do so. Accordingly, Vision is using the scheduling deadlines in this case as an offensive weapon, refusing to produce the documents it agreed to produce in hopes that it can run out the clock. The Court should not tolerate such bad faith conduct.

**A.   VISION'S CLAIM THAT IT HAS PRODUCED ALL OF THE RECORDS REFLECTING PAYMENT FROM THE UPSTREAM CONTRACTORS IS FALSE**

Vision's claim that it has produced all of the records reflecting payment from the upstream contractors is false. In its Response, Vision claims that it has produced the records

"showing all payments . . . by upstream contractors" to Vision. [D.E. 111 at p.3.] This is not true either. In fact, Vision has failed to produce most of the wire transfer receipts reflecting payment for the CSC phase and has failed to produce a single wire transfer receipt reflecting payment from the McNeil phase of the Air Bridge Program. Moreover, the invoices Vision has produced to the Class are so heavily redacted that all of the pertinent financial information has been removed.

    *i.*    *Vision Has Not Produced All Of The Wire Transfer Receipts Reflecting Payment From The Upstream Contractors.*

Vision produced only a limited number of wire transfer receipts from the CSC phase of the Air Bridge Program and none from the McNeil phase. Thus, Vision's claim that it has produced all of these documents is intentionally misleading and false. The few wire transfer receipts that Vision produced from the CSC phase were not part of Vision's initial or supplemental production to the Class. Rather, Vision produced these few wire transfer receipts to the Class on March 8, 2010, only because Vision re-bate stamped every document that the Class obtained from Capital Aviation and produced it back to the Class. This is obvious because, as shown below, the CSC wire transfer receipt contains two bate labels: (1) VISION; and (2) HEST. The "VISION" bate label is from Capital Aviation's production and the "HEST" bate label is from this litigation. *See, e.g.*, wire transfer receipt (attached as Ex. B). Vision has not conducted a good faith search of its documents to locate documents responsive to the Class's Narrowed Requests.

3



ii.  *Vision's Unilateral Redactions of its Invoices Is Inappropriate And Prevents Mukamal From Completing His Expert Report.*

Vision's unilateral redaction of its invoices is inappropriate. Vision has no valid basis for its redactions. Vision's stated concern for its trade secrets is a smoke screen. A protective order was negotiated by the parties and has been entered by the Court in this case. [D.E. 34] Instead, Vision is redacting this information to prevent the Class from proving its case. For example, without this financial information, Mukamal is unable to determine the amount of hazard pay Vision billed and collected on behalf of its Air Bridge Program employees during the McNeil phase. *See* affidavit of Barry Mukamal, D.E 110 at Ex. 1.

Courts have consistently held that it is not appropriate for parties to unilaterally redact information from original documents without a recognized basis in privilege, which has been appropriately logged. For example, in *Howell v. City of New York*, No. CV-06-6347 (ERK)(VVP), 2007 WL 2815738, at *2 (E.D.N.Y. Sept. 25, 2007), the court held that "it is not the practice of this court to permit parties to selectively excise from otherwise discoverable

documents those portions they deem not to be relevant. To do so would require a finding of 'good cause' based on a need 'to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.'" The practice of unilateral redaction is disfavored because it:

> frequently gives rise to suspicion that relevant material harmful to the producing party has been obscured. It also tends to make documents confusing and difficult to use. All to[o] often, the practice results in litigation of collateral issues and in camera review of documents by the Court, with the result that the time of both counsel and the Court is wasted. These drawbacks ordinarily outweigh the minimal harm that may result from disclosure of some irrelevant material.

*Meditronic Sofamor Danek, Inc. v. Michelson,* No. 01-2373-GV, 2002 WL 33003691, at *5 (W.D. Tenn. Jan 20, 2002) (quoting *In re Medeva Sec. Litig.,* 1995 U.S. Dist. LEXIS 21895, at *8 (C.D. Cal. May 30, 1995)).

Vision has redacted pertinent and relevant evidence without offering any basis in privilege. For example, an examination of the invoice below reveals how Vision has redacted highly relevant and pertinent information, in an apparent attempt to conceal relevant evidence.

**Vision Airlines**
Phase III Air Bridge
Enter Data in Yellow Blocks

| Month of | January, 2007 | February, 2007 | March, 2007 | |
|---|---|---|---|---|
| Program Billing | Vision Total | Vision Total | Vision Total | Total |
| Aircraft (2) Lease/Debt Service | $ | $ | $ | $ |
| Insurance - Hull and Liability Standard | $ | $ | $ | $ |
| Flight Deck Crew | $ | 384.62 | $ | $ |
| Flight Deck Crew Benefits | $ | 88.46 | $ | $ |
| Hazardous Duty Bonus | $ | 120.19 | $ | $ |
| Crew Training | $ | $ | $ | $ |
| Cabin Crew | $ | 207.69 | $ | $ |
| Cabin Crew Benefits | $ | 47.77 | $ | $ |
| Hazardous Duty Bonus | $ | 80.13 | $ | $ |
| General & Administration - Vision | $ | $ | $ | $ |
| G & A Vision Discount | $ | $ | $ | $ |
| Total Fixed Cost Per Hour | $ | $ | $ | $ |
| Total Weekly Fixed Cost | $ | $ | $ | $ |

The invoice above reflects the amounts Vision billed for "hazardous duty bonus" on behalf of its employees in January, February, and March 2007. *See* Vision Invoice (attached as Ex. C). Vision is deliberately and intentionally attempting to conceal the amounts it billed for "hazardous duty bonus" and the other amounts it billed for the Air Bridge Program's line items.[1]

Vision's redactions are not limited to the CSC phase. As evidenced below, Vision has again redacted certain pertinent information from its McNeil invoices. *See* McNeil Invoice (attached as Ex. F).



Again, Vision removed all of the financial information from the invoice, depriving the Class and the Class's expert of essential information. The financial information is highly

---

[1] At the hearing on October 23, 2009, counsel for Vision stated that these invoices were not actually invoices but internal bid documents. Specifically, counsel for Vision stated, "it is not a document that was ever disseminated or given to McNeil, Capital, or anyone else. It's not: Here's your invoice and here's how we arrived at it. . ." October 23, 2009 Hr. Trans. (attached as Ex. D) at 16. However, that statement was false. David Meers ("Meers"), Vision's Senior Vice President, testified as Vision's 30(b)(6) representative that this was in fact an invoice that was submitted to the upstream contractors. Dep. of David Meers (attached as Ex. E) at 443-44. This is yet another example of Vision's efforts to mislead the Court.

relevant to the Class's claims because it impacts the Class's theory of liability and calculation of damages. Further, William Acor ("Acor"), Vision's Chief Executive Officer and one of its 30(b)(6) witnesses, testified in his deposition that if the Class added up the invoice line items for employee pay and hazardous duty bonus, that these amounts would equal the salaries paid to Vision's employees operating the Air Bridge Program. Dep. of William Acor (attached as Ex. G) at 600-01). The Class's expert, however, cannot do that analysis for the McNeil phase by the April 29, 2010 deadline, unless Vision provides the Class with the non-redacted documents containing the financial information necessary to determine the amounts Vision billed for and the payments it ultimately received from the contractors above it. *See* affidavit of Barry Mukamal, D.E 110 at Ex. 1.

**B.   VISION'S 30(b)(6) WITNESSES CONFIRMED THAT VISION HAS THE MCNEIL DOCUMENTS IN THEIR NON-REDACTED FORMAT**

Vision's 30(b)(6) witnesses confirmed that Vision has the McNeil documents necessary to prepare the Class's expert's report in their non-redacted format. Specifically, Vision produced its contract with McNeil but redacted all of the financial information from it. Vision's 30(b)(6) witnesses testified that Vision has the McNeil contract in its non-redacted format. Vision's 30(b)(6) witnesses also testified that the McNeil contract has been modified at least twenty four times. None of those modifications have been produced to the Class. Finally, Vision has redacted the bid documents for the McNeil phase that it produced to the Class, again removing all of the pertinent financial information. However, all of these documents Vision previously agreed to produce to the Class in their non-redacted format and are required by the Class's expert in order to prepare his expert report.

While Vision produced the McNeil contract to the Class, it redacted all of the financial information from the contract. David Meers, Senior Vice President of Vision and one of its

multitude of unprepared 30(b)(6) witnesses, testified in his deposition that Vision has the McNeil contract in its original and unredacted format. *See* Ex. E at 418. However, Meers testified that he did not know the "exact dollar amounts under the blackouts," *id.* at 419, which is, of course, the point. Vision is determined to violate the rules of discovery to prevent the Class from proving its case. Until the Class obtains this financial information, the Class's expert will be unable to ascertain how much hazard pay was allocated for Vision's employees during the McNeil phase of the Air Bridge Contract.

Similarly, Vision failed to produce to the Class all of the modifications to its contract with McNeil. Specifically, the parties' agreement as to Narrowed Request No. 2 states, "Vision has previously agreed to provide us with all contracts between or among any of Vision, Capital Aviation, CSC, and McNeil that relate to the Airbridge program, including any modifications and addendums to those contracts." Ex. A at 2. With respect to its contract with McNeil, Vision failed to produce any addendums or modifications, despite the fact that Meers testified that there were at least "22 or 24" modifications to the McNeil contract, Ex. E at 417, and that those modifications are currently in Vision's possession. *Id.* at 418. Meers said that the McNeil contract is "an incrementally funded contract . . . [s]o it's been modified a number of times to increase funding." *Id.* These funding modifications are significant because each time the overall funding of the McNeil contract is increased, the amount of the individual line items also increase, one of which is for hazard pay for Vision's employees.

Furthermore, Meers testified that Vision submitted bid proposals to McNeil, which it has not produced to Plaintiff. Vision previously agreed as to Narrowed Request No. 3 to "provide us with any bids or proposals that relate to any or all of the contracts between or among any of Vision, Capital Aviation, CSC, or McNeil for the Airbridge Program." Ex. A. at 2. Meers stated that Vision prepared at least one, if not more, bid proposals that it submitted to McNeil for the

Air Bridge Contract. Ex. E at 421-24. Meers also testified that there were communications between McNeil and Vision that related to Vision's bid proposal for the Air Bridge Contract. *Id.* at 423. Despite agreeing to provide the Class with these documents, Vision has failed to produce them. Clearly, Vision intends to stall and try to run out the clock on discovery.

The one bid document that Vision produced that related to the McNeil phase was so heavily redacted that nearly all of the financial information was removed. *See* Vision's Price Basis (attached as Ex. H). While it is clear that "hazardous duty bonus" was part of Vision's overall bid to McNeil for the Air Bridge Program, Plaintiff cannot determine the other line items that comprised the bid or their amounts.



The Class's expert requires the financial information from the McNeil phase in order to complete his expert report by the April 29, 2010 deadline. *See* affidavit of Barry Mukamal, D.E 110 at Ex. 1. While it is clear that Vision's bid proposal contained two

line items for employee hazardous duty bonus, what is unclear is the amount Vision submitted to McNeil as part of its bid, the amount Vision billed for hazard pay, and the amount Vision collected in hazard pay on behalf of its employees.

### C.  VISION WILL NOT PRODUCE THE DOCUMENTS IT AGREED TO PRODUCE IN RESPONSE TO THE NARROWED REQUESTS UNTIL THE COURT RULES ON THE CLASS'S RENEWED MOTION TO COMPEL

After being directed to confer again by the Court, the parties spent months negotiating the Narrowed Requests. Vision agreed on November 22, 2009, to produce all documents responsive to the Narrowed Requests in native format with associated metadata. *See* letter from D. Buckner to H. Gewerter, dated Nov. 20, 2009 (attached as Ex. I). Vision reconfirmed that agreement on December 21, 2009, and promised to produce its documents on a rolling basis and to complete its production by January 7, 2010. *See* Ex. A. Vision, however, failed to honor that promise. Instead, as chronicled in the Class's Renewed Motion to Compel [D.E. 93] filed on January 20, 2010, its Reply in Support of the Renewed Motion to Compel [D.E. 99] filed on February 18, 2010, and the Supplement in Support of the Class's Renewed Motion to Compel [D.E. 106] filed on March 31, 2010, Vision failed to conduct a search for documents responsive to the Narrowed Requests, unilaterally redacted the few documents it produced, and failed to produce all documents responsive to the Narrowed Requests. This is discovery abuse in its worst form, and it should not be tolerated.

At the hearing on March 2, 2010, the Court stated that it would "rule on the motion right away – the renewed motion, and give [the Class] that – that help there." March 2, 2010 Hr. Trans. (attached hereto as Ex. J at p. 27.) Vision, however, did not take the Court's hint, and again failed to engage in a meaningful search for and production of documents. *See* Ex. J at 30 (Court: And I think the one thing Mr. Gewerter, I can say to you, is you just need to speak [with] your client and let them know that they got – they got to move forward on this.); *see id.* (Court:

"That's okay. What [Vision] may hay have to do is actually bring on a couple of employees . . . [t]emps or something to accomplish this. If all that it is, is a table full of boxes, that's – that's really pretty small."); *see id.* at. 26 (Court: "Well, [there] needs to be complete, the production; that what the rule requires, right?"); *see id.* at 25 (Court: Okay. You confirmed that with your client? So why isn't it being produced in this litigation?"). Accordingly, depending on how long it takes for Vision to comply once an order issues, the Class may require additional time. Until Vision is forced to produce the documents it agreed to produce, the Class's expert will not have the documents necessary to complete his expert report.[2]

## II. CONCLUSION

Because of Vision's abusive conduct of discovery, the Class's expert will be forced to file an incomplete, preliminary report if the relief sought is not granted. Accordingly, the Class respectfully requests that the Court grant its motion extending the 26(a)(2) expert disclosures by thirty days and grant the Class's Renewed Motion to Compel, ordering Vision to produce the documents it previously agreed to produce.

---

[2] The Class has sought some of the documents it needs from McNeil by way of subpoena. However, McNeil has moved to quash, and the hearing on that motion does not occur until May 7, 2010. McNeil will surely argue that the Class should obtain the documents from Vision.

11

Respectfully submitted,

KOZYAK TROPIN & THROCKMORTON, P.A.
Counsel for the Plaintiff
2525 Ponce de Leon, 9th Floor
Coral Gables, Florida 33134
Telephone: (305) 372-1800
Fax: (305) 372-3508

ROSS C. GOODMAN
GOODMAN LAW GROUP
520 South Fourth Street
Las Vegas, Nevada 89101
(702) 383-5088
(702) 385-5088 (Facsimile)

By: /s/ David M. Buckner
David M. Buckner
Florida Bar No. 60550
Brett E. von Borke
Florida Bar. No. 0044802

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true copy of the foregoing has been served via the Court's CM/ECF system on April 26, 2010 on Harold P. Gewerter, Esq., 2705 Airport Drive, North Las Vegas, Nevada 89032.

By: /s/ David M. Buckner
David M. Buckner