HAROLD P. GEWERTER, ESQ.                                    E-filed: 4/30/2010
Nevada Bar No. 499
HAROLD P. GEWERTER, ESQ., LTD.
2705 Airport Drive
North Las Vegas, Nevada  89032
Telephone:  (702) 382-1714
Fax:  (702) 382-1759
Email: harold@gewerterlaw.com
Attorney for Defendant

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

* * * * *

| | |
|---|---|
| GERALD HESTER, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>VISION AIRLINES, INC.,<br><br>Defendant. | CASE NO.: **2:09-CV-00117-RLH-RJJ**<br><br><br>**DEFENDANT'S MOTION TO DISQUALIFY HESTER AS CLASS REPRESENTATIVE**<br>**and OTHER APPROPRIATE REMEDIES** |

Defendant, VISION AIRLINES, INC., by and through its attorney of record, HAROLD P. GEWERTER, ESQ., of the law firm of HAROLD P. GEWERTER, ESQ., LTD., moves this Honorable Court for an Order disqualifying Plaintiff GERALD HESTER  ("HESTER") as the class representative and providing other appropriate remedies.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1

This Motion is made and based upon the following Points and Authorities, and all the papers and pleadings on file herein.

DATED this 30th day of April, 2010.

HAROLD P. GEWERTER, ESQ., LTD.


_____/s/   Harold P. Gewerter, Esq._____
HAROLD P. GEWERTER, ESQ.
Nevada Bar No. 499
2705 Airport Drive
North Las Vegas, Nevada  89032
Attorney for Defendant


## POINTS AND AUTHORITIES

### I. FACTS

Defendant/Counterclaimant VISION has, since 2005, provided airline services to a contractor or subcontractor of a federal government entity.  Plaintiff/Counterdefendant HESTER is a former VISION pilot who claims that VISION failed to give him specific sums of "hazard pay" allegedly required for flights into and out of Baghdad, Iraq and Kabul, Afghanistan, presumably in addition to the defined compensation package to which he had agreed to and did receive.  Plaintiffs' ground their "right" to receive "hazard pay" in the purported language of certain contracts – contracts to which they were not a party and, in some cases, to which VISION was not a party.

As part of the hearing on Plaintiff's Motion to Compel on October 23, 2009, this Honorable Court stated: "Sounds like one of the fastest ways to get their case is to just interview the person that's going to represent the class, Mr. Hester, the named class rep.  That will nail a lot of this down." (Transcript page 114, Exhibit "1" attached hereto).  The discussion regarding HESTER'S deposition continued:

> MR. GEWERTER:   Your honor, if my client is in a better position, then there is no case.
> My client says he got paid everything.   Is that then an admission
> that he got paid everything if my clients records are correct?
> Obviously they are saying my client's records are not correct.

2

| | | |
|---|---|---|
| THE COURT: | This is a question that would be much more easily handled in a deposition. |
| MR. GEWERTER: | I'm sorry, your Honor. |
| THE COURT: | I mean, you can see how you would have him sitting there in front of you.  And you say you know, when you started was there a contract?  How did you know that you were going to make? |
| MR. GEWERTER: | If I ask for a contract I'll get an objection that it's a legal conclusion.  But I will go down that path though your honor. |
| THE COURT: | Well, there was some basis for him to be paid and what was the basis? I mean, he must have had some expectation.  He didn't just one day walk on the flight line and start flying to Afghanistan for these people. |

(*Id.* at 121.)

Therefore, pursuant to the Court's instructions, and in an effort to gain information regarding the basis for Plaintiffs' claims, on March 19, 2010, Defendant's counsel took the deposition of the lead plaintiff in this case Gerald Hester.  Plaintiff HESTER is the Plaintiff that originally filed this lawsuit, has been repeatedly identified as the individual possessing information regarding the factual basis for the claims in the lawsuit, and purports to be an "adequate" representative for other members of the class.  As explained more fully below, the deposition of Plaintiff HESTER revealed, however, in no uncertain terms, that other than personal information regarding himself, he possesses <u>no</u> knowledge or information regarding the factual basis for this lawsuit and that this lawsuit is instead at the behest of his attorneys.  Accordingly, Defendant VISION respectfully requests that Plaintiff HESTER be disqualified as the class representative and that the Court impose all other remedies as it deems just and proper.

## II. ARGUMENT

It is apparent from the deposition of Plaintiff HESTER that the true basis for this lawsuit is not that Plaintiff HESTER, or any other class member, believes that they were improperly compensated by Defendant VISION.  To be sure, Plaintiff HESTER unequivocally testified that he was an at-will employee with Defendant VISION, that he had a defined compensation package with Defendant VISION that he accepted, and that he received all moneys due and owing to him under those compensation packages.  (Hester Depo., pp. 11-12, 45-47, 90-91, 113-114, 189, attached hereto as Exhibit "2.")("The pay that was offered is, I believe the pay that I

3

received.").   Plaintiff   HESTER also unequivocally testified that he never told anyone at Defendant VISION that he thought he was being improperly compensated and he did not even think that he was improperly compensated until he was told that by his attorneys.  (*Id.* at pp. 37-38, 48.)  Instead, this case presented Plaintiffs' counsel with the opportunity to parade the ideas of patriotism and warfare in the public sphere in an attempt to gain notoriety for themselves.[1]

As noted above, based on Plaintiff HESTER'S deposition testimony, he admits that he had an agreement to receive a certain specified wage and that he, in fact, received all wages due under that agreement.  Apparently, based on the allegations in the Complaint, Plaintiff HESTER now believes that he is owed some sort of additional "hazard pay" over and above the amount he agreed to receive.  However, based on his deposition testimony, it is clear that Plaintiff HESTER is <u>not</u> aware of a <u>single</u> alleged <u>fact</u> that forms the basis for his right to receive this additional compensation.   As outlined below, when asked very specific questions regarding the factual allegations in this case, ***Plaintiff HESTER repeatedly stated that he did <u>not</u> provide that information to his attorneys, that he could <u>not</u> verify its accuracy, and that he has <u>no</u> idea where the information came from***.   For example:

- HESTER could not remember any specific individual that he spoke to at VISION regarding alleged "hazard pay."  (*Id.* at pp. 35-37.)

- HESTER only believed he was entitled to "hazard pay" after he spoke with the attorneys in this case. (*Id.* at p.37-38.)

> Q. [2]        When did you first come to the conclusion that Vision had not paid you all the money you felt you were entitled to while working for Vision Airlines?
> MR. BUCKNER: Object to the form.
> Q.         You can answer it.

---

[1] Plaintiff HESTER testified that he never authorized his attorney to speak to the press about this case and reveal what the Company alleges is confidential information.  (*Id.* at pp. 200-203.)

[2] Unless otherwise noted the Questions are asked by Harold Gewerter, Esq., attorney for Defendant VISION, and the Answers were provided by Plaintiff HESTER.

> A.   When my attorneys discovered that was in fact the case.
> Q.   Well, how would you have a lawyer if you didn't know you had a case?
> A.   I didn't know if it were true or not.

- HESTER could not remember whether he was contacted by Plaintiffs' counsel or whether he contacted them.  (*Id.* at pp. 38-39.)

- HESTER did not request to be lead plaintiff in this case, instead, Plaintiffs' counsel requested that he take that role.  (*Id.* at pp. 41-42, 126.)

- HESTER does not know the amount at issue in the case for himself or for the class.  (*Id.* at pp. 132-33.)

> Q.   Do you believe that amount in the class is significantly in excess of $5 million?
> A.   I don't know the amount at issue.
> Q.   In fact, it's a fair statement, when you filed this complaint, you have no basis, factual basis, to determine who much you are owed individually.  Did you?
> A.   I did not.

- Despite, the colorful language in the Complaint regarding war ridden airports in Iraq and Afghanistan, Plaintiff HESTER has no information regarding military activity in those areas at the time of his employment with Defendant VISION.  (*Id.* at pp. 139-152, 156-157.)(noting, for example, that he did not supply the information regarding, and did not know the accuracy of, the fact that there was an alleged C-130 cargo plane crash in February 2005).

- In fact, Plaintiff HESTER admits that most of the information in the Complaint came from someone other than himself – someone that he could not identify and that his counsel would not let him identify on the basis of privilege.  (*Id.* at pp. 133-134, 169.)

> Q.   But you provided facts to your counsel, though, didn't you?
> A.   About myself.
> Q.   Who else provided facts to the same law firm?

5

MR. BUCKNER:   Object to form.   Stop a second. You can answer the question if you know it without having gotten it from us.   If you got it from a conversation from us, it's attorney-client privileged communication and I'm instructing you not to answer.

THE WITNESS: *You have to ask them.  I don't know where they got their information.*

…

Q.      Well, somehow information got on this complaint that you allege did not come from you.  Is that correct?

A.      That is correct.

Q.      Do you know where the information came from, which individuals?

A.      I do not.

…

Q.      And paragraph 23, on page 8.  Are you the source of that information?

A.      No, I was not.

Q.      Do you know who was?

A.      No, I do not.

- HESTER confirmed on a number of occasions that *he does not know the accuracy of the factual information in the complaint* and instead simply "trusted his attorneys" that the information was true. (*Id.* at pp. 152, 158-159, 161-162, 166-67, 177-85.)

Q.      You never actually researched this yourself, did you?

A.      No, I did not.  I'm guided by my attorneys, who I trust.

…

Q.      Look at paragraph 14.   Did any of that information come from you?

A.      No.

Q.      Do you know whether or not that's true or false?

A.      *I believe it to be true.*

Q.      *And why do you believe it to be true?*

A.      *Because I trust my attorneys.*

Q.      *Is that where the information came from?*

A.      *To the best of my knowledge, yes.*

…

Q.      Look at paragraph 16 on page 6 of the Complaint.  It starts off by saying, "The United States government recognizes that employees of government contractors in Iraq and Afghanistan confront some of the same dangerous conditions encountered by government employees and members of the armed services." How do you know that the United States government recognizes that?

MR. BUCKNER: Object to the form.

THE WITNESS:  **I'm not the source of this information.   I believe it to be true, and I rely on my attorneys for that.**

…

Q.    And the next sentence, "Due to the United States government's reliance on contractors, the shortage of individuals willing to work in those countries threatens the government's ability to successfully implement its global defense strategy."
How do you know that to be true?

A.    **I was not the source of that information.  I believe it to be true.**

Q.    Well, what do you know about—

A.    **I rely on my attorneys.**

Q.    What do you know about the global defense strategy of the United States government?

A.    Are you speaking of the Bush Doctrine?

Q.    I'm not speaking of anything other than what's in your complaint.  I didn't draft this, so I'm not the one responsible for the wordage.

A.    **I didn't draft it either, sir.**

Q.    But you approved it, though.

A.    Yes.

Q.    Paragraph 18, on page 7.  **Did that information come from you?**

A.    **No, it did not. …**

…

Q.    Do you see where it says,  "Hazard pay compensation is incorporated into a pass-through provision contained in the contract between the government and the contractor"?  Is that a true statement?

A.    **I wasn't the source of that information.**

Q.    Have you ever seen the contract between Vision Airlines and any other contractor or the United States government?

A.    No, I have not.

Q.    So you don't know whether or not there's a pass-through provision contained in any such contract, do you?

A.    **No, but I believe it to be true, based on the research accomplished by my attorneys.**

…

Q.    So you don't know whether that $2,500 figure and $5,000 figure exists between the United States government and Capital Aviation, do you?

A.    **No, I do not.**

Q.    Paragraph 27 on page 9.  "In contracting with Capital Aviation from air transport services, the United States government incorporated the hazard pay into a pass-through provision of the contract." How do you know that to be true?

A.    **I'm not the source for this information.  I believe it to be true based upon information, belief and research accomplished by my attorneys.**

Q.    And then the next sentence says, "Because the employee hazard pay was incorporated into a pass-through provision, it required Capital Aviation to pay the hazard pay it received from the United States government to any

7

subcontractor, who was required to pass those funds through to the air crews completing the work." Do you know if that's a true or false statement?

A.   Same answer, Mr. Gewerter.

Q.   And what is that answer?

A.   ***I wasn't the source of this information. I believe it to be true based upon the investigation done by my attorneys.***

Q.   Any other investigation, or just by your attorney?

A.   My attorneys.

Q.   Anyone -- anyone other than your attorneys?

A.   No.

…

Q.   Later in that same paragraph, it says, "Moreover, Vision fired all the crew members that knew about or had previously received hazard pay for flying to Kabul and replaced them with employees who did not know that they were entitled to receive hazard pay." Who are those employees that were fired?

A.   I don't know.

Q.   How do you know this to be a true or false statement then?

A.   ***I was not the source of this information.***

…

Q.   "In the summer of 2007, Dr. Dan Carson, Vision's director of flight operations contacted Capital Aviation and inquired if the United States government provided hazard pay for Vision's employees who were flying into Baghdad and Kabul." How do you know that to be a true statement?

A.   ***I wasn't the source of this information.***

…

Q.   And then it says, "Dr. Carson contacted the president of Vision, William Acor, to discuss the hazard pay. During that conversation, Mr. Acor instructed Dr. Carson to cease his inquiries into the hazard pay issue." Now, who told you that?

A.   ***I wasn't the source of this information.***

Q.   Okay. So you never heard that then?

A.   No.

…

Q.   You state in your lawsuit that, "This lawsuit seeks to end Vision's wrongful and exploitive conduct." Describe for me what you mean by that, please.

A.   ***Again, I wasn't the source of the information here in this part of the complaint.***

…

Q.   ***You have no documents in your hand that verifies or backs up what you just said under oath, do you?***

A.   ***I don't. I rely on information discovered by my attorney.***

- In perhaps his most telling admission of a lack of knowledge, ***Plaintiff HESTER admits that he in fact has <u>no</u> personal knowledge whatsoever that anyone at Defendant***

*VISION including himself was entitled to any sort of "hazard pay."*  (*Id.* at pp. 159, 162, 168-70, 178-85.)

Q.     Then it says, "Accordingly, the United States government has extended the practice of paying hazard and imminent danger pay to employees of government contractors that work in Iraq and Afghanistan."  How do you know that to be true?

A.     Same answer.

Q.     What is that answer?

A.     *I'm not the source of this information.  I rely on my attorneys.  I believe it to be true.*

Q.     And you believe it to be true, but you have no independent knowledge, do you have?

A.     *I have no independent knowledge, but I trust my attorneys.*

…

Q.     How do you know in the second sentence of that paragraph, where it says, "Specifically the United States government provides the contractor with funds for the following:  (1) the contracted services; and (2) hazard pay for the contractors' employees that work for Iraq and Afghanistan"?

A.     *I was not the source of that information.  I believe it to be true, and I trust my attorneys.*

…

Q.     The second sentence, "Accordingly, if the contractor subcontracts with another company to perform the contracted services, the pass-through provision requires that the contractor 'pass through' the hazard pay that it collects from the United States government to the subcontractor; i.e., the contractor pays the subcontractor the hazard pay." And it goes on.  Where did you learn that information from?

A.     *I am not the source of that information.*

Q.      So for clarity, have you ever seen any contracts between Vision and any other government contractor?

A.     No, I have not.

…

Q.     And looking at paragraph 24 on page 8.  Look at the third line, where it says, "Accordingly, the United States government has standardized the amount of hazard pay that crew members on the flights to Baghdad and Kabul receive for every takeoff and landing.  Specifically, every captain, first officer, international relief officer receives $2,500 each for every takeoff and landing at these airports in Baghdad and Kabul, making a total of $5,000 in hazard pay per round trip."  Is that a true statement?

A.     *I was not the source of that information.*

Q.     Do you know who was?

A.     I do not.

…

9

Q.     Look at paragraph 30 at the bottom of the page. "In addition, Capital Aviation provided Vision the hazard pay that the United States government gave Capital Aviation for the benefit of Vision's employees, which Vision was required to distribute to those crew members on the flights to Baghdad and Kabul." Do you know if that's a true or false statement?

A.     *I was not the source of that information.  I believe it to be true based on the research done by my attorneys.*

…

Q.     Look at paragraph 36 on page 11.  "Accordingly, Capital Aviation provided Vision with a minimum of $54,000 per week in hazard pay meant for Vision's employees." How do you know that money was meant for Vision employees?

A.     *I'm not the source of this information.  I believe it to be true, based on the investigation of my attorneys.*

…

Q.     Look at paragraph 38 on page 11.  "In August 2005, Vision decided that it would capture a financial windfall if it simply retained all the hazard pay it collected from Capital Aviation for its own benefits." What information do you have that Vision obtained a financial windfall?

*A.*     *I was not the source of that information.*

Q.     What information do you have that Vision received any hazard pay they collected—I'm sorry, what information do you have that Vision received any hazard pay?

A.     *I'm not the source of this information.*

…

Q.     What information do you have personal knowledge of in this complaint?

A.     The information concerning myself.

Q.     And that's it, then?

A.     That's it.

Q.     Nothing about the contract between Capital and Vision.  Correct?

A.     Correct.

Q.     *And nothing about hazard pay.  Correct?*

A.     *Correct.*

Based on the foregoing, it is without question that the lead plaintiff in this case possesses no information or knowledge regarding the material facts that form the basis for the Complaint in this case, *including __no information whatsoever on hazard pay__*, and that the true individuals with information or knowledge about the claim are, if anyone, apparently his lawyers.  (*See, e.g., id.* at p. 227) ("*I did not file the complaint,  and I wasn't the source for the information.*") Such tactics not only disadvantage Defendant VISION in discovering the basis for the lawsuit,

10

but also undercut the very letter and spirit of our judicial system and the rules and procedures that govern its operation.

Accordingly, Defendant VISION respectfully requests that the Court issue the following remedies:

**A.    Disqualify Hester as the Class Representative and, consequently, decertify the class**

As illustrated above, Plaintiff HESTER has no facts or knowledge regarding the basis for this case.  He relies on information provided by his lawyers or from some unknown third-parties.  It is also clear from his deposition testimony that this litigation is being run by his counsel and not by him – he may not have even contacted counsel initially to represent him.  Instead, they may have sought him out, they asked him to be the class representative, they told him that he was allegedly not paid correctly, and then prepared a complaint based on information that was not provided by, or even known by, Plaintiff HESTER.

Accordingly, Plaintiff HESTER is not an adequate class representative and the Court should disqualify him as such.  *See Sicinski v. Reliance Funding Corp.*, 82 F.R.D. 730, 734 (S.D.N.Y 1978) (finding that the named plaintiff was not an adequate class representative because of her "limited personal knowledge of the facts underlying [the] suit" and thus, denying a request to certify the class); *see also Unger v. Amedisys, Inc.*, 401 F.3d 316 (5th Cir. 2005) ("Class representatives must satisfy the court that they, and not counsel, are directing the litigation.  To do this, class representatives must show themselves sufficiently informed about the litigation to manage the litigation effort.").  Likewise, "Beyond this, a named plaintiff must display some familiarity with the practices challenged, and ability to assist in decision making as to the conduct of the litigation".  *Morgan vs. Laborers Pension Trust Fund for Northern California,* 81 F.R.D. 669 (N.D. CA 1979).

Additionally, in *Jaurigui vs. Arizona Board of Regents,* 82 F.R.D. 64 (D. AZ 1979),  the Court addressed the same issue as present here when the Lead Plaintiff in a Class Action is unaware of material events at his deposition and held:

> "The deposition of Jaurigui reveals that he is unaware of the major events in the
> case and has deferred to counsel consistently on the progress and direction of the

suit.  It cannot be said that Jaurigui has played a role in the litigation to date that would infer that he has either the desire or ability to protect the interests of absent class members".

. . .

"IT IS ORDERED,

The Defendants motion to strike class allegations is granted".

*Jaurigui vs. Arizona Board of Regents,* 82 F.R.D. 64 (D. AZ 1979)

Because Plaintiff HESTER is an inadequate class representative, he fails to establish the requirements for a class action and the class should be decertified.

**B.   Permit Defendant VISION to take the depositions of each and every person who provided information to Plaintiff HESTER'S counsel that formed the basis for the factual allegations in the Complaint.**

Plaintiffs' counsel has indicated on a number of occasions that they have had minimal contact with other class members and have no information or documents from them.  However, it is abundantly clear from Plaintiff HESTER'S deposition that Plaintiffs' counsel received the information that formed the basis for the factual allegations in the Complaint either on their own (which would make them fact witnesses) or from someone other than Plaintiff HESTER.

In a noteworthy twist of facts, during Plaintiff HESTER'S deposition, Defendant VISION'S counsel learned that another class member, Gary Borke, is the father of one of Plaintiff's counsel in this case, Brett Von Borke.[3]  Given this fact, it is hard to imagine that there has been little contact between Plaintiffs' counsel and other class members.[4]

---

[3] It is also somewhat curious that despite his affiliation with Plaintiffs' counsel and his later inclusion as a class member, Mr. Borke was not an original named plaintiff in the case.

[4] Federal courts generally refuse to permit a named plaintiff to employ as counsel for the class a law partner or associate, or a spouse, or a member of the family.  The concern is that any attorney's fees paid would diminish the class recovery and thus, pose an irreconcilable conflict of interest.  *Zylstra v. Safeway Stores, Inc.,* 578 F.2d 102, 104 (5th Cir. 1978).   Accordingly,

Therefore, Defendant VISION respectfully requests that the Court order Plaintiffs' counsel to disclose the names of each and every person who provided information that formed the basis for the factual allegations in the Complaint, and permit Defendant VISION to depose those individuals.

**C.    Permit Defendant VISION to depose Plaintiffs' counsel regarding the factual basis for the case.**

Plaintiff HESTER testified that most, if not all, of the material facts in the Complaint were provided by his attorneys.   Therefore, because Plaintiffs' counsel has the information regarding the factual basis for the claims in this case, Defendant VISION should be entitled to take their deposition.

Courts may order the deposition of a plaintiff's attorney.  *See Conkling v. Turner,* 883 F.2d 431 (5th Cir. 1989).    In *Conkling,* the Court of Appeals held:

> The attorney-client privilege "was intended as a shield, not a sword."  *Pitney-Bowes, Inc. v. Mestre,* 86 F.R.D. 444, 446 (S.D.Fla. 1980). "[W]hen confidential communications are made a material issue in a judicial proceeding, fairness demands treating the defense as a waiver of the privilege."  *United States v. Mierzwicki,* 500 F. Supp. 1331, 1335 (D.Md. 1980).   The great weight of authority holds that the attorney-client privilege is waived when a litigant "place[s] information protected by it in issue through some affirmative act for his own benefit, and to allow the privilege to protect against disclosure of such information would be manifestly unfair to the opposing party."  *Hearn v. Rhay,* 68 F.R.D. 574, 581 (E.D.Wash. 1975):  *see also Armstrong v. United States,* 440 F.2d 658 (5th Cir. 1971): *United States v. Exxon Corp.,* 94 F.R.D. 246 (D.D.C. 1981): *Russell v. Curtin Matheson Scientific, Inc.* 493 F. Supp. 456 (S.D. Tex. 1980): *Pitney-Bowes,* 86 F.R.D. 444: *Mierzwicki,* 500 F. Supp. 1331; *Haymes v. Smith,* 73 F.R.D. 572 (W.D.N.Y. 1976); *Int'l Paper Co. v. Fibreboard Corp.,* 63 F.R.D. 88 (D.Del. 1974).

*Id.* at 434.

Thus, in a circumstance such as this where Plaintiff HESTER claims to have provided **no material information** to his attorneys and the material information apparently lies solely with

---

Defendant reserves the right to seek disqualification of Mr. Borke as class counsel based on his apparent conflict of interest.

13

his attorneys ("I relied upon my attorneys"), the Court should order the deposition of the Plaintiffs' attorneys.

To the extent the deposition creates a conflict of interest, such a conflict was created solely by Plaintiff HESTER and his counsel and thus, does not serve as a basis for not allowing the deposition. *See Sicinski*, 82 F.R.D. at 734.

**D.    Compel Plaintiff HESTER to respond to deposition questions regarding attorneys' fees.**

In the Complaint, Plaintiff HESTER seek the recovery of attorneys fees and costs. Accordingly, it is appropriate for Defendant VISION to engage in discovery to determine the factual basis for this requested remedy, including the attorneys' fee arrangement between the Plaintiffs and their counsel.   However, at the direction of his attorneys, Plaintiff HESTER refused to answer any questions regarding the fee arrangement.   (Hester Depo. pp. 125, 198-200.)   Not only does this render Defendant VISION without any basis to challenge the validity of any requested attorneys' fees, but would also prevent the Court from having a basis for determining the amount and fairness of the fees should be it necessary.[5]

It is black letter Ninth Circuit law that "the attorney-client privilege ordinarily protects neither a client's identity nor information regarding the fee arrangements reached with that client."  *Reiserer v. U.S.*, 479 F.3d 1160, 1165 (9th Cir. 2007).   Moreover, "[i]nquiry into the

---

[5] Since it must act independently to protect the class, a court may, in appropriate cases, require the potential class counsel to price their services in advance of the litigation rather than afterwards.  *See In re Oracle Sec. Litig.*, 131 F.R.D. 688, 691 (N.D.CA 1990).   Neither the attorney-client privilege nor any privacy claim by the class representative will preclude such discovery.  *See Klein v. Henry S. Miller Residential Servs., Inc.*, 82 F.R.D. 6, 8-9 (N.D. TX 1978); *see also In re Mid-Atl. Toyota Antitrust Litig.*, 93 F.R.D. 485, 489-91 (D. MD 1982)(lawyers indemnifying client against all costs of litigation is unethical and renders plaintiff's representation "inadequate").

14

general nature of the legal services provided by counsel does not necessitate an assertion of the privilege because the general nature of the services is not protected by the privilege". *Nguyen v. Exce Corp.,* 197 F.3d 200, 206 (5th Cir. 1999).

Accordingly, because the information is not protected by privilege, Defendant VISION respectfully requests that this Court issue an order compelling Plaintiff HESTER to be re-deposed, at his own expense, on the issue of attorneys' fees and the fee arrangement with Plaintiffs' counsel.

**E.      Strike Plaintiff HESTER'S Complaint.**

To the extent that Plaintiffs' counsel cannot identify the factual basis for the allegations asserted in the Complaint, Defendant VISION respectfully requests that the Complaint be struck because it is not based on any good faith belief that the information contained therein is true and accurate. *See* FRCP 11(b)(3).

In addition, courts have the inherent power to sanction an individual for a clear violation of the discovery procedure. A party who provides evasive or incomplete deposition answers is subject to sanctions even in the absence of a prior order. *See* FRCP Rules 37(a)(4); 37(d). As a result, a court may sanction the disobedient party by striking pleadings, staying further proceedings pending compliance, or terminating the action by default or dismissal. *See* FRCP Rule 37(b)(2)(A)(iii)-(iv).

"The deposition-discovery regime set out by the Federal Rules of Civil Procedure is an extremely permissive one to which courts have long 'accorded a broad and liberal treatment to effectuate their purpose that civil trials in the federal courts [need not] be carried out in the dark.'" *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 69 (2nd Cir. 2003) *quoting Schlagenhauf v. Holder,* 379 U.S. 104, 85 S.Ct. 234 (1964). For willful violations of discovery practices, a court has discretion to dismiss the entire action. *See* FRCP Rule 37(b)(2)(A)(v). A court may dismiss a case without resorting to less severe sanctions where, as in this case, the "conduct abuses the judicial process." *Chrysler Corp. v. Carey,* 186 F.3d 1016, 1022 (8th Cir. 1999). To be sure, striking pleadings is within the court's discretion and the court is not required to impose the "least onerous" sanction. *Id.*

Here, a lawsuit was brought on behalf of a class of individuals and names a Plaintiff who has no knowledge of the factual basis for it.  Further, Plaintiffs' counsel while attempting to hide behind the veil of privilege, refuses to provide information on where the facts came from. Therefore, Defendant VISION respectfully requests that the Court strike Plaintiffs' Complaint.[6]

**F.      Award Defendant VISION its fees and costs associated with Plaintiff HESTER'S deposition and with the preparation of this Motion.**

Given Plaintiff HESTER'S failure to provide the very basic information required by the discovery process, Defendant VISION respectfully requests that it be issued its costs and fees associated with Plaintiff HESTER'S deposition and the preparation of this Motion.

## III.

## <u>CONCLUSION</u>

This is a clear case where the litigation is being driven by Plaintiffs' counsel and not by Plaintiff HESTER.   It is without question that Plaintiff HESTER has no information or knowledge whatsoever on the factual basis for this action and that the only knowledge regarding the claims apparently lies with Plaintiffs' counsel.  Accordingly, Defendant VISION is unable to obtain discovery on the very basic elements of the case and Plaintiff HESTER is an inadequate class representative.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

---

[6] Where there are several plaintiffs, a court has discretion to dismiss the *entire* action, including claims by co-plaintiffs *not* currently in default, because the other parties' discovery violations may have prejudiced the propounding parties' ability to prepare for trial. *See Payne v. Exxon Corp.,* 121 F.3d 503, 509-10 (9th Cir. 1997).

16

1       For all the foregoing reasons, Defendant/Counterclaimant VISION requests that this

2 Honorable Court disqualify Plaintiff HESTER as the class representative, decertify the class,

3 allow Defendant VISION to depose those who allegedly possess the information that gave rise to

4 this claim, including Plaintiffs' counsel, strike Plaintiffs' Complaint in its entirety, and/or

5 provide any other relief that this Court deems just and proper.

6       DATED this 30th day of April, 2010.

7                              HAROLD P. GEWERTER, ESQ., LTD.

8

9                               /s/  Harold P. Gewerter, Esq.

10                           HAROLD P. GEWERTER, ESQ.

11                           Nevada Bar No. 499

                           2705 Airport Drive

12                           North Las Vegas, Nevada  89032

                           Attorney for Defendant

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28