Ross C. Goodman, Esq., Nevada State Bar No. 7722
GOODMAN LAW GROUP
520 South Fourth Street
Las Vegas, Nevada 89101
(702) 383-5088
(702) 385-5088 (Facsimile)

David M. Buckner, Esq., Florida State Bar No. 60550
Brett E. von Borke, Esq., Florida State Bar No. 44802
KOZYAK TROPIN & THROCKMORTON, PA
2525 Ponce de Leon, 9th Floor
Miami, Florida 33134
(305) 372-1800
(305) 372-3508 (Facsimile)

**ATTORNEYS FOR CLASS**

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

GERALD HESTER, on behalf of himself
and all others similarly situated,

    Plaintiff,

v.

VISION AIRLINES, INC.,

    Defendant.

Case No.: 2:09-CV-00117-RLH-RJJ

## THE CLASS'S RESPONSE TO DEFENDANT VISION AIRLINES, INC.'S MOTION TO COMPEL

The Class, by and through undersigned counsel, respectfully submits its Response to Defendant Vision Airlines, Inc.'s ("Vision") Motion To Compel ("Motion"). After dutifully reprinting Rule 26 verbatim, Vision's argument amounts to a mere page and a half. There is little at issue here, short of Vision's desire to file something to shift the focus from it indefensible conduct of discovery (or, more appropriately, failure to conduct discovery), which is and remains the issue of numerous motions and pleadings before this Court, all of which await a ruling.[1]

---

[1] Vision has refused to produce the documents it agreed to produce in response to the Narrowed Requests contained in the parties' letter agreement dated November 20, 2009. [*See* D.E. 93, 106.] Vision agreed to produce all documents responsive to the Class's Narrowed Requests on or before January 7, 2010, which Vision failed to do. Vision has also refused to produce documents in their original and non-redacted format to the Class, despite previously agreeing to do so. The Class has described Vision's bad-faith discovery conduct in: (1) Class's Renewed Motion to Compel [D.E. 93]; (2) Class's Reply in Support of Renewed Motion to Compel [D.E. 99]; (3) Supplement in Support of the Class's Renewed Motion to

1

Vision's motion should be denied.

Vision claims that it is entitled to (1) the names of the four individuals who, out of the over 140 members of the certified Class, opted out of this lawsuit, and (2) the individualized damages owed to each remaining Class member. While Vision has no valid legal basis for its receipt of this information, as shown below, the Class has repeatedly informed Vision that it would provide that information if certain conditions were met. As to the names of the opt-outs, the Class will provide that information if Vision agrees to the entry of an Order which prevents Vision from taking any retaliatory action against any absent class member, including termination, demotion, or the filing of a lawsuit against them. *See* Letter from D. Buckner to H. Gewerter of June 11, 2010 ("June 11 Letter") (Ex. A). As to the individualized damages analysis, the Class had offered to conduct and provide that analysis if Vision would produce to the Class the information necessary to do so, which to date Vision has not done. *See id.* at 1; email from D. Buckner to H. Gewerter and M. Aceves of June 18, 2010 (Ex. B); email from D. Buckner to H. Gewerter and M. Aceves of July 1, 2010 (Ex. C); emails between D. Buckner to H. Gewerter and M. Aceves of July 1, 2010 (Ex. D); email from D. Buckner to H. Gewerter and M. Aceves of July 6, 2010 (Ex. E); emails between D. Buckner to H. Gewerter and M. Aceves of July 6, 2010 (Ex. F); email from D. Buckner to H. Gewerter and M. Aceves of July 7, 2010 (Ex. G); email from D. Buckner to H. Gewerter and M. Aceves of July 8, 2010 (Ex. H); emails among D. Buckner to H. Gewerter and M. Aceves of July 8, 2010 (Ex. I); email from D. Buckner to H. Gewerter and M. Aceves of July 12, 2010 (Ex. J). Even now, the Class continues to press Vision to produce the documents necessary to do the analysis Vision seeks. Vision, despite waiting until discovery closed (conveniently avoiding any depositions of its witnesses regarding

---

Compel [D.E. 106]; (4) Class's Second Motion to Extend Time [D.E. 110]; (5) Class's Reply in Support of Second Motion to Extend Time [D.E. 116]; and (6) Class's Response to Vision's Motion to Decertify the Class [D.E. 126] and incorporates those documents herein by reference.

documents it is only now producing), has still failed to produce the requisite documents because of its inadequate and bad-faith discovery conduct. *See* Vision's Fourth (July 6, 2010), Fifth (July 9, 2010), and Sixth (July 14, 2010), Supplemental Responses to Plaintiff's First Request for Production and Letter from H. Gewerter to D. Buckner of July 13, 2010 (Ex. K). However, instead of admitting its own failings, Vision has attacked the Class.

Despite the fact that it is Vision, and not the Class, that stands in the way of Vision's receipt of the information that it seeks, Vision nonetheless filed the instant motion. As further proof of its bad faith, Vision neglected to even inform the Court that the Class had offered to give it the very information it has sought in this Motion. Some kind of sanction is in order for wasting the Court's and the Class' time. *See Zambrano v. City of Tustin*, 885 F.2d 1473, 1478 (9th Cir. 1989) (Court has authority to imposed sanctions under its "[i]nherent powers [which] derive from the absolute need of a trial judge to maintain order and preserve the dignity of the court," but is required to make a finding of bad faith "before sanctions must be imposed under the court's inherent power.").

A.  **Vision Has No Valid Need For, And No Viable Legal Argument Allowing It To Receive, The Names Of The Four Opt Outs.**

The burden to obtain discovery of any kind from absent class members is very high, *see, e.g., Phillips Petroleum v. Shitts*, 472 U.S. 797, 810 n. 2 (1985), and therefore "separate discovery of individual class members not representatives is ordinarily not permitted." *In re Worlds of Wonder Sec. Litig.*, No. C-87-5491 SC (FSL), 1992 WL 330411, at*2 (N.D. Cal. July 9, 1992) (citing *Wainright v. Kraftco Corp.*, 54 F.R.D. 532, 534 (N.D. Ga. 1972). Discovery of absent class members is permissible only where the proponent can show:

> (1) the discovery is not designed to take undue advantage of class members or to reduce the size of the class; (2) the discovery is necessary; (3) responding to the discovery requests would not require the assistance of counsel or other technical advice; and (4) the discovery seeks information that is not already known by the proponent.

*On the House Syndication*, 203 F.R.D. 452, 456 (S.D. Cal. 2001); *see also Baldwin & Flynn v.*

3

*Nat'l Safety Assocs.*, 149 F.R.D. 598, 600 (N.D. Cal. 1993) (citing *Clark v. Universal Builders, Inc.*, 501 F.2d 324, 340-41 (7th Cir. 1974)) ("discovery is both necessary and for a purpose other than taking undue advantage of class members."). In the mere page and a half that Vision spent laying out its argument in the instant motion, it made no effort to establish any of these criteria. Vision cannot be allowed to now, in its reply, attempt to remedy its failings by sandbagging the Class with facts and argument not previously made.

Furthermore, courts have afforded additional protections to absent class members where those absent class members are also employees of the defendant. For example, the court in *Mevorah v. Wells Fargo Home Mortg., Inc.*, No. C 05-1175 MHP, 2005 WL 4813532, at *4, (N.D. Cal. Nov. 17, 2005), noted that "defendant's statements also have a heightened potential for coercion because where the absent class member and defendant are involved in an ongoing business relationship, such as employer-employee, any communications are more likely to be coercive." Similarly, in *Wang v. Chinese Daily News, Inc.*, 236 F.R.D. 485, 489 (C.D. Cal. 2006), the court invalidated certain opt-outs submitted in a class action case because they "were the product of a coercive environment that pressured employees to opt out lest they risk losing their jobs." *See also Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193, 1197-98 (11th Cir. 1985) (holding that defendant's conduct was improper where defendant engaged in a scheme designed to coerce members of a certified class to opt-out of the action); *Belt v. Emcare, Inc.*, 299 F. Supp. 2d 664, 666-68 (E.D. Tex. 2003) (holding that it was improper for defendant to send out letters to class members misrepresenting facts about the action and that it was coercive because it suggested that the lawsuit could affect the absent class members' employment).

Courts have also held that employers are not permitted to coerce, intimidate or threaten class members, including terminating them, for taking action to enforce their legal rights. *See Wang*, 236 F.R.D. at 489. Specifically, Nevada affords certain protections to at-will employees under the tortious discharge exception to the at-will employment doctrine. This exception holds

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088

4

that "[a]n employer can dismiss an at-will employee with or without cause, so long as the dismissal does not offend a public policy of this state." *Vancheri v. GNLV Corp.,* 777 P.2d 366, 369 (Nev. 1989). Terminating an employee for reasons which violate public policy gives rise to an action for tortious discharge. *D'Angelo v. Gardner,* 819 P.2d 206, 212 (Nev. 1991). Nevada courts have held that terminating employees for seeking to enforce their legal rights violates Nevada's public policy. *See Hansen v. Harrah's*, 675 P.2d 394 (Nev. 1984) (holding that employer violated public policy by terminating employee who filed a workman's compensation claim).

The only possible purpose Vision could have in seeking to obtain the identities of the individuals that opted-out is to determine the identities of the absent class members who did not opt-out, including those absent class members who are currently employed by Vision. The evidence suggests, given Vision's past conduct, that Vision will use this information to threaten and intimidate the absent class members, including its current employees, which is strictly prohibited under the law. *See Wang,* 236 F.R.D. at 489; *Belt,* 299 F. Supp. 2d at 666-68. Vision has already engaged in a sustained campaign of intimidation against some absent class members and others. A mere six weeks after the Complaint in this action was filed, Vision filed a retaliatory and groundless lawsuit against Hester, despite the fact that Vision's Rule 30(b)(6) witnesses testified that they have no evidence to support the Amended Counterclaim in this action that are the successors to that earlier lawsuit. *See* Brian Dagget Dep., Ex. L, at 27-28, 119, 128, 141, 154-57; David Meers Dep., Ex. M, at 283-84, 521. Vision has also sued Dan Carson (Vision's former director of Flight Operations and the individual that informed CSC that Vision had failed to pay the Class any hazard pay), Gwen Carson (Dan Carson's daughter), Ronald Borz (an absent class member and former Vision flight attendant who is currently unemployed), Juan Salicrup (an absent class member), Salko International (a company owned by Juan Salicrup), Heleni Salicrup (Juan Salicrup's ex-wife who was never employed by Vision),

and Does I–X in Nevada state court.[2]

Given its failure to offer any facts to meet any of the four criteria identified above, Vision's motion must fail. Vision seeks to shift the burden to the Class to prove that Vision will misuse this information, but the law remains that it is Vision's burden as the movant here, which burden it has failed to meet. The Class has simply provided yet an additional reason why this information should not be provided to Vision, and Vision's refusal to agree to reasonable protections is further proof of its ill intent. The Class respectfully requests that Vision's motion to compel production of the names of the opt-outs be denied.[3]

**B.    The Class Is Not Required To Provide An Individualized Damages Analysis, But In Any Event Could Only Do So If Vision Complies With Its Discovery Obligations.**

Vision is well aware of the amount of hazard pay it owes each individual Class member, as that information is contained in the records Vision has failed to produce to the Class.[4] There are no "cloak and dagger" tactics by the Class here. Indeed, Vision has attached to its Motion the Affidavit of Barry Mukamal, the Class' damages expert, which begins to calculate those damages based on the very limited information produced by Vision as of the date of its completion. Mtn. Ex. B. The fact that Vision attached that analysis to its Motion puts the lie to its assertion that the Class intends to "appear at the courthouse with mystery documents and testimony which Defendant is to have had no time to examine, verify or validate." Mtn. at 6. Of course, after originally agreeing to extend the due date for that analysis based on its failure to

---

[2] The court dismissed the cases against Heleni Salicrup and Salko, finding that it has no jurisdiction over them. *See* Mtn. Ex. 3 at 7-8.

[3] For the reasons set forth above, and based on the cases set out there, should the Court decide to allow Vision to have the names of the four absent class members who opted out of the class, it should be done only with significant protections in place, including those suggested to Vision by the Class.

[4] Again Vision attempts to shift the burden onto the Class, arguing that Hester should personally know the amount of hazard pay that he and each Class member is owed. Mtn. at 6. Hester testified that, "I'm uncertain as to how much I am individually owed," because, "[t]he amount of the hazard pay that Vision collected was not disclosed to us employees." *See* D.E. 126, Ex. 21 at 132.

produce adequate discovery, Vision turned and opposed any such extension, *see* D.E. 111, just as Vision originally agreed to produce documents responsive to the Class' requests and then changed its position and refused to do so. *See* n.1 *supra.* The Class wholeheartedly agrees that trial by ambush is not allowed, *see* Mtn. at 6, and will vigorously object if Vision tries to introduce into evidence any of the volumes of documents that it has failed to produce to the Class.

In response to repeated demands from the Class for discovery, *see supra* at 1-2 and n.1, Vision has produced only piecemeal and limited information which, along with materials obtained from McNeil Technologies through a subpoena served, and vigorously litigated, in the Eastern District of Virginia, has enabled the Class' expert to complete another portion of his analysis. *See* Supplemental Affidavit of Barry E. Mukamal, CPA (Ex. N). Despite Vision's obstruction, the Class can now prove damages in excess of $5.1 million including pre-judgment interest. *See id.* at 7. As the Class's expert noted, however, he cannot complete his expert report until Vision produces all of the documents it agreed to produce to the Class in their non-redacted format. *See* D.E. 106, Ex. 1 (attached as Ex. O). Of course, had Vision produced the documents it had agreed to, the whole analysis could have been completed, and well before today. Because Vision still refuses to do so, the Class continues to reserve the right to supplement this analysis once it receives the discovery that is the subject of its pending Renewed Motion to Compel [D.E. 93]. Once again, Vision has caused this delay and now complains that it has not received this information. This is the epitome of bad faith litigation tactics.

Vision seeks to compel the Class to determine the individual damages for each class member at this time. The Class is not required to do so to support its case. *See Boeing Co. v. van Gemert,* 444 U.S. 472, 479-80 (1980):

> On the other hand, the criteria are satisfied when each member of a certified class has an undisputed and mathematically ascertainable claim to a part of a lump-sum judgment recovered on his behalf. Once the class representatives have established

> the defendant's liability and the total amount of damages, members of the class can obtain their share of the recovery simply by proving their individual claims against the judgment fund. . . . Although the full value of the benefit to each absentee class member cannot be determined until he presents his claim . . .

See also *Price v. Seattle*, 2006 WL 2691402, at *3 (W.D. Wash Sep. 19, 2006) (approving of aggregate damages calculation with claims process in part); NEWBURG ON CLASS ACTIONS § 4:26 (noting the use of classwide or aggregate damages under unjust enrichment or restitution theories followed by the allocation of those damages to individual members of the class); § 10:5 ("Aggregate computation of class monetary relief is lawful and proper."). The Class has alleged that Vision is not entitled to any of the hazard pay that it collected for the benefit of any of its Air Bridge Program employees and that Vision must disgorge that entire amount. *See In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 326, 352 (E.D. Mich. 2001). To demonstrate that disgorgement of the total amount of hazard pay is appropriate, the Class is only required to prove the aggregate amount of hazard pay that Vision wrongfully retained. *See van Gemert*, 444 U.S. at 479-80; *Price*, 2006 WL 2691402, at *3. *See also In re Cardizem*, 200 F.R.D. at 352 (holding that it would be inequitable for the defendant to retain any of the funds collected on behalf of the class under a theory of unjust enrichment, and that a "claim for unjust enrichment and disgorgement is undivided and integrated"). Thus, as courts have held in certifying class action claims under theories of unjust enrichment, "the possible recovery of this claim is all or nothing," "regardless of the actual damages provided by each plaintiff and regardless of the number of plaintiffs in the purported class." *In re Cardizem*, 200 F.R.D. at 352

Accordingly, once the Class establishes Vision's liability and the total amount of damages, Class members can, among other ways, obtain their share of the recovery by establishing their individual claims against the judgment fund. *See van Gemert,* 444 U.S. at 479. One possible way to derive the damage to each Class member is by dividing the amount of hazard pay Vision collected by the total number of flight hours flown by Air Bridge Program

employees from the various cities Vision operated from to Baghdad and Kabul and then multiply that figure by the total number of flight hours that each Class member worked onboard flights flying to and from various cities to Baghdad and Kabul. To claim their logically ascertainable shares of the judgment fund, absentee Class members could, among other ways, submit proof of claim forms through a claims administration process approved and supervised by the Court. That stage of this case has not yet been reached, and thus no individualized damages analysis is required. Further, once Vision disgorges the hazardous duty funds that it improperly retained, it will likely have no legally cognizable interest in how those funds are divided. *See van Gemert,* 444 U.S. 472 at 480 n. 5 (noting that judgment in a sum certain against defendant terminates the litigation between defendant and the class on liability); *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F. 2d 1301, 1307 (9th Cir. 1990) ("Where the only question is how to distribute the damages, the interests affected are not the defendant's but rather those of the silent class members."); NEWBURG ON CLASS ACTIONS § 4:26 ("Once the defendant's total damages liability has been determined, then the allocation of that aggregate sum among class members is an internal class action accounting question that does not directly concern the defendant, who in turn is not entitled to demand a jury trial for such allocation process."). Instead, it will be up to the Court and the claims process that it establishes to determine those individual claims.

## CONCLUSION

For the reasons set forth above, the Class respectfully requests that Vision's Motion to Compel be denied.

Respectfully submitted,

KOZYAK TROPIN & THROCKMORTON, P.A.
2525 Ponce de Leon, 9th Floor
Coral Gables, Florida 33134
Telephone: (305) 372-1800
Fax: (305) 372-3508

GOODMAN LAW GROUP
520 South Fourth Street
Las Vegas, Nevada 89101
(702) 383-5088
(702) 385-5088 (Facsimile)

By: /s/ David M. Buckner
David M. Buckner
Florida Bar No. 60550
Brett E. von Borke
Florida Bar. No. 0044802

COUNSEL FOR PLAINTIFF AND THE CLASS

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true copy of the foregoing has been served via the Court's CM/ECF system on July 19, 2010 on Harold P. Gewerter, Esq., 2705 Airport Drive, North Las Vegas, Nevada 89032.

By: /s/ David M. Buckner
David M. Buckner

314906.1