**Ross C. Goodman, Esq., Nevada State Bar No. 7722**
**GOODMAN LAW GROUP**
520 South Fourth Street
Las Vegas, Nevada 89101
(702) 383-5088
(702) 385-5088 (Facsimile)

**Kenneth R. Hartmann, Esq., Florida State Bar No. 664286**
**Brett E. von Borke, Esq., Florida State Bar No. 44802**
**KOZYAK TROPIN & THROCKMORTON, PA**
2525 Ponce de Leon, 9th Floor
Miami, Florida 33134
(305) 372-1800
(305) 372-3508 (Facsimile)

**David M. Buckner, Esq. Florida State Bar No. 60550**
**GROSSMAN ROTH, P.A.**
2525 Ponce de Leon, 11th Floor
Coral Gables, Florida 33134
Telephone: (305) 442-8666
Fax: (305) 285-1668

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

GERALD HESTER, on behalf of himself and all others similarly situated,

Plaintiff,

v.

VISION AIRLINES, INC.,

Defendant.

Case No.: 2:09-CV-00117-RLH-RJJ

**GERALD HESTER'S REPLY IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT ON VISION AIRLINES, INC.'S AMENDED COUNTERCLAIMS**

Vision Airlines, Inc.'s ("Vision") Response to Gerald Hester's ("Hester") Motion for Summary Judgment on Vision's Amended Counterclaims ("Response") conclusively demonstrates the bad-faith and frivolous nature of Vision's allegations against Hester. Vision brought its Amended Counterclaims knowing that its allegations had no basis in fact and has repeatedly attempted to use its Amended Counterclaims to intimidate Hester into dismissing his lawsuit against Vision and to deter any third-parties from assisting the Class in the prosecution of

its claim to recover hazard pay. Now, after more than a year of discovery which it has done its very best to stymie, Vision offers no evidence to substantiate any of the allegations in its Amended Counterclaims other than that Hester signed certain agreements with the United States government and, separately, with Vision. This, of course, is only the beginning of a claim, not its end, but that is exactly where Vision drops its cause. In fact, Vision's Response simply quotes the allegations from its Amended Counterclaims without citation to any record evidence to support its allegations, and on that basis alone it must lose on summary judgment. Predictably, Vision does not cite to any evidence supporting its baseless allegations that the information disclosed in the Complaint or the Las Vegas Sun Article is actually confidential or classified, that Hester was the anonymous source quoted in the Las Vegas Sun Article, or that Hester was the source for the allegedly classified or confidential information contained in the Complaint. Of course, Vision can offer no evidence because none exists – a fact which Vision's designated 30(b)(6) witness acknowledged during his deposition. Accordingly, the Court should grant Hester's Motion for Summary Judgment on Vision's Amended Counterclaims ("Motion").

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088

## I. ARGUMENT

Hester is entitled to summary judgment on Vision's Amended Counterclaims because Vision failed to carry its burden and designate any evidence showing that there is a genuine factual issue for trial or to rebut any of Hester's well-founded evidence which conclusively demonstrates that Hester is entitled to summary judgment as a matter of law. Specifically, Vision failed to offer any evidence to demonstrate that the information contained in the Complaint or the Las Vegas Sun Article was confidential or classified, that Hester was the anonymous source quoted in the Las Vegas Sun Article, or that Hester was the source for any of any of the allegedly classified or confidential information contained within the Complaint. The only legal arguments Vision raises in its Response is that it is a third-party beneficiary under the

United States government's Classified Information Nondisclosure Agreement and that Hester's at-will employment relationship constituted a valid employment contract. Even assuming that Vision was correct on these legal arguments, which it is not, Hester's Motion must still be granted because Vision failed to offer any evidence to substantiate any of the allegations in the Amended Counterclaims or to rebut any of Hester's well-founded evidence.

### A. <u>HESTER IS ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW BECAUSE VISION FAILED TO CARRY ITS BURDEN AND IDENTIFY ANY FACTS IN DISPUTE</u>

Hester is entitled to summary judgment as a matter of law because Vision failed to carry its burden and identify any material facts in dispute. Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The nonmoving party bears the burden to establish, beyond the pleadings, that there is a genuine issue for trial. *Id.* at 324. Fed. R. Civ. P. 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* "[T]here can be 'no genuine issue as to any material fact,' [where there is] a complete failure of proof concerning an essential element of the nonmoving party's case [which] necessarily renders all other facts immaterial." *Id.* at 323. That is precisely the case here.

Furthermore, conclusory allegations unsupported by evidence are not sufficient to defeat a properly supported motion for summary judgment. *Hansen v. United States,* 7 F.3d 137, 138 (9th Cir. 1993) (*per curiam*). The nonmoving party may not simply rely on its pleadings in opposing a motion, nor can the nonmoving party create issues of fact simply by making

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088

argumentative assertions in its legal memoranda. *S.A. Empresa, Etc. v. Walter Kidde & Co.*, 690 F.2d 1235, 1238 (9th Cir. 1982). "To successfully rebut a properly supported motion for summary judgment, the nonmoving party 'must point to some facts in the record that demonstrate a genuine issue of material fact and, with all reasonable inferences made in the [nonmoving party's] favor, could convince a reasonable jury to find for the [nonmoving party] applying a preponderance of the evidence standard." *Estate of Garcia-Vasquez v. County of San Diego*, 2008 WL 418913, at *3 (S.D. Cal. Sep. 9, 2008) (quoting *Reese v. Jefferson School Dist. No. 14j,* 208 F. 3d 736, 738 (9th Cir. 2000)). The nonmoving party seeking to establish a genuine issue of material fact must specifically identify evidence precluding summary judgment, because the court is "not required to comb the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified School Dist.,* 237 F.3d 1026, 1029 (9th Cir. 2001) (quoting *Forsberg v. Pac. N.W. Bell Tel. Co.,* 840 F.2d 1409, 1418 (9th Cir. 1988)); *see also United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs."). The moving party, therefore, is entitled to judgment as a matter of law if the nonmoving party fails to identify evidence in the record that precludes summary judgment. *Celotex,* 477 U.S. at 323.

For example, the Ninth Circuit Court of Appeals in *Pacific Northwest Venison Producers v. Smith*, 20 F.3d 1008, 1010, 1013 (9th Cir. 1994), upheld the district court's entry of summary judgment in favor of the defendant because the plaintiffs failed to offer any evidence to demonstrate that there was a material fact in dispute. There, the plaintiffs challenged certain statutes pertaining to the regulation of certain animals on the basis that it violated the United States Constitution's Commerce Clause. *Id.* at 1011. The Ninth Circuit Court of Appeals upheld the district court's entry of summary judgment in favor of the defendant because the plaintiffs' argument that the defendant was motivated not by a desire to protect wildlife but instead by an

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088

antipathy toward game farming was not supported by any direct evidence in the record. *Id.* at 1013. Thus, without any evidentiary support for this material fact, the defendant was entitled to summary judgment as a matter of law. *Id.; see also Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst v. Louisiana Hydrolec*, 854 F.2d 1538, 1545 (9th Cir. 1988) (holding that nonmoving party may not rely on its pleadings to defeat an appropriately supported motion for summary judgment where those pleadings are not supported by any record evidence).

Similarly, Hester is entitled to summary judgment as a matter of law because Vision failed to identify a single material fact in dispute, which Vision was required to do to preclude Hester's Motion. Rather, Vision demonstrated only that Hester executed a Classified Information Nondisclosure Agreement with the United States government, which contained certain provisions that Vision quoted in its Response, and a Non-Compete and Non-Disclosure Agreement with Vision. However, Vision failed to identify or cite to any evidence that supports its allegations that Hester breached those agreements, and specifically failed to adduce any evidence that supports its argument that the information contained in the Complaint or the Las Vegas Sun Article is confidential or classified or that Hester was the source who disclosed that information. Instead, Vision simply quotes its Amended Counterclaims in their entirety without any citation to record evidence in support of those allegations. Vision's reliance on its unsupported pleadings is not sufficient to create disputed issues of material fact. *See Nilsson,* 854 F.2d at 1545; *S.A. Empresa,* 690 F.2d at 1238. Without any evidentiary support for its Amended Counterclaims, Vision's claims cannot survive the Motion, and Hester is entitled to summary judgment as a matter of law. *Smith*, 20 F.3d at 1013.

*i. Vision failed to cite to any evidence that establishes that the information contained in the Complaint or disclosed by the anonymous source in the Las Vegas Sun Article is actually classified or confidential.*

As counter-claimant, Vision bears the burden at trial of establishing that the information

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088

contained in the Complaint or disclosed by the anonymous source in the Las Vegas Sun Article is actually confidential or classified. *See Celotex*, 477 U.S. at 324. Vision failed to cite to any evidence that establishes that this information is actually classified or confidential, and instead relies entirely on its unsupported and conclusory allegations in its Amended Counterclaims. However, Vision's reliance on the unsupported allegations in its pleadings fails to create a material fact in dispute that would defeat Hester's properly supported Motion. *See Nilsson,* 854 F.2d at 1545; *S.A. Empresa,* 690 F.2d at 1238. Hester is entitled to judgment as a matter of law because Vision failed to identify any evidence in the record in support of its argument that the disclosed information is confidential or classified. *See Celotex,* 477 U.S. at 323.

Vision's failure to cite to any evidentiary support for its claim is not surprising, because none of the information contained in the Las Vegas Sun Article or the Complaint is either classified or confidential – a fact of which Vision is well aware. The Closeout Certification of the Air Bridge Program Contract for Phases I-III states that no "[c]lassified material . . . was . . . furnished by Contractor or developed by Subcontractor under this document." (Capital Aviation Closeout Certificate, attached as Ex. 1, at CAI 25530.) Thus, Hester did not possess any classified information for Phases I-III, because none was provided to him and none was developed under the Air Bridge Program Contract. As for Phase IV, Brian Dagget ("Dagget"), Vision's Air Bridge Program Manger, testified that Vision was not in possession of any classified information during that phase and that Vision did not even have any procedures in place to handle or store classified material. (Deposition of Brian Dagget, attached as Ex. 2, at 9, 119.) Vision, therefore, could not have provided Hester with any classified information during any time period during the Air Bridge Program.[1]

[1] Vision argues that the Class's Complaint disclosed Vision's classified flight procedures. However, the Complaint never stated that Vision aircraft use any particular procedures, but instead states that "aircraft arriving and departing" the war zone do so. [D.E. 1 at ¶ 11.] Thus, if Vision's use of these procedures has been disclosed, it has



GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088

Moreover, Vision's claim that this information is confidential or classified ignores the fact that this information has been disclosed by the United States government and through numerous media outlets prior to the commencement of this lawsuit. As noted in Hester's Motion, "[i]nformation related to the national defense typically cannot qualify as such if it is in the public domain; it must be closely held by the government." *See United States v. Rosen*, 445 F. Supp. 2d 602, 620 (E.D. Va. 2006). Furthermore, information is not classified where it "has been so widely circulated and is so generally believed to be true, that confirmation by one in a position to know would add nothing to its weight." *Alfred A. Knopf, Inc. v. Colby*, 509 F.2d 1362, 1370-71 (4th Cir. 1975). Prior to this lawsuit, then-Senator Hillary Clinton stated in an interview with Fox News that "[w]hen you fly into a war zone like Baghdad, and I've done it numerous times now, there and elsewhere, you know, the C-130 does a kind of *corkscrew landing* . . . ." (Senator Hillary Clinton's Fox News Interview dated January 19, 2007, attached as Ex. 3, at 1) (emphasis added.) (*See also* Brig. Gen. Steven Hawkins and Col. Gordon Wells September 2005 article in Army Magazine entitled *Nation Building in Mesopotamia*, Ex. 4, at 22) ("After a three-hour flight, the pilots, wearing night vision goggles and flying in *total blackout conditions, guided their aircraft into a corkscrew descent* and safely delivered my team at 2:30 in the morning on April 13, at [Baghdad International Airport].") (emphasis added); (*A Hair-Raising Flight into Baghdad* by Slobadon Lekic, Ex. 5, at 1) ("To lessen the threat of being shot at, pilots have adopted a 'non-standard' approach for landing [at Baghdad International Airport]: They arrive at 15,000 feet and then descend sharply in a stomach-churning *series of tight, spiraling turns* that pin passengers deep in their seats.") (emphasis added). Thus, the information contained in the Complaint or the Las Vegas Sun Article is not classified because it

---

been disclosed by Vision, which has repeated this allegation in numerous pleadings filed as a matter of public record in this litigation.

has been released into the public domain by a Senator of the United States, a United States Army Brigadier General and Colonel, and by countless newspaper reports. *See Heine*, 151 F.2d at 817. Most importantly, Vision has offered absolutely no proof that this information is classified.

Furthermore, Vision knows that much of the information it now claims is classified or confidential is neither because it has itself disclosed all of that information in public filings in its litigation against Computer Sciences Corporation ("CSC") and Capital Aviation, Inc. ("Capital Aviation") in Fairfax County, Virginia. Specifically, as detailed in Hester's Motion, Vision disclosed the following in its Bill of Particulars in that litigation: (1) that it was a subcontractor for the United States government; (2) that it operated "sensitive air transportation services" on behalf of the United States government from Frankfurt, Germany, and Washington, D.C., to Kabul and Baghdad; (3) that it contracted with Capital Aviation, CSC, and McNeil Technologies, Inc. ("McNeil"); and (4) the financial terms of its agreements with Capital Aviation and CSC. (Vision's Fairfax County, Virginia Bill of Particulars, Ex. 6, at 1-5.) Vision failed to offer any evidence that this information is confidential or classified because it knows that there is no basis for such a claim. Hester, therefore, is entitled to summary judgment as a matter of law because Vision failed to identify any evidence to support the allegations in the Amended Counterclaims or dispute Hester's well-founded facts that none of the allegedly disclosed information is actually classified or confidential. *Celotex,* 477 U.S. at 323; *see also Reese,* 208 F. 3d at 738; *Estate of Garcia-Vasquez*, 2008 WL 418913, at *3.

*ii. Vision failed to cite to any evidence that Hester is the anonymous source quoted in the Las Vegas Sun Article or that Hester is the source for the allegedly confidential information contained within the Complaint.*

Vision also bears the burden at trial of establishing that Hester was the anonymous source quoted in the Las Vegas Sun Article or that Hester was the source for the allegedly classified or confidential information contained within the Complaint. *See Celotex*, 477 U.S. at 324. Vision

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088

failed to cite to any evidence that establishes that Hester was the source for either and again relies entirely on the unsupported and conclusory allegations in its Amended Counterclaims. However, Vision's reliance on the unsupported allegations in its pleadings fails to create a material fact in dispute that could defeat Hester's properly supported Motion. *See Nilsson,* 854 F.2d at 1545; *S.A. Empresa,* 690 F.2d at 1238. Accordingly, on this basis alone, Hester is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 323.

Furthermore, Vision "must point to some facts in the record that demonstrate a genuine issue of material fact and, with all reasonable inferences made in the [nonmoving party's] favor, could convince a reasonable jury to find for the [nonmoving party]." *Estate of Garcia-Vasquez*, 2008 WL 418913, at *3 (quoting *Reese,* 208 F. 3d at 738). Vision failed to offer any evidence that rebuts or disputes Hester's testimony that he "has never spoken with any reporter from the Las Vegas Sun or any other newspaper" regarding "Vision Airlines." (Deposition of Gerald Hester, Ex. 7, at 209-10.) Furthermore, Hester testified that he did not know who had spoken to the press or the identity of the Las Vegas Sun's anonymous source. (*Id.* at 210.) In fact, Dagget, one of Vision's 30(b)(6) representatives, testified that Vision had no evidence to support Vision's allegation that Hester was the anonymous source quoted in the Las Vegas Sun Article. (Dagget Dep., Ex. 2, at 155-56.) Vision also failed to rebut Hester's testimony that he provided his attorneys only with the information contained within paragraph 2 of the Complaint, which contained only his personal information. (Hester Dep., Ex. 7, at 181.) Hester, therefore, is entitled to summary judgment as a matter of law because Vision failed to identify any evidence to support the allegations of its Amended Counterclaims or to dispute Hester's well-founded evidence that demonstrates that he was not the source for either the Las Vegas Sun Article or the allegedly confidential or classified information contained within the Complaint. *Celotex,* 477 U.S. at 323; *see also Reese,* 208 F. 3d at 738; *Estate of Garcia-Vasquez*, 2008 WL 418913, at

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088

*3.[2]

**B. WHETHER VISION IS A THIRD-PARTY BENEFICIARY UNDER THE CLASSIFIED INFORMATION NONDISCLOSURE AGREEMENT OR IF THERE IS AN EMPLOYMENT CONTRACT BETWEEN HESTER AND VISION ARE IMMATERIAL AND HESTER IS ENTITLED TO SUMMARY JUDGMENT**

Hester is entitled to summary judgment as a matter of law regardless of whether Vision is a third-party beneficiary under the Classified Information Nondisclosure Agreement or whether there is an employment contract between Hester and Vision, because those facts are immaterial. Vision bears the burden of establishing, beyond the pleadings, that there is a genuine issue for trial. *Celotex,* 477 U.S. at 324. However, "there can be 'no genuine issue as to any material fact,' [where there is] a complete failure of proof concerning an essential element of the nonmoving party's case [which] necessarily renders all other facts immaterial." *Id.* at 323. Vision has failed to offer any evidence in support of its material allegations. Vision's failure to cite to any evidence in support of its material allegations renders Vision's third-party status under the Classified Information Nondisclosure Agreement or Vision's employment relationship with Hester immaterial. *See id.* That said, Vision's argument that it is a third-party beneficiary under the Classified Information Nondisclosure Agreement and that there was an employment contract between Hester and Vision are also wrong as a matter of law.

*i. Vision is not a third-party beneficiary under the Classified Information Nondisclosure Agreement.*

Vision is not a third-party beneficiary under the Classified Information Nondisclosure Agreement. "A person who is not a party to a contract . . . cannot sue to enforce the contract." *Am. Monument Found., LLC, v. Fairbrother*, 2006 WL 3063473, at *8 (D. Nev. Oct. 24, 2006); *see also Wyatt v. Bowers*, 747 P.2d 881, 882 (Nev. 1987) (holding that individuals not parties to

[2] Other than the fact that the Las Vegas Sun Article was published, Vision's 30(b)(6) representative testified that he had no additional evidence to substantiate any of the allegations contained in paragraphs 10-18 of Vision's



GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088

or recipients of a particular promise cannot sue to enforce breach of that covenant); *Olson v. Iacometti*, 533 P.2d 1360, 1364 (Nev. 1975) ("Before a stranger can avail himself of the exceptional privilege of suing for a breach of an agreement, to which he is not a party, he must, at least, show that it was intended for his direct benefit."). Here, the Classified Information Nondisclosure Agreement executed by Hester states that it is "AN AGREEMENT BETWEEN Gerald George Hester AND THE UNITED STATES." (Classified Information Nondisclosure Agreement, attached as Ex. 8, at 1) (emphasis in original). The plain language of the Classified Information Nondisclosure Agreement makes clear that Vision is not a party to it. Therefore, Vision lacks standing to sue Hester for any alleged breach of it. *See Wyatt*, 747 P.2d at 882; *Olson*, 533 P.2d at 1364.[3]

Furthermore, in order to be a third-party beneficiary of a contract, "there must clearly appear a promissory intent to benefit the third party," *Olson v. Iacometti,* 533 P.2d 1360 (1975), and it must ultimately be demonstrated that the third-party's reliance thereon was foreseeable. *Lear v. Bishop*, 476 P.2d 18 (1970). "Whether an individual is an intended third-party beneficiary, however, depends on the parties' intent gleaned from reading the contract as a whole in light of the circumstances under which it was entered." *Canfora v. Coast Hotels and Casinos, Inc.,* 121 P.3d 599, 604-05 (Nev. 2005) (internal quotations omitted).

Here, there was no intent to benefit Vision based on the plain language of the Classified Information Nondisclosure Agreement. Specifically, that agreement states that it is only between

Amended Counterclaims. (Dagget Dep., Ex. 2, at 127-28, 139-40, 154-157.)

[3] Counsel for Hester and the Class was unable to locate a single case where a party, other than the United States government, sued an individual or entity for breach of the Classified Information Nondisclosure Agreement. Of course, this follows logically because only the United States government has an ownership interest in its classified information, only designated employees of the United States government can actually classify a piece of information, and the United States government has its own procedures for protecting its classified information including the penalties for breach of the Classified Information Nondisclosure Agreement set forth in Title 18 of the United States Criminal Code.

Hester and the United States government. (Classified Information Nondisclosure Agreement, Ex. 8, at 1.) The Classified Information Nondisclosure Agreement never references the interests of any third-party, not even in its title, but instead focuses exclusively on the relationship between Hester and the United States government. (*See id.*) In fact, on the signature line where McNeil executed the agreement it states, "[t]he undersigned accepted this agreement on behalf of the United States government." (*Id.* at 2.) The Classified Information Nondisclosure Agreement does not provide for any civil remedies for its breach, making clear that the United States government did not intend to benefit any third-parties. Therefore, there was no promissory intent to benefit Vision as a third-party beneficiary of the Classified Information Nondisclosure Agreement.

Second, Vision is not a foreseeable beneficiary of the Classified Information Nondisclosure Agreement. The Classified Information Nondisclosure Agreement was a contract entered into between the United States government and Hester. Here, McNeil executed the Classified Information Nondisclosure Agreement on behalf of the United States government and thus, it was not foreseeable that Vision, a company that was not a party to the that agreement, was not identified in the terms of that agreement, and did not even execute that agreement on behalf of the United States government, would be a foreseeable beneficiary of that agreement.[4]

*ii. There is no employment contract between Hester and Vision.*

There is no employment contract between Hester and Vision. Vision cites to Hester's employment at-will relationship and the Vision 767 Memorandum for its argument that Hester

[4] In addition, Vision finds no legal support for its argument that it is an intended third-party beneficiary of the Classified Information Nondisclosure Agreement. Vision cites no case law to support the proposition that it is a third-party beneficiary of the Classified Information Nondisclosure Agreement. [D.E. 142 at 4.] Rather, the sole case Vision cites *County of Santa Clara v. Astra USA, Inc.*, 540 F.3d 1094 (9th Cir. 2008) was withdrawn and superseded by *County of Santa Clara v. Astra USA, Inc.*, 588 F.3d 1237 (9th Cir. 2009). However, *Astra USA* did not involve a Classified Information Nondisclosure Agreement, but rather stands for the general proposition that a party can be a third-party beneficiary of a contract. 588 F.3d at 1244. Hester does not dispute the legal principle that in certain instances a party can be a third-party beneficiary of a contract, but rather disputes that a private subcontractor can be a third-party beneficiary of a Classified Information Nondisclosure Agreement with the United

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088

breached his employment contract with Vision. [D.E. 142 at 10-11.] However, neither Hester's at-will employment relationship nor the Vision 767 Memorandum contains any non-disclosure provisions, even assuming, *arguendo*, one of them were in fact an employment contract. Accordingly, Hester could not have breached any employment contract because none of the purported contracts contain any non-disclosure provisions. Regardless, Hester's employment at Vision was never governed by an employment contract.

a. <u>Hester's at-will employment status does not constitute an express or implied contractual relationship under which Vision could sue Hester for breach of contract.</u>

Hester's at-will employment status does not constitute an express or implied contractual relationship under which Vision could sue Hester for breach of contract. The Nevada Supreme Court held that an at-will employment relationship fails to create an express or implied contractual relationship between the parties. *Bally's Grand Employees Fed. Credit Union v. Wallen*, 779 P.2d 956, 957 (Nev. 1989). In *Bally's Grand Employees Federal Credit Union v. Wallen* 779 P.2d 956, 957 (Nev. 1989), the court held that the plaintiff could only recover on her contract-based employment claims if she was "other than an at-will employee; *i.e.,* it was required to find that [defendant] employed [plaintiff] under either an express or an implied contract . . . ." *See also Ozawa v. Vision Airlines, Inc.*, 216 P.3d 788, 791 (Nev. 2009) ("Since employees in Nevada are presumed to be at-will, an employer can dismiss an employee with or without cause . . . ."); *Am. Bank Stationary v. Farmer*, 799 P.2d 1100, 1101-02 (Nev. 1990) ("We note that all employees in Nevada are presumed to be at-will employees. An employee may rebut this presumption by proving by a preponderance of the evidence that there was an express or implied contract between his employer and himself . . . ."); *S.W. Gas Corp. v. Vargas*, 901 P.2d 693, 697 (Nev. 1995) (same). As such, "at-will employees have no contractual rights

---

States government.



GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088

arising from the employment relationship that limit the employer's ability to prospectively hire and fire employees, and to change the terms of employment." *Baldonado v. Wynn Las Vegas, LLC*, 194 P.3d 96, 106 (Nev. 2008). Accordingly, Nevada courts recognize that employment at-will is separate and distinct from employment pursuant to either an express or implied employment contract and that there is no express or implied contractual relationship that exists between an employer and employee based on the at-will employment relationship. *See id.*

Any other determination would contravene the entire purpose of at-will employment, which is to allow employers to hire employees without entering into an "express written" employment contract. *State v. Eighth Judicial Dist. Court ex. rel. County of Clark*, 42 P.3d 233, 240 (Nev. 2002) ("It is well settled in Nevada that generally an at-will employee can be terminated 'whenever and for whatever cause' without giving rise to liability on the part of the employer.") (internal quotations omitted). The mere fact that the at-will employment relationship may be governed by contract principles does not convert at-will employment into employment based on an "express written agreement." *See Reeves v. Alyeska Pipeline Service Co.,* 926 P.2d 1130 (AK 1996) (holding that "quasi-contracts are judicially created obligations to do justice . . . the obligation to make restitution that arises in quasi-contract is not based upon any agreement between the parties, objective or subjective." )[5]

Vision's representatives testified that Hester was an at-will employee (Deposition of James Maguire, attached as Ex. 9, at 73), Vision's Employee Handbook states that Hester's

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088

[5] The only case that Vision cites in support of its claim that employment at-will is equivalent to an employment contract is *Vancheri v. GNLV Corp.*, 105 Nev. 417, 420 (Nev. 1989). This case, however, only illustrates Hester's argument that employment at-will does not create an express or implied contractual relationship between the parties. There, a former employee brought suit against his former employer alleging wrongful termination. *Id.* at 419. The court held that the former employee failed to rebut the at-will employment relationship and establish the existence of either an express or implied contract between the former employer and the former employee. *Id.* at 421-22. Therefore, the employee's contract based employment claims were denied because he was an at-will employee. *Id.* Thus, the sole case Vision cites in support of its argument actually supports Hester's position and demonstrates that employment at-will cannot form the basis for a breach of contract claim. *See id.*

employment at Vision was at-will (Vision's Employee Handbook, attached as Ex. 10, at Section 2 at 2), and Hester testified that his employment at Vision was at-will and that he never entered into any employment contract with Vision (Hester Dep., Ex. 7, at 12-13). As such, the at-will employment relationship between Vision and Hester fails to constitute an employment contract under which Vision may sue, and does not create an express or implied contract that Hester could breach. *See Wallen*, 779 P.2d at 957.

b. There is no express contract between Hester and Vision that supports Vision's breach of contract claim against Hester.

There is no express contract between Hester and Vision that supports Vision's breach of contract claim against Hester. Vision's argument that the Vision 767 Memorandum is an employment contract fails on numerous grounds. First, "[b]asic contract principles require, for an enforceable contract, an offer and acceptance, meeting of the minds, and consideration." *May v. Anderson,* 119 P.3d 1254, 1257 (Nev. 2005). The Vision 767 Memorandum does not constitute an employment contract because there was no offer and acceptance or meeting of the minds. Vision failed to make any contractual offer to Hester, and as such, Hester could never accept any offer made by Vision. The Vision 767 Memorandum is dated October 15, 2007, but states that the policy revisions set forth in that communication took effect October 1, 2007. (*See* Vision 767 Memorandum, attached as Ex. 11, at 1.) Thus, Vision unilaterally, and without the consent of Hester, made certain changes to its internal policies and notified Hester only after those changes took effect. (*See id.*) As Hester testified, the Vision 767 Memorandum merely informed him that this was the "rate structure that was unilaterally imposed by Vision Airlines," which Vision did not notify Hester about until November 9, 2007. (Hester Dep., Ex. 7, at 114.) Hester, therefore, could not accept or reject Vision's policy revisions, and there could be no meeting of the minds. *See Baldonado*, 194 P.3d at 105-06 (holding that memorandum revising employment policies was not an employment contract).

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088

Furthermore, James Maguire ("Maguire"), Vision's former Director of Flight Operations and the author of the Vision 767 Memorandum, testified that no lawyer reviewed the Vision 767 Memorandum prior to providing it to Hester (Maguire Dep., Ex. 9, at 78-79), that he did not negotiate the terms of the Vision 767 Memorandum with Hester (*id.* at 80-81), and that there was no place on the Vision 767 Memorandum for Vision to sign and accept (*id.* at 84-85). Maguire also testified that Hester was at-will, even after the Vision 767 Memorandum was provided by Vision to him. Accordingly, Hester is entitled to summary judgment on Vision's argument that he breached the Vision 767 Memorandum, because the Vision 767 Memorandum is not a contract.

c. The Vision 767 Memorandum is a communication and not a contract because it does not imply any obligations on behalf of Vision or Hester.

The Vision 767 Memorandum is a communication and not a contract, because it does not imply any obligations on behalf of Vision or Hester. A communication does not constitute a contract where it does not imply obligations on behalf of the parties. *See United Services Auto Ass'n. v. Shlang,* 894 P.2d 967, 971-72 (Nev. 1995). For example, in *Barelli v. Barelli*, 944 P.2d 246, 250 (Nev. 1997), the Nevada Supreme Court determined that a letter which stated that plaintiff is "currently and will continue on into the future as a salaried employee of this company at the same rate of pay and position" failed to constitute an employment contract because it did not impose any obligations on the plaintiff. Similarly, the Vision 767 Memorandum fails to constitute a contract because it does not impose any obligations on either Vision or Hester. *See id.* While the Vision 767 Memorandum outlines changes to certain policies, it does not impose any obligation on Vision to honor those policies nor does it preclude Vision from altering those policies at any time, at its discretion in the future. (Vision 767 Memorandum, Ex. 11, at 2.) To the contrary, it merely explains the policies in effect as of October 1, 2007 and for an undetermined time thereafter. Furthermore, the Vision 767 Memorandum did not impose any

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088

obligations on Hester, as he was not required to continue working for Vision nor was Vision required to employ him for a definite period of time. Therefore, like the letter in *Barelli*, the Vision 767 Memorandum fails to impose any obligations on the parties, and is not a contract that Hester could breach or under which Vision could sue Hester for breach of contract. 944 P.2d at 250; *see also Shlang*, 894 P.2d at 971-72 (holding that a letter failed to constitute a contract because it did not impose any obligations on the parties even though the letter identified the items to be purchased, quantities, and price).

d. Hester's at-will employment status precludes any contractual rights from arising between Vision and Hester based on the Vision 767 Memorandum.

Hester's at-will employment status precludes any contractual rights from arising between Vision and Hester based on the Vision 767 Memorandum. An employment relationship in Nevada is either at-will or governed by an employment contract. *See Ringle*, 86 P.3d at 1037. However, "at-will employees have no contractual rights arising from the employment relationship that limit the employer's ability to prospectively hire and fire employees, and to change the terms of employment." *Baldonado*, 194 P.3d at 106. Thus, the Nevada Supreme Court endorsed the district court's holding in *Baldonado* that a group of employees' "at-will . . . status precluded any challenge to the employment policy on breach of contract grounds." *Id.* at 98, 105 n.39.

In *Baldonado*, table dealers at the Wynn Las Vegas sued the casino for breach of contract based on a memorandum the casino sent its employees which revised certain employment policies. *Id.* at 98. Specifically, the memorandum changed the tip policy for the table dealers and required them to share their tips with certain lower level management personnel. *Id.* The court held that the memorandum failed to constitute a contract, because the communication merely informed the casino's employees about the change in employment policies. *See id.* at 98,

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088

105-06. Accordingly, a memorandum revising certain employment policies cannot rebut the employment at-will presumption. *See id.* Similar to the employees in *Baldonado*, the Vision 767 Memorandum, a communication that informed Hester about certain policy revisions, fails to rebut his at-will employment status and does not convert the Vision 767 Memorandum into an express employment contract. *See id.* Put another way, the Vision 767 Memorandum cannot form the basis of a contract that Hester could breach or under which Vision could sue Hester for breach of contract. *See id; see also Martin v. Sears, Roebuck & Co.*, 899 P.2d 551, 554 (Nev. 1995) (holding that "[s]ince a claim arising from breach of contract has no application to at-will employment, and [plaintiff] has not demonstrated that he was other than an at-will employee, a breach of contract cause of action will not lie").

e. Vision's Employee Handbook prevents any contractual relationship from forming between Vision and Hester, and thus, prevents the formation of any employment contract that Hester could breach.

Vision's Employee Handbook prevents any contractual relationship from forming between Vision and Hester, and thus prevents the formation of any employment contract that Hester could breach. "In Nevada, at-will employment is presumed in the absence of a written employment agreement." *See Ringle,* 86 P.3d at 1036. The at-will presumption may be rebutted if "a preponderance of the evidence [demonstrates] that there was an express or implied contract of employment . . . ." *Vargas*, 901 P.2d at 697. However, a company may prevent any "implied contractual liability from arising . . . by including a disclaimer in their employee handbooks." *Id. See also D'Angelo v. Gardner*, 819 P.2d 206, 209 n.4 (Nev. 1991) (holding that an employer can easily prevent an employment contract from arising by "including in its handbook an express disclaimer of implied contractual liability").

Vision specifically limits any contractual liability from arising between Vision and Hester based on the Vision 767 Memorandum because it incorporates by reference the Vision

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088

Employee Handbook into the Vision 767 Memorandum. (*See* Vision 767 Memorandum, Ex. 11, at 2.) Vision's Employee Handbook states, "Employment At-Will: The employment relationship between Vision Airlines and its employees is at-will and may be terminated by either party at any time." (Vision's Employee Handbook, Ex. 10, Section 2 at 2.) Vision's Employee Handbook also states:

> I understand that the policies in this Employee Handbook in no way modify my status as an at-will employee and in no way imply, infer or guarantee my continued employment for any definite term . . . [Vision] reserves the right to modify, revoke, suspend, terminate, interpret, or change any or all portions of these policies with or without notice. *The language used in these policies is not intended to constitute a contract of employment, either express or implied.* All employment with [Vision] is at-will. You have the right to terminate your employment at any time, with or without cause or notice, and [Vision] has a similar right. *Employment at-will is the sole and entire agreement between [Vision] and you concerning the duration of your employment* and the circumstances under which your employment may be terminated.

(*Id.* at Employee Signature Page) (emphasis added.)

Hester received a copy of the October 2006 Employee Handbook (Hester Dep., Ex. 7, at 84) and executed an Employee Acknowledgement Form (Hester's Employee Acknowledgement Form, attached as Ex. 12). The Employee Acknowledgement Form that Hester executed stated:

> I understand that the policies in this Employee Handbook in no way modify my status as an at-will employee and in no way imply, infer or guarantee my continued employment for any definite term . . . *The language used in these policies is not intended to constitute a contract of employment, either expressed or implied* . . . This Handbook should not be construed, nor does it constitute, any kind of 'employment contract,' . . . Nothing in this Employee Handbook creates or is intended to create a promise or representation of continued employment. *All employment with the Company is at-will . . . Employment at-will is the sole and entire agreement between the company and you concerning the duration of your employment and the circumstances under which your employment may be terminated.*

(*Id.*) (emphasis added.) Vision, therefore, is precluded from arguing that the Vision 767 Memorandum constitutes an employment contract because it repeatedly disclaims such liability in its Employee Handbook and the Employee Handbook Acknowledgement Form. *See Vargas*,

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088

901 P.2d at 697; *D'Angelo*, 819 P.2d at 209 n.4. Accordingly, there is no employment contract that would form the basis of Vision's breach of employment contract claim or that Hester could have breached, because Vision expressly disclaims the existence of any employment relationship based on contract.

## II. CONCLUSION

Vision's Response conclusively demonstrates the bad-faith nature of Vision's Amended Counterclaims. Vision's win at all cost strategy, which has included violating its discovery obligations by failing to produce documents and presenting completely unprepared 30(b)(6) witnesses, suing absent class members and their ex-wives in Nevada state court without any factual basis, and attempting to intimidate Hester into dropping his class action lawsuit by filing these baseless counterclaims, is emblematic of the lengths to which Vision will go in order to avoid litigating this case on the merits. Vision's campaign of intimidation has reached its logical end. Now, when it must provide evidence for its wild accusations, Vision has instead failed to offer anything relevant. There is no evidence to support its Amended Counterclaims, a fact acknowledged by Vision's own 30(b)(6) representative. Based on settled Ninth Circuit law, Vision's failure of proof means that Hester is entitled to summary judgment on Vision's Amended Counterclaims. Accordingly, Hester respectfully requests that the Court grant his Motion for Summary Judgment on Vision's Amended Counterclaims.

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088

Respectfully submitted,

/s/ Brett E. von Borke
Kenneth R. Hartmann, (FBN 664286)
Brett E. von Borke (FBN 0044802)
KOZYAK TROPIN & THROCKMORTON, P.A.
2525 Ponce de Leon, 9th Floor
Coral Gables, Florida 33134
Telephone: (305) 372-1800
Fax: (305) 372-3508

/s/ Ross Goodman
GOODMAN LAW GROUP
ROSS GOODMAN, (NBN 7722)
520 South Fourth Street
Las Vegas, Nevada 89101
(702) 383-5088
(702) 385-5088 (Facsimile)

/s/ David M. Buckner
David M. Buckner (FBN 60550)
GROSSMAN ROTH, P.A.
2525 Ponce de Leon, 11th Floor
Coral Gables, Florida 33134
Telephone: (305) 442-8666
Fax: (305) 285-1668

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true copy of the foregoing has been served via the Court's CM/ECF system on September 9, 2010 on Harold P. Gewerter, Esq., 2705 Airport Drive, North Las Vegas, Nevada 89032.

By: /s/ David M. Buckner
David M. Buckner