1

**Ross C. Goodman, Esq., Nevada State Bar No. 7722**
**GOODMAN LAW GROUP**

2

520 South Fourth Street
Las Vegas, Nevada 89101

3

(702) 383-5088
(702) 385-5088 (Facsimile)

4

**Kenneth R. Hartmann, Esq., Florida State Bar No. 664286**

5

**Brett E. von Borke, Esq., Florida State Bar No. 44802**
**KOZYAK TROPIN & THROCKMORTON, PA**

6

2525 Ponce de Leon, 9th Floor
Miami, Florida 33134

7

(305) 372-1800
(305) 372-3508 (Facsimile)

8

**David M. Buckner, Esq. Florida State Bar No. 60550**

9

**GROSSMAN ROTH, P.A.**
2525 Ponce de Leon, 11th Floor

10

Coral Gables, Florida  33134
Telephone: (305) 442-8666

11

Fax: (305) 285-1668

12

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

13

14

GERALD HESTER, on behalf of himself
and all others similarly situated,

15

                                 Plaintiff,

v.

16

VISION AIRLINES, INC.,

17

                                 Defendant.

18

Case No.:  2:09-CV-00117-RLH-RJJ

19

20

21

22

**THE CLASS'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

23

24

25

26

27

28

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088

The Class is entitled to summary judgment as a matter of law because Vision failed to carry its burden and identify in its Response to the Class's Motion for Summary Judgment ("Response") any disputed facts. Rather, Vision ignores all of the record evidence in the Class's Motion for Summary Judgment ("Motion") which supports the Class's claims and instead argues that summary judgment must be denied because Gerald Hester ("Hester") did not have specific knowledge about certain facts contained within the Complaint. Hester's alleged lack of knowledge about certain facts is irrelevant and not sufficient to overcome the Class's well-founded evidence which supports its entitlement to summary judgment as a matter of law. Furthermore, Vision's claim that the Class's expert report has been stricken is further evidence of Vision's bad-faith litigation tactics – as it is nothing but an intentional misstatement of fact. Vision's argument that the Class's equitable claims for unjust enrichment are precluded by the existence of an employment contract is not only incorrect as a matter of fact but also law. No employment contract governed the employment relationship between Vision and the Class, and even if it did, it would not preclude the Class's equitable claims. Finally, Vision's claim that constructive trust is a remedy and not an independent cause of action is incorrect as a matter of law. At its core, Vision's Response fails because it offers no actual, material facts to support Vision's position. Accordingly, without any facts in dispute and the record evidence supporting its claims, the Class is entitled to summary judgment.

## I.     FACTS

### A.     VISION MAKES MATERIAL MISSTATEMENTS ABOUT THE CLASS'S EXPERT REPORT IN AN EFFORT TO MISLEAD THE COURT

Although Vision does not dispute the Undisputed Material Facts set forth by the Class in its Motion, it does make serious misstatements about the Class's expert report in its desperation to avoid summary judgment. In its Response, Vision falsely states: (1) that the Class's expert disclosures were untimely; (2) that this Court ruled that the Class's expert report was

"inadmissible"; and (3) that Vision had "no opportunity to cross examine or challenge the findings of this un-admitted expert . . ." [D.E. 141 at 6.]  However, the record reflects that: (1) the Class timely made and seasonably supplemented its expert disclosures; (2) Vision failed to move to exclude the Class's expert report, has no valid basis to do so, and the Court has entered no order striking the Class's expert report; and (3) although the Class's expert was readily available for deposition during and after the discovery period, and his identify and opinions were well known to Vision, counsel for Vision neither noticed him for deposition nor requested from Class counsel available deposition dates for the Class's expert.[1]

Pursuant to this Court's Scheduling Order, Rule 26(a)(2) expert disclosures were due on or before April 29, 2010.  [DE 103 at 1.]  The Class served the preliminary report of its accounting expert, Barry E. Mukamal ("Mukamal"), on April 29, 2010 ("Preliminary Report"), as required by the Court's Scheduling Order.  (Email from Brett von Borke to Harold Gewerter with attached Preliminary Report dated April 29, 2010, Composite Ex 1.)  In the Class's Preliminary Report, Mukamal reserved the right to supplement his Preliminary Report based on subsequent discovery, the review of other materials provided by Vision or third-parties, or other evidence or positions advanced or disclosed by Vision. (Rule 26(a)(2) Affidavit, Ex. 1, at 2 ¶ 7.) The Preliminary Report was limited to an analysis of Phases II and III of the Air Bridge Program because Vision failed to provide the Class with the documents that it previously agreed to produce and which were necessary to perform the analysis with respect to Phases I and IV of the Air Bridge Program. (Preliminary Report, Ex. 1, at 1.)

---

[1] Vision is trying to profit from its obstructive discovery tactics.  Having refused to provide relevant, discoverable documents, and having heavily redacted many of the documents that it did provide, Vision now wishes to be heard to complain that the Class's expert disclosures were late because the Class was forced to go to Virginia to litigate against a third-party to get the documents that Vision refused to produce.  This argument showcases Vision's bad-faith, and provides ample support for sanctions, including a jury instruction regarding the presumptions that the jury may draw from Vision's redacted documents.

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088

After the Class served its Preliminary Report, Vision continued to refuse to produce the documents it previously agreed to produce and which were necessary to complete the expert report with respect to Phase I and Phase IV ("McNeil Phase").  This Court granted the Class's Renewed Motion to Compel [D.E. 93], filed on January 20, 2010, which the Class supplemented after additional discovery abuse by Vision, as set forth in the Class's Supplement in Support of the Class's Renewed Motion to Compel [D.E. 106], on September 9, 2010.  However, because the Court did not grant the Class's Renewed Motion before the expert report was due, the Class was required to obtain third-party discovery from McNeil Technologies, Inc. ("McNeil").  After litigating McNeil's Motion to Quash the Class's Subpoena in the Eastern District of Virginia (where one of McNeil's primary arguments was that the Class should obtain this information from Vision), the Class was able to obtain some additional documents and an Affidavit from William Vigil ("Vigil"), the Vice President of McNeil's Aviation Services, (Affidavit of McNeil Technologies, attached as Ex. 2).  The Class received this additional discovery on July 9, 2010, which finally permitted the Class's expert to perform the damages analysis with respect to the McNeil Phase. (Supplemental Expert Report of Barry Mukamal, attached as Ex. 3.)  On July 19, 2010, which was prior to the close of discovery and only ten days after the Class received the discovery from McNeil necessary to complete the Class's expert report as to Phase IV, the Class served Mukamal's Supplemental Affidavit ("Supplemental Report") along with the relevant discovery obtained from McNeil.  (Email from Brett von Borke to Harold Gewerter dated July 19, 2010, attached as Ex. 4.)  Accordingly, the Class's Preliminary Report was timely disclosed pursuant to the Court's Scheduling Order as it was provided to Vision's counsel on April 29, 2010, and the Supplemental Report was disclosed promptly after the Class obtained the third-party discovery necessary to enable its expert to complete the damages analysis with respect to

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088

the McNeil Phase.[2] *GenSci OrthoBiologics v.Osteotech, Inc.*, No. CV-99-10111-MRP, 2001 WL 36239743, at *12 (C.D. Cal. Oct. 18, 2001) (denying motion in limine to exclude supplemental expert report where expert report was based on new information and disclosed "relatively soon" after the information necessary to complete the report was discovered); *Fontenot v. Digital Equip. Corp.*, 962 F. Supp. 1032, 1035-36 (N.D. Ill. 1996) (permitting supplemental disclosure after expert disclosure deadline past because there was no bad-faith or intent to frustrate justice on behalf of disclosing party).

Vision's assertion that the Class's "purported expert whose testimony in this case was deemed inadmissible by this Honorable Court due to untimely disclosure," is an intentional misstatement of fact, and it is stunning that Vision believes it appropriate to misrepresent the record in this way.  [D.E. 141 at 6.]  What is the docket entry number of this supposed order? Vision has not cited to one because no such order exists.[3]  Moreover, Vision never moved to exclude any portion of the Class's expert report or any of his anticipated trial testimony. Therefore, both Mukamal's Preliminary Report and his Supplemental Report remain an uncontested part of this record, and are proper evidence in support of the Class's Motion for

---

[2] Vision's Response fails to specifically identify any portion of the expert report that it finds objectionable.  Given that Mukamal's Preliminary Report was clearly timely, Vision must be complaining about his Supplemental Report. However, the thrust of that report is that Vision collected hazard pay during the McNeil Phase that it did not pay over to any of its Air Bridge Program employees.  This fact is undisputed and corroborated by Vision.  Vision's former director of flight operations and current Vision executive, James Maguire ("Maguire"), testified that in developing Vision's compensation scheme for the Air Bridge Program employees during the McNeil Phase, he decided not to pay those employees any hazard pay as part of their salary. (Deposition of James Maguire, attached as Ex. 5, at 96-98.)  Thus, one of the core facts underpinning the Supplemental Report was already known to Vision well in advance of the disclosure of the Supplemental Report. (*Id.* at 98.)  Vision has suffered no prejudice due to the timing of the Supplemental Report, and even if it did, that prejudice is entirely of its own making, by virtue of its failure to produce the documents to the Class that were necessary to complete the Phase IV analysis.

[3] What is true is that the Class moved to extend the disclosure deadline for its expert report, a motion in which Vision joined until it realized that it could obtain an unfair advantage from its denial.  [D.E. 105.] Vision then opposed the Class's renewed motion to extend the disclosure deadline, which motion was entirely necessitated by Vision's refusal to produce documents.  [D.E. 111.] That motion [D.E. 110], filed on April 15, 2010, remains pending before the Court. Vision is now squaring the circle, and trying to capitalize on its misconduct. This cannot be allowed.  The Court, however, should grant the Class's Second Extension of Time [D.E. 110] and extend the expert disclosure deadline until July 19, 2010, the date the Supplemental Report was provided to Vision.

1   Summary Judgment.

2   Finally, Vision claims that "Defendant VISION has had no opportunity to cross examine

3   or challenge the findings of this un-admitted expert, such findings cannot be the basis for a

4   Motion for Summary Judgment." [*Id.*]   However, the fact that Vision has chosen not to take

5   Mukamal's deposition is no barrier to summary judgment in favor of the Class.   At no time after

6   the Class identified its expert[4] or served his report did Vision notice Mukamal for deposition or

7   even contact Class counsel regarding Mukamal's availability for deposition.   Mukamal was

8   available for deposition throughout the discovery period and thereafter, and the fact that Vision

9   chose not to "cross examine or challenge" Mukamal's opinion is in no way attributable to the

10   Class and cannot serve as a basis for either precluding summary judgment, or for the exclusion

11   of the Class's expert report.

12

13   **II.    ARGUMENT**

14        **A.    THE CLASS IS ENTITLED TO SUMMARY JUDGMENT AS A MATTER**
             **OF LAW BECAUSE VISION FAILED TO CARRY ITS BURDEN AND**
15           **IDENTIFY ANY MATERIAL FACTS IN DISPUTE**

16   The Class is entitled to summary judgment as a matter of law because Vision failed to

17   carry its burden and identify any material facts in dispute.   Summary judgment is proper "if the

18   pleadings, depositions, answers to interrogatories, and admissions on file, together with the

19   affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

20   party is entitled to judgment as a matter of law."   *Celotex Corp. v. Catrett*, 477 U.S. 317, 322

21   (1986).   The nonmoving party bears the burden to establish, beyond the pleadings, that there is a

22   genuine issue for trial.   *Id.* at 324.   Fed. R. Civ. P. 56 "mandates the entry of summary judgment,

23   after adequate time for discovery and upon motion, against a party who fails to make a showing

24

25   _____

26   [4] Vision knew the identity of the Class's expert even before disclosure was required by the Court's Scheduling
     Order.   Class Counsel, David Buckner, identified Mukamal as the Class's expert at a hearing before Magistrate
27   Judge Johnston on April 14, 2010. (April 14, 2010 Hearing Transcript, attached as Ex. 6, at 24.)

28

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2ⁿᵈ Floor
Las Vegas, Nevada 89101
(702) 383-5088

sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* "[T]here can be 'no genuine issue as to any material fact,' [where there is] a complete failure of proof concerning an essential element of the nonmoving party's case [which] necessarily renders all other facts immaterial." *Id.* at 323.

Furthermore, conclusory allegations unsupported by evidence are not sufficient to defeat a properly supported motion for summary judgment. *Hansen v. United States,* 7 F.3d 137, 138 (9th Cir. 1993) (*per curiam*). The nonmoving party may not simply rely on its pleadings in opposing a motion, nor can the nonmoving party create issues of fact simply by making argumentative assertions in its legal memoranda. *S.A. Empresa, Etc. v. Walter Kidde & Co.,* 690 F.2d 1235, 1238 (9th Cir. 1982). "To successfully rebut a properly supported motion for summary judgment, the nonmoving party 'must point to some facts in the record that demonstrate a genuine issue of material fact and, with all reasonable inferences made in the [nonmoving party's] favor, could convince a reasonable jury to find for the [nonmoving party] . . . .'" *Estate of Garcia-Vasquez v. County of San Diego*, 2008 WL 418913, at *3 (S.D. Cal. Sep. 9, 2008) (quoting *Reese v. Jefferson School Dist. No. 14j,* 208 F. 3d 736, 738 (9th Cir. 2000)). The nonmoving party seeking to establish a genuine issue of material fact must specifically identify evidence precluding summary judgment, because the court is "not required to comb the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified School Dist.,* 237 F.3d 1026, 1029 (9th Cir. 2001) (quoting *Forsberg v. Pac. N.W. Bell Tel. Co.,* 840 F.2d 1409, 1418 (9th Cir. 1988)). The moving party, therefore, is entitled to judgment as a matter of law if the nonmoving party fails to identify evidence in the record that precludes summary judgment. *Celotex,* 477 U.S. at 323.

For example, the Ninth Circuit Court of Appeals in *Pacific Northwest Venison Producers v. Smith,* 20 F.3d 1008, 1010, 1013 (9th Cir. 1994), upheld the district court's entry of

summary judgment in favor of the defendant because the plaintiffs failed to offer any evidence to demonstrate that there was a material fact in dispute.  There, the plaintiffs challenged specific statutes pertaining to the regulation of certain exotic animals on the basis that it violated the United States Constitution's Commerce Clause. *Id.* at 1011.  The Ninth Circuit Court of Appeals upheld the district court's entry of summary judgment in favor of the defendant because the plaintiffs' argument that the defendant was motivated not to protect wildlife but instead by its antipathy toward game farming was not supported by any direct evidence in the record. *Id.* at 1013. Thus, without any evidentiary support for this material fact, the defendant was entitled to summary judgment as a matter of law. *Id.*

Similarly, the Class is entitled to summary judgment as a matter of law because Vision failed to identify a single material fact in dispute, which would preclude the Class's Motion. Vision does not dispute any of the material facts set forth in the Class's Motion for Summary Judgment.  For example, Vision did not dispute that it determined and earmarked specific amounts of hazard pay for Vision's Air Bridge Program flight deck and cabin crews, (Email from David Meers to Brian Dagget dated June 26, 2006, attached as Ex. 7, at CAI 27885-91), (Vision Aircraft Quote to McNeil, attached as Ex. 8), for part of the Air Bridge Program even specifically invoiced for it (Vision's Air Bridge Program Phase III invoices, Ex. 9), and received that hazard pay from the upstream contractors on behalf of the Air Bridge Program employees (Deposition of Laura Feigin, attached as Ex. 10, 24-25, 28, 33, 37).  Furthermore, Vision did not dispute that the upstream contractors expected Vision to pay the money specifically earmarked for hazard pay to those employees who flew the hazardous flights into, and out of, the war zones in Baghdad, Iraq and Kabul, Afghanistan. (*Id.* at 24-25, 28, 33, 37.) Finally, Vision did not dispute that it failed to pay the flight deck or cabin crews any of the hazard pay specifically earmarked for them and for which Vision billed and collected from the upstream contractors in

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088

316779.2

7

1    Phases II, III, or IV of the Air Bridge Program.  (Preliminary Report, Ex. 1, at 4-5, 7-8);

2    (Supplemental Report, Ex. 3, at 4-6.)  Accordingly, as these, as well as the remainder of the

3    material facts set forth in the Class's Statement of Undisputed Material Facts, are undisputed,

4    they must be accepted as true by the Court and summary judgment must be granted in favor of

5    the Class. *See Celotex,* 477 U.S. at 323; *Abbott v. Williams,* No. 2:08-cv-00065-LDG-RJJ, 2010

6    WL 2757501, at *2 (D. Nev. July 12, 2010) (granting summary judgment where nonmoving

7    party failed to specifically identify any evidence that would preclude summary judgment).

8

9    **B.      SUMMARY JUDGMENT IN FAVOR OF THE CLASS IS APPROPRIATE
            BASED ON THE EVIDENCE AS DEVELOPED THROUGH DISCOVERY**

10

11        Vision's Motion does not address a single fact cited in the Class's Statement of

12   Undisputed Material Facts.  Instead, Vision exclusively addresses Hester's knowledge about the

13   information and allegations contained in the Complaint.[5]  However, Vision cannot simply ignore

14   the facts developed through the deposition testimony and documents discovered throughout the

15   course of this case, even if it has tried mightily to prevent that discovery from taking place.  The

16   undisputed material facts necessary to establish the Class's right to recovery on its claims are

17   unrebutted.  The remaining facts that Vision purports to "dispute" are simply immaterial to the

18   disposition of this case.

19

20        Vision repeatedly focuses on the fact that Hester did not have certain independent

21   knowledge about some of the allegations contained in the Complaint.  However, as set out more

22   fully in the Class's Response to Vision's Motion to Decertify the Class [D.E. 126 at 10-17] and

23   the Class's Response to Vision's Motion for Summary Judgment [D.E. 143 at 3-12], which are

24   incorporated by reference herein, especially in complex class-action litigation, such as here,

25

26   ---

27   [5] The material misstatements in Vision's Response are nearly identical to those contained in Vision's Motion to Decertify the Class [D.E. 120 at 2-11] and Vision's Motion for Summary Judgment [D.E. 137 at 6-16.]  Thus, a more complete list of corrections to Vision's repeated attempt to mischaracterize the facts of this case is contained in the Class's responses to those motions.  [*See* D.E. 126 at 10-12]; [*See* D.E. 143 at 3-12.]

28

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088

316779.2                                          8

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088

1   where the defendant's liability can be established only after a great deal of investigation and

2   discovery by counsel against a backdrop of legal knowledge, the class representative need not

3   have extensive knowledge of the facts of the case in order to adequately represent the interests of

4   the class. *See* 32B *Am. Jur., 2d* Federal Courts § 1640; *Gunnells v. Healthplan Servs., Inc.,* 348

5   F.3d 417 (4th Cir. 2003) (finding defendant's attack on plaintiff's lack of knowledge

6   "particularly meritless," because there is no requirement that the plaintiff, rather than counsel,

7   investigate the merits of a case); *Yamner v. Boich,* No. C-92-20597 RPA, 1994 WL 514035, at

8   *7 (N.D. Cal. Sep. 15, 1994) ("Plaintiff's reliance on his counsel to investigate and litigate this

9   case is appropriate, and does not render him an inadequate representative."). This is particularly

10  true given that Vision took steps to conceal the relevant facts from Hester and the Class.

11  Hester testified that he is and remains the driving force behind this lawsuit. Hester has

12  actively assisted counsel in the direction and prosecution of this litigation. Hester testified that

13  he knew that he might be entitled to hazard pay based on his conversations with Dan Carson,

14  Davis Pritchard, and others. (Deposition of Gerald Hester, attached as Ex. 11, at 35-36, 171.)

15  Based on this belief, Hester contacted his attorneys to determine if he had a viable legal claim

16  against Vision for hazard pay, and as Hester testified, it was his belief that, "if Vision collected

17  hazard pay, the money should go to the people who performed the hazardous duty." (*Id.* at 193.)

18  Because Hester is not an attorney, however, it was only after his attorneys completed a thorough

19  investigation that Hester's suspicions were confirmed and he understood the legal basis under

20  which he was entitled to recover the hazard pay that the upstream contractors paid Vision on his

21  behalf. Accordingly, the fact that Hester delegated the investigation of his claims to his

22  attorneys does not serve as a bar to the Class's claims, which are supported by the facts revealed

23  through discovery, which Vision has not disputed, as set forth in the Class's Motion for

316779.2

9

Summary Judgment.[6]

## C. THE CLASS'S MOTION FOR SUMMARY JUDGMENT MUST BE GRANTED BECAUSE THE UNDISPUTED FACTS DEMONSTRATE THAT THERE WAS NO EMPLOYMENT CONTRACT BETWEEN VISION AND THE CLASS MEMBERS

There is no employment contract between the Class members and Vision.  Vision cites to the terms of Hester's compensation as the sole support for its claim that the parties' relationship was governed by contract. [D.E. 141 at 17-18.]   However, Hester's employment at Vision was at-will, which by definition prevented him from being employed by contract, and because neither an express nor an implied contract ever arose between the parties, Vision's at-will employment relationship governed.  Thus, there is nothing preventing the Class's equitable claims.

> a. *Hester's at-will employment relationship does not constitute an express or implied contractual relationship between the parties, and in fact precludes any such express or implied contractual relationship from arising.*

The Nevada Supreme Court held that an at-will employment relationship fails to create an express or implied contractual relationship between the parties, *Bally's Grand Employees Fed. Credit Union v. Wallen*, 779 P.2d 956, 957 (Nev. 1989), and even works affirmatively to prevent a contractual relationship from arising, *Ringle v. Burton*, 86 P.3d 1032, 1037 (Nev.

---

[6] Vision again argues that Hester testified that "he had a defined compensation package with Defendant VISION, and that he received all moneys due and owing to him under those compensation packages." [D.E. 141 at 8.] While an immaterial fact, however, there is no support for this statement in the record.  Hester actually testified that he "didn't make an agreement" with Vision, because he was an at-will employee.  (Hester Dep., Ex. 11, at 12.) Furthermore, Vision's own Employee Handbook disclaims any contract based employment (Vision's Employee Handbook, attached as Ex. 12, at Section 2 at 2, Signature Page) and the Employee Handbook Acknowledgement Form that Hester executed also states that at-will is the sole and entire agreement between Vision and Hester. (Hester Employee Handbook Acknowledgement Form, attached as Ex. 13.)  Furthermore, Hester also testified that he was never paid any hazard pay by Vision, to which he believed he was entitled. (Hester Dep., Ex. 11, at 49, 193.) Specifically, Hester stated that, "I and the other pilots and the flight attendants and the mechanics who did the hazardous duty that would justify the receipt of hazard pay should be the ones who receive it."  (*Id.* at 49.) Moreover, the evidence, which Vision ignores, establishes that Vision determined and earmarked certain amounts of hazard pay to be allocated for Vision's Air Bridge Program flight deck and cabin crews (Meers e-mail to Dagget, Ex. 7, at CAI 27885-91); (Vision Aircraft Quote to McNeil, Ex. 8), for part of the period specifically invoiced for it (Vision Phase III invoices, Ex. 9), and received the payments from the upstream contractors on behalf of those employees with the expectation that Vision would pay the hazard pay to them (Feigin Dep., Ex. 10, 11, 24-25, 28, 33, 37). Thus, there is ample evidence that there is no basis for Vision's continued misstatement of the record. [*See* D.E. 143 at 3-12.]

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088

316779.2

10

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2ⁿᵈ Floor
Las Vegas, Nevada 89101
(702) 383-5088

2004).  In *Bally's*, 779 P.2d at 957, the Nevada Supreme Court held that the plaintiff could only recover on her contract-based employment claims if she was "other than an at-will employee; *i.e.,* it was required to find that [defendant] employed [plaintiff] under either an express or an implied contract . . . ."  *See also Am. Bank Stationary v. Farmer*, 799 P.2d 1100, 1101-02 (Nev. 1990) ("We note that all employees in Nevada are presumed to be at-will employees.  An employee may rebut this presumption by proving by a preponderance of the evidence that there was an express or implied contract between his employer and himself . . . ."); *S.W. Gas Corp. v. Vargas*, 901 P.2d 693, 697 (Nev. 1995) (same).  As such, "at-will employees have no contractual rights arising from the employment relationship that limit the employer's ability to prospectively hire and fire employees, and to change the terms of employment."  *Baldonado v. Wynn Las Vegas, LLC*, 194 P.3d 96, 106 (Nev. 2008).[7]

Here, Vision's representatives testified that Hester was an at-will employee (Maguire Dep., Ex. 5, at 73), Vision's Employee Handbook states that Hester's employment at Vision was at-will and expressly disclaims any employment relationship based on contract (Vision's Employee Handbook, attached as Ex. 12, at Section 2 at 2), and Hester testified that his employment at Vision was at-will and that he never entered into an employment contract with Vision (Hester Dep., Ex. 11, at 12-13).  Hester's and the Class members' at-will employment status precludes any contractual rights from arising because, "at-will employees have no contractual rights arising from the employment relationship that limit the employer's ability to prospectively hire and fire employees, and to change the terms of employment."  *Baldonado*, 194 P.3d at 106.  Thus, the Nevada Supreme Court endorsed the district court's holding in

---

[7] The mere fact that the at-will employment relationship may be governed by contract-like principles does not convert at-will employment into employment based on an "express written agreement."  *See Reeves v. Alyeska Pipeline Service Co.,* 926 P.2d 1130 (AK 1996) (holding that "quasi-contracts are judicially created obligations to do justice . . . the obligation to make restitution that arises in quasi-contract is not based upon any agreement between the parties, objective or subjective." ).

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088

1    *Baldonado*, 194 P.3d 96, 106 (Nev. 2008), that a group of employees' "at-will . . . status

2    precluded any challenge to the employment policy on breach of contract grounds." *Id.* at 98, 105

3    n.39.[8]  Accordingly, Hester's and the Class members' at-will employment status does not bar the

4    Class's equitable claims.

5                    *b. There is no express employment contract between Vision and the Class.*

6          There is no express employment contract between Vision and the Class members.  While

7    Vision does not identify any specific agreement that creates a contractual relationship between

8    the parties, the two documents Hester acknowledged with his signature relating to his

9    employment were the Vision 767 Memorandum and the Employee Handbook Acknowledgement

10   Form.  Both these communications only corroborate the at-will nature of Hester's employment.

11              1.    The Vision 767 Memorandum is not a contract.

12         The Vision 767 Memorandum does not constitute an employment contract because it was

13   a communication, and as such, there was no offer and acceptance or meeting of the minds as

14   required by "[b]asic contract principles," *May v. Anderson*, 119 P.3d 1254, 1257 (Nev. 2005),

15   and it did not imply obligations on behalf of the parties. *See United Services Auto Ass'n. v.*

16   *Shlang*, 894 P.2d 967, 971-72 (Nev. 1995). Vision failed to make any contractual offer to Hester,

17   and therefore Hester could never accept any offer made by Vision.   The Vision 767

18   Memorandum is dated October 15, 2007, but states that the policy revisions set forth in that

19   communication took effect October 1, 2007. (*See* Vision 767 Memorandum, Ex. 14, at 1.)  Thus,

---

[8] The only case that Vision cites in support of its claim that employment at-will is equivalent to an employment contract is *Vancheri v. GNLV Corp.*, 105 Nev. 417, 420 (Nev. 1989).  This case, however, only illustrates Hester's argument that employment at-will does not create an express or implied contractual relationship between the parties. There, a former employee brought suit against his former employer alleging wrongful termination. *Id.* at 419.  The court held that the former employee failed to rebut the at-will employment relationship and establish the existence of either an express or implied contract between the former employer and the former employee. *Id.* at 421-22. Therefore, the employee's contract based employment claims were denied because he was an at-will employee and did not have any basis to bring contract based claims based on his at-will employment relationship. *Id.*  The sole case Vision cites in support of its argument actually supports the Class's argument and demonstrates that employment at-will is not the equivalent of employment pursuant to an employment contract. *See id.*

316779.2                                        12

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088

1   Vision unilaterally, and without the consent of Hester, made certain changes to its internal

2   policies and notified Hester only after those changes took effect. (*See id.*) Hester, therefore,

3   could not accept or reject Vision's policy revisions, and there could be no meeting of the minds.

4   *See Baldonado*, 194 P.3d at 105-06 (holding that memorandum revising employment policies

5   was not an employment contract).[9]

6

7   Moreover, the Vision 767 Memorandum cannot constitute more than a communication,

8   and is therefore not a contract, because it does not imply any obligations on behalf of Vision or

9   Hester.   A communication does not constitute a contract where it does not imply obligations on

10   behalf of the parties. *See Shlang,* 894 P.2d at 971-72.   For example, in *Barelli v. Barelli*, 944

11   P.2d 246, 250 (Nev. 1997), the Nevada Supreme Court determined that a letter which stated that

12   plaintiff is "currently and will continue on into the future as a salaried employee of this company

13   at the same rate of pay and position" did not constitute an employment contract because it did

14   not impose any obligations on the plaintiff.   Similarly, the Vision 767 Memorandum does not

15   constitute an employment contract because it does not impose any obligations on either Vision or

16

17   Hester. *See id.*   While the Vision 767 Memorandum outlines changes to certain policies, it does

18   not impose any obligation on Vision to honor those policies nor does it preclude Vision from

19   altering those policies at any time, at its discretion, in the future.   (Vision 767 Memorandum,

20   attached as Ex. 14, at 2.)   To the contrary, it merely explains the policies in effect as of October

21   1, 2007 for an undetermined time thereafter.   Furthermore, the Vision 767 Memorandum did

22   not impose any obligations on Hester, as he was not required to continue working for Vision nor

23   was Vision required to employ him for a definite period of time.   Therefore, like the letter in

24

25

26   [9] Furthermore, there are other indicia that demonstrate that the Vision 767 Memorandum was not intended to
   constitute an employment contract. Maguire testified that no lawyer reviewed the Vision 767 Memorandum prior to

27   providing it to the Class (Maguire Dep., Ex. 5, at 78), that he did not negotiate the terms of the Vision 767
   Memorandum with any Class member (*id.* at 80-81), and there was no place on the Vision 767 Memorandum for

28   Vision to sign and accept (*id.* at 84-85). Maguire also testified that the Class members were at-will employees, even
   after the Vision 767 Memorandum was provided by Vision to them. (*Id.* at 86-88.)

316779.2                                                 13

*Barelli*, the Vision 767 Memorandum is not a contract that would preclude the Class's equitable claims.  944 P.2d at 250; *see also Shlang*, 894 P.2d at 971-72 (holding that a letter failed to constitute an employment contract because it did not impose any obligations on the parties).

  2. Vision's Employee Handbook prevents any contractual relationship from arising between Vision and the Class.

  Vision's Employee Handbook affirmatively acts to prevent any employment contract from forming between Vision and Hester or the Class members, and thus prevents the formation of any employment contract that precludes the Class's equitable claims.  "In Nevada, at-will employment is presumed in the absence of a written employment agreement."  *See Ringle,* 86 P.3d at 1036.  The at-will presumption may be rebutted if "a preponderance of the evidence [demonstrates] that there was an express or implied contract of employment . . . ."  *Vargas*, 901 P.2d at 697.  However, a company may prevent any "implied contractual liability from arising . . . by including a disclaimer in their employee handbooks."  *Id.*  *See also D'Angelo v. Gardner*, 819 P.2d 206, 209 n.4 (Nev. 1991) (holding that an employer can easily prevent an employment contract from arising by "including in its handbook an express disclaimer of implied contractual liability").

  Vision specifically limits the formation of any employment contract between Vision and the Class members based on the Vision 767 Memorandum because it incorporates by reference the Vision Employee Handbook into the Vision 767 Memorandum.  (*See* Vision 767 Memorandum, Ex. 14, at 2.)  Vision's Employee Handbook states:

> I understand that the policies in this Employee Handbook in no way modify my status as an at-will employee and in no way imply, infer or guarantee my continued employment for any definite term . . . [Vision] reserves the right to modify, revoke, suspend, terminate, interpret, or change any or all portions of these policies with or without notice.  *The language used in these policies is not intended to constitute a contract of employment, either express or implied. All employment with [Vision] is at-will.*  You have the right to terminate your employment at any time, with or without cause or notice, and [Vision] has a similar right.  *Employment at-will is the sole and entire agreement between [Vision]*

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2ⁿᵈ Floor
Las Vegas, Nevada 89101
(702) 383-5088

*and you concerning the duration of your employment* and the circumstances under which your employment may be terminated.

(Vision Employee Handbook, Ex. 12, at Employee Signature Page) (emphasis added.)

Hester received a copy of the October 2006 Employee Handbook (Hester Dep., Ex. 11, at 84) and executed an Employee Handbook Acknowledgement Form (Hester's Employee Acknowledgement Form, attached as Ex. 13). The Employee Handbook Acknowledgement Form that Hester executed reiterates his at-will employment status and states that there is no "contract of employment, either express or implied" between Vision and Hester. (*Id.*) Thus, the parties' relationship is not governed by an employment contract because Vision's Employee Handbook explicitly disclaims the formation of any employment relationship based on contract. Vision's Employee Handbook acknowledged all Class members' employment at Vision was at-will and Vision has advanced no evidence that would rebut this at-will status. Vision's argument that there is an employment contract between the Class members and Vision finds no support in the record and cannot bar the Class's Motion.

**D.      SUMMARY JUDGMENT IN FAVOR OF THE CLASS IS APPROPRIATE AS A MATTER OF LAW EVEN IF THE COURT WERE TO FIND AGAINST THE UNDISPUTED EVIDENCE THAT THERE WAS AN EMPLOYMENT CONTRACT**

Summary judgment in favor of the Class is appropriate as a matter of law even if the Court were to find that there was an employment contract between Vision and the Class. Any contractual relationship between Vision and the Class would not cover the right to hazard pay, as the Vision 767 Memorandum is very narrowly drafted and limited only to salary. Moreover, the Vision 767 Memorandum would not bar the Class's claim for unjust enrichment before October 1, 2007 (Phases I-III), or the Class's claims for conversion and money had and received for all four Phases. Therefore, the Class is entitled to summary judgment as a matter of law.[10]

---

[10] Vision cites *Ewing v. Sargent*, 482 P.2d 819 (Nev. 1971), for the proposition that "an employee who has been paid his agreed wages [can] not claim additional compensation in *quantum meruit* to prevent his employer's

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088

316779.2

15

a. *Any contractual relationship between Vision and the Class would not cover the right to hazard pay.*

Even if there was an employment contract between Vision and the Class, which there is not, it is a very narrow contract, as Vision admits, which only covers the flight deck and cabin crew wages, and does not extend as far as to cover hazard pay. While it is true that the general rule is that a claim for unjust enrichment is unavailable when the subject of the implied agreement is covered by an express agreement, *see Thorne v. Wagner*, No. 2:06-CV-00942-PMP-PAL, 2007 WL 496373, at *4 (D. Nev. Feb. 13, 2007), courts have held that "when an express contract does not fully address a subject, a court of equity may impose a remedy to further the ends of justice." *Klein v. Arkoma Production Co.*, 73 F.3d 779, 785-86 (8th Cir. 1996); *see also Halliburton Energy Servs., Inc. v. NL Indus.*, 648 F. Supp. 2d 840, 910 n.76 (S.D. Tex. 2009) (same).

In *Klein v. Arkoma Production Co.*, 73 F.3d 779, 785-86 (8th Cir. 1996), a royalty agreement entitled the landowner to a certain percentage of the proceeds from the natural gas produced by the lessee on the owner's land. *Id.* at 782. For a period of time, due to an unfavorable term in the lessee's contract with one of its natural gas purchasers, it received reduced proceeds for the natural gas produced from the land. *Id.* at 782-83. As a result, a claim accrued which allowed the lessee to potentially recoup some of its losses. *Id.* at 783. When the

supposed unjust enrichment." [D.E. 141 at 17] *Ewing*, however, does not stand for this proposition. In *Ewing*, the plaintiff, a furniture manufacturer, sued the defendant, a furniture seller, for additional compensation beyond what the parties agreed to in an express writing. *Id.* at 820, 823. The court rejected the plaintiff's claim because there was an "express written agreement between the parties, [which was] evidenced by the purchase orders between the [defendant] and the [plaintiff]." *Id.* at 823. *Ewing* is distinguishable on many grounds. First, there was no employment relationship between the furniture manufacturer and seller, but rather this involved the sale of goods. Second, *Ewing* does not preclude the Class's claim for recovery under *quantum meruit* because there was no "express written agreement" between the members of the Class and Vision. In adopting this legal principle, the Nevada Supreme Court in *Ewing* cited to several cases in other jurisdictions where courts held that an express written agreement precluded recovery under a theory of *quantum meruit*. 482 P.2d at 823. One of the cases *Ewing* cited was *Keith v. Kottas*, 172 P.2d 306 (Mont. 1946). *Ewing*, 482 P.2d at 823. The *Ewing* court did not adopt the holding in that case, and specifically said that its ruling was not grounded on the principles in that or the other cases cited. *Id.* Indeed, the court "[a]ssum[ed] that quatum meruit is a theoretically possible remedy," though it denied that relief on the facts of the case. *Id. Keith v. Kottas* is therefore not the law of Nevada or even dicta. *See id.*

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2ⁿᵈ Floor
Las Vegas, Nevada 89101
(702) 383-5088

1   lessee eventually settled the claim, without including the landowner, and recovered some of its

2   lost profits, the court held that the terms of the lease agreement did not cover the settlement

3   funds, and the landowner was entitled to a portion of the settlement under the theory of unjust

4   enrichment. *Id.* at 786.  The court made this finding despite the fact that the lease purported to

5   cover the amount that the royalty owners were allowed to recover from the proceeds of the land.

6   *Id.*

7

8       Likewise, just last year, the court in *Town of New Hartford v. Connecticut Resources*

9   *Recovery Authority*, 291 Conn. 433, 453 (Conn. 2009), rejected the defendant's argument that

10  the plaintiffs could not recover for unjust enrichment due to a contract between the parties.  In

11  *Town of New Hartford*, the court followed *Klein* and required the defendant to pay back portions

12  of a "tip fee" it had collected from the plaintiffs under the theory of unjust enrichment.  The "tip

13  fee," by contract, was based, in part, on the "cost of operations" of the defendant's facility.  *Id.* at

14  602.   However, during several years, the defendant's "cost of operations" went up due, in part,

15  to a loan it made to Enron, which Enron defaulted on, causing the plaintiffs' contractually

16  negotiated "tip fee" to go up to cover some of those losses.  *Id.* at 605-06.  Later, when some of

17

18  the loan proceeds were recovered from a third party, the court found that, despite the existence of

19  a contract, the defendant would be unjustly enriched if it were permitted to keep all of the

20  settlement monies when it had already passed many of its losses along to the plaintiffs.  *Id.* at

21  611.  Accordingly, the claim for unjust enrichment to recover the settlement monies, which were

22  not contemplated by the contract, was not precluded.  These two cases stand for the proposition

23  that separately negotiated and undisclosed compensation not specifically covered by the parties'

24  contract can, under appropriate circumstances, serve as a basis for a claim of unjust enrichment.

25

26     In this case, even the Vision 767 Memorandum, which Vision mistakenly argues is a

27  contract between the parties, would not preclude the Class's equitable claims, because it only

28

316779.2                                            17

covers the Class's payment of wages and not the payment of hazard pay. As was the case in *Klein* and *Town of New Hartford*, the hazard pay at issue in this case is separate and distinct from wages and is part of a separately negotiated and undisclosed third-party agreement, which was separate and apart from the wages of the Air Bridge Program flight deck and cabin crews. Vision itself treated these two items as separate when it identified them as two separate cost line items in its bid proposals that it submitted to the upstream contractors (Email from Meers to Dagget, Ex. 7, at CAI 27885-91) and in invoicing for the Air Bridge Program costs of operations separately identified cost line items for cabin and flight deck crew salary and hazard pay (Vision's Phase III Air Bridge Program invoices, Ex. 9). So did the contractors holding the direct contracts with the United States government when they submitted their contract bids to the United States government. (CSC Phase II Bid Proposal, attached as Ex. 15, at CSC 0033, 0035, 0036); (CSC Phase III Bid Proposal, attached as Ex. 16, at CSC 0042, 0057); (McNeil Aircraft Quote, Ex. 8.) Thus, because the circumstances surrounding Vision's collection of the hazard pay it received on behalf of its flight deck and cabin crews operating the Air Bridge Program flights render its retention unjust, any limited contract regarding the wages received by the Air Bridge Program flight deck and cabin crew would not preclude the Class's unjust enrichment claim.

> b. *Any contractual relationship between Vision and the Class would not affect the Class's claims for conversion or money had and received.*

Even assuming that the amount Vision decided to pay Hester constituted an employment contract, which it is not, it still would not bar the Class's claims for conversion or money had and received. For example, in *Countrywide Home Loans, Inc. v. Thitchener*, 192 P.3d 243, 248 (Nev. 2008), the plaintiff pled claims for breach of contract and conversion seeking to recover under the same set of operative facts. There, the jury awarded the plaintiff damages on its breach of contract and conversion claims. *Id.* The Nevada Supreme Court held, however, that the

316779.2                                     18

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088

award for breach of contract and conversion were duplicative awards because they were "alternative or different theories of relief based on the same facts." *Id.* Thus, Nevada courts have recognized that the existence of a contract between a plaintiff and a defendant does not preclude a conversion claim seeking to recover under the same set of facts. *Id.*; *see also Maki v. Chong*, 119 Nev. 390, 391 (Nev. 2003) (recognizing that plaintiff in prior action against defendant obtained default judgment for breach of contract and conversion where defendant converted plaintiff's settlement check and used the funds to purchase the real property subject to the instant lawsuit). Thus, any employment contract between Vision and the Class would not preclude the Class's conversion claim.

Similarly, the Class's claim for money had and received is not precluded by the existence of a contract between Vision and Hester. For example, the court in *Leete v. Pacific Mill & Mining Co.*, 88 F. 957, 969 (D. Nev. 1898), held that the plaintiff stated a cause of action for money had and received even though there was a contract between the parties that did not require the defendant to return the money recovered from the government to the plaintiff. *See also Kondas v. Washoe County Bank*, 271 P. 465, 466 (Nev. 1928) (holding that plaintiff prevailed on claim for money had and received even where a verbal contract existed between plaintiff and defendant); *Cannon v. Cannon*, 868 N.E. 2d 636, 643-44 (Mass. App. Ct. 2007) (holding that plaintiff prevailed on claim for money had and received even though the beneficiary form failed to identify plaintiff as a beneficiary). Thus, in Nevada, the existence of a contract between the plaintiff and the defendant is not a bar to a party's claim for money had and received or conversion.[11]

---

[11] Vision argues that the Class's claim for money had and received "is duplicative of a claim for unjust enrichment, and, therefore, should be dismissed on the same grounds." [D.E. 141, at 17 n.5] To the extent that Vision is arguing that dismissal is required because these counts are duplicative, it is mistaken. The basis for Vision's argument is an article in American Jurisprudence, which cites only the case of *Hall v. Humana Hosp. Daytona Beach*, 686 So. 2d 653 (Fla. 5th DCA 1996). Nevada courts, by contrast, have long recognized an independent claim for money had and received. *See Brown v. Federal Savings and Loans*, 777 P.2d 361, 364 (Nev. 1983) (discussing that jury did not find defendant liable under theory of money had and received); *Carter v. Barbash*, 417 P.2d 154, 156 (Nev. 1966) (granting plaintiff's claim for "money had and received"). Indeed, even Florida courts are divided on the subject, with some holding that, unlike unjust enrichment, money had and received is a remedy at law. *See Willis v. Fowler*, 136 So. 358, 368 (Fla. 1931); *Sharp v. Bowling*, 511 So. 2d 363, 364 (Fla. 5th DCA 1987). Accordingly, the Class's

**E.    EACH COUNT OF THE CLASS'S COMPLAINT STATES AN INDEPENDENT CLAIM FOR RELIEF UPON WHICH SUMMARY JUDGMENT CAN BE GRANTED**

Vision argues that the Class's claim for constructive trust fails because it is a remedy and does not apply since the Class cannot succeed on any of its other claims.[12]   *Id.*   Vision's argument, however, is incorrect because Nevada courts have long recognized a claim for constructive trust as a separate and independent cause of action.  *See Bemis v. Estate of Bemis*, 114 Nev. 1021 (Nev. 1998); *McKissick v. McKissick*, 560 P.2d 1366, 1369 (Nev. 1977). For example, in *McKissick v. McKissick*, 560 P.2d 1366, 1369 (Nev. 1977), the court treated plaintiff's claim for constructive trust as an independent cause of action and imposed a constructive trust over the proceeds from an insurance policy. Accordingly, the Class's claim for constructive trust is an independent cause of action and the Court can impose a constructive trust over the hazard pay that Vision collected for the benefit of the Class.

## III.    CONCLUSION

Vision has failed to carry its burden and identify any facts in dispute that would preclude the Class's Motion.  In fact, Vision does not even dispute any of the Class's undisputed material facts but rather attempts to ignore the record evidence by focusing solely on Hester's knowledge of certain facts in the Complaint.  Hester's knowledge, however, is immaterial and Vision's argument that there is an employment contract between the Class and Vision is incorrect as a matter of fact and law. For the foregoing reasons, the Class is entitled to summary judgment.

claim for money had and received is not duplicative of its unjust enrichment claim.

[12] Vision argues that the Class cannot succeed on its claim for constructive trust because there was no confidential relationship between it and Vision. [D.E. 141, at 18 n.6.]  As explained more fully in the Class's Response to Vision's Motion for Summary Judgment [D.E. 143 at 27-29], Vision's argument, which relies on non-binding California law, is incorrect.  A confidential relationship exists where the parties have a duty of trust and confidence to each other. *Lindt v. Webber*, 134 P. 461, 466 (Nev. 1913). Nevada Courts have recognized that an employment relationship between employer and employee is based on "trust and confidence." *Lindt*, 134 P. at 461. In *Lindt*, the employee was sent to investigate a prospective mining interest on behalf of his employer and the employee purchased the land from the seller in order to re-sell it to his employer at a higher price. *Id.*  The court held the employee's scheme was a "flagrant . . . breach of confidence" because the employee, used the trust and confidence of the employment relationship to take advantage of the employer. *Id.* at 466. Similarly, a confidential relationship exists between Vision and the Class based on the trust and confidence of the employment relationship, *see id.* at 461, through which the flight deck and cabin crews risked their lives. (Deposition of Davis Pritchard, attached as Ex. 17, at 37-38.)  As was the case in *Lindt* under similar facts, Vision's scheme to deprive the Class of its hazard pay is a "flagrant . . . breach of confidence," because Vision used the trust and confidence of the employment relationship in order to exploit its employees. *See* 134 P. at 466.

316779.2                                                                                                      20

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088

Respectfully submitted,

/s/ Brett E. von Borke
Kenneth R. Hartmann, (FBN 664286)
Brett E. von Borke (FBN 0044802)
KOZYAK TROPIN & THROCKMORTON, P.A.
2525 Ponce de Leon, 9th Floor
Coral Gables, Florida 33134
Telephone: (305) 372-1800
Fax: (305) 372-3508

/s/ Ross Goodman
GOODMAN LAW GROUP
ROSS GOODMAN, (NBN 7722)
520 South Fourth Street
Las Vegas, Nevada 89101
(702) 383-5088

/s/ David M. Buckner
David M. Buckner
David M. Buckner (FBN 60550)
GROSSMAN ROTH, P.A.
2525 Ponce de Leon, 11th Floor
Coral Gables, Florida  33134
Telephone: (305) 442-8666

**COUNSEL FOR PLAINTIFF AND THE CLASS**

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true copy of the foregoing has been served via the Court's

CM/ECF system on September 9, 2010 on Harold P. Gewerter, Esq., 2705 Airport Drive, North

Las Vegas, Nevada 89032.

By: /s/ David M. Buckner
David M. Buckner