HAROLD P. GEWERTER, ESQ.                              E filed: September 14, 2010
Nevada Bar No. 499
HAROLD P. GEWERTER, ESQ., LTD.
2705 Airport Drive
North Las Vegas, Nevada  89032
Telephone: (702) 382-1714
Fax: (702) 382-1759
Email: harold@gewerterlaw.com
Attorney for Defendant

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| GERALD HESTER, on behalf of himself and all others similarly situated,<br><br>               Plaintiff,<br><br>       vs.<br><br>VISION AIRLINES, INC.,<br><br>               Defendant. | **CASE NO: 2:09-CV-00117-RLH-RJJ**<br><br><br><br>**DEFENDANT VISION AIRLINES, INC.'S OBJECTION TO ORDER OF MAGISTRATE JUDGE ENTERED ON SEPTEMBER 9, 2010** |

        Defendant VISION AIRLINES, INC. ("VISION"), by and through its attorney of record, HAROLD P. GEWERTER, ESQ., of the law firm of HAROLD P. GEWERTER, ESQ., LTD., pursuant to Local Rule IB 3-2, hereby submits the following Objection to Order of Magistrate Judge Entered on September 9, 2010.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1    This Objection is made and based upon the pleadings and papers on file herein, the

2    points and authorities attached hereto, and the arguments of counsel that may be entertained at

3    the date and time of any hearings permitted by the Court in this matter.

4    DATED this 14th day of September, 2010.

5

6    HAROLD P. GEWERTER, ESQ., LTD.

7    _____/s/  Harold P. Gewerter, Esq._____

8    HAROLD P. GEWERTER, ESQ.
     Nevada Bar No. 499

9    2705 Airport Drive
     North Las Vegas, Nevada  89032

10   Attorney for Defendant

11

12   **POINTS AND AUTHORITIES**

13   **I.**

14   **FACTS**

15   Defendant VISION has, since 2005, provided airline services to a contractor or

16   subcontractor of a federal government entity.  Plaintiff HESTER is a former VISION pilot who

17   claims that Defendant VISION failed to give him specific sums of "hazard pay" allegedly

18   required for flights into and out of Baghdad, Iraq and Kabul, Afghanistan.

19   Plaintiff HESTER does not allege that Defendant VISION breached any contract with

20   him, or seek to recover as a third-party beneficiary of a contract between others.  Nor does he

21   suggest that Defendant VISION violated any state or federal wage-and-hour laws.  Instead,

22   Plaintiff HESTER contends that Defendant VISION was required to provide specifically-

23   defined and separately-identified hazard pay simply because the United States Government

24   allegedly intended its prime contractors to require downstream subcontractors to make such

25   payments.  But no subcontract to which Defendant VISION is or was a party ever required

26   Defendant VISION to make any specific amount of hazard-duty-related payments.  Nor did

27   Defendant VISION's at-will compensation agreement with Plaintiff HESTER.

28

Because no law or contract creates such an obligation, Plaintiff HESTER fashions a handful of unjust enrichment-type claims, which he then wraps in the imagery of war and patriotic duty. Many of Plaintiff's allegations are fundamentally wrong. Plaintiff HESTER'S rights and Defendant VISION's obligations were defined by contract. And where, as here, there are valid and enforceable contracts, Plaintiff's equitable claims are unavailable as a matter of law.

## BACKGROUND

Defendant VISION hired Plaintiff HESTER in September 2006 to pilot flights into and out of Baghdad and Kabul. (Plaintiff's Complaint, ¶ 1.). In consideration for his duties, Defendant VISION offered Plaintiff HESTER a defined compensation package that Plaintiff HESTER accepted.[1] Plaintiff HESTER does not contend that Defendant VISION failed to pay him any agreed upon sum. Defendant VISION had similar agreements with other crew members. Defendant VISION terminated Plaintiff's employment on or about August 4, 2008.

Plaintiff HESTER contends that he (and other VISION crew members) should have received "hazard pay" for all flights originating or terminating in Baghdad or Kabul, id. at ¶¶ 6, 57, presumably in addition to the defined compensation package to which he had agreed. Plaintiff HESTER grounds his "right" to receive "hazard pay" in the purported language of certain contracts – contracts to which he was not a party and, in some cases, to which Defendant VISION was not a party.

Plaintiff HESTER alleges that Capital Aviation, Inc. ("Capital") in 2004 contracted with the U.S. Government to provide airline service into and out of Baghdad and Kabul. (Id. at ¶ 25.) Thereafter, Capital subcontracted that service with Defendant VISION. (Id. at ¶ 28.) The Complaint alleges that the Capital Subcontract required specific sums of "hazard pay" to be given to Defendant VISION employees. (Id. at ¶ 30.)

The Complaint further alleges that in mid-2006 the U.S. Government changed primary contractors and executed a contract with McNeil Technologies ("McNeil") with the same terms

---

[1]      Hester's rate of compensation was materially above market to account for the risks associated with flying into Iraq and Afghanistan.

as the Government's contract with Capital.  (<u>Id.</u> at ¶ 51.)  Like Capital, McNeil subcontracted the service with VISION.  (<u>Id.</u>)  Plaintiff HESTER maintains that the terms of the McNeil Subcontract were substantively the same as the Capital Subcontract and that it too required Defendant VISION to make specific hazard duty payments to its employees. (<u>Id.</u>)

The Capital and McNeil Subcontracts, however, show that Plaintiff's key allegations are false.[2]  The dispositive facts are as follows:  (1) VISION <u>never</u> agreed with Capital or McNeil to give Plaintiff HESTER specific hazardous duty payments over and above his regular compensation; and (2) Plaintiff HESTER received all wages and benefits that he and Defendant VISION agreed he would receive.

Plaintiff HESTER filed his second Motion to Compel in January 2010 after his initial Motion to Compel was denied.   The Magistrates Order on the Second Motion to Compel was

---

[2]    For example:

- Plaintiff contends that the Government contracted directly with Capital. (Complaint, ¶¶ 25-27.)   But it actually contracted with Computer Sciences Corporation, which then subcontracted with Capital.  Vision was not a party to either of these contracts.

- Plaintiff contends that the Capital and McNeil Subcontracts require <u>specific</u> amounts of hazard pay. (Complaint, ¶¶  30, 34-36, 51.)   Neither, however, mentions any specific sum of such payments to Vision employees.  Under the Capital Subcontract, Capital's payments to Vision were based on the number of rotations flown per week.  (<u>See</u> Exhibit 1.)  Under the McNeil Subcontract, McNeil paid Vision a fixed amount per flight and a variable sum to reimburse for fuel costs.   (<u>See</u> Exhibit 2.)   The McNeil Subcontract nowhere even mentions "hazard pay." (<u>Id.</u>)

- Plaintiff claims that in <u>2006</u> Vision contracted with McNeil to provide air transport services under the same terms and conditions as the Capital Subcontract.  (Complaint, ¶ 51.)    Vision, however, did not contract with McNeil until <u>2007</u>, and at that time it executed a new and different contract from the one it had with Capital.  (<u>See</u> Exhibit 2 .)

- Plaintiff claims to know the contents of the agreements between the U.S. Government and its prime contractors (here, CSC and McNeil).  (Complaint, ¶¶ 18-27, 51.)   At least parts of these documents are "classified," however, so it is very unlikely that Plaintiff ever saw them.

issued on September 9, 2010.   Between the time of the filing of the Motion to Compel and the Magistrates Order, thousands of pages of discovery were produced and the discovery period lapsed.   Plaintiff HESTER has taken the Magistrates Order to mean that discovery is re opened even noticing depositions in this matter.  Prior to the Magistrates Order in this matter, Plaintiff HESTER had acknowledged that the remaining items which had not been produced were limited to less than three (3) weeks of flight logs which Defendant VISION has been unable to locate.

Defendant VISION has produced the entire personnel files for the prospective class members (minus medical/financial/background/confidential information as agreed upon between the parties) which production included the files for one hundred thirty five (135) employees or former employees. These personnel files alone constitute three thousand five hundred forty one (3,541) pages.  (See Exhibits "1","2" and "3" attached hereto).

Defendant VISION has also produced payroll records from May 5, 2005 to 2007 in paper format (the only format in which Defendant VISION has the records for this time period) and in electronic form for the period from 2007 to current.

Defendant VISION has also produced its contracts with McNeil Technologies, CSC and Capital Aviation along with records concerning payments relating thereto.  Defendant VISION does not have nor can it produce copies of any contracts with the United States Government.

Defendant VISION has produced a complete list of potential class members (including approximately thirty (30) whom Defendant VISION believes to be beyond the scope of the class member definition) including last known addresses and their positions when employed by Defendant VISION.   Defendant VISION relied on ADP payroll records when it came up with the initial list. The report was generated directly out of ADP Boeing payroll from 2005-2009. The amended class list came out as a result of information coming from sources other than ADP. It has come to our attention that payroll during the infancy period of Boeing was paid through several methods. Some are directly hired full time employees while some started as contract labor then became full time employees. Some others remain contract employees. During this time, Defendant VISION started to switch from MAS payroll system to ADP payroll. After the switch, other flight crew members were keyed in Boeing ADP payroll while

others were recorded under Defendant VISION Air ADP payroll. This explains why there is a discrepancy from the first class list (from Boeing ADP payroll) and the amended list (from MAS, Vision Air ADP payroll and contract employees).

Many of the last names found by Plaintiff HESTER which were later added to the list are not believed to fall within the definition of Class Member in this action, however, since the only payroll spreadsheets for some of this time period were paper copy only they show as employees on some of the early payroll printouts sent to Plaintiff HESTER. Out of an abundance of caution, these potential class member names and addresses were delivered to Plaintiff HESTER for their class notification mailing.

Defendant VISION has produced the flight log data matched with the individual payroll records with the exception of less than three (3) weeks of flight logs which Defendant VISION has been unable to locate.

## I.

## THE LOCAL RULES PROVIDE THE PARTIES WITH THE RIGHT TO CHALLENGE THE MAGISTRATE'S ORDER IN THIS MATTER

Rule IB 3-2 of the Local Rules of Practice of the United States District Court for the District of Nevada, provides in relevant part as follows:

> "(a)   Any party wishing to object to the findings and recommendations of a magistrate judge made pursuant to LR IB 1-4, IB 1-5, IB 1-6, IB 1-7 and 1-8, shall, within ten (10) days from the date of service of the findings and recommendations, file and serve specific written objections together with points and authorities in support thereof.  The opposing party shall within ten (10) days thereafter file and serve points and authorities opposing the objections.  .  .  ."

In this case, Magistrate Robert J. Johnston entered and served his Order granting Plaintiff's Motion to Compel.  Defendant VISION has responded with the instant Objections and Opposition in accordance with IB 3-2.

## II.

## THE MAGISTRATE MIS-APPLIED RULE 26

**A.     The Discovery Standard.**


 Rule 26 of the Federal Rules of Civil Procedure reads in pertinent part:

(b) DISCOVERY SCOPE AND LIMITS.

>    (1)    *Scope in General.* Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense — including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).

>    (2)    *Limitations on Frequency and Extent.*

>>        (A)    *When Permitted.* By order, the court may alter the limits in these rules on the number of depositions and interrogatories or on the length of depositions under Rule 30. By order or local rule, the court may also limit the number of requests under Rule 36.

>>        (B)    *Specific Limitations on Electronically Stored Information.* A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

>>        (C)    *When Required.* On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:

(i)    the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

(ii)   the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

(iii)  the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

(3)    *Trial Preparation: Materials.*

(A)   *Documents and Tangible Things.* Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:

(i)    they are otherwise discoverable under Rule 26(b)(1); and

(ii)   the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

(B)   *Protection Against Disclosure.* If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

(C)   *Previous Statement.* Any party or other person may, on request and without the required showing, obtain the person's own previous statement about the action or its subject matter. If the request is refused, the person may move for a court order, and Rule 37(a)(5) applies to the award of expenses. A previous statement is either:

(i)    a written statement that the person has signed or otherwise adopted or approved; or

(ii)   a contemporaneous stenographic, mechanical, electrical, or other recording — or a transcription of it — that recites substantially verbatim the person's oral statement.

(4)     *Trial Preparation: Experts.*

     (A)     *Expert Who May Testify.* A party may depose any person who has been identified as an expert whose opinions may be presented at trial. If Rule 26(a)(2)(B) requires a report from the expert, the deposition may be conducted only after the report is provided.

     (B)     *Expert Employed Only for Trial Preparation.* Ordinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial. But a party may do so only:

        (i)     as provided in Rule 35(b); or

        (ii)    on showing exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means.

     (C)     *Payment.* Unless manifest injustice would result, the court must require that the party seeking discovery:

        (i)     pay the expert a reasonable fee for time spent in responding to discovery under Rule 26(b)(4)(A) or (B); and

        (ii)    for discovery under (B), also pay the other party a fair portion of the fees and expenses it reasonably incurred in obtaining the expert's facts and opinions.

(5)     *Claiming Privilege or Protecting Trial-Preparation Materials.*

     (A)     *Information Withheld.* When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:

        (i)     expressly make the claim; and

        (ii)    describe the nature of the documents, communications, or tangible things not produced or disclosed — and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

     (B)     *Information Produced.* If information produced in discovery is subject to a claim of privilege or of

protection as trial-preparation material, the party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The producing party must preserve the information until the claim is resolved.

**B.      Defendant VISION has provided legally sufficient answers to Plaintiff HESTER'S Requests for Production.**

  **1.      Defendant VISION'S Responses were proper and adequate.**

  Plaintiff HESTER served Plaintiff's First Requests for Production on April 3, 2009. Defendant VISION served its Response to the Plaintiff's First Requests for Production on May 13, 2009 which response contained over three hundred seventy (370) pages of material.  (See Defendant Vision's Response to Plaintiff's First Request for Production, attached hereto as Exhibit "4").  It is clearly noted in Defendant VISION'S Responses which documents have been produced in response to Plaintiff HESTER'S Requests.

  Defendant VISION then served two (2) supplemental sets of Responses containing an Employee Handbook and in excess of an additional four hundred thirteen (413) pages of documents.  (See Exhibits "1" and "2" respectively.)

  On July 9, 2009, Plaintiff HESTER filed a Motion to Compel.  The Court heard oral argument on Plaintiff's Motion to Compel [D.E. 49] and Defendant's Counter Motion to Compel [D.E. 59] on October 23, 2009.  At that hearing, the Court denied Plaintiff's Motion to Compel and Defendant's Counter Motion to Compel. [D.E. 82.]  In denying Plaintiff's Motion to Compel, the Court instructed the parties to engage in additional discussions in order to resolve their outstanding discovery disputes and stated that Plaintiff HESTER'S requests were overly broad and a fishing expedition.   The Court specifically stated "I would never go there.  I would never approve that.  I'd call that overbroad, ambiguous and burdensome. ….that's

1    fishing to me.  You give me a sly look to the side and slant your eye, but that's fishing.  Okay?"

2    Transcript hearing from October 23, 2009, page 71, line 7-9.

3         Following the Motion hearing, Plaintiff HESTER produced a narrowed list of requests

4    which Defendant VISION responded to.

5         **2.    Defendant VISION has provided production pursuant to the agreed upon**

6    **narrowed requests.**

7         Defendant VISION has produced the entire personnel files for the prospective class

8    members  (minus  medical/financial/background/confidential  information  as  agreed  upon

9    between the parties) which production included the files for one hundred thirty five (135)

10   employees or former employees. These personnel files alone constitute three thousand five

11   hundred forty one (3,541) pages.  (See Exhibits "1","2" and "3" attached hereto).

12        Defendant VISION has also produced payroll records from May 5, 2005 to 2007 in

13   paper format (the only format in which Defendant VISION has the records for this time period)

14   and in electronic form for the period from 2007 to current. (See Facsimile attached hereto as

15   Exhibit "5").

16        Defendant VISION has also produced its contracts with McNeil Technologies, CSC and

17   Capital Aviation along with records concerning payments relating thereto.

18        Defendant VISION has produced a complete list of potential class members (including

19   approximately thirty (30) whom Defendant VISION believes to be beyond the scope of the

20   class member definition) including last known addresses and their positions when employed by

21   Defendant VISION.   Defendant VISION relied on ADP payroll records when it came up with

22   the initial list. The report was generated directly out of ADP Boeing payroll from 2005-2009.

23   The amended class list came out as a result of information coming from sources other than

24   ADP payroll. It has come to our attention that payroll during the infancy period of Boeing was

25   paid through several methods. Some are directly hired full time employees while some started

26   as contract labor then became full time employees. Some others remain contract employees.

27   During this time, Defendant VISION started to switch from MAS payroll system to ADP

28   payroll. After the switch, other flight crew members were keyed in Boeing ADP payroll while

     others were recorded under Defendant VISION Air ADP payroll. This explains why there is a

discrepancy from the first class list (from Boeing ADP payroll) and the amended list (from MAS, Vision Air ADP payroll and contract employees).

Many of the last names found by Plaintiff HESTER which were later added to the list are not believed to fall within the definition of Class Member in this action however, since the only payroll spreadsheets for some of this time period were paper copy only they show as employees on some of the early payroll printouts sent to Plaintiff HESTER.   Out of an abundance of caution, these potential class member names and addresses were delivered to Plaintiff HESTER'S counsel for their class notification mailing.

Plaintiff HESTER'S narrowed requests and Defendant VISION'S responses thereto are as follows:

**Request 1:**

We request that you provide us with all documents and communications that relate to the contract negotiations for each phase of the Airbridge Program (including the McNeil phase(s)) that mention or reference hazard pay.   In addition, we request that you provide us with all documents and communications that reference or mention hazard pay with regard to compensation for the Airbridge Program employees.

**Production to Request 1:**

While continuing to note that Defendant VISION believes this request to be overly broad and irrelevant (the issue in this case is the amount actually paid to Defendant VISION by the contractors not any numbers that may have been discussed in coming to a final amount), Defendant VISION has produced items responsive to this request.   A number of the documents which were delivered in Defendant VISION'S first batch of   responsive production were bid documents as was discussed with the Court at the first Motion to Compel hearing.    In addition, subsequent material provided from employee personnel files and payroll materials have been responsive to this overbroad and irrelevant request.

**Request 2:**

Vision has previously agreed to provide us with all contacts between or among any of   Vision, Capital Aviation, CSC, and McNeil that relate to the Airbridge Program, including any modifications and addendums to those contracts.

**Production to Request 2:**

VISION has produced the contracts between Vision, Capital Aviation, CSC, and McNeil which exist and are in VISION'S possession.

**Request 3:**

Vision has previously agreed to provide us with any bids or proposals that relate to any  or all of the contracts between or among any of Vision, Capital Aviation, CSC, or McNeil for the Airbridge Program.

**Production to Request 3:**

While continuing to note that Defendant VISION believes this request to be overly broad and irrelevant (the issue in this case is the amount actually paid to Defendant VISION by the contractors not any numbers that may have been discussed in coming to a final amount), Defendant VISION has produced items responsive to this request.   A number of the documents which were delivered in Defendant VISION'S first batch of   responsive production were bid documents as was discussed with the Court at the first Motion to Compel hearing.    In addition, subsequent material provided from employee personnel files and payroll materials have been responsive to this overbroad and irrelevant request.

**Request 8:**

Vision has previously agreed to provide us with its compensation records in native electronic format for the employees that worked on the Airbridge Program for the entire class period, including the supporting materials submitted to ADP.

**Production to Request 8:**

Defendant has produced payroll records from May 5, 2005 to 2007 in paper format (the only format in which VISION has the records for this time period)

and in electronic form for the period from 2007 to current. This includes the entire class period.

**Request 9:**

We request that Vision provide us with documents sufficient to identify the date of each flight Vision operated under the Airbridge Program, the departure and destination point of each flight, the total amount of flight time for each flight, the crew members on board each flight, and each crew member's official position for the flight.

**Production to Request 9:**

Some of the material responsive to this request is contained in the provided employee files.   Defendant has produced the entire personnel files for the prospective class members (minus medical/financial/background confidential information as agreed upon between the parties) which production included the files for 135 employees or former employees. These personnel files alone constitute 3,541 pages.  Defendant VISION is in the process of compiling flight log data matched with the individual payroll records.  Defendant VISION, in its letter of February 2, 2010 (Letter from Harold Gewerter to David Buckner, attached hereto as Ex. L) stated that this compiled material would be delivered to Plaintiff on approximately March 10, 2010.  These materials are expected to fully comply with this request.

**Request 10:**

Vision has previously agreed to provide us with its accounting records for the Airbridge Program, which as we understand reflect payments received from the upstream contractors involved in the Airbridge Program.  In addition, we request that Vision provide us with the wire transfer receipts for payment made to Vision for operating the Airbridge Program and the invoices, in unredacted form, that Vision submitted to the Airbridge Program's upstream contractors.

**Production to Request 10:**

        Defendant VISION has produced items responsive to this request.   A number of the documents which were delivered in Defendant VISION'S first batch of responsive production were invoices as was discussed with the Court at the first Motion to Compel hearing.

**Request 11:**

        We request that Vision provide us with all documents and communications that relate  to, reference, were prompted by, or were in response to Carson's May 14, 2007, e-mail to William Vigil where Carson inquired about Vision's obligation to pay its Airbridge Program employees hazard pay and Vigil's response indicating that Vision was obligated to pay the Airbridge Program employees hazard pay.

**Production to Request 11:**

        Defendant VISION in its first batch of production produced included the email to Vigil and the response thereto. Defendant VISION has no additional documents and communications that relate to, reference, were prompted by, or were in response to Carson's May 14, 2007, e-mail to William Vigil where Carson inquired about Vision's obligation to pay its Airbridge Program employees hazard pay and Vigil's response indicating that Vision was obligated to pay the Airbridge Program employees hazard pay that exist and are in its possession.

**Request 12:**

        We request that Vision provide us with the employee pay scales for each phase of the  Airbridge Program, any and all communications related to determining compensation for Airbridge Program employees, and any and all documents or communications provided or made by Vision to the Airbridge Program employees regarding compensation.

**Production to Request 12:**

Defendant has produced payroll records from May 5, 2005 to 2007 in paper format (the only format in which VISION has the records for this time period) and in electronic form for the period from 2007 to current. This includes the entire class period.

In addition, some of the material responsive to this request is contained in the provided employee files.  Defendant has produced the entire personnel files for the prospective class members (minus medical/financial/background confidential information as agreed upon between the parties) which production included the files for 135 employees or former employees. These personnel files alone constitute 3,541 pages.  Defendant VISION is in the process of compiling flight log data matched with the individual   payroll     records.     Defendant VISION, in its letter of February 2, 2010 (Letter from Harold Gewerter to David Buckner, attached hereto as Ex. L) stated that this compiled material would be delivered to Plaintiff on approximately March 10, 2010.

**Request 15:**

All of Vision's employee personnel files for any and all employees involved in any way with flights to or from Iraq or Afghanistan.

**Production to Request 15:**

Defendants have produced the entire personnel files for the prospective class members (minus medical/financial/background confidential information as agreed upon between the parties) which production included the files for 135 employees or former employees. These personnel files alone constitute 3,541 pages.

Defendant VISION has produced the entire personnel files for the prospective class members (minus medical/financial/background confidential information as agreed upon between the parties) which production included the files for one hundred thirty five (135) employees or former employees. These personnel files alone constitute three thousand five hundred forty one (3,541) pages.  (See Exhibits "1","2" and "3" attached   hereto).

Defendant VISION has also produced payroll records from May 5, 2005 to 2007 in paper format (the only format in which Defendant VISION has the records for this time period) and in electronic form for the period from 2007 to current.  (See Facsimile  attached hereto as Exhibit "5").

Defendant VISION has also produced its contracts with McNeil Technologies, CSC and Capital Aviation along with records concerning payments relating thereto.  Defendant VISION does not have nor can it produce copies of any contracts with the United States Government.

Defendant VISION has produced a complete list of potential class members (including approximately thirty (30) whom Defendant VISION believes to be beyond the scope of the class member definition) including last known addresses and their positions when employed by Defendant VISION.   Defendant VISION relied on ADP payroll records when it came up with the initial list. The report was generated directly out of ADP Boeing payroll from 2005-2009. The amended class list came out as a result of information coming from sources other than ADP payroll. It has come to our attention that payroll during the infancy period of Boeing was paid through several methods. Some are directly hired full time employees while some started as contract labor then became full time employees. Some others remain contract employees. During this time, Defendant VISION started to switch from MAS payroll system to ADP payroll. After the switch, other flight crew members were keyed in Boeing ADP payroll while others were recorded under Defendant VISION Air ADP payroll. This explains why there is a discrepancy from the first class list (from Boeing ADP payroll) and the amended list (from MAS, Vision Air ADP payroll and contract employees).

Many of the last names found by Plaintiff HESTER which were later added to the list are not believed to fall within the definition of Class Member in this action, however, since the only payroll spreadsheets for some of this time period were paper copy only they show as employees on some of the early payroll printouts sent to Plaintiff HESTER. Out of an abundance of caution, these potential class member names and addresses were delivered to Plaintiff HESTER for their class notification mailing.

Defendant VISION has produced the flight log data matched with the individual payroll records with the exception of less than three weeks of flight logs which Defendant has been unable to locate.

## CONCLUSION

Given the above, it is clear that Defendant VISION has produced all the material it is required to under Rule 26 and therefore the Magistrate's Order is incorrect and should overturned by the District Court.

DATED this 14th day of September, 2010.

HAROLD P. GEWERTER, ESQ., LTD.

_/s/  Harold P. Gewerter, Esq._
HAROLD P. GEWERTER, ESQ.
Nevada Bar No. 499
2705 Airport Drive
North Las Vegas, Nevada  89032
Attorney for Defendant