**Ross C. Goodman, Esq., Nevada State Bar No. 7722**
GOODMAN LAW GROUP
520 South Fourth Street
Las Vegas, Nevada 89101
(702) 383-5088
(702) 385-5088 (Facsimile)

**Brett E. von Borke, Esq., Florida State Bar No. 44802**
KOZYAK TROPIN & THROCKMORTON, PA
2525 Ponce de Leon, 9th Floor
Miami, Florida 33134
(305) 372-1800
(305) 372-3508 (Facsimile)

**David M. Buckner, Florida State Bar. No. 60550**
Grossman Roth, P.A.
2525 Ponce de Leon, Suite 1150
Miami, Florida  33134
(305) 442-8666
(305) 285-1668 (Facsimile)

**ATTORNEYS FOR PLAINTIFF  & THE CLASS**

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

GERALD HESTER, on behalf of himself
and all others similarly situated,

                    Plaintiff,

v.

VISION AIRLINES, INC.,

                    Defendant.

Case No.:  2:09-CV-00117-RLH-RJJ

**THE CLASS'S RESPONSE IN OPPOSITION TO VISION'S OBJECTION TO THE ORDER OF MAGISTRATE JUDGE ENTERED ON SEPTEMBER 9, 2010, GRANTING  THE CLASS'S RENEWED MOTION TO COMPEL**

Plaintiff Gerald Hester and the Class hereby file the Class's Response in Opposition to

Vision's Objection to the Order of Magistrate Judge Entered on September 9, 2010 ("Objection")

[D.E. 158].  The Class filed the Renewed Motion to Compel ("Renewed Motion") [D.E. 93] on

January 20, 2010, after Vision refused to produce the documents that it agreed to produce to the

Class, unredacted and in native format.  That agreement is reflected in letters from Class counsel

317230                                    1

dated November 20, 2009, and December 21, 2009. The Class on April 9, 2010, supplemented the Renewed Motion with the Supplement in Support of its Renewed Motion to Compel ("Supplement") [D.E. 106]. The record demonstrates that Vision has not engaged in a good faith search for and production of documents, even after the Class significantly narrowed the scope of those requests. Therefore, the Court should affirm the Magistrate Judge's Order granting the Class's Renewed Motion.

## I.   **INTRODUCTION**

Magistrate Judge Johnston correctly granted the Class's Renewed Motion, as Vision has failed to provide the Class with all of the documents that it agreed to produce.

- Vision falsely claims that the only outstanding discovery is three weeks of missing flight logs. [D.E. 158 at 5.] Instead, the Class is missing, among other things, all of the Air Bridge Program flight logs for 2010, at least 24 written modifications to the McNeil Technologies, Inc. ("McNeil") contract (Deposition of David Meers, attached as Ex. 1, at 417), communications and e-mails relating to the McNeil Phase of the Air Bridge Program, Vision's Aircraft Quote that it submitted to McNeil for the McNeil Phase (which identifies hazardous duty pay for the flight deck and cabin crews on a per hour and annualized basis, attached as Ex. 2), and James Maguire's (Vision's former Director of Flight Operations) calculations of Vision's 2007 pay scale (which he testified did not include hazard pay) (Deposition of James Maguire, attached as Ex. 3, 47-52, 97-98.) The Class has been unable to determine what other documents it does not have because Vision has refused to provide a qualified and properly informed Rule 30(b)(6) witness with regard to its search for and production of documents. The Class has never "acknowledged that the remaining items which had not been produced were limited to less than three weeks of flight logs." (*Compare* D.E. 158 at 5, *with* Letter from David Buckner to Harold Gewerter, dated Feb. 2, 2010, attached as Ex. 4; Letter from David

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088

Buckner to Harold Gewerter, dated March 12, 2010, attached as Ex. 5; Letter from David Buckner to Harold Gewerter, dated March 25, 2010, attached as Ex. 6; e-mail from David Buckner to Harold Gewerter, dated Aug. 26, 2010, attached as Ex. 7; Letter from David Buckner to Harold Gewerter, dated Sept. 9, 2010, attached as Ex. 8.)

- Vision fails to inform the Court that it has redacted all of the pertinent financial information from the McNeil and Capital Aviation contracts, much of the financial information from the limited invoices (redacted August 26, 2006 Vision Invoice, attached as Ex. 9) that it did produce to the Class, and nearly all of the financial information from the Price Basis for the Air Bridge Program that Vision submitted to McNeil for the McNeil Phase (Vision's redacted Price Basis to McNeil, attached as Ex. 10).

- Vision has also unilaterally redacted documents relating to Phases II and III of the Air Bridge Program, including the amounts Vision billed for hazard pay.  (*See* Ex. 9.) Furthermore, Vision has waived its claim to any privilege that these redactions may be based on because it has failed to provide the Class with a privilege log. *See Burlington Northern & Santa Fe Railway Co. v. U.S. Dist. Co. for the Dist. of Mont.,* 408 F.3d 1142, 1147 (9th Cir. 2005).

- Vision claims that it produced an e-mail regarding Vision's failure to pay over the hazardous duty pay that it collected on behalf of the Air Bridge Program employees. [D.E. 158 at 15.] However, this again is simply not true.  Instead, the Class obtained this document through a third party subpoena.  (*See* E-mail from Daniel Carson to William Vigil, attached as Ex. 11); (Subpoena of Daniel Carson, attached as Ex. 12.)  That email (attached as Ex. 11), between Vision's Director of Flight Operations, Daniel D. Carson, and CSC's Program Manager, William Vigil ("Vigil"), states:

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088

317230

3

Carson (Vision): Question: we are not and have not paid any hz duty pay. What is our exposure in audit or contract obligations

Vigil (CSC): Are you kidding me? We have been charged Hazardous duty pay throughout the program, Phase 3 alone would be in excess of $1.25 million. This has to be addressed immediately as it could be a disaster, either retroactive or refunded.

## II.   **RELEVANT FACTS**

Vision cuts and pastes the unsupported allegations from several of its other pleadings into this one in an attempt to continue arguing what it feels are the merits of this case, but those allegations have no bearing on its abject failure to conduct a good faith search for responsive documents, as it had previously agreed, and its affirmatively bad-faith redactions of documents with no support in law. Rather, Vision is attempting to divert the Court's attention from its bad-faith conduct, and the Class will not waste the Court's time arguing the merits of the case, as they are more than adequately addressed in the Class' Motion for Summary Judgment [D.E. 135] and substantiated by the records the Class has been required to obtain from third-parties in this case, which the Class incorporates herein by reference. The central question here is whether Vision complied with its discovery obligations. It did not, despite repeated demands by the Class.

Nor will the Class rehash the whole history of Vision's discovery abuses.[1] For present purposes, and given that the time before trial is quite short, the relevant history begins with Vision's late 2009 agreement with the Class, embodied in the Class' letters of November 20, 2009, and December 21, 2009, to produce certain categories of documents.[2] The parties held a number of conferences in late 2009 regarding Vision's production of documents. In order to expedite Vision's production, counsel for the Class agreed to hold a number of the Class's

[1] Vision's abusive discovery tactics are well-documented. (*See, e.g.,* [ D.E. 49, 50, 54, 56, 60, 61, 64, 93, 96, 99, 106, 110, 117.].)

[2] The entire history of discovery in this matter, at least through March 2010, is set forth in the Renewed Motion [D.E. 93] and the Supplement [D.E. 106], which the Class incorporates by reference.

317230

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088

4

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088

requests in abeyance and to significantly narrow its remaining requests for production of documents. Counsel for Vision and Class counsel discussed each request and how each request could be narrowed, and the parties ultimately agreed on a series of narrowed requests ("Narrowed Requests"), which are memorialized, along with Vision's agreement, in letters dated November 20, 2009, and December 21, 2009. (*See* Letter from David Buckner to Harold Gewerter dated November 20, 2009, attached as Ex. 13); (Letter from David Buckner to Harold Gewerter dated December 21, 2009, attached as Ex. 14.)[3]

Specifically, Vision agreed that it would produce all documents responsive to Narrowed Requests 1, 2, 3, 8, 9, 10, 11, 12, and 15. (*See* December 21, 2009 letter, Ex. 14.) Counsel for Vision also agreed to produce Vision's documents responsive to the Narrowed Requests on a rolling basis, and that Vision would complete its production by no later than January 7, 2010. (*See id.*) As set forth in the Renewed Motion [D.E. 93], Vision produced nothing by that date, and the documents that it produced after that date are neither complete nor fully responsive. Instead, this is what Vision produced prior to the second set of Rule 30(b)(6) depositions:

- January 12, 2010 – Vision produced what it claimed was a list of all Class members and the employment files for twenty-three Class members.

- January 15, 2010 – Vision provided Class counsel with an amended class list after numerous deficiencies were identified by Class counsel in Vision's purported Class list.

- January 18, 2010 – Vision produced spreadsheets of its payroll records for the payroll cycles from July 31, 2007 through December 31, 2009, with considerable gaps in time and missing sheets.

---

[3] Vision's verbatim recitation of Rule 26 is irrelevant. Vision agreed to produce these documents, then did not, and now wants to argue, apparently, that it should not have agreed in the first place. It is far too late for that, especially considering that the case is set for the trial calendar scheduled to begin on October 4, 2010.

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088

- January 22, 2010 – Vision produced some of the Class member employee files. However, the employee files did not include all Class members.

- March 10, 2010 – Vision re-Bates stamped and re-produced to the Class thousands of pages of documents produced by the Class to Vision in 2009, despite being directed by the Court that this did not constitute a good faith search and was insufficient to satisfy its obligations. (March 2, 2010, Hearing Tr., attached as Ex. 15, at 25-27.) Vision also produced some additional documents, but many of these were heavily redacted by Vision prior to production.[4]

Thereafter, Class counsel deposed Vision's 30(b)(6) corporate representatives, William Acor ("Acor"), Chief Executive Officer, David Meers ("Meers"), Executive Vice President, and Brian Daggett ("Daggett"), Air Bridge Program Manager, on March 16, 17, and 18, 2010. As discussed at length in the Supplement, Vision's 30(b)(6) representatives were unprepared to testify with regard to the efforts Vision undertook to search for and produce documents responsive to the Class's Narrowed Requests, even though this topic was clearly identified in the Class's Notice. (Plaintiff's Notice of 30(b)(6) Deposition, attached as Ex. 16.) Specifically, topic eight in the Class's Notice stated:

> Vision's efforts and procedures relating to or undertaken in the course of responding to document requests in this litigation, including: (a) the identities of all individuals from whom documents were requested and/or collected, as well as the identities of individuals who may be in possession of documents but from whom such documents have not yet been collected, (b) the locations from which documents were collected, and the locations from which documents have not yet been collected, (c) the decisions concerning whom to ask for documents and where to look for documents, (d) the review by attorneys, employees, or agents undertaken in determining the responsiveness of individual documents, (e) the internal monitoring of compliance with document requests, and (f) the physical production of documents and things.

---

[4] Vision produced some additional flight logs and payroll data after the 30(b)(6) depositions in small amounts, but no other documents. Further, the flight logs Vision produced for 2010 relate to its flights to Cuba, and not the Air Bridge Program. This fact has been brought to Vision's attention, but Vision has done nothing to cure this problem.

317230

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088

Furthermore, topic ten stated, "Vision's efforts and procedures relating to and undertaken in the course of collecting documents in response to Plaintiff's document requests." Vision's 30(b)(6) witnesses, however, could only testify as to what action they took in their individual capacities to gather responsive documents.

This, however, is not the first time Vision produced unprepared 30(b)(6) corporate representatives to testify in this litigation. Vision produced two unprepared 30(b)(6) representatives for deposition on September 11, 2009, who were unable to testify about what efforts Vision undertook to search for and produce responsive documents. After putting up five different 30(b)(6) corporate representatives, Vision has still failed to produce a witness capable of testifying on this subject, despite Vision's affirmative duty to adequately prepare and educate its 30(b)(6) witnesses to testify knowledgably on the topics identified in the Class's Notice. This failure to adequately educate its 30(b)(6) witnesses on these topics constitutes a failure to appear and is itself sanctionable under Fed. R. Civ. P. 37(d). *See Black Horse Lane Assoc., L.P. v. Dow Chem. Corp.*, 228 F.3d 275, 304 (3d Cir. 2000) (affirming monetary sanction).

## III.   ARGUMENT

Despite Vision's failure to produce appropriate witnesses, what has become overwhelmingly clear in the depositions of Meers, Acor, Daggett, and Maguire is that Vision has not engaged in a good faith effort to gather and produce documents responsive to the Narrowed Requests. In particular, Vision's corporate representatives confirmed, as set forth in the Renewed Motion, that: (1) there are additional documents responsive to the Class's Narrowed Requests that Vision withheld and failed to produce; (2) Vision unilaterally redacted pertinent information, without any basis in privilege, from its documents, even though the Court has entered a protective order [D.E. 34] in this case; and (3) Vision and its personnel may have deleted, lost, or otherwise failed to preserve relevant documents. The Magistrate Judge has

317230

properly ordered Vision to comply with its discovery obligations [D.E. 152], and his Order should be affirmed by the Court.

      1.     *Vision Has Failed To Search For And Produce All Responsive Documents*

      Vision's 30(b)(6) witnesses confirmed that Vision has documents responsive to the Class's Narrowed Requests that it has not produced in this litigation. In particular, Vision has not produced all of the modifications to its contract with McNeil, and has not produced its bid proposals or any of the communications surrounding its bid for the Air Bridge Program Contract that it provided to McNeil. Furthermore, Vision has not produced a single communication between it and McNeil that relates to the Air Bridge Program Contract, even though Vision's 30(b)(6) witnesses have testified to the existence of such documents and communications.

      Vision failed to produce to the Class all of the modifications to its contract with McNeil. Specifically, Narrowed Request No. 2 states, "Vision has previously agreed to provide us with all contracts between or among any of Vision, Capital Aviation, CSC, and McNeil that relate to the Airbridge program, including any modifications and addendums to those contracts." (Dec. 21, 2009 letter, Ex. 14.) With respect to its contract with McNeil, Vision produced only a redacted version of the McNeil contract with no addenda or modifications. However, Meers testified that there were at least "22 or 24" modifications to the McNeil contract (Meers Dep., Ex. 1, at 417), and that those modifications are currently in Vision's possession (*id.* at 418). Meers went on to testify that the McNeil contract is "an incrementally funded contract . . . [s]o it's been modified a number of times to increase funding." (*Id.* at 417.) These funding modifications are significant because each time the overall funding of the McNeil contract is increased the amount of the individual line items also increase, one of which is for hazard pay for Vision's employees. (*See* Ex. 2, Vision's Aircraft Quote to McNeil, which was obtained through a litigated subpoena served on McNeil.) Even though Vision agreed to produce these documents it has failed to provide them to the Class.

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088

317230

8

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2ⁿᵈ Floor
Las Vegas, Nevada 89101
(702) 383-5088

1    Furthermore, Meers testified that Vision submitted bid proposals to McNeil which it has

2    failed to produce to the Class.  Vision previously agreed in Narrowed Request No. 3 to "provide

3    us with any bids or proposals that relate to any or all of the contracts between or among any of

4    Vision, Capital Aviation, CSC, or McNeil for the Airbridge Program." (Dec. 21, 2009 letter, Ex.

5    14.)   Meers stated that Vision prepared at least one, if not more, bid proposals that it submitted

6    to McNeil for the Air Bridge Program Contract. (Meers Dep., Ex, 1. at 420.)  Moreover, Meers

7    testified that there were communications between McNeil and Vision that related to Vision's bid

8    proposal for the Air Bridge Program Contract. (*Id.*)  Despite promising to provide the Class with

9    these documents, Vision has failed to produce them.   An example of one of those documents

10   Vision submitted to McNeil, which the Class obtained from McNeil, identifies amounts of

11   hazard pay for the Air Bridge Program employees on a per hour and annualized basis. (*See* Exs.

12   2, 17.)

13       In the affidavit that McNeil provided to the Class as a result of the Class's litigation

14   efforts in the Eastern District of Virginia, Vigil, McNeil's Vice President of Aviation Services,

15   notes that Vision "submitted an 'Aircraft Quote' for the services it provides under the

16   Subcontract" with McNeil.   Vigil explains that the Aircraft Quote "contained certain Cost

17   Elements, which include but are not limited to flight deck crew salary, flight deck crew benefits,

18   flight deck crew hazardous duty bonus, cabin crew salary, cabin crew benefits, and cabin crew

19   hazardous duty bonus." (Affidavit of McNeil, attached as Ex. 17, ¶ 5.)  Vision has never

20   produced this document to the Class despite its obvious relevance.  Further, Meers has stated that

21   "[t]here had to be more than one" submission by Vision to McNeil, (Meers Dep., Ex. 1, at 420),

22   even though the only one that Vision provided in discovery was heavily redacted. (*Id.* at 418-19)

23   (acknowledging that Vision has a copy without blackouts).

24       Moreover, Vision made little or no effort to actually comply with its discovery

25   obligations.  Daggett testified that he was only asked to provide "payroll information, personnel

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2ⁿᵈ Floor
Las Vegas, Nevada 89101
(702) 383-5088

files, and flight logs," and that was all he searched for, even though he is the Air Bridge Program Manager. (Daggett Dep., Ex. 18, at 230-31.)  And, despite the fact that he claims never to have received a copy of the Class's requests for production of documents, (*id* at 219), he nonetheless unilaterally decided that the e-mails on his computer and Blackberry were not relevant to this case. (*Id.* at 243-245.)  He therefore made no effort to gather, produce, or preserve them, and could not recall being instructed by counsel or anyone else that he needed to do so.  (*Id.*)  James Maguire, Vision's former director of flight operations, testified at his deposition on June 28, 2010, that he came up with the pay scale for flight deck and cabin crew imposed by Vision on the Air Bridge Program employees on October 1, 2007. (Maguire Dep., Ex. 3, at 46-50.)  He also testified that he intentionally did not include amounts for hazard pay in that pay scale. (*Id.* at 50-51, 96-98.)   Maguire stated that he did these computations on spreadsheets on his computer, which is still in his possession, and that he was willing to provide them. (*See id.* at 50.)  However, he could not recall providing any of those spreadsheets in discovery, nor was he asked to copy them for or provide them to anyone (*see id.* at 48-49), and these spreadsheets have never been produced by Vision.  Maguire also testified that he primarily used his Vision e-mail account to communicate with Vision's pilots and flight crews. (*See id.* at 39-41.)  It is not clear that any of these e-mails have been produced, and certainly one of the most relevant of those, from former Air Bridge Program pilot Davis Pritchard ("Pritchard") to Maguire inquiring about hazard pay, has not been produced by Vision. (*See* Deposition of Davis Pritchard, attached as Ex. 19, at 45-51.)  Vision has properly been ordered to conduct a good faith search for the documents it agreed to produce and must now do so.

        2.     *Vision Has Unilaterally, And Improperly, Redacted Documents Prior To Production*

       Vision unilaterally redacted pertinent and responsive information from its documents even though the Court has entered a valid protective order in this case and Vision has asserted,

1   and can assert, no valid privilege allowing it to redact this information.  Despite repeated

2   requests for the basis for Vision's redactions, Vision has provided none.  Indeed, Vision has

3   never produced a privilege log in this matter.  Moreover, Vision's 30(b)(6) witnesses testified

4   that Vision has the non-redacted versions of the documents in its immediate possession and

5   control.  (Meers Dep., Ex. 1, at 473-74.)  Vision has removed or obscured a great deal of

6   pertinent information and in many cases left the Class with indecipherable bits and pieces of

7   information.

8

9       Courts have consistently held that it is not appropriate for parties to unilaterally redact

10  information from original documents without a recognized basis in privilege, which has been

11  appropriately logged.   For example, in *Howell v. City of New York*, No. CV-06-6347

12  (ERK)(VVP), 2007 WL 2815738, at *2 (E.D.N.Y. Sept. 25, 2007), the court held that "it is not

13  the practice of this court to permit parties to selectively excise from otherwise discoverable

14  documents those portions they deem not to be relevant.  To do so would require a finding of

15  'good cause' based on a need 'to protect a party or person from annoyance, embarrassment,

16  oppressions, or undue burden or expense.'"  Furthermore, the practice of unilateral redaction is

17  disfavored because:

18

19          The practice frequently gives rise to suspicion that relevant material harmful to
            the producing party has been obscured.  It also tends to make documents
20          confusing and difficult to use.  All to[o] often, the practice results in litigation of
            collateral issues and in camera review of documents by the Court, with the result
21          that the time of both counsel and the Court is wasted.  These drawbacks ordinarily
            outweigh the minimal harm that may result from disclosure of some irrelevant
22          material.

23  *Meditronic Sofamor Danek, Inc. v. Michelson,* No. 01-2373-GV, 2002 WL 33003691, at

24  *5 (W.D. Tenn. Jan 20, 2002) (quoting *In re Medeva Sec. Litig.,* 1995 U.S. Dist. LEXIS

25  21895, at *8 (C.D. Cal. May 30, 1995)).

26      Here, Vision has redacted pertinent and relevant evidence without offering any

27

28  explanation.  (Vision First Quarter Fixed Costs Invoice, attached as Ex. 20.)   For

317230                                                11

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088

example, an examination of the document below reveals how Vision has redacted relevant and pertinent information from some of its invoices.[5]

**Vision Airlines**
Phase III Air Bridge
Enter Data In Yellow Blocks

| Month of | January, 2007 | February, 2007 | March, 2007 | |
|---|---|---|---|---|
| Program Billing | Vision Total | Vision Total | Vision Total | Total |
| Aircraft (2) Lease/Debt Service | $ | $ | $ | $ |
| Insurance - Hull and Liability Standard | $ | $ | $ | $ |
| Flight Deck Crew | $ | $ | $ | $ |
| Flight Deck Crew Benefits | $ | 384.62 $ | $ | $ |
| Hazardous Duty Bonus | $ | 88.46 $ | $ | $ |
| Crew Training | $ | 120.19 $ | $ | $ |
| Cabin Crew | $ | 207.69 $ | $ | $ |
| Cabin Crew Benefits | $ | 47.77 $ | $ | $ |
| Hazardous Duty Bonus | $ | 80.13 $ | $ | $ |
| General & Administration - Vision | $ | $ | $ | $ |
| G & A Vision Discount | $ | $ | $ | $ |
| Total Fixed Cost Per Hour | $ | $ | $ | $ |
| Total Weekly Fixed Cost | $ | $ | $ | $ |

Vision's redactions are pervasive within the few McNeil phase documents produced to the Class. As evidenced below, Vision has redacted certain pertinent information from its invoices during the McNeil phase of the Air Bridge Contract. (*See* Exemplar of Vision redacted Phase IV invoice, attached as Ex. 21.) All of the black boxes on the document below are redactions Vision made to the invoices that it produced to the Class. (Meers Dep., Ex. 1, at 474.)

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088

---

[5] Vision's redactions are entirely random and wholly inconsistent. Why Vision would redact the amounts for "hazardous duty bonus" for January and March, but leave them for February is utterly baffling and reflects the lack of any basis in privilege for these redactions.

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088



        The financial information is relevant to the Class's claims because it impacts the
Class' theory of liability, and Vision has raised it as a defense in its depositions.  For
example, Acor testified in his deposition that if the Class added up the line items for
employee pay and hazardous duty pay, that the Class would be able to determine the total
amount of money Vision's employees were entitled to receive under the Air Bridge
Program Contract.  (*See* Deposition of William Acor, attached as Ex. 22 at 600-01.)
Furthermore, Vision uses its redactions as an offensive weapon to prevent the Class from
understanding the documents it has produced in this litigation.  For example, the
document below is so heavily redacted that Vision has completely obscured what the

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2ⁿᵈ Floor
Las Vegas, Nevada 89101
(702) 383-5088

document is or how it relates to the litigation.  (Vision Price Basis, Ex. 10.)  While the Class is able to determine that "hazardous duty bonus" for the "flight crew and cabin crew" were part of Vision's price basis, it was not until the Class obtained the Vigil Affidavit from McNeil (Ex. 17) that the Class was able to begin to surmise the period of time to which this document relates.  The Class still does not know most of what is under these redactions.



Moreover, Vision has not even attempted to advance any showing of "good cause" as to why it should be permitted to redact these documents, because it cannot. *Howell*, No. CV-06-6347 (ERK)(VVP), 2007 WL 2815738 at *2.  Vision has also failed to provide the Class with a privilege log in this matter that would reflect the basis for Vision's unilateral redactions.  Accordingly, Vision was properly ordered to produce the non- redacted version of all of its responsive documents.

317230

14

3.     *Vision May Have Failed To Properly Preserve Relevant Documents*

As noted above, Vision's five 30(b)(6) representatives have all been unprepared for their roles as corporate representatives.  They reviewed few, if any, documents and spent even less time, and in some instances no time, meeting with counsel prior to their depositions.  This has made it exceedingly difficult for the Class to determine what responsive documents Vision has, and what efforts Vision has made to collect and produce those documents.  One thing that has become more evident over time is that Vision may have destroyed or lost significant amounts of relevant documents.  Vision should be made to account for those documents, and sanctioned if it cannot.

The inadequacy of Vision's production, and statements made by some of its witnesses about the destruction or loss of documents, raise serious concerns about spoliation.  Topic twelve in the Class's Notice covers, "[l]aws, rules, regulations that govern Vision's retention or preservation of documents relating to its dealings with CSC, Capital Aviation, McNeil, or any branch, division, or agency of the United States government that relate to the Air Bridge or the Air Bridge Contract, and Vision's efforts to comply with such laws, rules, or regulations."  The purpose of this topic was to help the Class identify what types of documents Vision was required to retain as a government subcontractor and what types of documents Vision should have produced to the Class – which, in large part, Vision has failed to do.  Vision's contract with Capital Aviation stated that "invoice documentation shall be made available at any time from the date of this Agreement until three (3) years after 'final' payment hereunder." (Capital Aviation Contract, attached as Ex. 23 at 2.)  Final payment was not made until sometime in 2009.  Therefore, Vision should still have these documents available to produce to the Class.  Despite the noticing of this topic for deposition, however, none of Vision's witnesses were able to testify knowledgably on this topic.  (*See* Daggett Dep., Ex. 18, at 24); (Meers Dep., Ex. 1, at 281); (Acor Dep., Ex. 22, at 536.)

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088

317230

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088

1    At the outset of this case, Class counsel sent a letter to Vision reminding it of its

2  obligations to preserve relevant documents. (*See* Letter from David Buckner to Vision dated

3  January 21, 2009, attached as Ex. 24.) Despite this, Vision seems to have taken its obligations

4  less than seriously. For example, Acor testified that he reads and deletes his email, and did so

5  with regard to e-mails relevant here, even though his company has been in litigation since at least

6  2008. (*See* Acor Dep., Ex. 22, at  596.) Another Vision 30(b)(6) witness testified that Vision

7  has no document retention policy. (*See* Deposition of Thomas Dale Miller, attached as Ex. 25, at

8  68.)[6]

9

10    Finally, Vision claims that the Class is attempting to reopen discovery. Despite the irony

11  of this statement, coming as it does from the party that refused to comply with its discovery

12  obligations during the discovery period, it is simply not true. After the Magistrate Judge entered

13  his Order on the Renewed Motion to Compel, the Class sent Vision a letter outlining some of the

14  types of documents that it is aware of and which have not been produced, or which were

15  produced by Vision in redacted form. The Class also noticed a Rule 30(b)(6) deposition for the

16  day of calendar call in this matter, as all counsel will be in Las Vegas, for the limited purpose of

17  exploring the steps that Vision has taken since the granting of the Renewed Motion to gather and

18  produce responsive documents. (*See* Letter from David Buckner dated September 10, 2010 and

19  30(b)(6) Notice for September 29, 2010, attached as Composite Ex. 26.)

20

21

22  ---

[6] In order to impose sanctions under Rule 37(b)(2)(A), there must be a violation of a Court Order compelling
23  discovery, Fed. R. Civ. P. 37(b)(2)(A), and a showing that the violation was willful. *Hyde & Drath v. Baker*, 24
F.3d 1162, 1166 (9th Cir. 1994). In *Chrysler Corp. v. Carey*, 186 F.3d 1016, 2021 (8th Cir. 1999), the court entered
24  an order striking the defendants' answer after reviewing the evidence of "widespread abuse of the discovery
process." During the course of discovery, the *Chrysler* court entered various orders compelling discovery from the
25  Defendants, *id.* at 120 n.5., however defendants refused to turn over responsive documents, claiming that "[n]o such
documents exist."[6] *Id.* at 1019. At trial, where Chrysler introduced forty-two letters and correspondence responsive
26  to the discovery requests, the court reviewed the record as a whole and found the defendants engaged in systematic
conduct that evidenced "blatant disregard of the Court's orders and the discovery rules." *Id.* at 1020. Likewise, in
27  *Payne v. Exxon Corp.*, 121 F.3d 503- 505-06 (9th Cir. 1997), the Ninth Circuit upheld the lower court's order
striking the plaintiff's complaint based on evidence demonstrating "the refusal of a plaintiff to comply with three
28  separate orders wherein the record is full of evasion and dilatory tactics, and the discovery requested is relevant to
the fact issue."

IV.   **CONCLUSION**

The Magistrate Judge properly ordered Vision to comply with its discovery obligations. The Class respectfully requests that the Order be affirmed, and Vision instructed to complete its production as ordered.  The company has had nine months to get its discovery house in order, and given the proximity of trial, no further delays should be permitted.

Respectfully submitted,

KOZYAK TROPIN & THROCKMORTON, P.A.
Counsel for the Plaintiff
2525 Ponce de Leon, 9th Floor
Coral Gables, Florida 33134
Telephone: (305) 372-1800
Fax: (305) 372-3508

GOODMAN LAW GROUP
520 South Fourth Street
Las Vegas, Nevada 89101
(702) 383-5088
(702) 385-5088 (Facsimile)

By: /s/ David M. Buckner
    David M. Buckner
    Florida Bar No. 60550
    Brett E. von Borke
    Florida Bar. No. 0044802

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true copy of the foregoing has been served via the Court's CM/ECF system on September 15, 2010 on Harold P. Gewerter, Esq., 2705 Airport Drive, North Las Vegas, Nevada 89032.

By: /s/ David M. Buckner
    David M. Buckner

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088

317230

17