Ross C. Goodman, Esq., Nevada State Bar No. 7722
GOODMAN LAW GROUP
520 South Fourth Street
Las Vegas, Nevada 89101
(702) 383-5088
(702) 385-5088 (Facsimile)

Brett E. von Borke, Esq., Florida State Bar No. 44802
KOZYAK TROPIN & THROCKMORTON, PA
2525 Ponce de Leon, 9th Floor
Miami, Florida 33134
(305) 372-1800
(305) 372-3508 (Facsimile)

David M. Buckner, Florida State Bar. No. 60550
Grossman Roth, P.A.
2525 Ponce de Leon, Suite 1150
Miami, Florida 33134
(305) 442-8666
(305) 285-1668 (Facsimile)

**ATTORNEYS FOR PLAINTIFF & THE CLASS**

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

GERALD HESTER, on behalf of himself
and all others similarly situated,

    Plaintiff,

v.

VISION AIRLINES, INC.,

    Defendant.

Case No.: 2:09-CV-00117-RLH-RJJ

### THE CLASS'S THIRD MOTION IN LIMINE

The Class, through undersigned counsel, hereby files its Third Motion in Limine. The Class filed its Renewed Motion to Compel on January 20, 2010 [D.E. 93] and its Supplement in Support of its Renewed Motion to Compel on April 9, 2010 [D.E. 106]. The Magistrate Judge granted the Class's Renewed Motion to Compel on September 9, 2010 [D.E. 152], which Vision appealed [D.E. 158]. The District Court affirmed the Magistrate Judge's Order on September 21, 2010 [D.E. 172], compelling Vision to produce the documents that Vision previously agreed to produce to the Class on or before January 7, 2010. Now that Vision has been ordered by the

1

Court to produce these documents, the Class anticipates that the Class's expert will be required to supplement his expert report based on the documents that Vision has been ordered to produce. Accordingly, the Class requests that the Court find that the Class's expert report was timely disclosed and supplemented.[1] Also, the Class requests that the Court find that any supplement of its expert report resulting from Vision's expected production of documents is timely under Rule 26.

## ARGUMENT

The Class's expert report was timely disclosed because it was served on Vision by the April 29, 2010 deadline set forth in the Court's Scheduling Order [D.E. 103 at 1] and seasonably supplemented as required by Fed. R. Civ. P. 26(e)(1)(B). Moreover, the only reason the Class's expert report had to be supplemented after the initial disclosures was because Vision refused to provide the Class with the documents that it previously agreed to produce, later refused to produce, and has now been ordered by the Court to produce. [D.E. 172.] Thus, if Vision suffered any prejudice, which it has not, it is of its own making and a direct result of its failure to comply with its discovery obligations. Even though Vision never made any attempt to depose the Class's expert prior to last week, Vision has now requested that the Class make its expert available for deposition on the eve of trial. Despite the considerable inconvenience any such deposition would cause the Class as it prepares its case for trial, the Class has agreed to make its expert available for deposition.

---

[1] The Magistrate Judge denied the Class's Second Request of Extension of Time to Extend the Rule 26(a)(2) Disclosures on September 20, 2010 [D.E. 167] after granting the Class's Renewed Motion to Compel [D.E. 152]. Presumably, the Magistrate Judge denied the Second Request of Extension of Time to Extend the Rule 26(a)(2) Disclosures because the Class provided its expert report by the deadline set by the Court's Scheduling Order [D.E. 103].

A. **THE CLASS'S EXPERT REPORT WAS TIMELY DISCLOSED AS REQUIRED BY THE COURT'S SCHEDULING ORDER AND SEASONABLY SUPPLEMENTED AS REQUIRED BY FED. R. CIV. P. 26(E)(1)(B) AND FED. R. CIV. P. 26(E)(1)(A)**

Pursuant to this Court's Scheduling Order, Rule 26(a)(2) expert disclosures were due on or before April 29, 2010. [D.E. 103 at 1.] The Class moved to extend the disclosure deadline for its expert report, a motion in which Vision joined until it realized that it could obtain an unfair advantage from its denial. [D.E. 105.] Vision then opposed the Class's Second Motion, which motion was necessitated by Vision's refusal to produce documents or otherwise comply with its discovery obligations. [D.E. 111.] Having received no order on the Second Motion from the Magistrate Judge, the Class served the preliminary report of its expert, Barry E. Mukamal ("Mukamal"), on April 29, 2010 ("Preliminary Report"), as required by the Court's Scheduling Order. (Email from Brett von Borke to Harold Gewerter with attached Preliminary Report dated April 29, 2010, Composite Ex A.) Mukamal reserved "the right to supplement [the Preliminary Report] based on subsequent discovery, the review of other materials provided by [Vision] or third parties, or other evidence and/or positions advanced or disclosed by Vision." (Rule 26(a)(2) Affidavit, Ex. A, at 2 ¶ 7.) The Preliminary Report was limited to an analysis of Phases II and III of the Air Bridge Program because Vision failed to provide the Class with the documents that it previously agreed to produce and which were necessary to perform the analysis with respect to Phase I and IV ("McNeil Phase") of the Air Bridge Program. (Preliminary Report, Ex. A, at 1.)

After the Class served its Preliminary Report, Vision continued to refuse to comply with its discovery obligations. On September 9, 2010, the Magistrate Judge granted the Class's Renewed Motion to Compel [D.E. 93], filed on January 20, 2010, which the Class supplemented after additional discovery abuse by Vision. (*See* Class's Supplement in Support of the Class's Renewed Motion to Compel [D.E. 106], filed April 9, 2010.) Vision objected to the Magistrate Judge's Order compelling Vision to produce the documents Vision previously agreed to produce

to the Class. [D.E. 158.] The Class responded [D.E. 160] and the Court on September 21, 2010, denied Vision's objection and affirmed the Magistrate Judge's Order. [D.E. 172.] However, because the Magistrate Judge's Order did not come during the original discovery period set by the Court, the Class was required to obtain third-party discovery from McNeil Technologies, Inc. ("McNeil") in order to allow its expert to complete his analysis.

Anticipating that Vision would continue to refuse to produce relevant and responsive documents that were required for Mukamal to complete his analysis, the Class on April 1, 2010, served a subpoena for documents and deposition testimony on McNeil in the Eastern District of Virginia. (*See* McNeil Subpoena, attached as Ex. B.) McNeil refused to produce documents or a witness, arguing in large part that the Class should obtain these documents and testimony from Vision. (*See* McNeil Mtn. to Quash, attached as Ex. C.) The Class was required to engage in extensive and time-consuming litigation with McNeil in the Eastern District of Virginia, but was ultimately able to obtain some of the information that it needed (though not nearly the complete picture of the McNeil Phase of the Air Bridge Program that is certainly available to Vision). (*See* Dkt., McNeil Mtn. to Quash, attached as Ex. D.)

Through the litigation in the Eastern District of Virginia, the Class was able to obtain an additional document and an Affidavit from William Vigil ("Vigil"), the Vice President of McNeil's Aviation Services, as corporate representative of McNeil. (*See* Affidavit of McNeil Technologies, attached as Ex. E.) The Class received this additional discovery on July 9, 2010, which finally permitted the Class's expert to perform the damages analysis with respect to the McNeil Phase. On July 19, 2010, a mere ten days after the Class received the discovery from McNeil, the Class served Vision with Mukamal's Supplemental Affidavit ("Supplemental Report"), along with the relevant discovery obtained from McNeil. (Email from Brett von Borke to Harold Gewerter dated July 19, 2010, attached as Ex. F.) Of course, Vision had a version of the document produced by McNeil all along, but produced it only in this format, making analysis

impossible:



Moreover, the Aircraft Quote produced by McNeil was created by Vision and was submitted by Vision to McNeil. (McNeil Aff., Ex. E, at ¶ 5.) However, despite submitting this quote to McNeil as its Aircraft Quote for Phase IV of the Air Bridge Program, which was covered by one of the categories of documents Vision agreed to produce to the Class, Vision has never produced this document in this litigation, and has produced only the redacted version above, which is clearly distinguishable in form from the version provided by McNeil. (Aircraft Quote, Ex. E.) The Aircraft Quote Vision submitted to McNeil identifies an annualized amount for Flight Deck Crew and Cabin Crew hazardous duty bonus of $647,500 and $350,000 and a per hour fee of $109 and $59, respectively. (*Id.*) This information was clearly relevant and essential to Mukamal's calculation of damages for the McNeil Phase.

The invoices that Vision produced for the McNeil Phase similarly thwarted Mukamal's analysis, as all of the black boxes below are Vision's unilateral redactions:



See also [D.E. 110, Ex. A] (Class's expert noting that Phase IV analysis could not be completed at that time because Vision had not produced its invoices in their non-redacted form, bid proposal, or contract modifications).

Accordingly, the Class's Preliminary Report was timely disclosed pursuant to the Court's Scheduling Order, as it was provided to Vision's counsel on April 29, 2010, and the Supplemental Report was disclosed promptly after the Class obtained the third-party discovery necessary to enable its expert to complete the damages analysis with respect to the McNeil Phase. *GenSci OrthoBiologics v. Osteotech, Inc.*, No. CV-99-10111-MRP, 2001 WL 36239743, at *12 (C.D. Cal. Oct. 18, 2001) (denying motion in limine to exclude supplemental expert report where expert report was based on new information and disclosed "relatively soon" after the information necessary to complete the report was discovered); *Fontenot v. Digital Equip. Corp.*, 962 F. Supp. 1032, 1035-36 (N.D. Ill. 1996) (permitting supplemental disclosure after expert disclosure deadline passed because there was no bad-faith or intent to frustrate justice on behalf of disclosing party); *see also* F. R. Civ. P. 26(e)(1)(B) (allowing supplementation of expert and

other disclosures "as ordered by the court"). Mukamal should be permitted to further supplement his report and affidavit once the Class receives the documents covered by its Renewed Motion to Compel ("Renewed Motion") [D.E. 93] and its Supplement in Support of its Renewed Motion to Compel ("Supplement") [D.E. 106], which the Court granted [D.E. 172], including the non-redacted versions of the documents above and those like them. To hold otherwise would permit Vision to profit from its bad-faith discovery tactics.

Moreover, the thrust of the Supplemental Report is that Vision collected hazard pay during the McNeil Phase that it did not pay over to any of its Air Bridge Program employees. This fact is undisputed and corroborated by Vision. As this Court has noted, Vision's former director of flight operations and current Vision executive, James Maguire ("Maguire"), testified that in developing Vision's compensation scheme for the Air Bridge Program employees during the McNeil Phase, he decided not to pay those employees any hazard pay as part of their salary. (*See* Deposition of James Maguire, attached as Ex. G, at 96-98); Order on Motions for Summary Judgment [D.E. 159 at 5.] Thus, one of the core findings of the Supplemental Report was already known to Vision well in advance of its disclosure. *See id.* at 98; *cf.* Fed. R. Civ. P. 26(e)(1)(A) (no supplemental disclosures are required where the additional information has "otherwise been made known to the other parties during the discovery process"). Vision has suffered no prejudice due to the timing of the Supplemental Report, and even if it did, that prejudice is entirely of its own making, by virtue of its failure to produce the documents to the Class that were necessary to complete the Phase IV analysis.

Vision is trying to profit from its obstructive discovery tactics. (*See* Response to Mtn. for Summary Judgment [D.E. 141] at 6 (claiming that the Class's expert disclosures were untimely, and that Vision had "no opportunity to cross examine or challenge the findings of this un-admitted expert . . ."); (Vision Mtn. in Limine [D.E. 151 at ¶¶ 22, 30.]). Having refused to provide relevant, discoverable documents, and having heavily redacted many of the documents

that it did provide, Vision now wishes to be heard to complain that the Class's expert disclosures were late because the Class was forced to litigate against a third-party in Virginia in order to obtain the documents that Vision previously agreed to produce but later refused. This argument showcases Vision's bad faith, and provides ample support for sanctions, including a jury instruction regarding the presumptions that the jury may draw from Vision's redacted and unproduced documents. [*See* D.E. 145 at 23.] *See also Cyntegra, Inc. v. Idexx Labs., Inc.*, 2007 WL 51993736, at *6 (C.D. Cal. Sept. 21, 2007) (granting adverse inference jury instruction where party failed to preserve or produce documents responsive to opposing party's defenses). The record reflects that the Class timely made and seasonably supplemented its expert disclosures, and although the Class's expert was readily available for deposition during and after the discovery period, and his identity and opinions were well known to Vision, counsel for Vision neither noticed him for deposition nor requested from Class counsel available deposition dates.

In fact, only on September 17, 2010, did Vision for the first time seek to depose the Class' expert, about whom Vision has known since at least April 14, 2010.[2] That is, Vision is demanding that the Class make its expert available two weeks before the start of the trial period in this matter, as counsel for the Class is attempting to prepare to present this case to a jury. Nonetheless, despite Vision's abusive tactics, of which this is yet one more example, the Class agreed to make its expert available on the entirety of the subject matter on which he has opined in reports and affidavits dated April 29, 2010, and July 19, 2010, while reserving the right to supplement once Vision provides the discovery it has been ordered by the Court to produce. (*See* Letter from David Buckner to Harold Gewerter, dated Sept. 20, 2010, attached as Ex. H.)

---

[2] Vision knew the identity of the Class's expert even before disclosure was required by the Court's Scheduling Order. Class Counsel identified Mukamal as the Class's expert at a hearing before Magistrate Judge Johnston on April 14, 2010.

Accordingly, even if Vision had a basis to object to the timeliness of the Class' disclosures (and it does not), Vision has suffered no prejudice.

### B. THE CLASS INTENDS TO SUPPLEMENT ITS EXPERT REPORT AFTER VISION PRODUCES THE DISCOVERY ORDERED BY THE COURT

The Class intends to supplement its expert report once Vision produces documents as ordered by the Court [D.E. 172]. The categories of documents Vision has been ordered to produce in their non-redacted format include but is not limited to Vision's invoices, Air Bridge Program contracts, contract modifications, wire transfer receipts reflecting payment of Air Bridge Program invoices, bid proposals and documents, flight logs, payroll data, and communications related to the Air Bridge Program. The Class would be significantly prejudiced if it was not permitted to supplement its expert report because Vision withheld discovery that it has now been ordered to produce.

### C. VISION'S PRIOR CLAIMS THAT THE CLASS'S EXPERT REPORT WAS UNTIMELY ARE UNTRUE

In Vision's Response to the Class's Motion for Summary Judgment [D.E. 141 at 6] and Vision's Motion in Limine [D.E. 151 at 21], Vision falsely argued (1) that the Class's expert disclosures were untimely; (2) that this Court ruled that the Class's expert report was "inadmissible"; and (3) that Vision had "no opportunity to cross examine or challenge the findings of this un-admitted expert . . ." However, as noted above: (1) the Class timely made and seasonably supplemented its expert disclosures (*see* Ex. A); (2) Vision failed to move to exclude the Class's expert report, has no valid basis to do so, and the Court has entered no order striking the Class's expert report; and (3) although the Class's expert was readily available for deposition during and after the discovery period, and his identity and opinions were well known to Vision, counsel for Vision neither noticed him for deposition nor requested from Class counsel available deposition dates for the Class's expert. It is truly remarkable that Vision believes that this kind of

false statement is appropriate. However, Vision's argument and previous conduct are indicative of the fact that Vision has no intention of complying with the Federal Rules of Civil Procedure unless forced to do so, and provides additional support for the Class' requested jury instruction regarding the presumption that should be applied by the jury given Vision's conduct. [D.E. 145 at 23.]

## CONCLUSION

For the foregoing reasons, the Class requests that the Court find that the Class's expert report was timely disclosed and supplemented. Also, the Class requests that the Court find that any supplement of its expert report resulting from Vision's expected production of documents is timely under Rule 26.

Respectfully submitted,

/s/ Brett E. von Borke
Kenneth R. Hartmann, (FBN 664286)
Brett E. von Borke (FBN 0044802)
KOZYAK TROPIN & THROCKMORTON, P.A.
2525 Ponce de Leon, 9th Floor
Coral Gables, Florida 33134
Telephone: (305) 372-1800
Fax: (305) 372-3508

/s/ Ross Goodman
GOODMAN LAW GROUP
ROSS GOODMAN, (NBN 7722)
520 South Fourth Street
Las Vegas, Nevada 89101
(702) 383-5088
(702) 385-5088 (Facsimile)

/s/ David M. Buckner
David M. Buckner (FBN 60550)
GROSSMAN ROTH, P.A.
2525 Ponce de Leon, 11th Floor
Coral Gables, Florida 33134
Telephone: (305) 442-8666
Fax: (305) 285-1668

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true copy of the foregoing has been served via the Court's CM/ECF system on September 21, 2010, on Harold P. Gewerter, Esq., 2705 Airport Drive, North Las Vegas, Nevada 89032.

By: /s/ David M. Buckner
David M. Buckner