**Ross C. Goodman, Esq., Nevada State Bar No. 7722**
**GOODMAN LAW GROUP**
520 South Fourth Street
Las Vegas, Nevada 89101
(702) 383-5088
(702) 385-5088 (Facsimile)

**Brett E. von Borke, Esq., Florida State Bar No. 44802**
**KOZYAK TROPIN & THROCKMORTON, PA**
2525 Ponce de Leon, 9th Floor
Miami, Florida 33134
(305) 372-1800
(305) 372-3508 (Facsimile)

**David M. Buckner, Florida State Bar. No. 60550**
**GROSSMAN ROTH, P.A.**
2525 Ponce de Leon, Suite 1150
Miami, Florida 33134
(305) 442-8666
(305) 285-1668 (Facsimile)

**ATTORNEYS FOR PLAINTIFF & THE CLASS**

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| GERALD HESTER, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>VISION AIRLINES, INC.,<br><br>Defendant. | Case No.: 2:09-CV-00117-RLH-RJJ |

**THE CLASS' EXPEDITED MOTION TO ENFORCE THE COURT'S ORDERS OF SEPTEMBER 21, 2010 AND OCTOBER 5, 2010 AND FOR SANCTIONS**

Plaintiff Gerald Hester and the Class hereby move for sanctions against Defendant Vision Airlines, Inc. ("Vision"). The record in this case is replete with evidence of Vision's bad faith refusal to preserve, gather, and produce discovery, culminating with the violating of this Court's Orders compelling discovery. Now, as this case approaches trial, having been ordered to do what it should have done – and promised to do – more than nine months ago, Vision continues to refuse to conduct a good faith search for responsive documents, explain what it has done to

preserve and produce responsive documents, including providing a knowledgeable and informed Rule 30(b)(6) witness on these subjects despite five inadequate tries and failing to appear for a noticed sixth deposition (despite the absence of a protective order), produce documents without redactions, and account for all of the native format electronic documents that should have been produced but have not been. Accordingly, the Class moves that Vision's pleadings be stricken.

The Class recognizes the gravity of the sanction sought, but Vision's conduct is unprecedented in the professional experience of counsel for the Class. Vision's intransigence and absolute refusal to comply with the Court's Orders compelling discovery cannot be tolerated. But the prejudice that Vision's conduct has caused the Class requires this outcome. As a direct result of Vision's conduct, the Class has had to expend a tremendous amount of time and money attempting to obtain the information that Vision will not produce, first through the mountain of pleadings and myriad court appearances required to try and force Vision to meet its discovery obligations, and then through the litigation in which the Class has had to engage, particularly in the Eastern District of Virginia, in order to try to obtain this information from third parties. Even after this effort, the Class still does not have the material evidence that is quite obviously available to Vision, and thus the Class' case is not as strong as it would have been had Vision done what the law and this Court have required it to do. This prejudice to the Class must be remedied.

The Class also requests, given the short time left before trial, that the Court set an expedited briefing schedule for this Motion. Vision has done everything possible to run out the clock on discovery, and despite representing to the Court that it would attempt to produce all of the documents remaining by October 1, 2010, it produced no documents that day, an all too familiar pattern given that Vision produced no documents after the Renewed Motion to Compel was granted and affirmed and, indeed, has produced no documents since July 14, 2010. This is so despite the fact that Vision has known since March 2, 2010, that the Magistrate Judge was

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088

going to grant the Renewed Motion to Compel. (March 2, 2010, Hearing Tr., attached as Ex. 1, at 27) ("I'll rule on the motion right away – the renewed motion, and give you that – that help there."). Of course, as set forth in detail below, Vision previously agreed to produce these documents in December 2009, and has had more than enough time to do so.

## I. BRIEF PROCEDURAL HISTORY AND RELEVANT FACTS

The history of the Class' efforts to obtain discovery from Vision is set out in great detail in a number of pleadings, starting with the Class' Renewed Motion to Compel.[1] The Class filed the Renewed Motion to Compel ("Renewed Motion") [D.E. 93] on January 20, 2010, after Vision refused to produce the documents that it agreed to produce to the Class, without redactions and in native format. That agreement is reflected in letters from Class counsel dated November 20, 2009, and December 21, 2009. The parties held a number of conferences in late 2009 regarding Vision's production of documents. In order to expedite discovery, the Class agreed to narrow some of its requests ("Narrowed Requests"), and to hold a number of other requests in abeyance. (*See* Letter from David Buckner to Harold Gewerter dated November 20, 2009, attached as Ex. 2); (Letter from David Buckner to Harold Gewerter dated December 21, 2009, attached as Ex. 3.) In essence, the parties agreed that Vision would produce its documents, the Class would review them, and then the parties would revisit the remaining categories of documents requested prior to conducting depositions. However, because Vision has never complied with its promise to produce all of the documents responsive to the Class' Narrowed Requests, the Class has never had the opportunity to revisit the remaining requests to obtain the other documents that support its case, which in itself causes the Class significant prejudice.

Specifically, Vision agreed that it would produce all documents responsive to Narrowed

---

[1] Vision's abusive discovery tactics are well-documented. (*See, e.g.,*[ D.E. 49, 50, 54, 56, 60, 61, 64, 93, 96, 99, 106, 110, 117, 135, 137, 160, 176, 177].) Much of the history of discovery in this matter, at least through March 2010, is set forth in the Renewed Motion [D.E. 93] and the Supplement in Support of the Class' Renewed Motion to Compel [D.E. 106], which the Class incorporates herein by reference.

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088

Requests 1, 2, 3, 8, 9, 10, 11, 12, and 15. (*See* December 21, 2009 letter, Ex. 3.) Counsel for Vision also agreed to produce Vision's documents responsive to the Narrowed Requests on a rolling basis, and that Vision would complete its production by no later than January 7, 2010. (*See id.*) As set forth in the Renewed Motion [D.E. 93], Vision produced nothing by that date, and the documents that it produced after that date are neither complete nor fully responsive. Instead, this is what Vision produced prior to the second set of Rule 30(b)(6) depositions in mid-March 2010:

- January 12, 2010 – Vision produced what it claimed was a list of all Class members (that is, Vision's current and former employees) and the employee files for twenty-three Class members.
- January 15, 2010 – Vision provided Class counsel with an amended Class list after numerous deficiencies were identified by Class counsel in Vision's purported Class list.
- January 18, 2010 – Vision produced spreadsheets of its payroll records for the payroll cycles from July 31, 2007 through December 31, 2009, with considerable gaps in time and missing sheets.
- January 22, 2010 – Vision produced some of the Class member employee files. However, the employee files did not include all Class members.
- March 10, 2010 – Vision re-Bates stamped and re-produced to the Class thousands of pages of documents produced by the Class to Vision in 2009 (and provided to the Class by one of the parties to the litigation involving Vision, Capital Aviation, and CSC in Fairfax County, Virginia state court (the "Fairfax County Litigation")), despite being directed by the Magistrate Judge that this did not constitute a good faith search and was insufficient to satisfy its discovery

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088

obligations. (March 2, 2010, Hearing Tr., attached as Ex. 1, at 25-28) ("Well, [there] needs to be complete, the production; that's what the rule requires, right?"); (*Id.* at 30-32) ("And I think the one thing Mr. Gewerter, I can say to you, is you just need to speak [to] your client and let them know that they got – they got to move forward on this."). Vision also produced some additional documents, but many of these were heavily redacted by Vision prior to production.[2]

Thereafter, Class counsel deposed Vision's 30(b)(6) corporate representatives, William Acor ("Acor"), Chief Executive Officer, David Meers ("Meers"), Executive Vice President, and Brian Daggett ("Daggett"), Air Bridge Program Manager, on March 16, 17, and 18, 2010. As discussed at length in the Supplement in Support of its Renewed Motion to Compel ("Supplement") [D.E. 106], Vision's Rule 30(b)(6) representatives were unprepared to testify with regard to the efforts Vision undertook to search for and produce documents responsive to the Class' Narrowed Requests, even though this topic was clearly identified in the Class' Notice. (Plaintiff's March 16, 2010 Notice of 30(b)(6) Deposition, attached as Ex. 5.) Specifically, topic eight in the Class's Notice sought information regarding "Vision's efforts and procedures relating to or undertaken in the course of responding to document requests in this litigation," while topic ten sought testimony about, "Vision's efforts and procedures relating to and undertaken in the course of collecting documents in response to Plaintiff's document requests." Vision's Rule 30(b)(6) witnesses, however, could only testify as to what action they took in their individual capacities to gather responsive documents. This, however, is not the first time Vision produced unprepared Rule 30(b)(6) corporate representatives to testify in this litigation. Vision

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088

---

[2] Vision produced some additional flight logs and payroll data after the 30(b)(6) depositions in small amounts, but no other documents. Further, the flight logs Vision produced for 2010 relate to its flights to Cuba, and not the Air Bridge Program. This fact has been brought to Vision's attention, but Vision has done nothing to cure this problem. In its letter of September 24, 2010, Vision claims that it cannot locate flight logs from prior years, but studiously avoids saying anything about these later flight logs. (*See* Letter from Harold Gewerter to David Buckner, Sept. 24, 2010, attached as Ex. 4.)

produced two unprepared Rule 30(b)(6) representatives for deposition on September 11, 2009, who were unable to testify about what efforts Vision undertook to search for and produce responsive documents.

On September 9, 2010, the Magistrate Judge granted the Renewed Motion and gave Vision until September 17, 2010, to produce all responsive documents. [D.E. 158.] On September 21, 2010, this Court affirmed that Order. [D.E. 172.] As noted above, the Magistrate Judge's Order should have come as no surprise to Vision. During the hearing regarding discovery on March 2, 2010, the Magistrate Judge stated that he would get the Class the relief that it requested. (March 2, 2010, Hearing Tr., Ex. 1, at 25-28, 30-32.) He instructed counsel for Vision to inform his client that it needed to devote sufficient resources, and to hire temporary staff if necessary, to get this job done. (*Id.*) There is no evidence that this effort was ever undertaken. Indeed, the record reflects that Vision did little to comply.

## II. SPECIFIC DISCOVERY ABUSE AND OTHER MISCONDUCT

The record demonstrates that Vision has not engaged in a good faith search for and production of documents, even after the Class significantly narrowed the scope of those requests. Instead, Vision engaged in a well-documented campaign of obstruction and gamesmanship, while consistently failing to live up to its obligations. Moreover, Vision has repeatedly attempted to cover for itself by making false statements to the Court.

- Vision falsely claimed in its Objection to the Magistrate Judge's Order on the Renewed Motion that the only outstanding discovery is three weeks of missing flight logs. [D.E. 158 at 5.][3] Instead, among the items about which the Class is aware that it is missing are:

[3] The Class has never, as falsely represented by Vision, "acknowledged that the remaining items which had not been produced were limited to less than three weeks of flight logs." (*Compare* [D.E. 158 at 5], *with* Letter from David Buckner to Harold Gewerter, dated Feb. 2, 2010, attached as Ex. 6; Letter from David Buckner to Harold Gewerter, dated March 12, 2010, attached as Ex. 7; Letter from David Buckner to Harold Gewerter, dated March 25, 2010, attached as Ex. 8; e-mail from David Buckner to Harold Gewerter, dated Aug. 26, 2010, attached as Ex. 9; Letter from David Buckner to Harold Gewerter, dated Sept. 9, 2010, attached as Ex. 10.)



GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088

- All of the Air Bridge Program flight logs for 2010 and flight logs for certain periods during prior years;
- At least 24 written modifications to the McNeil contract (Deposition of David Meers, attached as Ex. 11, at 417). Narrowed Request No. 2 states, "Vision has previously agreed to provide us with all contracts between or among any of Vision, Capital Aviation, CSC, and McNeil that relate to the Airbridge program, including any modifications and addendums to those contracts." (Dec. 21, 2009 letter, Ex. 3, at 2.) With respect to its contract with McNeil, Vision produced only a redacted version of the McNeil contract with no addendums or modifications. However, Meers testified that there were at least "22 or 24" modifications to the McNeil contract (Meers Dep., Ex. 11, at 417), and that those modifications are currently in Vision's possession (*id.* at 418). Meers went on to testify that the McNeil contract is "an incrementally funded contract . . . [s]o it's been modified a number of times to increase funding." (*Id.* at 417.);
- Communications and e-mails relating to the McNeil Phase of the Air Bridge Program. Vision has not produced a single communication between it and McNeil that relates to the Air Bridge Program. Meers testified that there were communications between McNeil and Vision that related to Vision's bid proposal for the Air Bridge Program Contract. (*Id.* at 420.);
- Vision's bid proposals to McNeil. Vision agreed in Narrowed Request No. 3 to "provide us with any bids or proposals that relate to any or all of the contracts between or among any of Vision, Capital Aviation, CSC, or McNeil for the Airbridge Program." (Dec. 21, 2009 letter, Ex. 3, at 2.) Meers stated that Vision prepared and submitted more than one bid proposal to McNeil for the Air Bridge Program contract. (Meers Dep., Ex. 11, at 420.);

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088

- Vision's Aircraft Quote that it submitted to McNeil for Phase IV of the Air Bridge Program (which identifies hazardous duty bonus for the flight deck and cabin crews on a per hour and annualized basis, attached as Ex. 12). In the affidavit that McNeil provided to the Class as a result of the Class' litigation efforts in the Eastern District of Virginia, Vigil, now McNeil's Vice President of Aviation Services, noted that Vision "submitted an 'Aircraft Quote' for the services it provide[d] under the Subcontract" with McNeil. Vigil explained that the Aircraft Quote "contained certain Cost Elements, which include but are not limited to flight deck crew salary, flight deck crew benefits, flight deck crew hazardous duty bonus, cabin crew salary, cabin crew benefits, and cabin crew hazardous duty bonus." (McNeil Aff., attached as Ex. 13, ¶ 5.) Further, Meers stated that "[t]here had to be more than one" submission by Vision to McNeil, (Meers Dep., Ex. 11, at 420), even though the only Phase IV bid-related document that Vision provided in discovery was heavily redacted. (*Id.* at 418-19) (acknowledging that Vision has a copy without blackouts); (Vision's redacted Price Basis to McNeil, attached as Ex. 14);
- James Maguire's (Vision's former Director of Flight Operations and current Vision executive) calculations of Vision's 2007 forward pay scale (Deposition of James Maguire, attached as Ex. 15, at 47-52, 97-98.) Maguire testified that he did these calculations in mid-2007 on his laptop computer, and that he was still in possession of that computer, but these calculations have never been produced despite repeated requests. (*Id.*);
- In August 2006, prior to Phase III of the Air Bridge Program, Vigil, then CSC's Program Manager, sent an e-mail to Daggett, which Daggett forwarded to Meers and Acor, seeking "some supporting documentation for . . . the crew

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088

hazard pay. . ." as requested by the "client's CO," – that is, the government contracting officer with whom they were negotiating the details of Phase III. (E-mail from Vigil to Meers dated Aug. 18, 2006, attached as Ex. 16, at 2.) After Meers wrote back to Daggett, Acor, and Vigil, Vigil reiterated the government's request for "how [Vision] is figuring hazardous duty pay and why there is a difference between the Flight Deck and Cabin Crew." He continued,

> I am sorry but this is what it is like dealing with the Gov on a large contract. Everything has to be accounted for and verifiable.

*Id.* at 1. Vision has never produced any of the supporting documentation that it provided in response to this request.

- Vision has never produced an adequately-informed Rule 30(b)(6) witness to testify about Vision's documents and discovery efforts, preventing the Class from discovering what other documents it might not have received from Vision. (*See* March 16, 2010 Rule 30(b)(6) Notice, Ex. 5.) Vision's counsel has repeatedly denied that he has an affirmative duty to adequately prepare and educate Vision's 30(b)(6) witnesses to testify knowledgably on the topics identified in the Class' Notice. Instead, counsel for Vision has stated on several occasions, when confronted with the inadequacy of the knowledge and preparation of Vision's Rule 30(b)(6) witnesses, that he is under no obligation to educate these witnesses. Specifically, Vision's witnesses were inadequate in that:
    - The first two witnesses produced by Vision claimed to have little or no knowledge about the Air Bridge Program, but instead were involved in Vision's tourist operations in the American Southwest. The Class' Rule 30(b)(6) Notice, in response to which these witnesses were provided, clearly delineates the topics to be covered in that deposition, and Vision's tourist operation is not among them. For example, Thomas Dale Miller had no idea whether Vision's

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088

computers in its Dulles, Virginia offices (the headquarters of the Air Bridge Program) had ever been searched for responsive documents (*See* Deposition of Thomas Dale Miller, attached as Ex. 17, at 55.);

- Acor testified that he reviewed no documents, spoke to no Vision employees, and "did very little" to prepare for his Rule 30(b)(6) deposition, and would have met with Vision's counsel "but he was late for breakfast" (Acor Dep., Ex. 18, at 531.);
- Meers, when asked what he did to prepare for his Rule 30(b)(6) deposition, stated that he "flew to Miami" and spoke to counsel for Vision for "ten minutes," but did nothing else (Meers Dep., Ex. 11, at 267-68.);
- Daggett stated that he reviewed one document in preparation for his testimony, an EEOC claim against Vision by some of its former pilots, and met with counsel for Vision on the morning of the deposition for less than an hour, but otherwise took no steps to prepare (Deposition of Brian Daggett, attached as Ex. 19, at 38-39.);
- Vision refused to produce a Rule 30(b)(6) witness on September 29, 2010, to testify about its efforts to preserve, gather, and produce responsive documents. The Class properly served Vision with a Notice of Deposition (Ex. 20), and while Vision filed an Objection to Notice of Deposition, improperly based on Rule 45 [D.E. 165], to which the Class responded in opposition [D.E. 177], the Court did not grant Vision's objection prior to the date of deposition. Vision thereafter failed to appear for now the sixth time in this case, subjecting itself to sanctions. *See In re Honda*, 106 B.R. 209, 211 (Bankr. Hawai'i 1989) ("Failure of a party to attend without first obtaining a protective order will subject that party to sanctions under Rule 37(d)."); *see also Black Horse Lane*

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088

*Assoc., L.P. v. Dow Chem. Corp.*, 228 F.3d 275, 304 (3d Cir. 2000) (holding that failure to adequately educate its 30(b)(6) witnesses on noticed topics constitutes a failure to appear and is sanctionable under Fed. R. Civ. P. 37(d)).

- Vision has re-produced from the Fairfax County Litigation thousands of pages of redacted documents and has produced only a few hundred documents in this case (excluding payroll records, employee files, and flight logs), most of which have been heavily redacted. (*See* Vigil to Meers e-mail, attached as Ex. 21) (containing two bates stamps, "Vision" bates stamp used in the Fairfax County litigation and "HEST" bates stamp used in the instant litigation). The Class has repeatedly demanded that Vision produce these documents in non-redacted form, and the Court has now ordered that Vision do so, but Vision continues to refuse. (*See* Letter dated Sept. 24, 2010, Ex. 4); (Letter from David Buckner to Harold Gewerter, Sept. 25, 2010, attached as Ex. 22.)) Vision has waived its claim to any privilege that these redactions may be based upon because it has never provided the Class with a privilege log. *See Burlington Northern & Santa Fe Railway Co. v. U.S. Dist. Co. for the Dist. of Mont.*, 408 F.3d 1142, 1147 (9th Cir. 2005). In any event, these redactions have nothing to do with a valid privilege, as the examples below makes clear:
    - Vision redacted much of the financial information from many of the invoices that it produced to the Class. In particular, Vision redacted most of the Phase IV (McNeil Phase) invoices prior to producing them to the Class (*see, e.g.*, Ex. 23);

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088

Vision Airlines INVOICE

[illegible]

- Vision redacted its contract with McNeil, removing most of the relevant financial information. (*See* Daggett Dep., Ex. 19, at 187-93); (McNeil Contract, Ex. 24.);
- Vision redacted its Price Basis to McNeil, which set out the elements of its fixed price for Phase IV of the Air Bridge, including "Hazardous Duty Bonus." (Ex. 14). This document at the bottom purports to be page 20 of a larger document. That larger document has never been provided to the Class. As noted above, Meers stated that "[t]here had to be more than one" submission by Vision to McNeil, (Meers Dep., Ex. 11, at 420.);

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088



7. VISION'S PRICE BASIS

| Cost Element - Base Period | [illegible] | [illegible] |
|---|---|---|
| Flight Dock Crew | $ 2,012,280.70 | $ 1,687,719.30 |
| Hazardous Duty Bonus - Flight Crew | $ 352,149.12 | $ 295,350.88 |
| Cabin Crew | $ 1,087,719.30 | $ 912,280.70 |
| Hazardous Duty Bonus - Cabin Crew | $ 190,350.88 | $ 159,649.12 |
| Total Fixed Price | $ [illegible] | $ [illegible] |

- Vision never undertook a good faith search for responsive documents. While Vision has, as noted above, attempted to conceal this fact by refusing to produce a witness with knowledge of all of its document preservation and production efforts (few though they were), the truth of this statement becomes apparent upon a review of the testimony of the witnesses Vision did produce.
    - Brian Daggett testified that he was only asked to provide "payroll information, personnel files, and flight logs," and was not instructed to search for anything else. (Daggett Dep., Ex. 19, at 230-31.) And, despite the fact that he never received a copy of the Class' requests for production of documents, (*id.* at 219), he nonetheless unilaterally decided that the e-mails on his computer and Blackberry were not relevant to this case. (*Id.* at 243-245.) He therefore made no effort to gather, produce, or preserve them, and could not recall being instructed by counsel or anyone else that he needed to do so. (*Id.*) He said that

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088

he "wasn't involved," and thus had no knowledge, about Vision's efforts to gather e-mails responsive to the Narrowed Requests. (*Id.* at 207.) He knew about the documents that he himself gathered, but he was unaware of the efforts of others to gather responsive documents. (*Id.* at 21.) However, Acor testified that Daggett, as Program Manager for the Air Bridge, "worked with our attorneys to deliver whatever was required in the [document] request," and that Daggett would be the person who would know best what Vision had done to gather ESI from the Air Bridge Program (Acor Dep., Ex. 18, at 594.);

- Vision has produced few documents from Phase IV (the McNeil Phase) of the Air Bridge Program. In fact, Vision has produced only the redacted McNeil Contract, redacted (and a few non-redacted) invoices, incomplete payroll and flight logs, and the redacted Price Basis. It has produced not one e-mail between its personnel and anyone at McNeil, despite the fact that this is the primary method of communication between the companies and the means by which invoices are sent from Vision to McNeil (Meers Dep, Ex. 11, at 476);
- James Maguire, Vision's former director of flight operations, testified at his deposition on June 28, 2010, that he came up with the pay scale for flight deck and cabin crew imposed by Vision on the Air Bridge Program employees on October 1, 2007. (Maguire Dep., Ex. 15, at 46-50.) Maguire stated that he did these computations on spreadsheets on his computer, which is still in his possession, and that he was willing to provide those spreadsheets. (*See id.* at 50.) However, he could not recall providing any of those spreadsheets in discovery, nor was he asked to copy them for or provide them to anyone (*see id.* at 48-50). These spreadsheets have never been produced by Vision. Maguire also testified that he primarily used his Vision e-mail account to communicate

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088

with Vision's pilots and flight crews, and that he sent "lots" of e-mails to other employees at Vision each day. (*See id.* at 39-41.) It is not clear that any of these e-mails have been produced, and certainly one of the most relevant of them, from former Air Bridge Program pilot Davis Pritchard ("Pritchard") to Maguire inquiring about hazard pay, has not been produced by Vision (*See* Pritchard Dep., attached as Ex. 25, at 45-51.);

- Vision has not produced all documents and communications that relate to the contract negotiations for each phase of the Air Bridge Program that mention or reference hazard pay (Narrowed Request 1), all bids or proposals that relate to the Air Bridge Program (Narrowed Request 3), all of Vision's accounting records for the Air Bridge Program, including "wire transfer receipts for payments made to Vision for operating the Airbridge Program and the invoices, in unredacted form, that Vision submitted to the Airbridge Program's upstream contractors" (Narrowed Request 10), and all documents related to determining compensation for Air Bridge Program employees (Narrowed Request 12). (*See* Letter dated December 21, 2009, Ex. 3.) Nor did Vision ever "search William Acor's and David Meers' personal e-mail accounts for documents responsive to the narrowed requests for production of documents, including but not limited to their America Online e-mail accounts (billacor@aol.com, comanche29@aol.com, and meers29@aol.com), because both Mr. Meers and Mr. Acor use their personal e-mail accounts to conduct company business." *Id.*
- Vision's CFO, Gary Acquavella, testified on September 11, 2009, as one of Vision's first two Rule 30(b)(6) witnesses that neither he nor his staff in the accounting department at Vision conducted a search for documents responsive to the Class' requests. (*See* Deposition of Gary Acquavella, attached as Ex. 26,

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088

at 45.) He admitted that Vision's accounting department has electronic versions of its invoices to the upstream contractors, (*id.* at 148-49, 152), but these have never been produced.

- Vision falsely claimed that it produced an e-mail regarding Vision's failure to pay the hazardous duty bonus money that it collected on behalf of the Air Bridge Program employees. [D.E. 158 at 15.] Instead, the Class obtained this document through a third party subpoena. (*See* E-mail from Daniel Carson to William Vigil, attached as Ex. 27); (Subpoena of Daniel Carson, attached as Ex. 28.) That e-mail between Vision's Director of Flight Operations, Daniel D. Carson, and CSC's Program Manager, William Vigil, states:

> Carson (Vision): Question: we are not and have not paid any hz duty pay. What is our exposure in audit or contract obligations
>
> Vigil (CSC): Are you kidding me? We have been charged Hazardous duty pay throughout the program, Phase 3 alone would be in excess of $1.25 million. This has to be addressed immediately as it could be a disaster, either retroactive or refunded.

Vision's failure to produce this document, in addition to the absence of any e-mails in native electronic format, and few in any form at all, is proof that Vision has failed to conduct an adequate search (or likely any search at all) for e-mails responsive to the Narrowed Requests;

- Vision has produced only one document, its Employee Handbook, in native electronic format, despite its agreement to produce all documents in native electronic format with metadata (*See* December 21, 2009 letter, Ex. 3.);

- Even after being given one more chance to comply with the Court's Order compelling production, Vision produced nothing by Friday, October 1. The Class sent Vision one more letter setting out in great detail the documents yet to be produced, and noted again that Vision had an obligation to conduct a good

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088

faith search for responsive documents. (Letter from David Buckner to Harold Gewerter dated Sept. 30, 2010, attached as Ex. 29.) However, given the paucity of documents produced to date, it is apparent that Vision has not undertaken a real search for and production of relevant documents. *See Merrick v. Paul Revere Life Ins. Co.*, 500 F. 3d 1007, 1015 (9th Cir. 2007) ("the existence of withheld documents may be inferred from the paucity of material actually produced").

- It appears likely that Vision has failed to preserve and produce relevant documents.
  - Topic 12 in the Class's March 16, 2010 Rule 30(b)(6) Notice covers, "[l]aws, rules, regulations that govern Vision's retention or preservation of documents relating to its dealings with CSC, Capital Aviation, McNeil, or any branch, division, or agency of the United States government that relate to the Air Bridge or the Air Bridge Contract, and Vision's efforts to comply with such laws, rules, or regulations." (*See* March 16, 2010 Rule 30(b)(6) Notice, Ex. 5.) Vision's contract with Capital Aviation stated that "invoice documentation shall be made available at any time from the date of this Agreement until three (3) years after 'final' payment hereunder." (Capital Aviation Contract, attached as Ex. 30, at 2.) Final payment was not made until sometime in 2009. Therefore, Vision should still have these documents available to produce to the Class. Despite noticing this topic for deposition, however, none of Vision's witnesses were able to testify knowledgably on this topic (*See* Daggett Dep., Ex. 19, at 24); (Meers Dep., Ex. 11, at 281); (Acor Dep., Ex. 18, at 536.);
  - At the outset of this case, Class counsel sent a letter to Vision reminding it of its obligations to preserve relevant documents. (*See* Letter from David Buckner to Vision dated January 21, 2009, attached as Ex. 31.) Despite this, Vision seems

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088

to have taken its obligations less than seriously. For example, Acor testified that he reads and deletes his e-mail, and did so and continues to do so with regard to e-mails relevant here, even though Vision has been in litigation relating to the Air Bridge Program since at least 2008. (*See* Acor Dep., Ex. 18, at 596.) Another Vision 30(b)(6) witness testified that Vision has no document retention policy, and that even though Vision was conducting Air Bridge Program business using the personal e-mail accounts of its executives, none of those e-mails were preserved or saved. (*See* Miller Dep., Ex. 17, at 57, 68.) The same witness testified that Vision did not put a litigation hold in place in this matter until May 1, 2009, even though the lawsuit was filed in January of that year, (*id.* at 18), and that no one from Vision's IT department contacted anyone in the Air Bridge Program to direct them to search their computers for responsive documents. (*Id.* at 58.); (*See also id.* at 90-91) (admitting that the IT department did not search Air Bridge Program e-mail accounts, the hard drives on the computers in Dulles, or the space on Vision's server in Las Vegas reserved for the Air Bridge Program, for responsive documents). Despite being asked for it, Vision has never produced a litigation hold letter proving that it even put a litigation hold in place;

- Daggett testified that, while he was still at Capital Aviation, he had both telephone conversations and e-mail exchanges with Vision personnel with regard to Phase III of the Air Bridge Program during the bid process for that phase. (Daggett Dep., Ex. 19, at 204.) No such e-mails have ever been produced; and

- Meers testified that he was unaware of "any specific procedures that were put in place" to preserve hard copy documents relating to the Air Bridge Program,

other than that some such documents had been previously gathered as part of the litigation against CSC in Virginia (Meers Dep., Ex. 11, at 371). That litigation, however, had nothing to do with hazardous duty pay.

- On September 23, 2010, in a transparent effort to take advantage of the fact that it has produced few documents from Phase IV of the Air Bridge Program, and many of those that it has produced are heavily redacted, Vision disclosed for the first time in its supplemental witness list [D.E. 175] that it intended to call witnesses from McNeil to testify at trial. Vision did this despite the fact that it: (1) stipulated during the discovery period in June 2010 that it would not call anyone from McNeil to testify at trial in return for the Class' agreement not to depose anyone from McNeil [D.E. 131 at 2]; and (2) Vision failed to list any of the individuals on its Supplemental Witness List as witnesses in the Joint Pretrial Order entered by this Court [D.E. 150]. *See* Motion to Strike [D.E. 176.]. At calendar call, the Court granted the Class' Motion to Strike, noting Vision's stipulation that it would call no witnesses from McNeil;

- During argument on the Class' first Motion to Compel in October 2009, counsel for Vision stated that certain documents were not invoices, but instead were "internal records [that] are not being given to the client." (Oct. 23, 2009, Hearing Tr., Ex. 32, at 59.) Further, Vision, in its original responses to Plaintiff's requests for production, stated that Vision had "no documents or communications relating to 'hazard pay'." (Def. Vision Airlines, Inc.'s Responses to Plaintiff's First Request for Production, Ex. 33, at 3.)[4] Meers later testified that the document referred to by counsel was in fact a Vision invoice, and was sent to CSC in an effort to obtain payment. That document also

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088

[4] These responses were filed with the Class' first Motion to Compel, filed July 9, 2009 [D.E. 49, at Ex. F]. The Class sought, among other things, to force Vision to provide proper responses to the RFP, so that it would be clear what Vision was producing, and what it was not. Vision refused, and has never done so.

specifically mentions hazard pay. (Aug. 19, 2006, Air Bridge Program invoice, attached as Exhibit 34); (Meers Dep., Ex. 11, at 439.)

- In an effort to intimidate Gerald Hester and dissuade him from pursuing this case, Vision first sued him in state court in Nevada, then brought counterclaims in this lawsuit, alleging that he disclosed classified information and that he was attempting to compete with Vision for the Air Bridge Program contract. Vision knew full well that this was false, and never produced a shred of evidence to support any of these claims. (*See* Order [D.E. 159] at 9) ("Vision has presented no material factual evidence to support its amended counterclaims. In fact, Vision merely relies on its own allegations, suppositions, and coincidence . . ..") This is consistent with Vision's conduct from the beginning of this matter. Vision originally claimed that the Complaint contained classified information. Class counsel, in an abundance of caution, agreed to the temporary sealing of the Complaint to give Vision time to demonstrate to the Court that this was true. However, Vision produced no evidence, and the Magistrate Judge unsealed the Complaint *sua sponte*. [D.E. 16.] Vision made no further efforts to protect this allegedly classified information, which is consistent both with Vision's bad faith and with this Court's later finding that this information is a matter of public record. (*See* Order [D.E. 159] at 10-11) (noting that "Vision has not produced any evidence that any of the information revealed in court documents is classified" and that "all of this information is publicly available from other sources."). This also suggests that Vision knew that its claims against Hester were meritless from the outset.[5] Indeed, Brian Daggett testified

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088

[5] The Court gave Vision the benefit of the doubt, (*see* [D.E 159, at 11] ("These allegations can, therefore, only lead the Court to conclude that Vision does not understand the term 'confidential information.'"), but Vision does not deserve this concession. The Class moved twice to dismiss Vision's counterclaims against Hester, and said that Vision would never be able to prove its allegation because, among other things, all of this information is in the public realm. [D.E. 65 (filed Aug. 10, 2009); D.E. 90 (filed January 11, 2010).] Instead of withdrawing its claims, Vision pressed on with them, costing the Class

that during his tenure at Vision, the company was never in possession of any classified materials, and had no provisions or procedures for storing such materials. (Daggett Dep., Ex. 19, at 119.)

## III. ARGUMENT

### *A. Vision's refusal to comply with its discovery obligations is sanctionable conduct.*

"Courts need not tolerate flagrant abuses of the discovery process." *Campbell Indus. v. M/V Gemini*, 619 F.2d 24, 27 (9th Cir. 1980). If a party fails to obey an order to provide or permit discovery, including an order under Rule 37(a), the court may issue an order ordering any of the following:

(i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims,

(ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence,

(iii) striking pleadings in whole or in part,

(iv) staying further proceedings until the order is obeyed,

(v) dismissing the action or proceeding in whole or in part,

(vi) rendering a default judgment against the disobedient party, or

(vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

*Tobin v. Granite Gaming Group II, LLC*, 2008 WL 728337 (D. Nev. Mar. 17, 2008) (citing Fed. R. Civ. P. 37(b)(2)(A)); *Harry and David v. Pathak*, 2010 WL 2432071, at *6 (D. Or. Apr. 7, 2010) (noting that court may enter a default judgment under Fed. R. Civ. P. 55 for discovery

---

considerable time and money litigating what Vision knew were groundless allegations. The Class will bring a motion before the Court for sanctions under Fed. R. Civ. P. 11 separately.



GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088

violations).[6] The Court may also impose sanctions for discovery abuse pursuant to its inherent authority. *Harry and David v. Pathak*, 2010 WL 2432071, at *6 (recommending imposition of sanctions under court's inherent authority because of a "history of inadequate responses to discovery, noncompliance with court orders, and general disrespect for federal rules").[7] Moreover, Local Rule 1A4.1 provides "that the Court may, after notice and opportunity to be heard, impose any and all appropriate sanctions on an attorney or party who, without just cause, fails to appear for a presentation to the Court, fails to comply with the Local Rules, and/or fails to comply with any order of this Court."

In order to impose sanctions under Rule 37(b)(2)(A), there must be a violation of a court order compelling discovery. *Hyde & Drath v. Baker*, 24 F.3d 1162, 1166 (9th Cir. 1994). However, no violation of a specific order is required before a court may impose sanctions under the court's inherent power. *IDX Sys.*, 464 F. 3d at 958 (affirming terminating sanction dismissing the plaintiff's action with prejudice pursuant to court's inherent power). In evaluating the propriety of sanctions, the Court considers "all incidents of a party's misconduct." *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1411 (9th Cir. 1990), *cert. denied*, 498 U.S. 1109, 111 S.Ct. 1019, 112 L.Ed.2d 1100 (1991) (citation omitted).

Courts in this circuit analyze several factors to determine if the striking of a party's pleadings is an appropriate remedy for discovery abuse: (1) the public's interest in expeditious resolution of litigation, (2) the court's need to manage its docket, (3) the risk of prejudice to the non-offending party, (4) the public policy favoring disposition of cases on their merits, and (5)

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088

---

[6] In addition, "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. Pro. 37(b)(2)(C). *See also Leon v. IDX Systems Corp.*, 464 F.3d 951, 961 (9th Cir. 2006) (imposing monetary sanction under inherent power of court).

[7] In this circuit, "courts have inherent power to dismiss an action when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice." *Wyle v. R.J. Reynolds Industries, Inc.*, 709 F.2d 585, 589 (9th Cir. 1983).

the availability of less drastic sanctions. *Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995).[8] "These factors are not a series of conditions precedent before the judge can do anything, but a way for a district judge to think about what to do." *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1226 (9th Cir. 2006) (citation and internal quotations omitted); *see also IDX Sys.*, 464 F. 3d at 958 (noting that district court need not make explicit findings as to each of these factors, and upholding terminating sanction where court considered only the plaintiff's level of culpability, the prejudice suffered by the defendant, and the availability of lesser sanctions). Failure to comply with the court's discovery orders is adequate grounds for this sanction. *See Const. Laborers Trust Funds for So. Cal. Admin. Co. v. Rosal*, 2008 WL 4500757, at *2 (C.D. Cal. Oct. 6, 2008) (striking defendant's answer and entering a default).

In order for this conduct to justify the striking of pleadings, it must be the result of willfulness, bad faith, or fault. *Jorgensen v. Cassiday*, 320 F.3d 906, 912 (9th Cir. 2003). "'[D]isobedient conduct not shown to be outside the control of the litigant' is all that is required to demonstrate willfulness, bad faith or fault." *Henry v. Gill Inds.*, 983 F. 2d 943, 948 (9th Cir. 1993); *Jorgensen v. Cassiday*, 320 F. 3d at 912. In determining whether prejudice has occurred, the Ninth Circuit Court "examine[s] whether the [party's] actions impair the [other party's] ability to go to trial or threaten to interfere with the rightful decision of the case." *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 131 (9th Cir. 1987). Unreasonable delay will result in a presumption of prejudice. *Anderson v. Air West, Inc.*, 542 F.2d 522, 524 (9th Cir.1976) ("The law presumes injury from unreasonable delay").

The standard for an adverse inference instruction is lower than that for the striking of

[8] "Although this five-factor test is usually used to review the propriety of Rule 37 sanctions, this same test was applied in [*Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir.1995)] to review sanctions granted under a court's 'inherent power.'" *IDX Sys.*, 464 F. 3d at 958 n.4.

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088

pleadings, and is met here as well. It requires only bad faith or gross negligence. *Karnazes v. County of San Mateo*, 2010 WL 2672003, at *2 (N.D. Cal. July 2, 2010); *see also Otsuka v. Polo Ralph Lauren Corp.*, 2010 WL 366653, at *3 (N.D. Cal. Jan. 25, 2010). A court has the inherent power to make appropriate evidentiary rulings in response to the destruction or spoliation of relevant evidence." *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993). This power includes the power to sanction the responsible party by instructing the jury that it may infer that the spoiled or destroyed evidence would have been unfavorable to the responsible party. *Id.*; *Akiona v. United States*, 938 F.2d 158, 161 (9th Cir. 1991).

Vision's conduct of discovery in this matter has prejudiced the Class at every turn, and merits sanctions. Vision refused to produce the documents that it agreed to produce by January 7, 2010. Instead, it waited until it was ordered by this Court in September 2010, to even feign compliance with its discovery obligations, even though it has known since March 2, that this order was coming, and it persists in its disobedient conduct to this day. Further, Vision's obligations are self-executing because it agreed to produce these documents, and thus no court order was required. The Court has now issued three separate orders compelling Vision to conduct an adequate search for and production of documents in this matter. *See* [D.E. 152] (ordering production by September 17, 2010); [D.E. 172] (affirming [D.E. 152]); [D.E.179] (*Defendant is ordered to comply with the order to compel discovery forthwith*) (emphasis in original). Nonetheless, Vision has produced nothing.

"The prejudice inquiry looks into whether the [spoiling party's] actions impaired [the non-spoiling party's] ability to go to trial or threatened to interfere with the rightful decision of the case." *IDX Sys. Corp.*, 464 F. 3d at 959 (citations and internal quotations omitted). In *Anheuser-Busch*, the Ninth Circuit "found prejudice when a party's refusal to provide certain documents forced [the other party] to rely on incomplete and spotty evidence at trial." *Id.* (internal quotations omitted). In *Payne v. Exxon Corp.*, 121 F.3d 503, 505-06 (9th Cir. 1997),

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088

the Ninth Circuit upheld the lower court's order striking the plaintiff's complaint based on evidence demonstrating "the refusal of a plaintiff to comply with three separate orders wherein the record is full of evasion and dilatory tactics, and the discovery requested is relevant to the fact issue." Such is the case here. Vision's unreasonable delay in itself prejudiced the Class, both presumptively, *see Anderson v. Air West, Inc.*, 542 F.2d at 524, and actually. Vision's delay required that the Class build its case and go to trial without important evidence, and the Class was forced to expend a tremendous amount of time and money in an effort to obtain discovery from third parties because it could not get those materials from Vision. (*See* Aff. of David Buckner, attached as Ex. 35.) Vision knew about, and clearly intended to benefit from, the disability this would place on the Class. (*See also* Mukamal Aff., attached as Ex. A to D.E. 110.)

Even now, Vision is refusing to comply with the Court's Order granting the Renewed Motion to Compel. As noted above, Vision has quite clearly not engaged in a good faith effort to preserve, gather, and produce responsive documents. Instead, it has repeatedly refused to do so, and endeavored to conceal the full scope of its failings by refusing to produce an adequate Rule 30(b)(6) witness to testify about its discovery activities, which is the equivalent of failing to appear for deposition. *See Caesars World, Inc. v. Milanian*, 2005 WL 221893, at *2 (9th Cir. Feb. 1, 2005) (affirming district court's (Hunt, J.) order barring party from testifying at trial as sanction for failing to appear at his deposition); *Black Horse Lane,* 228 F.3d at 304 (holding that failure to adequately educate its 30(b)(6) witnesses on noticed topics constitutes a failure to appear and is sanctionable under Fed. R. Civ. P. 37(d)). A cursory review of the many categories of documents that have not been provided, *supra*, demonstrates the handicap imposed on the Class by Vision's conduct.

At calendar call on September 29, Vision's counsel represented that he had produced some documents to the Class and would work to produce the rest by Friday, October 1, though he could not guarantee that he would complete production by that date because he needed to wait

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088

for a Vision employee to return from overseas to gather these documents. Again Vision has misled the Court. Vision has produced not one document since the Magistrate Judge granted the Renewed Motion. In fact, as this Motion is filed, Vision still has not produced even one of the many documents missing from its production. Moreover, Vision should not, at this late date, only now begin to search for these documents, and the fact that, as its counsel stated, he needed to wait for a Vision employee to return from overseas means that it never did the search that it was supposed to do. Otherwise, these documents would be in counsel's office, ready to be produced since shortly after March 2.

The other factors of the *Anheuser-Busch* test are met here as well. The Ninth Circuit in *IDX Systems* noted that the first two factors, although not analyzed by the district court there, were met because the conduct at issue impeded the resolution of the case "by obscuring the factual predicate of the case and consuming months of sanction-related litigation." 464 F.3d at 958, n.5. The same is true here. Vision has obscured a substantial amount of the facts that relate to this lawsuit by withholding critical documents. In so doing, it has also dragged discovery out over a much longer period of time than should have been required in a case of this size. The Class was forced to file two motions to compel and is still waiting for essential discovery. Again, just the additional effort required of the Class to litigate against McNeil in the Eastern District of Virginia justifies sanctions in this case. (*See also* Renewed Motion at 3-15) (discussing the Class' efforts to get Vision to engage in discovery, or to even have opposing counsel return a telephone call from Class counsel.)

Nor is a lesser sanction appropriate under these circumstances. It is impossible to predict how much stronger the Class' case would be if it had these documents. For example, there were clearly discussions between Vision and the contractors above it regarding the hazardous duty bonus, and some of these began in e-mails. Meers testified that there were communications between McNeil and Vision that related to Vision's bid proposal for the Air Bridge Program

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088

contract. (Meers Dep., Ex. 11, at 420.)[9] Meers also testified that "[t]here had to be more than one" bid proposal by Vision to McNeil. (Meers Dep., Ex. 11, at 420.) However, Vision has not produced a single communication between it and McNeil that relates to the Air Bridge Program, and so the Class is deprived of that evidence regarding Vision's contract. Similar documents are missing from Phase III of the Air Bridge Program. (*See, e.g.*, E-mail from William Vigil to Brian Daggett, forwarded to Meers and Acor, seeking "some supporting documentation for . . . the crew hazard pay. . ." (Ex. 16 at 2.))

B. *Vision's failure to preserve documents, institute a proper litigation hold, and affirmative spoliation of evidence is sanctionable conduct.*

A party has the duty to preserve potentially relevant evidence in its possession. *Leon v. IDX Systems Corp.*, 2004 WL 5571412, at *3 (W.D. Wash. Sept. 30, 2004), *aff'd* 464 F. 3d 951 (9th Cir. 2006). This duty extends to key players. *Hous. Rights Ctr. v. Sterling*, 2005 WL 3320739, at *3 (C.D. Cal. Mar. 2, 2005). Any destruction of documents during ongoing litigation is, at a minimum, negligent. *Id.* (quoting *Zubulake IV*, 220 F.R.D. 212, 220 (S.D.N.Y. 2003). Nor is bad faith required for the failure to preserve documents to be sanctionable. *See Dae Kon Kwon v. Costco Wholesale Corp.*, 2010 WL 571941, at *2 (D. Hawai'i Feb. 17, 2010)).

Furthermore, courts have consistently held that it is not appropriate for parties to unilaterally redact information from original documents without a recognized basis in privilege, which has been appropriately logged. For example, in *Howell v. City of New York*, No. CV-06-6347 (ERK)(VVP), 2007 WL 2815738, at *2 (E.D.N.Y. Sept. 25, 2007), the court held that "it is not the practice of this court to permit parties to selectively excise from otherwise discoverable documents those portions they deem not to be relevant. To do so would require a finding of 'good cause' based on a need 'to protect a party or person from annoyance, embarrassment,

[9] The court in *IDX Sys.* found that the lesser sanction analysis was largely inapplicable where the destruction of documents occurred before the district court had the opportunity to act. 464 F.3d at 960.

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088

oppressions, or undue burden or expense.'" Furthermore, the practice of unilateral redaction is disfavored because:

> The practice frequently gives rise to suspicion that relevant material harmful to the producing party has been obscured. It also tends to make documents confusing and difficult to use. All to[o] often, the practice results in litigation of collateral issues and in camera review of documents by the Court, with the result that the time of both counsel and the Court is wasted. These drawbacks ordinarily outweigh the minimal harm that may result from disclosure of some irrelevant material.

*Meditronic Sofamor Danek, Inc. v. Michelson,* No. 01-2373-GV, 2002 WL 33003691, at *5 (W.D. Tenn. Jan 20, 2002) (quoting *In re Medeva Sec. Litig.,* 1995 U.S. Dist. LEXIS 21895, at *8 (C.D. Cal. May 30, 1995)).

The record in this case is clear: Vision failed to preserve relevant documents and spoliated others by redaction. Vision has no document retention policy, and even though Vision was conducting Air Bridge Program business using the personal e-mail accounts of its executives, none of those e-mails were preserved or saved. (*See* Miller Dep., Ex. 17, at 57, 68.) If Vision sent out a written litigation hold (and there is no evidence that it did, despite Class counsel's request for a copy of the letter), it did not put that hold in place in this matter until May 1, 2009, even though the lawsuit was filed in January of that year. (*Id.* at 18.) Further, no one from Vision's IT department contacted anyone in the Air Bridge Program to direct them to search their computers for responsive documents. (*Id.* at 58.); (*See also id.* at 90-91) (admitting that the IT department did not search Air Bridge Program e-mail accounts, the hard drives on the computers in Dulles, or the space on Vision's server in Las Vegas reserved for the Air Bridge Program for responsive documents). Vision did nothing to stop Acor (and perhaps others) from continuing a practice of erasing e-mails after receipt. (*See* Acor Dep., Ex. 18, at 596.) To date, Vision has produced only one native format electronic document – its Employee Manual – despite admissions from its witnesses that they communicate extensively by e-mail and maintain electronic versions of other documents, such as Maguire's calculations of the pilot pay scale

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088

prior to its imposition by Vision on October 1, 2007. (Maguire Dep., Ex. 15, at 47-52, 97-98.) Maguire has admitted that he did not consider or include hazard pay in those calculations, which only proves just how prejudicial Vision's failure to preserve documents is: these calculations would support the Class' case, but the Class will have no opportunity to present them to a jury because Vision failed to preserve them.

## CONCLUSION

For the reasons set forth above, the Class respectfully requests that the Court strike Vision's pleadings as a sanction for its wanton abuse of the discovery process in this case. In the alternative, the Class moves that the Court instruct the jury with regard to Vision's misconduct and the presumption that should apply based on the missing, withheld, destroyed, and redacted evidence as set forth above. The Class also respectfully requests that, given the short time before the trial in this matter, the Court set an expedited briefing schedule for this motion.

Respectfully submitted,

KOZYAK TROPIN & THROCKMORTON, P.A.
2525 Ponce de Leon, 9th Floor
Coral Gables, Florida 33134
Telephone: (305) 372-1800
Fax: (305) 372-3508

GROSSMAN ROTH, P.A.
2525 Ponce de Leon, Ste. 1150
Coral Gables, Florida 33134
Telephone: (305) 442-8666

GOODMAN LAW GROUP
520 South Fourth Street
Las Vegas, Nevada 89101
(702) 383-5088
(702) 385-5088 (Facsimile)

By: /s/ David M. Buckner
David M. Buckner
Florida Bar No. 60550
Brett E. von Borke
Florida Bar. No. 0044802

**COUNSEL FOR PLAINTIFF AND THE CLASS**

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true copy of the foregoing has been served via the Court's CM/ECF system on October 5, 2010 on Harold P. Gewerter, Esq., 2705 Airport Drive, North Las Vegas, Nevada 89032.

By: /s/ David M. Buckner
David M. Buckner

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088