1

1                    UNITED STATES DISTRICT COURT

2                         DISTRICT OF NEVADA

3         THE HONORABLE ROGER L. HUNT, CHIEF JUDGE PRESIDING

4

5    GERALD HESTER, etc., et al., )
                                  )
6                Plaintiffs,      )
                                  ) CASE NO.:
7         vs.                     ) 2:09-cv-117-RLH-RJJ
                                  )
8    VISION AIRLINES, INC.,       )
                                  )
9                Defendant,       )
     _____  ) C E R T I F I E D   C O P Y
10

11

12

13              REPORTER'S TRANSCRIPT OF CALENDAR CALL

14                 Wednesday, September 29, 2010

15

16

17   APPEARANCES:

18   See Page 2

19

20

21

22

23

24

25                            HEATHER K. NEWMAN, CCR 774
                              Official Federal Reporter

Wednesday, September 29, 2010 - 2:09-cv-117-RLH-RJJ

2

1   APPEARANCES:

2   FOR THE PLAINTIFFS:          GOODMAN LAW GROUP
                                 BY:  ROSS C. GOODMAN
3                                520 South Fourth Street
                                 Second Floor
4                                Las Vegas, NV  89101
                                 (702) 384-5563
5
                                 GROSSMAN ROTH, PA
6                                BY:  DAVID M. BUCKNER
                                 2525 Ponce de Leon Boulevard
7                                Suite 1150
                                 Coral Gables, FL  33134
8                                (305) 442-8666

9                                KOZYAK TROPIN & THROCKMORTON, PA
                                 BY:  BRETT VON BORKE
10                               2525 Ponce de Leon Boulevard
                                 Coral Gables, FL  33134
11                               (305) 372-1800

12

13  FOR THE DEFENDANT:           HAROLD P. GEWERTER, ESQ., Chtd.
                                 BY:  HAROLD P. GEWERTER
14                               2705 Airport Drive
                                 North Las Vegas, NV  89032
15                               (702) 382-1714

16

17

18

19

20

21

22

23

24

25

1      LAS VEGAS, NEVADA; WEDNESDAY, SEPTEMBER 29, 2010; AT 9:15 A.M.

2                                -OOO-

3                    P R O C E E D I N G S

4

5           THE CLERK:  Number 5 on the calendar, Gerald Hester,

6      etc., et al. vs. Vision Airlines, Inc., 2:09-cv-117-RLH-RJJ.

7           Counsel, please note your appearances for the record.

8      Make sure you're close to a microphone.

9           MR. GOODMAN:  Ross Goodman on behalf of the

10     plaintiff.

11          MR. BUCKNER:  Good morning, Judge.  David Buckner

12     and Brett von Borke on behalf of the plaintiff and the class.

13          MR. GEWERTER:  Good morning, Your Honor.

14     Harold Gewerter on behalf of defendant Vision Airlines.

15          THE COURT:  Counsel, there are some motions before

16     the Court.  Let's address those before we talk about length,

17     and I think I have all of them.

18          I'll begin with -- actually there are three identical

19     motions if I understood correctly, they're numbered 146, 147

20     and 148, by the plaintiffs -- you may be seated, counsel.

21          MR. GEWERTER:  Thank you, Your Honor.

22          THE COURT:  -- Motions -- they are identical Motions

23     in Limine to strike and exclude certain of defendant's evidence

24     and arguments.  One is barring testimony and/or evidence that

25     plaintiff Hester was asleep in the cockpit on September the

HEATHER K. NEWMAN, FOCR, RPR, CCR 774    (702)464-5828

Wednesday, September 29, 2010 - 2:09-cv-117-RLH-RJJ

4

1   13th, 2007 and the argument is that it's unfairly prejudicial,

2   likely to confuse, that there were other pilots operating the

3   aircraft, that he worked long days and it doesn't resolve any

4   of the issues.  And while that may -- well, while some of those

5   things may be true, the Court does not find that it would be

6   unfairly prejudicial.  There may be issues relating to his job

7   performance that may affect the pay issues, I don't know until

8   those matters are presented, and because Mr. Hester is the

9   designated leader in this trial for the class, the motion is

10  denied.

11          MR. BUCKNER:  Your Honor, by the way, just -- the

12  reason that you have three copies of that motion isn't that we

13  meant to file it three times, there was a problem with CM/ECF

14  and so we had to try three times to get it in.  The first two

15  times I think it went in blank or it looked like it did so, we

16  apologize obviously for that but . . .

17          THE COURT:  That's all right.  No harm done.  Once I

18  realized there were three of them, I didn't feel like I had to

19  read all three of them so . . .

20          MR. BUCKNER:  I just didn't want you to think we were

21  asking three times.

22          THE COURT:  The next one is the defendant's Motion in

23  Limine, Document No. 151, which essentially acts the Court not

24  to admit or to keep out anything that's inadmissible,

25  irrelevant or more prejudice -- more prejudicial than probative

Wednesday, September 29, 2010 - 2:09-cv-117-RLH-RJJ

5

1    in this case, and there are 30 things listed.

2            Mr. Gewerter, I read this motion as a request by you

3    that the Court follow the rules and --

4            MR. GEWERTER:  It's a standard motion I use,

5    Your Honor.  I do -- I do bring it up in cases and yeah -- a

6    little bit more, towards the end of the motion, there are some

7    very specific items in there about reports.  It's the last

8    couple items I'm really more concerned about than the opening

9    note.

10           THE COURT:  All right.  Then let me put it this

11   way -- and first of all, I would ask you in the future in my

12   court, don't file a motion like this.

13           MR. GEWERTER:  Okay.

14           THE COURT:  The Court finds it unnecessary and just a

15   waste of my time.  I can assure you that I'm going to make

16   every effort I can to make sure that the rules of evidence are

17   followed and do it as accurately as I can but it is absolutely

18   impossible to make a ruling on a motion like this, or to grant

19   a motion like this, without knowing specifically not only what

20   the evidence is, but what the foundation is going to be to

21   introduce evidence and so, it doesn't serve any useful purpose

22   for me.

23           That having been said, and essentially the motion

24   is -- will be denied, particularly with respect to those

25   matters dealing with vagueness, hearsay, et cetera.  It will be

HEATHER K. NEWMAN, FOCR, RPR, CCR 774    (702)464-5828

Wednesday, September 29, 2010 - 2:09-cv-117-RLH-RJJ

6

1   denied as being premature -- well, it's not really moot because

2   the issues have raised, I'm going to have to make those

3   decisions ad hoc as they occur.

4           Now, that having been said, everyone -- pardon me --

5   get that lily pad down if I have enough time -- expert reports,

6   this Court's understanding of the rule is that expert reports

7   are not admissible by the proponent of the report.  It's

8   hearsay.  The expert can testify about its contents but, the

9   document itself cannot be admitted by the proponent.  It can be

10  admitted by the opposition.  It can be used in

11  cross-examination and if desired, it can be admitted.  So,

12  you'll be aware of that.

13          Also, with respect to -- I recognize that an expert

14  may use hearsay in forming the expert's opinion but that fact

15  cannot be used to introduce the hearsay by the proponent by way

16  of explaining the basis for the opinion.  It can be used in

17  cross-examination but, the fact that the hearsay can be used

18  does not mean that that hearsay is admissible and it -- the

19  expert cannot be used to get otherwise inadmissible evidence

20  before the jury so, be aware of that.  And I don't know if that

21  resolves your concerns, Mr. Gewerter.

22          MR. GEWERTER:  No.  There was a couple reports

23  towards the very end, the last couple items, there were

24  reports, one came out of Parliament about a report about, you

25  know, what Vision Airlines, those --

Wednesday, September 29, 2010 - 2:09-cv-117-RLH-RJJ

7

1          THE COURT:  Reports by people who are not testifying

2     are not going to come into evidence.

3          MR. GEWERTER:  Okay.  That's fine, Your Honor.

4          That was the purpose of that.  Thank you, Your Honor.

5          THE COURT:  They're just -- they're just not.  I

6     don't know how else to say that but, they're hearsay in my

7     opinion and, you know, if the expert, in identifying what it is

8     that he examined, wants to identify it without testifying about

9     its contents, I don't have any problem with that and can be

10    cross-examined on their contents, again, but the reports

11    themselves will not be admitted by the Court.

12          Anything else on that motion?

13          MR. BUCKNER:  Nothing for us, Judge.

14          MR. GEWERTER:  Nothing further for the defendant,

15    Your Honor.

16          THE COURT:  Number 176, the plaintiff's Motion to

17    Strike the supplemental witness list to the extent that it

18    includes witnesses that were stipulated would not be called and

19    I think we're dealing here with witnesses from McNeil

20    Technologies and it's my understanding that there was a

21    stipulation to that effect, Mr. Gewerter, and so my -- the

22    Court's inclined to grant that motion.  There was an agreement

23    not to permit that.

24          Number 171, plaintiff's motion, and it was styled a

25    Second Motion in Limine to strike and exclude evidence re:

HEATHER K. NEWMAN, FOCR, RPR, CCR 774    (702)464-5828

Wednesday, September 29, 2010 - 2:09-cv-117-RLH-RJJ

8

1   counterclaims which were dismissed regarding the employment

2   contract between Vision and class members, I'm going to grant

3   the motion but, I grant it except to the extent that that

4   evidence may represent a defense to the class' claims.

5          I guess maybe to give you an example.  If -- if the

6   evidence with respect to the counterclaim is about something

7   that occurred after the alleged failure to pay, then in the

8   Court's view it's probably not going to be relevant as a

9   defense.  If it's things that occurred during the course of the

10  employment or requests for or complaints about that, or is

11  based upon the reason that the -- Mr. Hester or others are no

12  longer serving with them, it seems to me that that may well be

13  evidence that is relevant to the defense of the class' claims

14  and so, I guess I'm saying this to put both parties on notice,

15  we are not going to try the counterclaims but, I have no way of

16  knowing whether or not some of that evidence may be relevant to

17  Vision's defenses against that so, that's as far as I can go at

18  this point on that motion.  So it is -- it's granted with those

19  exceptions.

20         The styled Third Motion in Limine, which is Document

21  Number 174, was an order that the class' expert supplemental

22  report caused by delay in disclosure by Vision be considered

23  timely and I -- as I read this, and I didn't take the time

24  quite frankly to go back over what has been submitted but I

25  note there was -- there was an initial disclosure of the

1    identity of the expert on the 14th of April.  There was a

2    report on the 29th of April that was -- I think it was called a

3    preliminary report.  There was a supplemental affidavit on July

4    19th, 2010 and then what I gathered is an anticipated

5    supplement following receipt of the discovery ordered by the

6    magistrate judge.  Am I -- do I have --

7              MR. BUCKNER:  You have it right, Your Honor.

8              THE COURT:  -- the players in the right place here?

9              MR. BUCKNER:  You have the chronology correct.

10             THE COURT:  Okay.

11             MR. GEWERTER:  There's actually -- just for the

12   Court's benefit, there was actually a ruling on denying him to

13   testify.  They then came back and brought another Motion in

14   Limine format.

15             THE COURT:  He who?

16             MR. GEWERTER:  Judge Johnston.

17             THE COURT:  Well, I know who denied it but, when you

18   say denying him the right to testify --

19             MR. GEWERTER:  The expert was not timely disclosed is

20   what the ruling came out to.  They asked for time and

21   Judge Johnston turned down the request to have their expert --

22   in fact, he turned them down twice.

23             MR. BUCKNER:  Actually, Judge, that's not correct.

24   What happened was -- and I don't want to burden you with a lot

25   of detail because I know you're trying to move through this --

Wednesday, September 29, 2010 - 2:09-cv-117-RLH-RJJ

10

1    prior to April 29th, which was when our expert disclosure was
2    due, we had not gotten discovery from them, we had a motion --
3    our renewed Motion to Compel had been pending since January,
4    that's the motion that Judge Johnston granted about two, two
5    and a half weeks ago, Your Honor has now overridden their
6    objections.  We moved for additional time to allow us to
7    disclose our expert and his opinions in anticipation of getting
8    discovery from Vision.  Judge Johnston denied our request to
9    get additional time.  We filed a renewed request for additional
10   time.  He's never ruled on that -- actually, I'm sorry, he did
11   rule on that last week but, we made our --
12              THE COURT:  Additional time to --
13              MR. BUCKNER:  To disclose our expert's report and
14   opinions, because we hadn't gotten discovery.
15              THE COURT:  All right.
16              MR. BUCKNER:  And frankly, we still haven't, but
17   that's a separate issue.
18              THE COURT:  Not necessarily, but go ahead.
19              MR. BUCKNER:  Well, perhaps we'll get to that today.
20              All Judge Johnston ruled back in April prior to the
21   29th was that he was not going to extend time for us to file
22   the expert's report and opinions and associated documents.
23              THE COURT:  All right.
24              MR. BUCKNER:  So we timely filed that, as Your Honor
25   has noted, by the due date back in April so Mr. Gewerter is

HEATHER K. NEWMAN, FOCR, RPR, CCR 774    (702)464-5828

Wednesday, September 29, 2010 - 2:09-cv-117-RLH-RJJ

11

1    frankly, just mistaken.  There's no order from Judge Johnston

2    denying our expert the right to testify.

3            THE COURT:  But there is an order from Judge Johnston

4    which in effect denies or rejects the preliminary -- or the

5    supplemental report in July?

6            MR. BUCKNER:  No, sir.  All that -- the only -- like

7    I said, the only order from Judge Johnston is we asked for

8    additional time to make our initial disclosure based on their

9    failure to produce discovery.  He denied that.  We did a

10   renewed motion but, we filed the initial disclosure timely.  We

11   then had to go to the Eastern District of Virginia to get the

12   evidence from a third party --

13           THE COURT:  I understand that, counsel.

14           MR. BUCKNER:  Right.

15           THE COURT:  I'm trying to find out what

16   Judge Johnston did and the effect of what it is that he did.

17           MR. BUCKNER:  Right.

18           THE COURT:  Let me try again to explain what it

19   appears to me happened.

20           Before your 29 -- April 29th disclosure, or report,

21   preliminary report, you asked for more time to do that and was

22   denied that.

23           MR. BUCKNER:  Correct.

24           THE COURT:  You subsequently made another request for

25   an extension of time to file what amounted to a supplemental

HEATHER K. NEWMAN, FOCR, RPR, CCR 774    (702)464-5828

12

1    report.

2              MR. BUCKNER:  That's where you're mistaken, Judge.

3    We filed the second request after we had a telephonic hearing

4    with Judge Johnston, this is all still in April, and he said, I

5    need more information, get me an affidavit, something to that

6    effect.  We filed a second request attaching an affidavit from

7    our expert prior to April 29th, explaining why we needed more

8    time to file the initial report.

9              THE COURT:  All right.

10             MR. BUCKNER:  We didn't get that ruled on by April

11   29th.  We filed our initial report by the due date.

12             THE COURT:  Okay.

13             MR. BUCKNER:  So Judge Johnston has never ruled on

14   anything with regard to the supplemental report.  We just asked

15   for an extension of the initial deadline --

16             THE COURT:  So what did he rule on last week or so?

17             MR. BUCKNER:  Well, what he -- well, all he did was

18   he denied the motion to extend the time that we had asked for

19   to file the initial report back in April but, of course, we had

20   already filed it so that motion was moot.

21             THE COURT:  And what's the affidavit, the

22   supplemental affidavit?  Is that an affidavit from the expert

23   supplementing the report?

24             MR. BUCKNER:  Correct.

25             What it does is we were unable to get discovery from

Wednesday, September 29, 2010 - 2:09-cv-117-RLH-RJJ

13

1   Vision with regard to the fourth phase of the Air Bridge and

2   frankly, still have not gotten that discovery.  We went to the

3   Eastern District of Virginia, litigated against McNeil, got

4   discovery from McNeil, a very limited amount, they fought very

5   hard saying that we should have come out here and got the

6   discovery from Vision.  We got that discovery from McNeil on

7   the 9th of July and -- on the 9th or 10th and on the 19th of

8   July we filed the expert's supplement, now having the

9   additional information that Vision refused to disclose.  We

10  filed the supplemental affidavit extending his opinion, the

11  expert's opinion, that it was originally just as to Phases Two

12  and Three, now into Phase Four.  Same analysis but we just

13  didn't have the data.  Now we had some of it and we went into

14  Phase Four.

15          THE COURT:  All right.

16          And we now have an order compelling Vision to produce

17  discovery which I understand has not yet been produced,

18  Mr. Gewerter.

19          MR. GEWERTER:  Some of it has not, Your Honor.

20  Some -- most of it has been.

21          THE COURT:  When -- when will the rest of it be?

22          MR. GEWERTER:  I'm going to try and get that the next

23  day or two, Your Honor.  It's just -- my clients are all over

24  the world.  It's very hard to get good documents, very

25  difficult.

Wednesday, September 29, 2010 - 2:09-cv-117-RLH-RJJ

14

1          THE COURT:  I understand that but, at some point,

2    because it's my intention to permit them to file a supplemental

3    report from their expert and I -- it's also my intention that

4    if they do that and you wish to take that expert's deposition,

5    you will have time to do it before we actually go to trial.

6          MR. GEWERTER:  That would be my request, and also --

7          THE COURT:  But that means, Mr. Gewerter, that that

8    discovery needs to be produced promptly.

9          MR. GEWERTER:  Your Honor, I would ask then if

10   they're going to be allowed, which I believe was a late

11   disclosure of an expert witness, to allow me to have a rebuttal

12   expert then.

13         MR. BUCKNER:  We would object to that, Your Honor.

14   The time for disclosing experts was back in April.  This case

15   has gone all the way through discovery.  We're ready for trial.

16   They have delayed -- the magistrate told them back in March --

17   I'm sorry.

18         THE COURT:  I'm not going to -- I'm not going to

19   permit that.  If they needed a rebuttal expert, that should

20   have been known following at least the supplemental -- or the

21   preliminary report on April the 29th.

22         MR. GEWERTER:  Except the way I read the last order

23   from Judge Johnston, he's not allowing experts in this case,

24   and that's my concern, Your Honor, because -- and that ruling

25   came out last week or two, under subpart 26(a)(2) their motion

Wednesday, September 29, 2010 - 2:09-cv-117-RLH-RJJ

15

1    was denied.

2           THE COURT:  Their motion -- what motion was denied?

3           MR. GEWERTER:  Their motion for -- to produce their

4    expert and the report, is the way I read the order.

5           THE COURT:  Wasn't it a motion to disclose that late?

6           MR. GEWERTER:  Yeah, to disclose it late, yes.

7           THE COURT:  So, did he deny the right to do it, since

8    they did disclose the expert and a preliminary report by the

9    due date?

10          MR. GEWERTER:  But then they wanted more time to

11   supplement and that was turned down, Your Honor.

12          MR. BUCKNER:  Again, I think that mischaracterizes

13   what was denied.  I don't want to belabor this point.

14          We asked for additional time to file the preliminary

15   report, that's all that's been denied.  The magistrate judge

16   has not substantively ruled on our expert in any way.

17          THE COURT:  And that order by Judge Johnston has been

18   filed --

19          MR. BUCKNER:  I believe it was an electronic -- I

20   can't remember --

21          THE COURT:  All right.

22          MR. BUCKNER:  I believe it was an electronic order.

23          MR. GEWERTER:  I would just ask the Court to take a

24   look at that order and see what it refers to so there's no --

25   no one gets blindsided in this hearing.

Wednesday, September 29, 2010 - 2:09-cv-117-RLH-RJJ

16

1           THE COURT:  Calder, are you the one that's been

2   working on this case?  The number is 09-117.  Would you go see

3   if you can pull up that order, make a copy of it and bring it

4   to me.

5           MR. BUCKNER:  It's Docket 167, docket entry.

6           THE CLERK:  I can print it here for you.

7           THE COURT:  All right.  Do that.

8           THE CLERK:  167?

9           MR. BUCKNER:  Yes, ma'am.

10          THE COURT:  Calder, if you can hear me, we are having

11   it printed in here.

12           (Brief pause in proceedings.)

13          Can you -- are you -- can you get back into the

14   docket?

15           THE CLERK:  Yes.

16           THE COURT:  Document Number 110, I want a date on it.

17           THE CLERK:  Number 110 was filed on April the 15th.

18   The Second Motion to Extend Time.

19           THE COURT:  And the exhibits 112 through 115?

20           THE CLERK:  Were filed on April the 19th.

21           THE COURT:  And the reply?  117.

22           THE CLERK:  That was filed on April the 26th.

23           THE COURT:  Okay.

24          The order merely says that Plaintiff's Expedited

25   Second Motion for Extension of Time, 110, is denied.  The Court

17

1  does not view that as Judge Johnston's deciding that there will

2  be no expert testimony in this case and I would be surprised if

3  Judge Johnston would make that decision, other than by a report

4  and recommendation to me because usually questions about who

5  will or will not testify is something that I will make rather

6  than the magistrate judge.

7          Accordingly, how much confidence do you have that you

8  can get the rest of the discovery produced by the end of the

9  day on Friday?

10         MR. GEWERTER:  My client, who actually has the

11 documents, happens to be overseas right now so we're

12 communicating by e-mail and that's been my problem.  Their

13 insurance is up for renewal and this is -- they do certain

14 things because of what they do and they have certain insurance

15 requirements and that's been my problem.  He's been gone.

16         I feel confident but I -- you know, I will do

17 everything I can, Judge, to do it.  I will make every effort I

18 can, I promise that.

19         I feel confident but I don't want to give a hundred

20 percent guarantee, Judge.

21         THE COURT:  Well, the Court is going to order that

22 the plaintiff or plaintiffs -- I'm not quite sure how to

23 characterize the class -- will have the right to supplement the

24 expert's report.  They must do it within two weeks of receiving

25 the balance of the discovery.

Case 2:09-cv-00117-RLH-NJK   Document 181   Filed 10/06/10   Page 18 of 24
Wednesday, September 29, 2010 - 2:09-cv-117-RLH-RJJ

18

1          This matter is going to trail the Farris matter that

2    was first on the calendar this morning.  If there is delay in

3    producing the documentation, so that it pushes the report --

4    the supplemental report up to the time of trial, it may

5    preclude the ability of the defendant to take a deposition of

6    the expert if it wishes to do so.  So, I guess that ball is in

7    the defendant's court.

8          MR. GEWERTER:  That's fine.

9          THE COURT:  That having been said, and I think

10   that -- does that cover all the motions in front of the Court?

11         MR. BUCKNER:  I believe that does, sir.  Thank you.

12         MR. GEWERTER:  I believe it does, Your Honor.

13         THE COURT:  How long do we think this trial's going

14   to take?

15         MR. BUCKNER:  Your Honor, we believe we can do it in

16   a week or less, probably a week.

17         THE COURT:  You mean five days?

18         MR. BUCKNER:  A week being five days.

19         MR. GEWERTER:  I'm not quite as optimistic knowing

20   how the depositions went.  I'm going to say five to seven trial

21   days, Judge.

22         THE COURT:  I've read some of the experts in those

23   depositions and I can assure you the court testimony will go

24   much more smoothly than the depositions.

25         MR. GEWERTER:  No, I understand and I'm sure I'll

Wednesday, September 29, 2010 - 2:09-cv-117-RLH-RJJ

19

1    have less objections on both sides, it's just, you know, I hate

2    to pin you down -- pin the Court down to five days and then you

3    have something else that has to go the following week, that's

4    my concern.  So, I mean, I feel confident we can do it in five

5    days but if it goes a day or two over, I don't know.

6              THE COURT:  Okay.  I'm not asking guarantees, I'm

7    just asking for an estimate.

8              MR. GEWERTER:  Five days is reasonable.

9              THE COURT:  Okay.

10             MR. GEWERTER:  The hardest part, Your Honor, may be

11   picking a jury because of the nature, you know, of the voir

12   dire and so forth because, you know, it deals with, you know, a

13   war zone and so forth.  I'm concerned, you know, so many people

14   are affected by that.  That may be -- so picking voir dire may

15   take a little longer than usual in this case.

16             THE COURT:  I understand that but, let me say

17   something else in connection with the items mentioned by

18   Mr. Gewerter in his motion.

19             This is a contract case and the Court will not --

20   sees no reason to permit testimony about the dangers of doing

21   it, et cetera.  There either was an obligation to pay hazard

22   pay because -- and I think people will understand the -- any

23   need or claim of hazard pay going into Afghanistan and Iraq

24   without having to go into descriptions of war zones and, you

25   know, how dangerous it is to fly into there and what has to be

Wednesday, September 29, 2010 - 2:09-cv-117-RLH-RJJ

20

1   done in order to make those flights and so, I would hope,

2   anticipate and require that those kinds of things not be

3   included either in statement, opening statements or in

4   solicited testimony so . . .  And beyond that, I don't know how

5   we may preliminarily reduce any difficulty we have in selecting

6   a jury.

7          MR. BUCKNER:  I don't think it's going to be that

8   hard, Your Honor, honestly.

9          THE COURT:  We can ask that -- we make sure we have

10  sufficient number of prospective jurors here to accomplish

11  that.

12         As I'm sure you're aware, when it comes to selecting

13  the jury, I will be doing that.  I will receive from you

14  proposed voir dire, will not promise that I'll ask all the

15  questions you ask, and I suspect that many questions you'll be

16  asking I will already be prepared to ask but to the extent that

17  I think your questions are appropriate, I will incorporate

18  them.

19         My practice is that when I complete and I -- so that

20  you understand, of the panel, we will pre-select the

21  appropriate number of prospective jurors who will come into the

22  jury box and I will inquire of them generally initially, if

23  they respond affirmatively to a question that I'm asking, then

24  I will direct questions to them individually.  They will be --

25  some will be relieved or excused and then replaced throughout

HEATHER K. NEWMAN, FOCR, RPR, CCR 774   (702)464-5828

Wednesday, September 29, 2010 - 2:09-cv-117-RLH-RJJ

21

1    the course of this process.  When I have finished, I will then

2    call counsel to sidebar and I will ask if there are any

3    challenges for cause and if there are any questions, either of

4    the group or individual jurors, that you wish me to ask or that

5    you would like to ask.  And my preference is, is that I ask

6    them unless the question is so conplex that I may get it wrong,

7    then I may ask you to ask it, but I will identify any questions

8    you wish me to follow up on with any of the jurors and will do

9    that and then you'll be given the opportunity to exercise your

10   peremptories against the -- what, do we have, 14, I think, that

11   we'll start with?

12           THE CLERK:  Yes.

13           THE COURT:  Which will take us down to eight which I

14   think will be sufficient for a week long trial.  And the

15   remaining eight who are not challenged or excused by peremptory

16   challenge becomes our jury panel.

17           And I assume you've all tried cases in federal court

18   enough to know that even with a civil case it must be unanimous

19   and we do not have alternate jurors, we have extra jurors and

20   all jurors remaining will deliberate.

21           We'll begin at 8:30.  We will go to noon with a

22   mid-morning break of about 15 minutes.  We'll resume at 1:30,

23   go to in the neighborhood of 4:30 with a mid-afternoon break.

24           I am not a large fan of sidebars and would ask you to

25   try to keep those at a minimum.

22

1      I do not encourage jurors to ask questions but I

2   permit them to if they wish to so, if that happens . . .

3      And I -- I don't -- ordinarily today would be the day

4   that you would file these proposed voir dire, proposed jury

5   instructions, any trial briefs that you wish to file, et

6   cetera.  And I don't know if anybody's filed those yet but I

7   will -- let's see, I'll give you two weeks before we begin the

8   trial to do that but I don't know how long this other case is

9   going to take so I don't know how to tell you to do that.  So

10  let's -- I will extend the time to file those for two weeks.

11  If -- and you heard the representations that this -- the Farris

12  matter may take anywhere from a week to four weeks.  I've been

13  dealing up to now with a projection of five to six weeks so,

14  I'm not sure they can tell us.  We're dealing with something

15  like 63 counts, over 90 victims, some of whom have passed away

16  so I suspect that some of those counts are going to be

17  dismissed but it is a -- it's a complicated wire fraud case

18  arising out of mortgage fraud or mortgage investment fraud and

19  so it's -- it's document intensive and so it's difficult for

20  any of us to know exactly how long it will take.  We will try

21  to give you as much advance notice as its progression and you

22  are at liberty to call Miss Capozzi during the course of that

23  trial to see if we have any, you know, projection, so . . .

24      Anything further?

25      MR. BUCKNER:  Just that last point, Judge.  As much

Wednesday, September 29, 2010 - 2:09-cv-117-RLH-RJJ

23

1    head start as you can give us, just --

2              THE COURT:  I appreciate that, counsel.  I practiced

3    law for over 20 years.  I know the challenges of getting

4    witnesses together and getting yourself organized and --

5              MR. GEWERTER:  We have people from all over coming

6    in.

7              THE COURT:  I understand that.  As I say, I'll do

8    everything I can to give you as much notice as we can but I --

9    that's why I will submit Miss Capozzi to your inquiries and

10   she's always been good about handling those so . . .

11             MR. BUCKNER:  Yes.  Appreciate it.

12             THE COURT:  She will tell you whatever it is we know

13   to the best of our ability --

14             MR. BUCKNER:  Thank you, Judge.

15             THE COURT:  -- as that case progresses.

16             MR. GEWERTER:  Thank you, Your Honor.

17             THE COURT:  Thank you.

18             We will be in recess.

19             THE CLERK:  All rise.

20

21             (Proceedings adjourned at 9:41 a.m.)

22

23

24

25

HEATHER K. NEWMAN, FOCR, RPR, CCR 774    (702)464-5828

24

1                          *   *   *

2     I hereby certify that pursuant to Section 753, Title 28,
      United States Code, the foregoing is a true and correct
3     transcript of the stenographically reported proceedings held in
      the above-entitled matter.

4

5     DATED:  10-5-2010              /s/ Heather K. Newman
                                     HEATHER K. NEWMAN
6                                    U.S. Court Reporter
                                     CCR 774

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25