1   HAROLD P. GEWERTER, ESQ.                       E filed:   10/14/10
Nevada Bar No. 499
2   HAROLD P. GEWERTER, ESQ. LTD.
2705 Airport Drive
3   North Las Vegas, Nevada 89032
Telephone: (702) 382-1714
4   Fax:  (702) 382-1759
Email: harold@gewerterlaw.com
5   Attorney for Defendant
VISION AIRLINES, INC.
6

7
                    UNITED STATES DISTRICT COURT
8
                         DISTRICT OF NEVADA
9
                              *****
10
GERALD HESTER, on behalf of himself and       **CASE NO: 2:09-CV-00117-RLH-RJJ**
11   all others similarly situated,

12            Plaintiff,

13        vs.                                   **DEFENDANT VISION AIRLINES,
                                                INC.'S OPPOSITION TO THE CLASS'
14   VISION AIRLINES, INC.,                     EXPEDITED MOTION TO ENFORCE
                                                THE COURT'S ORDERS OF
15            Defendant.                        SEPTEMBER 21, 2010 AND OCTOBER
                                                5, 2010 AND FOR SANCTIONS**
16

17
        VISION   AIRLINES,   INC.,   by   and   through   its   attorney   of   record,   HAROLD   P.
18
GEWERTER, ESQ., of the law firm of HAROLD P. GEWERTER, ESQ., LTD., respectfully
19
submits Defendant Vision Airlines, Inc.'s Opposition to the Class' Expedited Motion to Enforce
20
The Court's Orders of September 21, 2010 and October 5, 2010 and for Sanctions.
21   / / /

22   / / /

23   / / /

24   / / /

25   / / /

                                        1

1      This Opposition shall consist of this Preamble, the following Points and Authorities and

2  the complete files and records of this action.

3      DATED this 14th day of October, 2010.

4                                          HAROLD P. GEWERTER, ESQ., LTD.

5                                          _____/s/   Harold P. Gewerter, Esq._____
                                           HAROLD P. GEWERTER, ESQ.
6                                          Nevada Bar No. 499
                                           2705 Airport Drive
7                                          North Las Vegas, NV 89032
                                           Attorney for Defendant
8                                          VISION AIRLINES, INC.

9

10                              **POINTS AND AUTHORITIES**

                                          **I.**
11
                                **PROCEDURAL BACKGROUND**
12
        This case was filed on January 20, 2009.  Defendant VISION filed a Motion to Dismiss
13
on March 2, 2009 to which Plaintiff GERALD HESTER ("HESTER") filed a Response in
14
Opposition on March 19, 2009.  The Court denied the Motion to Dismiss on procedural grounds
15
on June 22, 2009 stating "These are all factual contentions more properly presented in a motion
16
for summary judgment…..The Court cannot, at this state in the proceedings, make a
17
determination of whether Plaintiff has a good case, it can only determine whether he has alleged
18
one."  Defendant VISION answered the Complaint on July 2, 2009 and also filed a Counterclaim
19
therewith.

20      Plaintiff HESTER served Plaintiff's First Requests for Production on April 3, 2009.

21  Defendant VISION served its response to the Plaintiff's First Requests for Production on May

22  13, 2009, which response contained over three hundred seventy (370) pages of material.  (See

    Defendant Vision's Response to Plaintiff's First Request for Production, attached hereto as
23
Exhibit "1").  It is clearly noted in Defendant VISION'S Responses which documents have been
24
produced in response to Plaintiff HESTER'S Requests.

25      Defendant VISION then served two (2) supplemental sets of Responses containing an

Employee Handbook, and in excess of an additional four hundred thirteen (413) pages of

                                          2

documents.  (See Defendant Vision's First Supplemental Response to Plaintiff's First Request for Production and Defendant Vision's Second Supplemental Response to Plaintiff's First Request for Production, attached hereto as Exhibits "2" and "3", respectively.)

On April 13, 2009, Plaintiff HESTER served on Defendant VISION Plaintiff's First Set of Interrogatories to which Defendant VISION responded on May 13, 2009.  (See Defendant Vision's Reponses to Plaintiff's First Set of Interrogatories, attached hereto as Exhibit "4").

On July 9, 2009, Plaintiff HESTER filed a Motion to Compel.  The Court heard oral argument on Plaintiff's Motion to Compel [D.E. 49] and Defendant's Counter Motion to Compel [D.E. 59] on October 23, 2009.  At that hearing, the Court denied Plaintiff's Motion to Compel and Defendant's Counter Motion to Compel. [D.E. 82.]   In denying Plaintiff's Motion to Compel, the Court instructed the parties to engage in additional discussions in order to resolve their outstanding discovery disputes.  Moreover, the Court specifically stated to Plaintiff's counsel "I would never go there.  I would never approve that.  I'd call that overbroad, ambiguous and burdensome.  ….thats fishing to me.  You give me a sly look to the side and slant your eye, but that's fishing.  Okay?".

As a result of the above hearing, there were at least eight (8) in person or telephonic communications between Plaintiff HESTER and Defendant VISION'S counsel, in addition to numerous emails.   As a result of these communications along with other letters and emails a narrowed documents request was submitted to Defendant VISION by Plaintiff HESTER.   In further telephonic communications, Defendant VISION agreed to produce all items responsive to these narrowed requests which existed and were in Defendant VISION'S possession.  Plaintiff filed a renewed Motion to Compel which this Court granted on September 9, 2010.   Defendant Vision filed an Objection to the Magistrates Order to Compel issued on September 9, 2010, which Objection was not denied until September 21, 2010.   Thus Plaintiff's implication that the Order to Compel has been in place and ignored by Defendant VISION since September 9, 2010 is incorrect.

**A.    Defendant VISION has provided production pursuant to the agreed upon narrowed requests.**

Defendant VISION has produced the entire personnel files for the prospective class members (minus medical/financial/background confidential information as agreed upon between the parties) which production included the files for one hundred thirty five (135) employees or former employees. These personnel files alone constitute three thousand five hundred forty one (3,541) pages.

Defendant VISION has also produced payroll records from May 5, 2005 to 2007 in paper format (the only format in which Defendant VISION has the records for this time period) and in electronic form for the period from 2007 to current.

Defendant VISION has also produced its un-redacted contracts with McNeil Technologies, CSC and Capital Aviation along with records concerning payments relating thereto.    Defendant VISION does not have nor can it produce copies of any contracts with the United States Government.

Defendant VISION has produced a complete list of potential class members (including approximately thirty (30) whom Defendant VISION believes to be beyond the scope of the class member definition) including last known addresses and their positions when employed by Defendant VISION.    Defendant VISION relied on ADP payroll records when it came up with the initial list. The report was generated directly out of ADP Boeing payroll from 2005-2009. The amended class list came out as a result of information coming from sources other than ADP. It has come to our attention that payroll during the infancy period of Boeing was paid through several methods. Some are directly hired full time employees while some started as contract labor then became full time employees. Some others remain contract employees. During this time, Defendant VISION started to switch from MAS payroll system to ADP. After the switch, other flight crew members were keyed in Boeing ADP payroll while others were recorded under Defendant VISION Air ADP payroll. This explains why there is a discrepancy from the first class list (from Boeing ADP payroll) and the amended list (from MAS, Vision Air ADP payroll and contract employees).

1
2
3
4
5
6

Many of the last names found by Plaintiff HESTER which were later added to the list are not believed to fall within the definition of Class Member in this action, however, since the only payroll spreadsheets for some of this time period were paper copy only they show as employees on some of the early payroll printouts sent to Plaintiff HESTER. Out of an abundance of caution, these potential class member names and addresses were delivered to Plaintiff HESTER for their class notification mailing.

7

Vision has also produced all of the flight logs from the beginning of the AirBridge Program up to the end of the discovery period in this case.

8
9
10
11
12
13

Since the Order to Compel was affirmed, Defendant VISION has produced the remaining flight logs which were outstanding (February 3, 2010-July 31, 2010), the un-redacted contracts with McNeil and Capital and un-redacted invoices produced thereunder, have sent well over one Thousand (1,000) pages of hard copy ADP (payroll) records for bate stamping (which will be delivered to Plaintiff forthwith) and have been working with ADP to produce as many of those in native electronic form (see letters attached hereto as Exhibit "5").

**II.**

**FACTUAL BACKGROUND**

14
15
16
17
18
19
20

Defendant VISION has, since 2005, provided airline services to a contractor or subcontractor of a federal government entity.  Plaintiff HESTER is a former VISION pilot who claims that Defendant VISION failed to give him specific sums of "hazard pay" allegedly required for flights into and out of Baghdad, Iraq and Kabul, Afghanistan.  Plaintiff HESTER'S services ended with Defendant VISION because of Federal Age Restrictions for pilots, and further, Plaintiff HESTER fell asleep while on duty.

21
22
23
24
25

Plaintiff HESTER does **not** allege that Defendant VISION breached any contract with him, or seek to recover as a third-party beneficiary of a contract between others.  Nor does he suggest that Defendant VISION violated any state or federal wage-and-hour laws.  Instead, Plaintiff HESTER contends that Plaintiff VISION was required to provide specifically-defined and separately-identified hazard pay simply because the United States Government allegedly intended its prime contractors to require downstream subcontractors to make such payments.

But no subcontract to which Defendant VISION is or was a party ever required Defendant VISION to make any specific amount of hazard-duty-related payments.   Nor did Defendant VISION'S at-will compensation agreement with Plaintiff HESTER require any such amounts to be separately paid.

Because no law or contract creates such an obligation, Plaintiff HESTER fashions a handful of unjust enrichment-type claims, which he then wraps in the imagery of war and patriotic duty.   Many of Plaintiff HESTER'S allegations are fundamentally wrong.   But even assuming that all were true, Plaintiff HESTER'S rights and Defendant VISION'S obligations were defined by contract.   And where, as here, there are valid and enforceable contracts, Plaintiff HESTER'S equitable claims are unavailable as a matter of law.

Defendant VISION hired Plaintiff HESTER in September 2006 to pilot flights into and out of Baghdad and Kabul.   (Plaintiff's Complaint, ¶ 1.)    In consideration for his duties, Defendant VISION offered Plaintiff HESTER a defined compensation package that Plaintiff HESTER accepted.[1]   Plaintiff HESTER does not contend that Defendant VISION failed to pay him any agreed upon sum.   Defendant VISION had similar agreements with other crew members.   Defendant VISION terminated Plaintiff HESTER'S employment on or about August 4, 2008.

Plaintiff HESTER contends that he (and other VISION crew members) should have received "hazard pay" for all flights originating or terminating in Baghdad or Kabul, id. at ¶¶ 6, 57, presumably in addition to the defined compensation package to which he had agreed. Plaintiff HESTER grounds his "right" to receive "hazard pay" in the purported language of certain contracts – contracts to which he was not a party and, in some cases, to which Defendant VISION was not a party.

Plaintiff HESTER alleges that Capital Aviation, Inc. ("Capital") in 2004 contracted with the U.S. Government to provide airline service into and out of Baghdad and Kabul.[2]   (Id. at

_____

[1]    Hester's rate of compensation was materially above market to account for the risks associated with flying into Iraq and Afghanistan.

[2]    As stated above, many of Plaintiff's allegations are false.

¶ 25.)   Thereafter, Capital subcontracted that service with Vision.  (Id. at ¶ 28.)  The Complaint alleges that the Capital Subcontract required specific sums of "hazard pay" to be given to Vision employees.  (Id. at ¶ 30.)

The Complaint further alleges that in mid-2006 the U.S. Government changed primary contractors and executed a contract with McNeil Technologies, Inc. ("McNeil") with the same terms as the Government's contract with Capital.   (Id. at ¶ 51.)   Like Capital, McNeil subcontracted the service with Defendant VISION (Id.)  Plaintiff HESTER maintains that the terms of the McNeil Subcontract were substantively the same as the Capital Subcontract and that it too required Defendant VISION to make specific hazard duty payments to its employees. (Id.) The Capital and McNeil Subcontracts, however, show that Plaintiff HESTER'S key allegations are false.[3]   The dispositive facts are as follows:   (1) Defendant VISION **never** agreed with

---

[3]     For example:

- Plaintiff contends that the Government contracted directly with Capital.     (Complaint, ¶ 25-27.)   But it actually contracted with Computer Sciences Corporation, which then subcontracted with Capital.  Vision was not a party to either of these contracts.

- Plaintiff contends that the Capital and McNeil Subcontracts require specific amounts of hazard pay. (Complaint, ¶¶  30, 34-36, 51).  Neither, however, mentions any specific sum of such payments to Vision employees.  Under the Capital Subcontract, Capital's payments to Vision were based on the number of rotations flown per week.  (See Exhibit A.)  Under the McNeil Subcontract, McNeil paid Vision a fixed amount per flight and a variable sum to reimburse for fuel costs.   The McNeil Subcontract nowhere even mentions "hazard pay." (Id.)

- Plaintiff claims that in 2006 Vision contracted with McNeil to provide air  transport services under the same terms and conditions as the Capital Subcontract.   (Complaint, ¶ 51.)  Vision, however, did not contract with McNeil until 2007,  and   at   that   time   it executed a new and different contract from the one it had with Capital.

- Plaintiff claims to know the contents of the agreements between the U.S.   Government and its prime contractors (here, CSC and McNeil). (Complaint, ¶¶ 18-27, 51).   At least parts of these documents are "classified," however, so it is very unlikely that Plaintiff ever saw them.

Capital or McNeil to give Plaintiff HESTER specific hazardous duty payments over and above

his regular compensation; and (2) Plaintiff HESTER received all wages and benefits that he and

Defendant VISION agreed he would receive.

### ARGUMENT

**A.  The Discovery Standard.**

 Rule 26 of the Federal Rules of Civil Procedure reads in pertinent part:

(b) DISCOVERY SCOPE AND LIMITS.

> (1)    *Scope in General.* Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense — including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).

> (2)    *Limitations on Frequency and Extent.*

>> (A)    *When Permitted.* By order, the court may alter the limits in these rules on the number of depositions and interrogatories or on the length of depositions under Rule 30. By order or local rule, the court may also limit the number of requests under Rule 36.

>> (B)    *Specific Limitations on Electronically Stored Information.* A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(C)   *When Required.* On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:

    (i)   the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

    (ii)   the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

    (iii)   the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

(3)   *Trial Preparation: Materials.*

(A)   *Documents and Tangible Things.* Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:

    (i)   they are otherwise discoverable under Rule 26(b)(1); and

    (ii)   the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

(B)   *Protection Against Disclosure.* If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

(C)   *Previous Statement.* Any party or other person may, on request and without the required showing, obtain the person's own previous statement about the action or its subject matter. If the request is refused, the person may move for a court order, and Rule 37(a)(5) applies to the award of expenses. A previous statement is either:

(i)     a written statement that the person has signed or otherwise adopted or approved; or

(ii)    a contemporaneous stenographic, mechanical, electrical, or other recording — or a transcription of it — that recites substantially verbatim the person's oral statement.

(4)    *Trial Preparation: Experts.*

(A)    *Expert Who May Testify.* A party may depose any person who has been identified as an expert whose opinions may be presented at trial. If Rule 26(a)(2)(B) requires a report from the expert, the deposition may be conducted only after the report is provided.

(B)    *Expert Employed Only for Trial Preparation.* Ordinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial. But a party may do so only:

(i)     as provided in Rule 35(b); or

(ii)    on showing exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means.

(C)    *Payment.* Unless manifest injustice would result, the court must require that the party seeking discovery:

(i)     pay the expert a reasonable fee for time spent in responding to discovery under Rule 26(b)(4)(A) or (B); and

(ii)    for discovery under (B), also pay the other party a fair portion of the fees and expenses it reasonably incurred in obtaining the expert's facts and opinions.

(5)    *Claiming Privilege or Protecting Trial-Preparation Materials.*

(A)    *Information Withheld.* When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:

(i)     expressly make the claim; and

1

2

3

     (ii)  describe the nature of the documents, communications, or tangible things not produced or disclosed — and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

4

5

6

7

8

9

10

11

   (B)  *Information Produced.* If information produced in discovery is subject to a claim of privilege or of protection as trial-preparation material, the party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The producing party must preserve the information until the claim is resolved.

12

13

  **B. Defendant VISION has provided legally sufficient answers and production to Plaintiff HESTER'S Requests for Production.**

14

15

16

17

18

   Defendant VISION has produced the entire personnel files for the prospective class members (minus medical/financial/background confidential information as agreed upon between the parties) which production included the files for one hundred thirty five (135) employees or former employees. These personnel files alone constitute three thousand five hundred forty one (3,541) pages.

19

20

   Defendant VISION has also produced payroll records from May 5, 2005 to 2007 in paper format (the only format in which Defendant VISION has the records for this time period) and in electronic form for the period from 2007 to current.

21

22

23

24

   Defendant VISION has also produced its un-redacted contracts with McNeil Technologies, CSC and Capital Aviation along with records concerning payments relating thereto. Defendant VISION does not have nor can it produce copies of any contracts with the United States Government.

25

   Defendant VISION has produced a complete list of potential class members (including approximately thirty (30) whom Defendant VISION believes to be beyond the scope of the class

member definition) including last known addresses and their positions when employed by Defendant VISION.   Defendant VISION relied on ADP payroll records when it came up with the initial list. The report was generated directly out of ADP Boeing payroll from 2005-2009. The amended class list came out as a result of information coming from sources other than ADP. It has come to our attention that payroll during the infancy period of Boeing was paid through several methods. Some are directly hired full time employees while some started as contract labor then became full time employees. Some others remain contract employees. During this time, Defendant VISION started to switch from MAS payroll system to ADP. After the switch, other flight crew members were keyed in Boeing ADP payroll while others were recorded under Defendant VISION Air ADP payroll. This explains why there is a discrepancy from the first class list (from Boeing ADP payroll) and the amended list (from MAS, Vision Air ADP payroll and contract employees).

Many of the last names found by Plaintiff HESTER which were later added to the list are not believed to fall within the definition of Class Member in this action, however, since the only payroll spreadsheets for some of this time period were paper copy only they show as employees on some of the early payroll printouts sent to Plaintiff HESTER. Out of an abundance of caution, these potential class member names and addresses were delivered to Plaintiff HESTER for their class notification mailing.

Defendant VISION has also produced all of the flight logs from the beginning of the AirBridge Program up to the end of the discovery period in this case.

Since the Order to Compel was affirmed, Defendant VISION has produced the remaining flight logs which were outstanding (February 3, 2010-July 31, 2010), the un-redacted contracts with McNeil and Capital and un-redacted invoices produced thereunder, have sent well over one thousand (1,000) pages of hard copy ADP (payroll) records for bate stamping (which will be delivered to Plaintiff forthwith) and have been working with ADP to produce as many of those in native electronic form (see letters attached hereto as Exhibit "5").

**C.  This Court already laid out at the Hearing On September 29, 2010 the Remedy should Defendant VISION not quickly complete discovery, thus this Motion is Moot.**

At the hearing held on September 29, 2010, Judge Hunt asked whether the records could all be produced by Friday, October 1, 2010 and counsel for Defendant VISION replied that they could not be one hundred percent (100%) sure of delivery on such date due to the difficulty with certain individuals being out of the country currently.   Judge Hunt then modified his Order such that Plaintiff's expert's final report had to be finished within two (2) weeks of Plaintiff's receipt of all items covered by the Motion to Compel (whenever that date was) and if that left time to depose Plaintiff's expert then Defendant VISION could do so and if it didn't then Defendant would have to proceed without being able to conduct such deposition.   (See transcript attached hereto as Exhibit "6")

Given this Court's Order and the fact that all of the documents responsive to the Order to Compel have now been produced (other than ADP native format [hard copies having been produced as discussed above]) this Motion should be denied in its entirety.

### III.

### <u>CONCLUSION</u>

For the foregoing reasons, Defendant VISION respectfully requests this Court to Deny in its entirety the Class' Motion to Enforce the Court's Orders of September 21, 2010 and October 5, 2010 and for Sanctions.

DATED this 14th day of October, 2010.

> HAROLD P. GEWERTER, ESQ., LTD.
>
>      */s/  Harold P. Gewerter, Esq.*
> HAROLD P. GEWERTER, ESQ.
> Nevada Bar No. 499
> 2705 Airport Drive
> North Las Vegas, Nevada 89032
> Attorney for Defendant