**Ross C. Goodman, Esq., Nevada State Bar No. 7722**
GOODMAN LAW GROUP
520 South Fourth Street
Las Vegas, Nevada 89101
(702) 383-5088
(702) 385-5088 (Facsimile)

**Brett E. von Borke, Esq., Florida State Bar No. 44802**
KOZYAK TROPIN & THROCKMORTON, PA
2525 Ponce de Leon, 9th Floor
Miami, Florida 33134
(305) 372-1800
(305) 372-3508 (Facsimile)

**David M. Buckner, Florida State Bar. No. 60550**
GROSSMAN ROTH, P.A.
2525 Ponce de Leon, Suite 1150
Miami, Florida 33134
(305) 442-8666
(305) 285-1668 (Facsimile)

**ATTORNEYS FOR PLAINTIFF & THE CLASS**

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

GERALD HESTER, on behalf of himself
and all others similarly situated,

                    Plaintiff,

v.

VISION AIRLINES, INC.,

                    Defendant.

Case No.: 2:09-CV-00117-RLH-RJJ

**THE CLASS' REPLY TO VISION AIRLINES, INC'S RESPONSE TO THE EXPEDITED MOTION TO ENFORCE THE COURT'S ORDERS OF SEPTEMBER 21, 2010 AND OCTOBER 5, 2010 AND FOR SANCTIONS[1]**

Defendant Vision Airlines, Inc. ("Vision") confirmed the Court's belief that its "conduct has interfered with the Court's ability to hear this case, delayed litigation, disrupted the Court's timely management of its docket, wasted judicial resources, and threatened the integrity of the Court's orders and the orderly administration of justice." (Order to Show Cause [D.E. 182.]) Accordingly, case dispositive sanctions against Vision are warranted based on its response to the

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088

318444                                    1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2ⁿᵈ Floor
Las Vegas, Nevada 89101
(702) 383-5088

Order to Show Cause.  Vision produced few of the documents missing from its production and the few documents it did produce, most of which were previously produced with heavy redactions, should have been produced long ago.  Even though the Court ordered Vision to show cause as to why its Answer should not be stricken, Vision offered nothing to rebut the overwhelming weight of the evidence that it failed to preserve, search for, and produce all documents responsive to the Narrowed Requests.[2]

This Court warned Vision repeatedly that it must comply with its discovery obligations. (*See* March 2, 2010, Hearing Tr., attached as Ex. 1 to Motion for Sanctions, at 27) ("I'll rule on the motion right away – the renewed motion, and give you that – that help there."); [D.E. 158] (granting Renewed Motion and giving Vision until September 17, 2010, to produce all responsive documents); [D.E. 172] (affirming Order on Renewed Motion); [D.E.179] ("*Defendant is ordered to comply with the order to compel discovery forthwith*") (emphasis in original)).  Instead, Vision made a number of additional misstatements in an effort to conceal its bad faith discovery conduct in this matter. *See Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995) (affirming dismissal of counterclaim where defendant would "say anything at any time in order to prevail in this litigation").  However, even on the eve of trial, Vision insists on producing only those documents it has arbitrarily decided to produce without respect to the Court's Orders. *See Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006) (noting that court in *Anheuser-Busch* found "prejudice when a party's refusal to provide certain documents forced [the other party] to rely on incomplete and spotty evidence at trial.") (internal quotations omitted.)  Indeed, Vision failed to even produce the non-redacted versions of

---

[1] Hereafter, "Motion for Sanctions."

[2] In its Response to the Motion for Sanctions ("Response"), Vision seeks to re-litigate its Motion to Dismiss by raising a number of arguments related to the merits of this case.  Given the Court's findings in its Order on Summary Judgment that "[i]t is more than conceivable that a jury could find that these line items marked 'Hazard Duty Bonus' rightfully belonged to the employees," [D.E. 159, at 5], the Class will not waste the Court's time with a point by point factual rebuttal of Vision's irrelevant arguments.

318444

all the documents it previously redacted, despite the impropriety of these redactions and the absence of a privilege log. *See Henry v. Gill Inds.*, 983 F. 2d 943, 948 (9th Cir. 1993) ("'[D]isobedient conduct not shown to be outside the control of the litigant' is all that is required to demonstrate willfulness, bad faith or fault."); *Jorgensen v. Cassiday*, 320 F.3d 906, 912 (9th Cir. 2003) (same).

Vision decided that it will not litigate this case on the merits, but instead hopes to obtain an advantage by withholding critical documents from the Class and depriving the Class of its opportunity to litigate this case fairly on the merits.   Despite producing a few additional documents, Vision severely prejudiced the Class by effectively preventing it from utilizing those documents to take depositions and conduct discovery. *Anderson v. Air West, Inc.*, 542 F.2d 522, 524 (9th Cir. 1976) ("The law presumes injury from unreasonable delay").   Vision offered no valid explanation for this blatant and willful violation of Rule 26, its own agreements with the Class, and the Orders of this Court.  Instead, Vision hoped to prevail in this action prior to being called to account with regard to its discovery conduct.  Now, having been caught withholding relevant documents that Vision agreed to produce, it hopes to simply produce a few documents and receive absolution from this Court.  This cannot be allowed.  To do so, would encourage litigants to conceal relevant documents as long as possible, with the knowledge that if they were caught, they would suffer no penalty.  Indeed, if this was the law, only a foolish litigant would timely comply with its discovery obligations, and trial by ambush would become the norm in civil litigation.[3]

_____

[3] As noted in the Motion for Sanctions, "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).  *See also IDX Sys.*, 464 F.3d at 961 (imposing monetary sanction under court's inherent power).  Given that Vision's discovery abuse now appears to permeate the entirety of the discovery process, and caused the Class to incur legal fees and expenses that were inflated by Vision's obstructive conduct and often unnecessary had Vision complied with its obligations, part of any sanction order should require Vision to pay all such fees and costs for the entire process. (*See* Buckner Aff., Ex. 1.)

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088

318444

3

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088

## I.   VISION MISREPRESENTS ITS PRODUCTION TO CONCEAL ITS INADEQUACY

By producing additional documents last week, Vision admits that it was less than candid with the Court when it asserted, in its September 14, 2010, Objection to the Magistrate Judge's Order on the Renewed Motion, that the only outstanding discovery was "limited to less than three weeks of flight logs." [D.E. 158 at 5.]  Vision produced non-redacted copies of Phase IV invoices that it submitted to McNeil, a non-redacted copy of the McNeil contract, a non-redacted copy of what Vision purports is the Capital Aviation contract, and flight logs from February 2010 through July 2010 (which Vision arbitrarily determined is the cut-off for its discovery obligations).[4]  The misrepresentations continue in Vision's Response and counsel's October 14, 2010, letter ("October 14 Letter") to Class counsel.  (Letter from Harold Gewerter dated October 14, 2010, attached as Ex. 3.)

- Vision claims that with regard to the more than 24 written modifications to the McNeil contract (which now appear to total at least 33, (*see* Mtn. for Summary Judgment [D.E. 135], Ex. 25), "[t]hese modifications are merely billing/cost modifications and have been previously produced." (October 14 Letter, Ex. 3, at 1.)  This is false.  Class counsel has scoured Vision's extremely limited production for Phase IV, and found no such contract modifications.  Furthermore, Vision fails to attach them, with Bates numbers evidencing production, to its Response.  Narrowed Request No. 2 states, "Vision has previously agreed to provide us with all contracts between or among any of Vision, Capital Aviation, CSC, and McNeil that relate to the Airbridge program, including any modifications and addendums to those contracts."  (Mtn. for Sanctions, Ex. 3, at 2.)  Meers testified that

---

[4] Vision also claims that it will produce payroll records from ADP for an undetermined time period. Inexplicably, it appears that Vision sought these documents only recently.  (*See* Letter from Harold Gewerter to David Buckner dated Oct. 15, 2010, Ex. 2, at 4) (requesting payroll data through October 13, 2010.)

318444                                                    4

these modifications are currently in Vision's possession (Meers Dep., Mtn. for Sanctions, Ex. 11, at 418) – yet they have never been produced to the Class;

- Vision states that it has "previously provided" to the Class "all available and relevant emails" relating to the McNeil Phase of the Air Bridge Program. (October 14 Letter, Ex. 3, at 1.) This is either false or an admission that relevant documents have been destroyed. Vision has not produced a single communication between it and McNeil that relates to the Air Bridge Program. Meers testified, however, that there were communications between McNeil and Vision that relate to Vision's bid proposal for the Air Bridge Program contract. (Meers Dep., Mtn. for Sanctions, Ex. 11, at 420); (*see also id.* at 476) (noting that he e-mails invoices to McNeil weekly.) If Vision means to say that these documents no longer exist, then it has failed to preserve relevant evidence, and should be sanctioned;

- Vision states that "[a]ll of [Vision's bid proposals to McNeil, including supporting documents,] which [are] available ha[ve] been previously provided." (October 14 Letter, Ex. 3, at 1.) This too is either false or an admission that relevant documents have been destroyed. Vision produced only a single, heavily redacted sheet of paper, Vision's Price Basis, that relates to its bid proposal to McNeil. (*See* Mtn. for Sanctions, Ex. 14.) That document is numbered page 20 at the bottom and part 7 at the top, but no other pages or other versions have ever been produced. Vision agreed in Narrowed Request No. 3 to "provide us with any bids or proposals that relate to any or all of the contracts between or among any of Vision, Capital Aviation, CSC, or McNeil for the Airbridge Program." (Dec. 21, 2009 letter, Mtn. for Sanctions, Ex. 3, at 2.) Meers stated that Vision prepared and submitted more than one bid proposal to McNeil for the Air Bridge Program contract (Meers Dep., Mtn. for Sanctions, Ex. 11, at 420);

- Vision states that "[a] non-redacted copy of Vision's Aircraft Quote that it submitted to

318444

5

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

McNeil, along with the rest of the documents of which that page is a part" . . . "has been provided" . . . "to the extent available." (October 14 Letter, Ex. 3, at 1.) This is either misleading or an admission of spoliation. The only copy of Vision's Aircraft Quote in the Class's possession is the redacted one received from McNeil after the litigation in the Eastern District of Virginia. (*See* Mtn. for Sanctions, Ex. 12.) Vision never provided any version of this document to the Class, or "the rest of the documents of which that page is a part." (*See* October 14 Letter, Ex. 3, at 1.) The affidavit that McNeil provided to the Class noted that Vision "submitted an 'Aircraft Quote' for the services it provide[d] under the Subcontract" with McNeil. (Mtn. for Sanctions, Ex. 13, ¶ 5.) Vision now disingenuously claims that this document is "irrelevant to the matter at hand," (October 14 Letter, Ex. 3, at 1), despite the fact that, as Vigil explained, the Aircraft Quote "contained certain Cost Elements, which include but are not limited to flight deck crew salary, flight deck crew benefits, flight deck crew hazardous duty bonus, cabin crew salary, cabin crew benefits, and cabin crew hazardous duty bonus." (Mtn. for Sanctions, Ex. 13, ¶ 5.) Furthermore, Vision agreed to produce these documents (*See* Narrowed Request No. 3), and cannot claim now that they are irrelevant to cover for the fact that it violated its obligations, agreements, and this Court's Orders;

- Vision states, with regard to James Maguire's calculations of Vision's 2007 forward pay scale that "no such spreadsheets exist." (October 14 Letter, Ex. 3, at 2.) Maguire testified that he did these calculations on his laptop computer, and that he was still in possession of that computer. (Maguire Dep., Mtn. for Sanctions, Ex. 15, at 47-52, 97-98); (*See* Narrowed Request No. 12.) Vision never explained its failure to preserve these documents. To the contrary, the record reflects that Vision took no steps to preserve these obviously central documents. Maguire testified that he does not "remember being asked specifically to provide any spreadsheets," and that he never copied them from his

318444

6

computer hard drive for production because he was never asked (Deposition of James Maguire, attached as Ex. 4, at 48-50, 100);

• Vision claims that it "previously provided" the two e-mails related to the request for "[a]ll documents responsive to William Vigil's request for 'how [Vision] is figuring hazardous duty pay. . .'" (October 14 Letter, Ex. 3, at 2); (*see also* E-mail from Vigil to Meers, Mtn. for Sanctions, Ex. 16); (*See* Narrowed Request No. 1.)  Vision, however, made no effort to identify these documents, and it is therefore impossible to determine whether Vision is misleading the Court here as well.  This is entirely consistent with Vision's approach to discovery throughout this case.  At every turn, Vision refuses to answer these questions in a straightforward manner and instead provides incomplete and misleading answers, as it did in its responses to the Class' First Requests for Production of Documents. (*See* Motion to Compel, filed July 9, 2009 [D.E. 49, at Ex. F]).  In its first Motion to Compel, the Class demanded that Vision clearly state what documents it was producing and withholding from production.  Vision refused, has never done so, and continues that practice of obfuscation here (*see* October 14 Letter, Ex. 3);

• Vision asserts that it has provided "[a] complete set of wire transfer receipts reflecting payment of the Air [] Bridge Program." (October 14 Letter, Ex. 3, at 2); (*See* Narrowed Request No. 10.)  This is not true, and again Vision neither attaches these documents nor provides the Bates numbers reflecting production of a complete set of wire transfer receipts.  While the Class received some Phase II and III wire transfer receipts, the Class never received a single wire transfer receipt from Vision for Phase IV of the Air Bridge Program. Vision's CFO, Gary Acquavella, testified that neither he nor his staff in the accounting department at Vision conducted a search for documents responsive to the Class's requests. (*See* Acquavella Dep., Mtn. for Sanctions, Ex. 26, at 45.)  He admitted that Vision's accounting department has electronic versions of its invoices, but these have

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088

318444

7

never been produced, despite the Class's specific demand for them on September 11, 2009. (*Id.* at 148-49, 152.)  As further evidence of its bad faith, Vision claims that documents evidencing proof of payment to Vision "are also being provided pursuant to your banking subpoenas." (October 14 Letter, Ex. 3, at 2.)  As it has done throughout this case, after the Class has been forced to seek discovery from third parties (including Vision's banks, its former partners at CSC, Capital Aviation, and McNeil), Vision attempts to use the Class's efforts as a substitute for meeting its own discovery responsibilities and obligations.  This cost the Class a great deal of time and money, which appears to be the result that Vision intended to achieve;

- Vision admits that unless they have been previously provided, it has no "emails responsive to the Narrow[ed] Requests, including those from Acor's and Meers' AOL accounts." (October 14 Letter, Ex. 3, at 2.)  Acor testified that he uses an America Online e-mail account for Vision business and receives "emails there" from Vision personnel and others, including William Vigil. (Deposition of William Acor, attached as Ex. 15, at 595.)  However, "[w]hen somebody sends me something like this [e-mail related to the Air Bridge Program], I'll scan it, if I know it has nothing to do with me, I delete it." (*Id.* at 595-96.)  There is no evidence that Vision did anything to halt this practice, or that it has ever searched these e-mail accounts.  More importantly, Vision never produced any e-mails between anyone at Vision and anyone at McNeil;

- Vision claims that it produced "[a] complete set of Vision's accounting records for the Air [] Bridge Program" . . . "[t]o the extent they are available." (October 14 Letter, Ex. 3, at 2); (*See* Narrowed Request No. 10.)  This too is either false or an admission of spoliation.  Vision has now produced its invoices and payroll records, but these are by no means the system by which Vision does its accounting. (*See* Deposition of Gary Acquavella, attached as Ex. 5, at 30-31) (acknowledging that Phase I-III billing exists in

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088

318444

8

native electronic format in servers in Las Vegas); (*See id.* at 46-49) (Acquavella evaded answering questions about whether he provided to Vision's counsel all accounting documents related to the Air Bridge Program.)  Meers could not even testify whether Vision made a profit on the Air Bridge Program, something that would presumably be apparent from Vision's internal accounting.  (Deposition of David Meers, attached as Ex. 6, at 393-98.)  Meers can make such a statement with impunity because he knows that the Class lacks the records necessary to challenge the truth of that statement, which is, of course, one of the primary benefits of withholding relevant discovery.  Once again, Vision points to no documents or Bates numbers to support its assertions here;

- Vision claims "[t]o the extent they are available" it has produced "[c]ommunications related to determining compensation for Air Bridge Program employees." (October 14 Letter, Ex. 3, at 3); (*See* Narrowed Request No. 12.)  Again, either Vision is making a false statement or admitting that it failed to preserve relevant documents.  For example, Maguire testified that he primarily used his Vision e-mail account to communicate with Vision's pilots and flight crews, and that he sent "lots" of e-mails to other employees at Vision each day. (*See* Maguire Dep., Ex. 4, at 39-41.)  It is not clear that any of these e-mails have been produced, and as previously discussed, one of the most relevant of them, from former Air Bridge Program pilot Davis Pritchard ("Pritchard") to Maguire inquiring about hazard pay, has never been produced by Vision. (*See* Pritchard Dep., Mtn. for Sanctions, Ex. 25, at 45-51.)  Nor has Vision produced any e-mails in native electronic format;

- Vision failed to produce, in non-redacted form, all of the redacted documents that it previously produced. (*See, e.g.*, Mtn. for Sanctions, Ex. 14.)  As previously noted, Vision waived its claim to any privilege because it never provided the Class, despite the Class's numerous requests, with a privilege log.  *See Burlington N. & Santa Fe Railway Co. v.*

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088

318444

9

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088

*U.S. Dist. Co. for the Dist. of Mont.*, 408 F.3d 1142, 1147 (9th Cir. 2005). Acor, Meers, and Daggett were well aware that Vision produced redacted documents, including the McNeil contract, but would not testify about what was under those redactions. (Deposition of Brian Daggett, Dep., attached as Ex. 7, at 187-193); (Meers Dep., Ex. 6, at 418-19.) Meers testified, in Acor's presence, that Vision redacted the invoices to McNeil that it produced because it is Vision's "secret information" and, despite the fact that he was aware that the Court entered a protective order in this case, Vision was unwilling to produce this information because it does not trust Class counsel to follow that Order. (Meers Dep., Ex. 6, at 473-74.) Meers admitted that Vision made the decision to redact, not counsel (*Id.* at 479-80);

- Vision also refuses to provide a copy of its most recent internal or audited financial statement, claiming among other things, that it is irrelevant. (October 14 Letter, Ex. 3, at 2.) However, the Class is seeking punitive damages in this matter. "[U]nder Nevada law, a defendant's wealth *is* relevant to a jury's determination of punitive damages." *White v. Ford Motor Co.*, 500 F. 3d 963, 976 (9th Cir. 2007) (emphasis added). It is for this reason that the Class issued a trial subpoena to Vision for these documents. (*See* Ex. 8.) If Vision persists in its refusal to provide evidence of its financial condition, it cannot later be heard to complain that any punitive damages award exceeds that amount necessary "to deter the defendant from repeating his misconduct as well as punish [it] for [its] past behavior." *White*, 500 F.3d at 976.

## II.   VISION HAS REPEATEDLY MISLED THE COURT

Vision's Response to the Motion for Sanctions continues a practice of obfuscation and misdirection that pervades this case. The misrepresentations discussed above are part of a concerted effort to conceal the fact that Vision is withholding relevant evidence, has never searched for it, has destroyed it, or all of these. That is why, after deposing five different Rule

318444

30(b)(6) witnesses (Acquavella, Miller, Daggett, Meers, and Acor), the Class still does not know everything that it is missing (and likely never will).  However, this pattern of deception is a key reason why Vision's assertions that it produced certain documents cannot be trusted (in addition to the fact that, in many instances, they are demonstrably untrue).  This too is why Vision makes blanket assertions without, for example, providing Bates numbers to prove up its production.  The Court cannot, and should not, take Vision's word for it.  Up until a few weeks ago, Vision took the position that the Class had "acknowledged that the remaining items which had not been produced were limited to less than three weeks of flight logs," and accordingly on that basis asked this Court to overturn the Magistrate Judge's Order on the Renewed Motion to Compel. [D.E. 158 at 5.]  Vision has never explained this false statement.  (*Compare* Mtn. for Sanction, at 6 n. 3.)  Further,

- Gary Acquavella testified that "I don't know of any crew hazard pay.  There is no crew hazard pay." (Acquavella Dep., Ex. 5, at 68.)

- Acquavella also stated that a Vision invoice was "[a]bsolutely not" an invoice even though he had "no idea" how that document was generated. (*Id.* at 69-74.)

- Vision, in its original responses to Plaintiff's Requests for Production of Documents, stated that it had "no documents or communications relating to 'hazard pay'." (Vision's Responses to Plaintiff's First Request for Production of Documents, attached as Ex. 9, at 3.)

- At calendar call on September 29, 2010, Vision's counsel represented that, with respect to the Order compelling Vision to produce discovery, "[s]ome of it has not [been produced], Your Honor.  Some – most of it has been." (Sept. 29, 2010, Tr., Ex. 10, at 13.)  However, Vision had produced no documents from the date the Renewed Motion to Compel was granted through the time of that hearing.

Vision's obstructive and evasive conduct began early in this case, and established the pattern and practice that it has pursued throughout.  For example, in May 2009, Class counsel requested a conference with counsel for Vision to discuss the inadequacy of its responses to the Class's First Request for Production of Documents. (*See* Motion to Compel, filed July 9, 2009 [D.E. 49].)  Among the Class's concerns was Vision's assertion of a "state secrets" privilege to

318444                                            11

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088

1    avoid producing documents.  (*Id.*); (*See* Letter of June 4, 2009, from David Buckner to Harold

2    Gewerter, attached as Ex. 11.)  Like its effort to seal the Complaint in this case based on the

3    groundless allegation that the Complaint contained classified information,[5] and its redaction of

4    documents without an adequate basis in privilege, Vision from the start sought to conceal the

5    truth behind  claims of privilege that it knew, as a matter of black-letter law, it could not assert.

6    *See United States v. Reynolds*, 345 U.S. 1 (1952) ("The privilege belongs to the Government and

7    must be asserted by it; it can neither be claimed nor waived by a private party.")[6]

8

9           Let me do this also because trailing throughout all the requests was the issue of
            the state secrets defense. A party cannot bring that, even a government contractor.
10          That has to be the government. Even the cases that have been cited by both sides
            on that issue, the government intervened in regard to that discovery to assert that
11          defense. So that's not a valid defense for Vision. They cannot assert it in this case.
            And so they need to move beyond that and get going forward.
12

13   (Hearing Tr., Oct. 23, 2009, Ex. 13, at 130.) Even though the Magistrate Judge instructed

14   Vision that it could not rely on this privilege, Vision continued to assert it or some variation of it.

15   For example, during Daggett's deposition, Acor prevented him from answering questions about

16   Vision's Bill of Particulars, publicly filed, in the Fairfax County litigation.  (Daggett Dep., Ex. 7,

17   at 145-154.)  Vision was determined to make the Class fight for every scrap of discovery, and to

18   expend the maximum amount of time and money.  That is why it did nothing to make its latest,

19   wholly inadequate production, until it was thrice ordered by this Court to do so.  *See* [D.E. 152];

20   [D.E. 172]; [D.E.179.]

21
22          Vision's conduct is similar to that of the defendants in *Malautea v. Suzuki Motor*

23   *Company, Ltd.*, 987 F.2d 1536 (11th Cir. 1993).  After the plaintiff there moved to compel

24

25   [5] (*See* Order [D.E. 159] at 10-11) (noting that "Vision has not produced any evidence that any of the
     information revealed in court documents is classified" and that "all of this information is publicly
26   available from other sources."); (Mtn. for Sanctions at 20); [D.E. 6] (motion to seal complaint); [D.E. 16]
     (Order *sua sponte* unsealing complaint).
27
     [6] It is also clear that Vision does not have any classified materials.  (*See* Closeout Certification, Ex. 12,
28   (CAI 25530) ("Classified material ___ was __x__ was not furnished by Contractor or developed by
     Subcontractor under this Document.").)

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088

production, the court orally ordered the defendants to produce and reminded them of their discovery obligations. *Id.* at 1539. The court extended the time for the defendants to comply, but still the defendants failed to comply with the Court's order. *Id.* The plaintiff was required to obtain substantial information from a third party because the defendants would not provide it. *Id.* at 1541. Ultimately, the district judge held a sanctions hearing, after which he concluded that the defendants used a number of techniques to obfuscate the truth, including improperly objecting to interrogatories on the grounds that certain terms were not defined despite the fact that the terms were unambiguous, the defendants resisted compliance with discovery orders by limiting the question to a narrower field, failed to produce certain court-ordered materials, and deliberately covered up damaging evidence by answering certain interrogatories in a misleading, if not false, manner. *Id.* at 1540-41. As the *Malautea* court noted:

> Rule 26(g) makes the imposition of 'an appropriate sanction' mandatory if a discovery request, response, or objection is interposed for an improper purpose. In this case, Judge Edenfield found that the defendants' discovery responses and objections were interposed for the improper purposes of 'caus[ing] unnecessary delay, [increasing] the cost of litigation for the Plaintiff, and [causing] the time for discovery to end before the Plaintiff had obtained the discovery material that she needed to litigate this case.'

*Id.* at 1545. (internal citations omitted.)  The appellate court affirmed the sanctions, including a default judgment.

Like the defendants in *Malautea*, Vision persisted in its refusal to comply with the Orders of this Court, including by continuing to object to the relevance of documents that it agreed, and been ordered, to produce. (*See, e.g.*, October 14 Letter, Ex. 3, at 1.) It has provided evasive non-answers to requests for production, including its responses in its October 14 Letter, and lied outright about the existence of certain documents. It has repeatedly asserted specious claims of privilege, but never provided a privilege log to make clear what it was withholding. Vision mislead the Court repeatedly about what it has produced, what it has yet to produce, and whether it has responsive documents at all. It has withheld, and continues to withhold, critical

318444                                                        13

documents, including in particular those related to its bid for Phase IV, and forced the Class to seek those documents from a third party (McNeil), which effort met with only minimal success. It has failed to conduct an adequate search for responsive documents, failed to preserve relevant documents, and attempted to conceal that fact by offering five inadequate Rule 30(b)(6) witnesses. It has caused "the time for discovery to end before the [Class] had obtained the discovery material that [it] needed to litigate this case." *Malautea*, 987 F.2d at 1545. Like the *Malautea* defendants before them, Vision "richly deserve[s] the sanction of a default judgment." *Id.* at 1542.

## III.   VISION HAS STILL NOT UNDERTAKEN A GOOD FAITH SEARCH FOR AND PRODUCTION OF DOCUMENTS

Vision utterly failed to rebut the overwhelming weight of the evidence that demonstrates that it never undertook a good faith search to locate responsive documents. Instead, it is trying to prevaricate its way out of this problem by claiming, entirely without support, that it has complied with its obligations. However, its late production of responsive documents is yet more proof of the inadequacy of its efforts to search for and produce responsive documents. This past week, Vision produced invoices, two purported contracts, and flight logs. Brian Daggett testified in March that he was only asked to provide "payroll information, personnel files, and flight logs," and was not instructed to search for anything else. (Daggett Dep., Mtn. for Sanctions, Ex. 19, at 230-31.) Acor testified that Daggett, as Program Manager for the Air Bridge, "worked with our attorneys to deliver whatever was required in the [document] request," and that Daggett would be the person who would know best what Vision had done to gather ESI from the Air Bridge Program (Acor Dep., Mtn. for Sanctions, Ex. 18, at 594). Miller testified that, with regard to what little searching Vision did of its electronic systems, "[w]e weren't given, you know, like a list of search criteria or anything. So we were kind of shooting in the dark . . ." (Miller Dep.,

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088

318444

14

Ex. 14, at 90-91.) "I actually couldn't tell you what the search terms were." (*Id.* at 93.) Quite clearly, Vision did little to gather responsive documents.

Vision's refusal to produce a Rule 30(b)(6) witness on September 29, 2010, to testify about its efforts to preserve, gather, and produce responsive documents now looms even larger, as it is evident that Vision refused to appear for this deposition to prevent the Class from challenging its late-in-the-day assertions of the completeness and propriety of its production. *See In re Honda*, 106 B.R. 209, 211 (Bankr. Hawai'i 1989) ("Failure of a party to attend without first obtaining a protective order will subject that party to sanctions under Rule 37(d)."); *see also Black Horse Lane Assoc., L.P. v. Dow Chem. Corp.*, 228 F.3d 275, 304 (3d Cir. 2000) (holding that failure to adequately educate its Rule 30(b)(6) witnesses on noticed topics constitutes a failure to appear and is sanctionable under Fed. R. Civ. P. 37(d)). Nonetheless, the evidence of its bad faith is so well documented that Vision must show that it complied with its discovery obligations, and it has not and cannot do so.

The inadequacy of Vision's search and production is also evident in a comparison of the documents obtained from third parties with regard to Phases I through III of the Air Bridge Program (which lasted just over two years) with those produced by Vision as to Phase IV (which has now run over three years). As noted previously, the vast majority of the documents that the Class has obtained in this litigation came from third parties, and specifically from CSC and Capital Aviation. Because Capital Aviation and CSC were not involved in Phase IV, and because McNeil refused to produce more than a single redacted document (which Vision still has not produced), the Class is forced to rely on Vision's meager production for Phase IV. However, after eliminating duplicates, flight logs, payroll, and employee files, Vision produced a total of only 271 pages of documents related to Phase IV. By contrast, the Class received 40,617 pages of documents from Capital Aviation from the Fairfax County litigation, and an additional 12,481 pages that came directly from Vision (also not including flight logs, payroll, and employee files).

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088

318444

15

This is even more damning when one compares the subject matter of these two pieces of litigation. The Fairfax County litigation was a dispute among CSC, Capital Aviation, and Vision regarding only the last two weeks of billing for Phase III of the Air Bridge Program (and specifically the Other Direct Costs (ODC) element). Here, by contrast, the suit covers Vision's conduct over nearly five years. *See Merrick v. Paul Revere Life Ins. Co.*, 500 F. 3d 1007, 1015 (9th Cir. 2007) ("the existence of withheld documents may be inferred from the paucity of material actually produced").

## IV. VISION FAILED TO PRESERVE RELEVANT DOCUMENTS

In addition to the evidence of spoliation set forth in the Motion for Sanctions, Vision just last week provided more proof that it failed to preserve relevant documents and information. Vision attached to its Response an October 6, 2010, letter from ADP addressing Vision's "recent request" for payroll data. Apparently, because Vision waited until just the last week or two to request this data, and made no provision to have ADP preserve it during the course of this litigation, ADP can provide the Payroll Register only for the last 500 days, and Quarterly Earnings Records for just over 3 years. (*See* Response [D.E. 184], Ex. 5, at 4.) However, Vision's CFO testified that the company used ADP for payroll services back to the beginning of the Air Bridge Program in 2005. (Acquavella Dep., Ex. 5, at 35-36.)

Further, as noted above, Vision repeatedly qualified its most recent statements about its late production with language regarding document availability. As to certain documents, Vision admits that they have either been produced or they are no longer "available." This in itself is misleading, because Vision is not saying whether or not these documents still exist, just that if they do, they have been produced. That is, Vision is trying to prevent this Court from determining precisely what documents it destroyed.

In any event, there is no excuse for Vision's failure to preserve documents, and Vision does not even attempt to explain its well-documented failure to do so.

318444

16

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 383-5088

Sanctions may be imposed against a litigant who is on notice that documents and information in its possession are relevant to litigation, or potential litigation, or are reasonably calculated to lead to the discovery of admissible evidence, and destroys such documents and information. While a litigant is under no duty to keep or retain every document in its possession once a complaint is filed, it is under a duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery, and/or is the subject of a pending discovery request.

*Wm. T. Thompson v. Gen. Nutrition*, 593 F. Supp. 1443, 1455 (C.D. Cal. 1984). Acor testified that he reads and deletes his e-mail, and did so and continues to do so with regard to e-mails relevant here, even though Vision has been in litigation relating to the Air Bridge Program since at least 2008. (*See* Acor Dep., Mtn. for Sanctions, Ex. 18, at 596.) Miller testified that Vision has no document retention policy, and that even though Vision was conducting Air Bridge Program business using the personal e-mail accounts of its executives, none of those e-mails were preserved or saved. (*See* Miller Dep., Mtn. for Sanctions, Ex. 17, at 57, 68.) Miller also testified that he never saw the preservation letter that Plaintiff sent to Vision on January 21, 2009,[7] (Miller Dep., Ex. 14, at 30), but was aware of the filing of the lawsuit "within 48 hours probably." (*Id.* at 88.) Nonetheless, the company did not put a litigation hold in place until much later. (*Id.* at 18) (litigation hold in place around May 1); (*Id.* at 87) (litigation hold in place on April 17.) Miller testified that no one from Vision's IT department contacted anyone in the Air Bridge program to ask them to search their computers for responsive documents, and "[w]e did not go out and search our drives in Dulles." (*Id.* at 54-55, 58-61.) And, of course, Vision never produced a litigation hold letter proving that it ever put a litigation hold in place. As the court in the seminal case on the preservation of electronic evidence, *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422 (S.D.N.Y. 2004), noted, "[o]nce a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation

---

[7] (*See* Letter from David Buckner to Vision dated January 21, 2009, Mtn. for Sanctions, Ex. 31.)

318444

17

GOODMAN LAW GROUP
A Professional Corporation
520 S. Fourth Street, 2ⁿᵈ Floor
Las Vegas, Nevada 89101
(702) 383-5088

1 hold' to ensure the preservation of relevant documents." *Id.* at 431.  Vision made no effort to do

2 that, or a myriad other things that it was required to do to preserve relevant materials.

3 **V.   CONCLUSION**

4      "Courts need not tolerate flagrant abuses of the discovery process." *Campbell Indus. v.*

5 *M/V Gemini*, 619 F.2d 24, 27 (9th Cir. 1980).  As the Supreme Court observed, "the most severe

6 in the spectrum of sanctions provided by statute or rule must be available to the district court in

7 appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a

8 sanction, but to deter those who might be tempted to such conduct in the absence of such a

9 deterrent." *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976).

10 Vision's effort to prevent the Class from proving its case by withholding, refusing to search for,

11 or destroying critical documents, cannot be allowed.  This case has been in litigation for nearly

12 two years, and now, on the eve of trial, Vision is trying to conceal its well-documented discovery

13 abuse by providing previously-withheld documents to the Class.  This in itself supports the

14 Motion for Sanctions.  Vision has been withholding these documents for two years, and would

15 only give the Class redacted copies of some of these documents despite repeated demands for the

16 originals.  Vision has offered no explanation for its conduct, because the only explanation is the

17 obvious one – it was trying to obtain an unfair advantage, and it has succeeded.  The Class

18 cannot examine Vision's witnesses in deposition about the documents it has only recently

19 produced, or follow up on this evidence through the discovery process, because that process is

20 long over.

21      However, far more troubling is the evidence that has never been produced in this case.

22 Despite having to fight in the dark, without the benefit of the deposition of an adequately-

23 prepared Rule 30(b)(6) witness, the Class has nonetheless been able to establish that Vision

24 failed to produce a number of documents, and Vision now admits that at least some, if not all, of

318444

18

them, have been destroyed.[8]  Vision has impeded the resolution of the case "by obscuring the

factual predicate of the case and consuming months of" discovery and "sanction-related

litigation." *See IDX Sys.*, 464 F.3d at 958, n.5.  Vision, for all intents and purposes, prevented a

real discovery process from ever taking place.  Under these circumstances, case dispositive

sanctions are required to prevent Vision from profiting from its conduct.

Respectfully submitted,

KOZYAK TROPIN & THROCKMORTON, P.A.
2525 Ponce de Leon, 9th Floor
Coral Gables, Florida 33134
Telephone: (305) 372-1800
Fax: (305) 372-3508

GROSSMAN ROTH, P.A.
2525 Ponce de Leon, Ste. 1150
Coral Gables, Florida 33134
Telephone: (305) 442-8666

GOODMAN LAW GROUP
520 South Fourth Street
Las Vegas, Nevada 89101
(702) 383-5088
(702) 385-5088 (Facsimile)

By: /s/ David M. Buckner
        David M. Buckner
        Florida Bar No. 60550
        Brett E. von Borke
        Florida Bar. No. 0044802

**COUNSEL FOR PLAINTIFF AND THE CLASS**

**CERTIFICATE OF SERVICE**

I **HEREBY CERTIFY** that a true copy of the foregoing has been served via the Court's

CM/ECF system on October 20, 2010 on Harold P. Gewerter, Esq., 2705 Airport Drive, North

Las Vegas, Nevada 89032.

By: /s/ David M. Buckner
        David M. Buckner

---

[8] The court in *IDX Systems* found that the lesser sanction analysis was largely inapplicable where the destruction of documents occurred before the district court had the opportunity to act.  464 F.3d at 960.

318444

19