Ross C. Goodman, Esq., Nevada State Bar No. 7722
GOODMAN LAW GROUP
520 South Fourth Street
Las Vegas, Nevada 89101
(702) 383-5088
(702) 385-5088 (Facsimile)

David M. Buckner, Florida State Bar. No. 60550
Brett E. von Borke, Esq., Florida State Bar No. 44802
GROSSMAN ROTH, P.A.
2525 Ponce de Leon, Suite 1150
Miami, Florida 33134
(305) 442-8666
(305) 285-1668 (Facsimile)

ATTORNEYS FOR PLAINTIFF & THE CLASS

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| GERALD HESTER, on behalf of himself and all others similarly situated,<br><br>          Plaintiff,<br><br>v.<br><br>VISION AIRLINES, INC.,<br><br>          Defendant. | Case No.: 2:09-CV-00117-RLH-RJJ |

## THE CLASS' MOTION FOR APPROVAL OF ITS PROPOSED NOTICE AND PLAN OF ALLOCATION TO CLASS MEMBERS

After years of litigation regarding Vision Airlines, Inc.'s ("Vision"), obligation to pay its employees hazard pay, which it collected on the Class' behalf and failed to pay over to the Class, the Class ultimately secured the amount of the final judgment from the bonding company that bonded the judgment pending Vision's appeal to the Ninth Circuit Court of Appeals. Class counsel, as directed by the Court at the October 22, 2012 hearing, hereby submits its Proposed Notice and Plan of Allocation to the Court for its approval. After Class Counsel receives approval from the Court, Class Counsel will provide notice to the Class of Plaintiff's Plan of Allocation. Once the members of the Class have received notice of the Plan of Allocation and had the opportunity to be heard on the Plan, should they wish to do so, the Class will move for

final approval from the Court of the Plan of Allocation and distribute the hazard pay funds to each of the Class members. Class Counsel will also seek the Court's approval of the attorneys' fees and costs related to the litigation of this matter to date.

## I. BRIEF PROCEDURAL HISTORY AND RELEVANT FACTS

After nearly two years of litigation, the Class' case was ultimately tried to a jury in November 2010. [D.E. 220, 221.] On November 9, 2010, the jury returned a verdict in favor of the Class in the amount of $4,509,268. [D.E. 222.] Thereafter, on February 18, 2011, the Court entered its Final Judgment on a Jury Verdict. [D.E. 264.] In addition to the amount awarded by the jury, the Court awarded prejudgment interest against Vision in the amount of $746,231.91 and taxed costs against Vision in the amount of $14,730.15, for a total judgment of $5,270,230.06. [*Id.*]

Vision appealed the jury verdict and many of the Court's rulings to the Ninth Circuit Court of Appeals. Prior to the appeal, Vision posted a supersedeas bond in the amount of $5,291,574.49 (the difference covering post-judgment interest). [D.E. 285-2.] The Ninth Circuit affirmed the Class' verdict and remanded the case back to the Court for a trial on punitive damages. [D.E. 295.] Shortly after the Ninth Circuit issued its mandate, the Class collected on the supersedeas bond posted by Vision. At the hearing on October 22, 2012, the Class informed the Court that it had collected on the supersedeas bond and the Court instructed the Class to file the instant motion.

## II. <u>ARGUMENT</u>

"In considering whether to approve an allocation plan, the court applies the same standard used when considering approval of class action settlements." *In re Exxon Valdez*, 1996 WL 384623, No. A89-0095-CV, *2 (D. Alaska June 11, 1996), citing *Holmes v. Continental Can Co.,* 706 F.2d 1144, 1147 (11th Cir. 1983); *In re Chicken Antitrust Litig. Am. Poultry, et al.,* 669 F.2d 228, 238 (5th Cir. 1982). *See also Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1284-

2

85 (9th Cir. 1992). However, before deciding whether a Plan of Allocation is fair, adequate, and reasonable, the Court must determine whether notice of the Plan of Allocation complied with Fed. R. Civ. P. 23(e). Pursuant to Fed. R. Civ. P. 23(e):

> Whether or not favorable to the class, the judgment in a class action must:
>
> (A) for any class certified under Rule 23(b)(1) or (b)(2), include and describe those whom the court finds to be class members; and
>
> (B) for any class certified under Rule 23(b)(3), include and specify or describe those to whom the Rule 23(c)(2) notice was directed, who have not requested exclusion, and whom the court finds to be class members.

Furthermore, with respect to class action settlement notices, district courts "must direct notice [of a proposed settlement] in a reasonable manner to all class members who would be bound by the proposal." *CLRB Hanson Indus. v. Weiss & Assoc.*, 465 Fed. Appx. 617, 619 (9th Cir. 2012). Accordingly, the case law requires that the "settlement notice 'describe [] the aggregate amount of the settlement fund and plan for allocation,' *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009), but do[es] not require that such notice allow class members to estimate their individual recovery." *CLRB Hanson*, 465 Fed. Appx. at 619.; *see also Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1374 (9th Cir. 1993); *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1177-78 (9th Cir. 1977). Where the notice "specified the aggregate amount of the settlement and described the plan for allocation to the class . . . [t]he notice met the requirement of Rule 23(e)(1)." *CLRB Hanson*, 465 Fed. Appx. at 619. Here, the Class' proposed notice satisfies those due process requirements.

### A.  PROVIDING NOTICE TO THE CLASS

Class counsel previously provided notice to the Class after the Court certified this case as a class action in December 2009. *See* [D.E. 87, 89.] In order to send out the Court approved notice to the Class, which explained the litigation and the Class members' rights to opt-out of the Class, Class counsel relied on the employee addresses contained in Vision's employee files. Since the mailing of the original notice, some Class members have moved and Class counsel has received change of address forms from some Class members. In order to send out the attached Proposed Notice and Plan of Allocation, Class counsel will again rely on the addresses contained

3

in Vision's employee files and the updated addresses it has received from Class members. In an effort to reduce costs, Class counsel does not propose publishing notice in any publication. Class counsel will provide notice to Class members within 30 days of the Court's approval of the Class Notice and Plan of Allocation ("Class Notice Date").

Furthermore, the Class notice complies with due process requirements as it provides the Class with the aggregate amount of damages and provides the Class with an explanation of the allocation plan in plain language. To ensure the Class' due process rights, the Class in the proposed Notice has been provided 45 days to object to the Court's Plan of Allocation ("Objection Date"). The Objection Date will ensure the Class' due process rights as it will provide them with adequate notice of the Plan of Allocation and a time period during which Class members can object to the proposed Plan of Allocation should they choose to do so.

**B.  THE CLASS' PLAN OF ALLOCATION**

As noted above, when considering whether to approve an allocation plan the Court applies the same standard used when considering approval of class action settlements. *In re Exxon Valdez*, 1996 WL 384623 at *2. Thus, in determining whether to approve a class action settlement plan, the Ninth Circuit in *Ficalora v. Lockheed California Corp.*, 751 F.2d 995, 997 (9th Cir. 1985), held:

> Before approving a class action settlement, the district court must reach a reasoned judgment that the proposed agreement is not the product of fraud or overreaching by, or collusions among, the negotiating parties and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned parties.

Furthermore, other factors which the Court might consider include:

> [T]he strength of plaintiffs' case; the risk expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial, the amount offered in settlement; the extent of the discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). Here, none of these concerns are present because there was no settlement, but rather the case was tried to a jury and affirmed on appeal. Thus, there is and could be no collusion among the negotiating parties

or concerns about the strength of Plaintiffs' case or the reaction of Class members. Because this case was tried and the jury rendered a verdict in the amount set forth above, the only matter that requires the Court's consideration is the Plan of Allocation itself. The Class' proposed Plan of Allocation relies on the same methodology that the Class used in presenting its damages at trial and upon which the jury based its verdict. Therefore, the Class' proposed Plan of Allocation is reasonable, adequate, and fair.

       *1.*     *Determining Hazard Pay Totals and Identifying Specific Class Members*

The Air Bridge Program was divided into four phases that corresponded to the following time periods: (1) Phase I – June 2005 through April 30, 2006; (2) Phase II – May 1, 2006 through July 14, 2006; (3) Phase III – July 15, 2006 through July 31, 2007; and (4) Phase IV – August 1, 2007 through July 31, 2010. [D.E. 135 at 3.] The Air Bridge Program flights departed from Dulles, Virginia and flew to a European city and then to Baghdad, Iraq or Kabul, Afghanistan and then back to the European city and then to Dulles. Hazard pay was paid to Vision for the hours its pilots and flight attendants worked on the flights that departed from the European city and flew into and out of the war zones in Baghdad or Kabul. At trial, the Class' expert, Barry Mukamal ("Mukamal"), determined that the total amount of hazard pay Vision collected on behalf of its pilots and flight attendants for Phases II, III, and IV amounted to $4,509,268. [D.E. 220 at 141.] Thereafter, on February 18, 2011, the Court entered its Final Judgment on a Jury Verdict. [D.E. 264.] In addition to the amount awarded by the jury, the Court taxed prejudgment interest against Vision in the amount of $746,231.91 and costs in the amount of $14,730.15, for a total of $5,270,230.06. [*Id.*] Vision appealed the jury verdict and posted a subersedeas bond in the amount of $5,291,574.49, which the Class collected on after the Ninth Circuit Court of Appeals affirmed the Class' jury verdict. [D.E. 285-2.]

2.  *Allocation of Phase II Damages*[1]

Mukamal determined that in Phase II of the Air Bridge Program, Vision billed for and received $258,613 in hazard pay, which Vision did not pay over to the Class members. [D.E. 220 at 152.] The upstream contractors paid Vision different hourly hazard pay amounts for its pilots and flight attendants that operated the flights from the various European cities into and out of the war zones in Baghdad and Kabul during Phase II. Using Vision's payroll and flight records for the time period of May 1, 2006 through July 14, 2006, Mukamal will identify specifically which pilots and flight attendants flew from the various European cities into and out of the war zones in Baghdad and Kabul. Mukamal will determine each Class members damages' in Phase II by multiplying each Class members' total number of hours flown from the European city into and out of the war zones of Baghdad and Kabul and back to the European city by the hourly hazard pay rate that Vision received for their benefit but did not pay them.

3.  *Allocation of Phase III Damages*

Mukamal determined that in Phase III of the Air Bridge Program, Vision billed for and received $1,309,027 in hazard pay, which Vision did not pay to the Class members. [D.E. 220 at 153.] The upstream contractors paid Vision different hourly hazard pay amounts for its pilots and flight attendants that operated the flights from the various European cities into and out of the war zones in Baghdad and Kabul during Phase III. Using Vision's payroll and flight records for the time period of July 15, 2006 through July 31, 2007, Mukamal will identify specifically which pilots and flight attendants flew from the various European cities into and out of the war zones in Baghdad and Kabul. Mukamal will determine each Class members' damages in Phase III by multiplying each Class members' total number of hours flown from the European city into and

---

[1] As a result of Vision's discovery abuses and misconduct, which ultimately led to the Court striking Vision's Answer, the Class never obtained the documents necessary to prove its damages for Phase I of the Air Bridge Program. Accordingly, the Class did not recover any hazard pay for Phase I.

6

out of the war zones of Baghdad and Kabul and back to the European city by the hourly hazard pay rate that Vision received for their benefit but did not pay them.

### 4. *Allocation of Phase IV Damages*

Mukamal determined that in Phase IV of the Air Bridge Program, Vision billed for and received $2,941,628 in hazard pay, which Vision did not pay to the Class members. [D.E. 220 at 155.] The upstream contractors paid Vision different hourly hazard pay amounts for its pilots and flight attendants that operated the flights from the various European cities into and out of the war zones in Baghdad and Kabul during Phase IV. Using Vision's payroll and flight records for the time period of August 1, 2007 through July 31, 2010, Mukamal will identify specifically which pilots and flight attendants flew from the various European cities into and out of the war zones in Baghdad and Kabul. Mukamal will determine each Class members' damages in Phase IV by multiplying each Class members' total number of hours flown from the European city into and out of the war zones of Baghdad and Kabul and back to the European city by the hourly hazard pay rate that Vision received for their benefit but did not pay to them.

### C. Attorneys' Fees and Costs

Once the individual Class members' damages are determined by Mukamal, those individual amounts will be reduced by the appropriate pro-rata share to cover the Court-determined award of attorneys' fees and costs. Because the Court must approve Class Counsels' request for attorneys' fees and costs, Class Counsel will seek approval of its attorneys' fees prior to moving for final distribution of funds to the Class. Once the Court approves the Class' award for attorneys' fees and costs, each individual Class members' award will be reduced by the appropriate pro-rata share to cover those attorneys' fees and costs, including the costs of administration, discussed below.

### D. Distribution Of Funds

Once the Objection Date has expired and the Court has approved the Class' attorneys'

7

fees and costs, the Class will file a motion for final approval of the Plan of Allocation. Upon approval by the Court of the motion for final approval of the Plan of Allocation, a national claims administrator will distribute the amount each Class member is entitled to, after an appropriate pro-rata reduction for the Court-approved attorneys' fees and costs. However, in an effort to minimize the Class' costs, the claims administrator will not issue any individual class member a 1099 Form nor will the claims administrator withhold any portion of a Class members' award for taxes. To the extent that there are any taxes associated with the Class members' individual awards, each Class member will be responsible for paying their own tax liability out of the funds paid to them. In the event that any Class members' check is not cashed twelve months after the Distribution Date, those funds will be distributed through a *cy pres* program to nationally recognized charities selected by Class counsel in the name of the Class. All costs associated with the distribution of funds will be paid by the Class and will be part of the Class' costs.

                                              Respectfully submitted,

                                              GROSSMAN ROTH, P.A.
                                              2525 Ponce de Leon, Ste. 1150
                                              Coral Gables, Florida 33134
                                              Telephone: (305) 442-8666

                                              KOZYAK TROPIN & THROCKMORTON, P.A.
                                              2525 Ponce de Leon, 9th Floor
                                              Coral Gables, Florida 33134
                                              Telephone: (305) 372-1800

                                              GOODMAN LAW GROUP
                                              520 South Fourth Street
                                              Las Vegas, Nevada 89101
                                              (702) 383-5088
                                              (702) 385-5088 (Facsimile)


                                    By: /s/ David M. Buckner
                                          David M. Buckner
                                          Florida Bar No. 60550
                                          Brett E. von Borke
                                          Florida Bar. No. 0044802

**COUNSEL FOR PLAINTIFF AND THE CLASS**

*Goodman Law Group*
A Professional Corporation
520 S. Fourth Street, 2nd Floor
Las Vegas, Nevada 89101

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true copy of the foregoing has been served via the Court's CM/ECF system on November 26, 2012 on Edward H. Wasmuth, Smith, Gambrell & Russell, LLP, 1230 Peachtree Street, Atlanta, GA 30309, (404) 815-3503; (404) 685-6803-Fax; ewasmuth@sgrlaw.com and James A. Kohl, Howard & Howard Attorneys, PLLC, 3800 Howard Hughes Parkway, Suite 1000, Las Vegas, NV 89169, (702) 257-1483; (702) 567-1568-Fax; jak@h2law.com.

By: /s/ David M. Buckner
David M. Buckner

# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| GERALD HESTER, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>VISION AIRLINES, INC.,<br><br>Defendant. | Case No.: 2:09-CV-00117-RLH-RJJ |

# NOTICE OF JUDGMENT AND PLAN OF ALLOCATION

**To:** All Vision employees who were crew members on flights to or from Iraq or Afghanistan from May 1, 2005, to the present. Excluded from the Class are (a) Vision, its directors of flight operations, corporate officers and directors, and their immediate family members, and (b) any governmental entity.

## PLEASE READ THIS NOTICE CAREFULLY, IT WILL AFFECT YOUR LEGAL RIGHTS

## THIS NOTICE IS NOT A NOTIFICATION THAT YOU HAVE BEEN SUED

This is notification that you are a member of a plaintiff class (the "Class") in the case against Vision Airlines ("Vision") now pending in the United States District Court for the District of Nevada (the "Lawsuit").

The purpose of this Notice is to explain to you:

1. What the Lawsuit is about;
2. The judgment rendered in the Lawsuit;
3. Vision's and the Class' appeal;
4. The plan of allocation of funds;
5. Further court proceedings; and
6. How to obtain more information.

1

1. **WHAT THE LAWSUIT IS ABOUT**

   Vision is a United States government subcontractor and operated flights from May 1, 2005 until recently on behalf of the United States government into and out of the war zones in Baghdad, Iraq and Kabul, Afghanistan ("Air Bridge Program"). Vision collected hazard pay on behalf of the employees that operated the Air Bridge Program flights for the additional risk incurred in flying into and out of Baghdad and Kabul. Instead of paying the Air Bridge Program employees the hazard pay Vision collected on their behalf, Vision instead retained that hazard pay for itself and used it for its own benefit.

2. **THE JUDGMENT RENDERED IN THIS CASE**

   Prior to the trial of this case, the United States District Court for the District of Nevada ("District Court") ruled that the Class would not be entitled to ask the jury to award it punitive damages. Thereafter, on November 8, 2010, trial began in this matter. On November 9, 2010, the jury returned a verdict in the Class' favor in the amount of $4,509,268. On February 18, 2011, the District Court awarded the Class prejudgment interest in the amount of $746,231.91 and taxed costs against Vision in the amount of $14,730.15, for a total judgment amount of $5,270,230.06.

3. **VISION'S AND THE CLASS' APPEAL**

   Vision appealed the jury verdict and many of the District Court's rulings to the United States Ninth Circuit Court of Appeals. The Class cross-appealed the District Court's ruling that it could not present its punitive damages claim to the jury. Prior to the appeal, however, Vision was required to post a supersedeas bond in the amount of the final judgment plus additional post-judgment interest, for a total amount of $5,291,574.49. The Ninth Circuit Court of Appeals affirmed the Class' verdict and remanded the case to the District Court for a trial on punitive damages. After the case was remanded to the District Court, the Class collected on the supersedeas bond. The Class' trial on punitive damages is scheduled to occur in August 2013.

4. **PLAN OF ALLOCATION**

   The Air Bridge Program was divided into four phases that corresponded to the following dates: (1) Phase I – June 2005 through April 30, 2006; (2) Phase II – May 1, 2006 through July 14, 2006; (3) Phase III – July 15, 2006 through July 31, 2007; and (4) Phase IV – August 1, 2007 through July 31, 2010. The Air Bridge Program flights departed from Dulles, Virginia and flew to a European city and then to Baghdad, Iraq or Kabul, Afghanistan and then back to the European city and then to Dulles. Hazard pay was paid to Vision for the hours its pilots and flight attendants worked on the flights that departed from the European city and flew into and out of the war zones in Baghdad or Kabul and back to the European City. At trial, the Class' expert, Barry Mukamal ("Mukamal"), determined that the total amount of hazard pay Vision collected on behalf of its pilots and flight attendants for Phases II, III, and IV amounted to $4,509,268.

Because Vision did not produce documents in the Lawsuit, for which the District Court sanctioned Vision, the Class was unable to recover any damages for Phase I of the Air Bridge Program. Accordingly, no damages will be paid for Phase I because the Class, due to Vision's discovery misconduct, was unable to collect any funds for that time period.

### A. Allocation of Damages for Phases II, III, and IV

Mukamal determined that Vision received and did not pay out the following amounts of hazard pay in each phase of the Air Bridge Program: (1) Phase II – $258,613; (2) Phase III – $1,309,027; and (3) Phase IV – $2,941,628. The upstream contractors paid Vision different hourly hazard pay amounts for its pilots and flight attendants that operated the flights from the various European cities into and out of the war zones in Baghdad and Kabul during Phases II, III, and IV. Using Vision's payroll and flight records for each corresponding Phase, the Class' expert, Barry Mukamal, will identify specifically which pilots and flight attendants flew from the various European cities into and out of the war zones in Baghdad and Kabul. Mukamal will determine each Class members damages' in Phases II, III, and IV by multiplying each Class members' total number of hours flown from the European city into and out of the war zones of Baghdad and Kabul and back to the European city by the hourly hazard pay rate that Vision received for their benefit but did not pay them.

### B. Attorneys' Fees and Costs

Once the individual Class members' damages are determined by Mukamal, those individual amounts will be reduced by the appropriate pro-rata share to cover the Court-determined attorneys' fees and costs, including the costs of administration and notification of Class members. Because the Court must approve Class counsels' request for attorneys' fees and costs, Class counsel will seek approval of its attorneys' fees prior to moving for final distribution of funds to the Class. Once the Court approves the Class' award for attorneys' fees and costs, each individual Class members' award will be reduced by the appropriate pro-rata share to cover those attorneys' fees and costs.

### C. Distribution of Funds

Class members will have 45 days from the date this Notice is sent out to the Class to object to the plan of allocation by filing the appropriate papers with the District Court. Once that time has expired or as determined by the District Court, the individual Class members' damages, after they have been reduced by the appropriate pro-rata share of attorneys' fees and costs, will be distributed to the Class members by a national claims administrator, whose expenses will be paid out of the judgment. The Class will not be required to take any affirmative steps to receive payment.

5.  **FURTHER COURT PROCEEDINGS**

Fact discovery is proceeding in this case on the Class' claim for punitive damages. Fact discovery is scheduled to close on May 6, 2013. The Class' trial on punitive damages is scheduled to begin on August 12, 2013.

6.  **HOW TO OBTAIN MORE INFORMATION**

The certified class representative is Gerald Hester. The certified class counsel are listed below:

**Class Counsel:**

Ross C. Goodman, Esq.
Goodman Law Group
520 South Fourth Street
Las Vegas, Nevada 89101
(702) 383-5088

Kenneth Hartmann, Esq.
Kozyak Tropin & Throckmorton, P.A.
2525 Ponce De Leon, 9th Floor
Coral Gables, Florida 33134
(305) 372-1800

David Buckner, Esq.
Brett von Borke, Esq.
Grossman Roth
2525 Ponce de Leon, Suite 1150
Coral Gables, Florida 33134
(305) 442-8666
bvb@grossmanroth.com

The pleadings and other records in this Lawsuit may be examined during regular office hours at the offices of the Clerk of the Court, Lloyd D. George U.S. Courthouse, U.S. District Court District of Nevada – Las Vegas, 333 Las Vegas Blvd. South, Las Vegas, Nevada 89101. If you need additional information, you should call or write to Class Counsel at the addresses and phone numbers above.

**PLEASE DO NOT CALL THE COURT OR THE DEFENDANT**

BY THE COURT

_____
Hon. Roger L. Hunt
United States District Judge

Date: __December 19__, 2012

4