# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| GERALD HESTER, on behalf of himself and all other similarly situated, ) ) | Case No.: 2:09-cv-00117-RLH-NJK |
| Plaintiff, ) ) | **O R D E R** |
| vs. ) ) | (Motion for Sanctions – #323) |
| VISION AIRLINES, INC., ) ) | |
| Defendant. ) | |

    Before the Court is Plaintiff Gerald Hester's **Second Expedited Motion for Sanctions** (#314, filed on February 1, 2013) based on Defendant Vision Airlines' ("Vision") alleged fraud on the Court relating to Class' Claims for injunctive and declaratory relief.  The Court has also considered Defendant Vision Airlines' Opposition (#319, filed on February 19, 2012 ), and Plaintiff's Reply (#323, filed on March 1, 2013). For the reasons discussed below, the Court grants the Class' motion and allows the Class to revive the injunctive and declaratory relief claims . Additionally, the Court orders Vision to show cause as to why it should not be sanctioned for violating Nevada Rule of Professional Conduct 3.3.

1

**BACKGROUND**

The facts giving rise to this case are set out more particularly in this Court's prior Orders. Briefly, this case arises from Vision Airlines' failure to pay hazard pay to its subcontracted pilots who provided air transportation services for the United States government under the Air Bridge Program contract. Plaintiffs' Class filed suit in 2009. Due to extensive and pervasive dilatory and obstructionist tactics during discovery, this Court struck Vision's answer and entered default against Vision. (#196, Nov. 3, 2010).

**Trial and Motion for Injunctive and Declaratory Relief**

At trial, a jury returned a verdict in excess of $5 million dollars for the Class. (#221, Nov. 9, 2010). Post-trial, the Class moved for permanent injunctive and declaratory relief. (#241, Dec. 17, 2010). Vision objected. (#242, Dec. 20, 2010). This Court set a hearing to discuss and schedule an evidentiary hearing regarding the motion for permanent injunctive and declaratory relief. (#251, Jan. 27, 2011). The evidentiary hearing was scheduled for February 22, 2011. (#255, Feb. 2, 2011). However, before the evidentiary hearing was held, the Class agreed to withdraw the injunctive and declaratory relief claims because "the parties conferred and realized that, based on the [government] contract as of [that] date, there [were] only nine weeks left on the" contract. (#258 at 2, Feb. 16, 2011). Reasoning that it would not be an efficient use of party and judicial resources, the Class withdrew the claims with the understanding that withdrawal did not constitute voluntary dismissal under FRCP 41, and would "not preclude the Class or any of its members from filing a claim to recover the hazardous duty [pay] not covered by the Judgment previously entered by this Court." (Id.) Based on those representations, the Court vacated the evidentiary hearing. (#259, Feb. 17, 2011).

**Trial, Appeal, and Remand**

Vision appealed this Court's rulings as to striking the answer, entering default, and certifying the class. The Ninth Circuit affirmed this Court's decisions. (#293, July 19, 2012). The Class also appealed this Court's dismissal of the punitive damages claims. The Ninth Circuit

AO 72
(Rev. 8/82)

reversed that decision and remanded to this Court for a jury trial on the punitive damages claims. (Id.) Based on the Circuit's decision, this Court entered a scheduling order regarding discovery deadlines. (#302, Oct. 22, 2012).

**New Discovery**

The Class brings the instant motion based on a document produced during the new discovery period. Specifically, the Class obtained a series of documents and emails from Conway Mackenzie, an accounting firm that had allegedly done limited accounting work for Vision. (#314 at 4). One of the emails, that was sent in September of 2012, states "We stand the chance of having [Class Counsel] adding on to the damages if he finds out that we ran the program longer than advertised." (#314, Ex. 2). This is presumably referring to Vision's representation "that there [were] only nine weeks left on the" contract.

As explanation, Vision argues that when Vision made the representation that the Air Bridge contract would end in nine weeks, Vision reasonably believed the Air Bridge contract would end in nine weeks on April 30, 2011. Vision argues that the Air Bridge contract ended on April 30, 2011, but that the Air Bridge contract was extended on a month-to-month basis for some time afterward. Vision offers no explanation as to why Vision did not inform the Class or the Court of the month-to-month extension when Vision learned of it.

**Instant Motion**

Based on the email, the Class asks for a sanction in the amount equal to the hazard pay from the end of the damage period proven at trial through the time the injunction would have covered, i.e. the date Class pilots stopped flying Air Bridge program flights for Vision. Additionally, the Class asks for attorneys' fees and costs associated with discovery to determine this amount and that Vision be required to produce this information under threat of contempt.

## DISCUSSION

There are two separate and distinct issues before the Court: first, whether Plaintiff should be able to revive the Class' Claims for declaratory and injunctive relief, or whatever the

equivalent would be at this point in the proceedings, and; second, whether Defendant should be sanctioned for its failure to correct a material representation. Thus, the sanctions imposed would separate and distinct: the first, being in favor of the Plaintiff, and the second, in favor of the Court.

Both of these issues arise out of the same facts, namely: the representations made by Vision to Class Counsel, the Class' reliance on the representations in deciding to drop the Class' Claims, this Court's approval of the Class' dropping those claims, and Vision's knowledge of subsequent changes in the material facts relevant to the representation.

**I. Sanctions in favor of the Class**

The Class argues the email shows Vision deliberately misled the Class and the Court into believing the Air Bridge contract would end in nine weeks and relying on that representation the Class dropped its claims. The Class argues that representation, or the failure to correct the representation when new information was learned, constitutes fraud on the court. To support this argument, the Class alleges Vision violated Nevada Rule of Professional Conduct 3.3 relating to Candor to the Tribunal and Vision should be sanctioned for that misbehavior. For this misbehavior, the Class asks the Court to sanction Vision in the amount of the actual damages.

In opposition, Vision offers five convoluted arguments that obfuscate the true issue. First, Vision argues that when the representation was made, Vision reasonably believed it to be truthful; and thus Plaintiff cannot show a common law fraud claim with clear and convincing evidence. Second, Vision argues "as inflammatory as the email seems on first blush," it still does not constitute fraud. Vision accuses the Class of "rehashing matters that transpired earlier in this case in an attempt to get the Court angry with Vision." Third, Vision argues that the Class' dismissal of the claims were an arms-length transaction, the claims were dismissed with prejudice, and the claims ceased to exist. Fourth, Vision argues that the Class should be "estopped from claiming that they just learned of Vision's deception because they flew the flights." Last, Vision confusingly argues that once Vision "appealed the entire case, [ ] there was no mechanism for [the

Class] to reallege[ ] causes of action that had been released. The release was supported by valid consideration and they were terminated as a matter of law."

**A. Fraud on the Court**

A federal court has the inherent power to conduct an independent investigation to determine whether it has been the victim of fraud. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991). A court may set aside its own judgments, or any fraudulently begotten judgment as necessary to ensure the integrity of the court, the integrity of the institutions set up to protect and safeguard the public, and the integrity of the process for the administration of justice. *Id.* "Fraud upon the court" embraces "fraud perpetrated by officers of the court so that the judicial machinery can not perform in the usual manner its impartial task of adjudging cases that are presented for adjudication." *In re Levander*, 180 F.3d 1114, 1119 (9th Cir. 1999). Additionally "fraud on the court" also "may occur when the acts of a party prevent his adversary from fully and fairly presenting his case or defense." *Abatti v. C.I.R.*, 859 F.2d 115, 119 (9th Cir. 1988).

Nevada Rule of Professional Conduct 3.3, which is identical to the ABA Model Rule, provides that a lawyer shall not knowingly make a false statement or fail to correct a false statement of material fact previously made to the tribunal by the lawyer. NRPC 3.3(a)(1). In addition, if a lawyer has offered material evidence and the lawyer comes to know of its falsity, the lawyer must take reasonable remedial measures, including, if necessary, disclosure to the tribunal. NRPC 3.3(a)(3). As to this requirement, the comment to Rule 3.3 clearly states: "Having offered material evidence in the belief that it was true, a lawyer may subsequently come to know that the evidence is false." ABA Model Rule Prof. Conduct 3.3 cmt. 10. In such a case, the attorney *must* take reasonable remedial measures, which may include correction of the false statement or disclose the information to the tribunal. *Id.* The duty of candor to the tribunal is necessary to the administration of justice.

Here, based on Vision's history of misrepresenting and concealing facts, the Court has reason to question the veracity of the recent representations made by Vision. (#321). However, the Court assumes for the sake of argument that every statement made by Mr. Daggett is true. Even assuming that Vision reasonably believed the Air Bridge program was set to terminate on April 30, 2011, it is undisputed that as early as May 1, 2011, Vision knew the program had not in fact been terminated. Because there was no interruption in the program flights, Vision cannot claim in good faith that it did not know as early as May 1, 2011 that the program would not continue. To be sure, Vision admits that the program ran on a month-to-month basis until August 2012. (#321 at 4). Even if Vision's representation of the April 30, 2011 termination date was true, Vision and its attorneys subsequently came to know of its falsity. By failing take reasonable remedial measures, such as correction of the statement or disclosure of the new information to this Court, Vision prevented this Court from adjudicating the whole case on the merits. Vision's self-serving fraud by omission and failure to correct a material statement prevented the Class from fully presenting their case. Most importantly, Vision has impeded the administration of justice and wasted judicial resources. This constitutes fraud on the court and is sanctionable behavior.

Vision makes several arguments in opposition; the Court addresses each in turn. As to the first argument that Plaintiff cannot show a common law fraud claim with clear and convincing evidence, Vision misunderstands that fraud *on the court* does not equate with a common law fraud claim. Thus, the Class need not show fraud by clear and convincing evidence and the first argument fails. Even so, Vision admits as much in its Vice President's declaration; specifically, that Vision knew in May 2011 the program would continue and failed to inform the Class or the Court. Moreover, Vision does not deny that hazard pay was not paid for the extended month-to-month term of the Air Bridge contract.

As to the second argument that the Class is using the email to get the Court angry with Vision, Vision conveniently forgets this Court's prior findings. Namely, this Court has found that Vision's conduct has prejudiced the Class and limited the Class' ability to try this case

through intentional, bad faith conduct in the discovery process. Moreover, Vision's conduct has interfered with the Court's ability to hear this case, delayed litigation, disrupted the Court's timely management of its docket, wasted judicial resources, and threatened the integrity of the Court's orders and the orderly administration of justice. Plaintiff need not "get the Court angry" as Vision does a perfectly sufficient job of this itself. More to the point however, this Court's disposition is not relevant to Vision's sanctionable conduct. The issue is that Vision admittedly made the representation, the representation admittedly became false, and Vision admittedly failed to correct the representation. The Class is not "rehashing" old arguments but rather raising a new argument based on newly discovered evidence. Thus, this argument fails.

Vision's third argument that the claim has already been dismissed with prejudice also fails because the Class' claims were not an arms-length transaction or dismissed with prejudice. The Court finds that the Class relied on the representations, which later turned out to be false, and expressly retained the right to revive and reinstate those claims. The stipulation specifically stated the reason for the dismissal and that it *was not* intended to be dismissal with prejudice. To not allow the Class the right to reinstate those claims would be contrary to the terms of the dismissal and allow Vision to benefit from its intentional or negligent failure to correct the accuracy of a material statement.

Vision's fourth argument of waiver and estoppel similarly fails. Vision argues that because some class members continued to fly the Air Bridge program flights following the April 30, 2011 contract deadline, the Class had actual knowledge of the program's continuance and should be estopped from arguing it did not know about the contract extensions. However, all flights following the trial were piloted by other class members; Hester, the representative, had not worked for Vision since 2008. Vision does not cite any authority that the knowledge of a class member is imputed to the Class representative or Class counsel. Therefore, even if *some* class members continued to fly, those class members would not know if or why the declaratory and injunctive relief claims were withdrawn. For the Court to adopt Vision's interpretation of waiver

and estoppel, the Court would need to find both that absent class members must monitor proceedings and that Class Counsel inform every class member of every litigation decision and its justification. This is untenable and contrary to the policy underlying class actions. Therefore, even if other class members continued to fly, this cannot constitute actual knowledge on behalf of the class representative, and the claims are not waived or estopped.

Last, Vision's argument that Vision's appeal somehow extinguished all the claims, even those not on appeal (i.e. those dismissed without prejudice prior to trial), that this Court's jurisdiction was divested because of the appeal, and that the appeal was a "release supported by consideration" is not well taken. The Court notes that the claims were dismissed without prejudice, meaning that the claims were never adjudicated on the merits and thus never extinguished. As the claims were never adjudicated, and the Class retained its right to revive those claims, those issues never went before the Circuit. Thus, this Court never lost jurisdiction over those claims and the appeal had no effect whatsoever over those claims.

Vision's conduct throughout this case has been reprehensible and Vision's continued misbehavior and failure to accept responsibility for its actions has caused severe prejudice to the Class. The Court allows the Class to revive its claims because the Class explicitly reserved the right to reinstate the claims and the material representation upon which the stipulated dismissal rested has been shown to be untrue. Vision has not convinced this Court of any legal or equitable reason why the Class should not be permitted to reinstate those claims. Therefore, the Court finds that, based on previous sanctions, the Class is entitled to damages equal to the proven amount of the hazard pay that Vision collected during the period of the Air Bridge program from the end of the damages period proven at trial through the time that the Class' injunction would have covered.

**B. Declaratory and Injunctive Relief Claims**

As the Court had held prior, an evidentiary hearing would be required to show the length of time the program continued and the amount of damages resulting therefrom. While

1  an evidentiary hearing may be sufficient, in the interest of judicial economy, the Court instead
2  allows the Class to present evidence of the resultant damages claim to the jury during trial.
3  Additionally, the Court grants the Class reasonable attorneys' fees and costs associated with
4  bringing this motion and conducting discovery to determine the damages amount. The Class must
5  submit a motion for fees and costs with appropriate documentation to recover the attorneys' fees
6  and costs.
7         Vision is ordered to produce the information necessary to determine the hazard
8  pay amount during the period of the Air Bridge program from the end of the damages period
9  proven at trial through the time that the Class' injunction would have covered. Failure to comply
10 with this Order may prompt the Court to hold Vision in contempt and impose additional sanctions
11 on Vision's legal counsel—including referral to the State Bar of Nevada for disciplinary
12 proceedings.

**II. Sanctions for the Court - Order to Show Cause**

14        District courts have inherent powers to impose sanctions on counsel and parties.
15 *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–47 (1991).  The most prominent of these inherent
16 powers is the contempt sanction, "which a judge must have and exercise in protecting the due and
17 orderly administration of justice and in maintaining the authority and dignity of the court." *Cooke*
18 *v. United States*, 267 U.S. 517, 539 (1925). The Court has the power to sanction a party for willful
19 abuse of the judicial process, particularly when the party has intentionally practiced a fraud upon
20 the court. *In re Levandar*, 180 F.3d 1114, 1119 (9th Cir. 1999). This power, however, is to be
21 exercised with restraint and discretion. *See Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 764 (1980)
22 (discussing the well-acknowledged power of the court to levy sanctions in response to abusive
23 litigation practices).
24        The Court believes that Vision's conduct has interfered with the Court's ability
25 to hear this case, delayed litigation, disrupted the Court's timely management of its docket, wasted
26 judicial resources, and threatened the integrity of the Court's orders and the orderly administration

AO 72
(Rev. 8/82)

of justice. The Court orders Vision and its counsel to show cause why it should not be sanctioned for failing to correct a material representation later found to be false in violation of Nevada Rule of Professional Conduct 3.3.

## CONCLUSION

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that Plaintiff Gerald Hester's **Second Expedited Motion for Sanctions** (#314) is GRANTED. Plaintiff shall be permitted to present evidence of damages caused during the extension of the contract at trial, together with affidavits to the Court as to attorneys' fees and costs required to bring the motion.

IT IS FURTHER ORDERED that Defendant Vision appear and SHOW CAUSE why sanction should not issue in favor of the Court for Vision's actions described above. The hearing on this matter will be held in Courtroom 6C, Lloyd D. George United States Courthouse, 333 Las Vegas Boulevard South, Las Vegas, NV 89101 on April 11, 2013 at 10:00 a.m.

Dated: March 11, 2013.

_____
**ROGER L. HUNT**
**United States District Judge**