1

2

3

4

5

6

7

8

9

10

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

**\* \* \***

11 | GERALD HESTER, on behalf of himself and )     Case No.: 2:09-cv-00117-RLH-NJK
all other similarly situated, )

12                                           )              **O R D E R**
                     Plaintiff, )

13                                           )    (Motion for Entry of Judgment - #341)
        vs. )

14                                           )
                                          )

15 | VISION AIRLINES, INC., )
                                          )

16                     Defendant. )
_____ )

17

18          Before the Court is Plaintiff Gerald Hester and Class' ("The Class") **Motion for**

19 **Entry of Judgment** (#341, filed August 8, 2013).  The Court has also considered Defendant

20 Vision Airlines' Opposition (#342, filed on August 26, 2013), and Plaintiff's Reply (#343, filed on

21 August 29, 2013). For the reasons discussed below, the Court grants the Class' motion.

22                                  **BACKGROUND**

23          The facts giving rise to this case are set out more particularly in the Court's prior

24 Orders. Briefly, this case arises from Vision Airlines' failure to pay hazard-pay to its subcontracted

25 pilots who provided air transportation services for the United States government under the Air

26

1

1   Bridge Program contract.[1] Plaintiffs' Class filed suit in 2009. Due to extensive and pervasive

2   dilatory and obstructionist tactics during discovery, the Court struck Vision's answer and entered

3   default against Vision. (#196, Nov. 3, 2010). At trial, a jury returned a verdict in excess of $5

4   million dollars for the Class. (#221, Nov. 9, 2010).

5             Post-trial, the Class moved for permanent injunctive and declaratory relief directing

6   Vision to pay future hazard-pay to the pilots.  (#241, Dec. 17, 2010). Vision objected. (#242, Dec.

7   20, 2010).  The Court scheduled an evidentiary hearing regarding the motion for permanent

8   injunctive and declaratory relief for February 22, 2011. (#255, Feb. 2, 2011). However, before the

9   evidentiary hearing was held, the Class agreed to withdraw the injunctive and declaratory relief

10  claims because Vision made a representation to the Class that "based on the [government] contract

11  as of [that] date, there [were] only nine weeks left on the" contract. (#258 at 2, Feb. 16, 2011).

12  Based on Vision's representation to the Class and the Court, the Court vacated the evidentiary

13  hearing. (#259, Feb. 17, 2011).

14            Despite its representation to the Class and the Court via a modification order,

15  Vision knew the contract contained several additional option periods that could feasibly extend the

16  contract through July 2012. (#335, Suppl. To 2d Mot. For Sanctions, Ex. 4 at 2; Ex. 5 at 1). Vision

17  did in fact continue flying the flights under the Air Bridge program until July 2012. (#330, Tr. of

18  Show Cause Hr'g 35: 2-18, April 23, 2013). Despite having a judgment making hazard-pay

19  directly payable to the pilots, Vision did not "alter or change anything" relating to its hazard-pay

20  practices and continued to withhold hazard-pay from the pilots who continued flying flights for

21  Vision under the Air Bridge contract through July 2012 without interruption.

22            In the meantime, Vision appealed the Court's rulings as to striking the answer,

23  entering default, and certifying the class. The Ninth Circuit affirmed the Court's decisions. (#293,

24

25            [1] The "Air Bridge" contract is phase 4 of a larger contract referred to as the PC Trooper
26  II contract. This contract was between Vision Airlines and McNeil Technologies, a
    government contractor.

AO 72
(Rev. 8/82)

1    July 19, 2012). The Class also appealed the Court's dismissal of the punitive damages claims. The

2    Ninth Circuit reversed that decision and remanded to the Court for a jury trial on the punitive

3    damages claims. (*Id.*)  Based on the Circuit's decision, the Court set new discovery deadlines.

4    (#302, Oct. 22, 2012). It was during the new discovery period that Class Counsel became aware

5    that the contract did not end and Vision continued to fly without paying hazard-pay. (#314, Feb.  1,

6    2013).  The Class moved for a sanction in the amount equal to the hazard pay from August 1, 2010

7    through the date Class pilots stopped flying Air Bridge program flights for Vision.  The Court

8    allowed the Class to revive the permanent injunction claims and found based on the prior Ninth

9    Circuit affirmed sanctions that "the Class is entitled to damages equal to the proven amount of the

10   hazard pay that Vision collected during the period of the Air Bridge program from the end of the

11   damages period proven at trial through the time that the Class' injunction would have covered."

12   (#324, March 12, 2013).

13        The Court originally intended the revived claims to be heard at trial; however,

14   Vision's continued prevarications caused the Court to allow the Class to renew the motion for

15   judgment.  The Court allowed Vision time to depose the Class' expert, and obtain and submit that

16   its own rebuttal expert's report.  (#337, June 14, 2013). Vision failed to do so.

17        The Class submitted its renewed motion for judgment and included an affidavit

18   from Barry Mukamal, a CPA, who had testified at the prior trial as to damages and prepared a

19   report ("Mukamal Report") for the damages covering the injunction period.  (#341, Aug.  8, 2013).

20   The report included a list of Mukamal's qualifications, an accurate recitation of the factual history

21   of the case, and Mukamal's analysis of Vision's weekly invoices and submitted pay stubs.  (Id.)

22   Vision filed an opposition and attached the Air Bridge contract and invoices from August 2, 2010

23   to June 6, 2011. (#342, Aug. 26, 2013).

## DISCUSSION

25        Initially, the Court agrees with the Class' assertion that Vision's failure to offer any

26   rebuttal evidence amounts to tacit approval of the Mukamal Report.  Vision did not submit any

AO 72
(Rev. 8/82)

1    rebuttal expert reports, but rather offers three arguments in opposition. First, Vision argues the

2    Mukamal Report, offered by the Class in support of its motion for judgment, should be stricken

3    because it does not comport with Federal Rule of Civil Procedure 26. Second, Vision argues, even

4    if the Court were to consider the Mukamal Report, its "methodology is so flawed it cannot support

5    [the Class'] claims." To wit, Vision argues the Mukamal Report is incorrect because it construes

6    the Air Bridge contract as a cost-plus contract when it is in fact a fixed-price contract.  Third,

7    Vision argues that the Court may not rely on the Mukamal Report and Vision must receive "an

8    evidentiary hearing to cross examine Mukamal and his flawed conclusions." Vision's arguments

9    are unavailing.

10          First, Federal Rule of Civil Procedure 26 in inapplicable.  Rule 26 requires

11   disclosures of witnesses to be used *at trial*.  Here, default has already been entered against Vision.

12   Instead, Federal Rule of Civil Procedure 55 applies and provides that the Court "*may* conduct

13   hearings" and must "(A) conduct an accounting; (B) determine the amount of damages; (C)

14   establish the truth of any allegation by evidence; or (D) investigate any other matter." Fed.R.Civ.P.

15   55 (b)(1-2)(emphasis added).  "If the plaintiff's claim is for a sum certain or a sum that can be

16   made certain by computation," the amount can be shown via affidavit.  Fed.R.Civ.P. 55 (b)(1).

17   Moreover, a hearing is not required where the amount claimed is capable of mathematical

18   calculation. *Davis v. Fendler*, 650 F.2d 1154, 1161 (9th Cir. 1981).  Here, the documentary

19   evidence submitted by Vision shows the amount due is based on definite figures, therefore, even if

20   the Court were to disregard the Mukamal Report entirely, it could still determine the amount due

21   based on the documentary evidence.  Regardless, the Mukamal Report comports with Rule 55, the

22   applicable rule, and may be considered by the Court.

23          Second, the Court is compelled to find that Vision received the hazard pay amounts

24   that it invoiced and did not pay the pilots and cabin crew the hazard pay amounts it collected under

25   the Air Bridge contract.  Because of Vision's own behavior, the Court was forced to strike

26   Vision's answer and enter default judgment against Vision, establishing Vision's liability. *See*

4

1    *Garamendi v. Henin*, 683 F.3d 1069, 1080 (9th Cir. 2012)(holding that liability had been

2    established where facts are implicitly part of the original default judgment).  More recently, when

3    Vision tried to resurrect this argument at the hearing on sanctions, the Court reminded Vision

4    there was a Ninth Circuit decision affirming a judgment contradictory to Vision's position.

5    Therefore, Vision's second argument fails because the law of the case has established Vision's

6    liability.  The Court will not allow Vision to re-litigate decided issues.

7           Third, and most confounding, is Vision's demand for an evidentiary hearing.  At

8    the hearing on sanctions, Vision's objected to and requested a chance to depose the Class' expert

9    and offer its own rebuttal expert.  In comporting with due process, the Court granted the request.

10   Due to scheduling constraints, the Court indicated its intent to decide the issue of damages on the

11   papers.  Despite the Court expressly giving Vision time, Vision did not depose the Class' expert

12   and did not obtain its own expert to offer rebuttal evidence.  Now, after failing to utilize the time

13   the Court had granted to it to examine the Class' expert, Vision seeks to have an evidentiary

14   hearing to do just that and unnecessarily delay the proceedings further.  The Court has already

15   given Vision the opportunity to do what it seeks and Vision failed to take advantage of that

16   opportunity.  The request for an evidentiary hearing is denied.

17          The Court now turns its discussion to the determination of damages.  Based on the

18   Mukamal Report and the Court's own extensive review of the invoices submitted by Vision, the

19   Court finds Vision is liable for $1,811,251.00. The Court finds that for the Option Period from

20   July 12, 2010 to August 2, 2010, the hazard pay due to the pilots is $49,808.00 and the hazard pay

21   due to the cabin crew is $26,923.00 for a total of $76,731.00.  The Court finds that for the Option

22   Period from August 9, 2010 to August 1, 2011, the hazard pay due to the pilots is $652,505.00 and

23   the hazard pay due to the cabin crew is $352,705.00 for a total of $1,005,210.00. The Court finds

24   that for the Option Period from August 8, 2011 to July 30, 2012, the hazard pay due to the pilots is

25   $473,373.00 and the hazard pay due to the cabin crew is $255,937.00 for a total of $729,310.00.

26   Thus, The Court finds that the total hazard pay due to the pilots is $1,175,686.00 and the total

AO 72
(Rev. 8/82)

hazard pay due to the cabin crew is $635,565.00 for a grand total of $1,811,251.00 payable to the class.

**CONCLUSION**

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that Plaintiffs' **Motion for Entry of Judgment** (#341, filed August 8, 2013) is GRANTED.  The Clerk of the Court is directed to enter judgment in favor of the Plaintiffs and against Defendant in the amount of $1,811,251.00.

IT IS FURTHER ORDERED that Plaintiffs shall have thirty (30) days from the entry of judgment to file a motion for attorneys' fees that complies with Local Rule 54-16 to recover reasonable attorneys' fees and costs for bringing the underlying sanctions and judgment motions, and conducting discovery to determine the damages amount.

Dated: September 5, 2013.

_____
**ROGER L. HUNT**
**United States District Judge**

AO 72
(Rev. 8/82)