David M. Buckner, Florida State Bar. No. 60550
Brett E. von Borke, Esq., Florida State Bar No. 44802
GROSSMAN ROTH, P.A.
2525 Ponce de Leon, Suite 1150
Miami, Florida 33134
(305) 442-8666
(305) 285-1668 (Facsimile)

Ross C. Goodman, Esq., Nevada State Bar No. 7722
GOODMAN LAW GROUP
520 South Fourth Street
Las Vegas, Nevada 89101
(702) 383-5088
(702) 385-5088 (Facsimile)

Kenneth R. Hartmann Esq., Florida State Bar No. 664286
KOZYAK TROPIN & THROCKMORTON, PA
2525 Ponce de Leon, 9th Floor
Miami, Florida 33134
(305) 372-1800
(305) 372-3508 (Facsimile)

ATTORNEYS FOR PLAINTIFF & THE CLASS

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| GERALD HESTER, on behalf of himself and all others similarly situated,<br><br>            Plaintiff,<br>v.<br><br>VISION AIRLINES, INC.,<br><br>            Defendant. | Case No.: 2:09-CV-00117-RLH |

**THE CLASS' REPLY IN SUPPORT OF ITS RENEWED THIRD MOTION FOR SANCTIONS AND TO HOLD VISION AIRLINES IN CONTEMPT OF COURT**

Vision Airlines, Inc.'s ("Vision") Response to the Class' Renewed Third Motion for Sanctions ("Response") [D.E. 364] is revealing not only for what Vision argues but what Vision studiously avoids addressing from the Class' Renewed Third Motion for Sanctions ("Renewed Motion"). Vision utterly fails to address the fact that it did not comply with the Court's Order because it never provided a written response to the Class' In Aid of Execution Document

210224                                    1

Request ("Document Request"). Vision also ignores the fact that it failed to produce any financial statements and related documents beyond April 30, 2012, even though those documents were responsive to the Document Request and exist. Vision also ignored its obligation to produce current statements for its bank accounts, omitting at least the last four months of statements for one account, and many more months for its other accounts, in an effort to thwart the Class' writs of garnishment by preventing the Class from determining the timing of Vision's contract payments. Finally, Vision completely failed to address the fact that the one contract it did identify (with MGM) it never produced even though it too was responsive to the Document Request. Based on Vision's tacit acknowledgement of its violations of the Court's Order, Vision should be sanctioned and held in contempt.

In an effort to blunt the glaring deficiencies in its production, Vision makes a series of entirely unsupported claims that fail to refute any of the evidence offered by the Class. Of course, Vision likely offers no evidence because none exists to support its suspect claims. For example, Vision claims that it produced the vehicle titles in its possession and quibbles with possible duplicative listings in the LexisNexis vehicle search submitted by the Class. However, Vision ignores the fact that the Class has identified nine additional vehicles that it currently owns for which it did not produce any documents and offers no explanation as to why it did not. Vision also failed to offer any explanation for why it did not produce any documentation on the sale or transfer of numerous vehicles over the past five years, which were also identified on the LexisNexis vehicle search. Vision similarly claims that it does not own any aircraft despite the evidence to the contrary, and offers absolutely no support for its claim or to rebut the Class' evidence. Even taking Vision's claim that its lenders repossessed its aircraft at face value, which the Class does not, surely there would be documents associated with the repossession, and with Vision's current lease, of aircraft that it is using to operate its contract with MGM. All of these documents were responsive to the Document Request and Vision simply ignored its obligations

210224

2

to produce them, in defiance of this Court's Order. Despite its repeated false statements to the Class and the Court over many years, it demands that the Court take it at its word and ignore the evidence to the contrary. That is neither sufficient as a matter of law, nor is it warranted under the facts of this case.

Furthermore, Vision claims that it just filed its tax return for 2012 on January 14, 2014. Even if Vision's claim was to be believed, more than three weeks have passed since the filing of the 2012 tax return before Vision allegedly produced it (and the Class still has not received a copy of the 2012 tax return). Even though Vision knew it did not produce the 2012 tax return, in its Response to the original Third Motion for Sanctions, filed 14 days after the tax return was allegedly available to be produced, Vision falsely represented to the Court that its production was complete. The only reason Vision finally allegedly produced the 2012 tax return on February 7, 2014 (if it did) is because Vision had to address this glaring deficiency in its production since it was raised again in the Class' Renewed Motion. And even if Vision has finally produced this document (which the Class will not know until it apparently arrives by regular mail, if it does), Vision is clearly stalling. This production was originally due in the Fall of last year. Even if Vision were to come into compliance now (and it clearly has not), it would have delayed the Class' collections efforts for months, allowing it to spirit away funds and rearrange assets to make that collection more difficult. Even the choice to send the 2012 tax return and other documents by regular mail, as opposed to scanning or faxing them to the Class so that the Class would know today (when this Reply is due) whether it was actually going to receive the tax return, represents just one small part of Vision's multi-year scorched earth campaign against the Class. Vision's record of delay, destruction and denial, of which this is all a part, is what sets this conduct apart from a mere failure to meet a discovery deadline, and must be viewed in that context.

Vision also attempts to play games with whether the contract it entered into with

210224

3

TravelSpan and Dynamic Airways is truly responsive to the interrogatories and Document Request. Vision claims it is not a "current contract" even though Vision acknowledges receiving payment under the contract in December 2013. Vision's tortured reading of the interrogatory conflicts with the plain language of the interrogatory and is yet another example of Vision's discovery abuse. Vision's discovery gamesmanship should not be tolerated, especially in light of Vision's habitual discovery abuse committed throughout this case. Vision was required to identify its contracts and produce them to the Class. It did not.

Vision's Response demonstrates that Vision has no intention of complying with its discovery obligations and is continuing its pattern and practice of discovery abuse. Despite being ordered by this Court to produce all responsive documents, Vision simply chose to ignore its obligations and makes a series of unsupported claims in its Response that defy logic and common sense and are entirely rebutted by the Class' evidence. Given Vision's efforts throughout this litigation to thwart the Class from collecting the hazard pay that it was entitled to and owed, it is not surprising that Vision is once again engaged in obstructionist tactics and violating Court Orders to prevent the Class from collecting the money owed to it. The Class should not be forced to repeatedly file motions for sanctions to obtain the discovery Vision is obligated to produce. The Court should sanction Vision for its intransigence, hold Vision and Mr. Acor in contempt, and grant the Class' Renewed Motion.

## I. ARGUMENT

**A. VISION DOES NOT DISPUTE THAT IT VIOLATED THE COURT ORDER BY FAILING TO PROVIDE WRITTEN RESPONSES TO THE IN AID OF EXECUTION DOCUMENT REQUEST.**

Nowhere in Vision's Response does Vision address the fact that it failed to provide a written response to the Document Request in direct violation of this Court's Order, because it is undeniably true. The Court in its Order held, "**IT IS FURTHER ORDERED** that Vision shall respond, without objection, to the Class' discovery requests, as served on October 16, 2013, no

210224

4

later than **January 20, 2014**." [*Id.*] (emphasis in original). Vision failed to provide a written response to the Document Request, as required under the Federal Rules of Civil Procedure. On this basis alone, Vision should be sanctioned and held in contempt for violating the Court's Order.

### B. VISION VIOLATED THE COURT'S ORDER BY FAILING TO PRODUCE THE MGM CONTRACT, ANY FINANCIAL STATEMENTS BEYOND APRIL 30, 2012, AND MANY MONTHS OF BANK ACCOUNT STATEMENTS.

Vision in its Response ignored numerous deficiencies that the Class identified in its Renewed Motion based on its document production in response to the Document Request. Of course, Vision's Response ignores these deficiencies and offers no explanation because no legitimate explanation exists. Vision violated the Court's Order by failing to produce the MGM Contract, any financial statements beyond April 30, 2012, and many months of bank account statements.

In its response to In Aid of Execution Interrogatory Number 5, Vision stated that it currently has a contract with MGM Resorts Mississippi and Beau Rivage Resorts, Inc. ("MGM Contract") [D.E. 363-2,8]. Document Request Number 5 required Vision to produce a copy of the MGM Contract. [D.E. 362-1 at 8]. Even though the Court's Order required Vision to respond to the In Aid of Execution Discovery without objection, Vision has refused to produce a copy of this contract, in direct violation of the Court's Order. Vision offers no explanation for its failure to produce a copy in its Response. The MGM Contract is responsive to Document Request Number 5 and there is no legitimate reason why Vision has not produced it to the Class. Instead, Vision is trying to thwart the Class' collection efforts by hiding this stream of revenue.

Similarly, Vision has refused to produce any financial statements beyond April 30, 2012. Document Request Number 11 required Vision to produce "[a]ll financial statements prepared by Vision in the last twelve months." [D.E. 362-1 at 8]. Despite its obligation to produce its

210224                                              5

financial statements, Vision has refused and provided nothing beyond April 30, 2012 – again depriving the Class of essential documents that would aid the Class' collection efforts. The Class is entitled to Vision's 2013 and 2014 financial statements. Again, Vision failed to address this deficiency in its Response because it has no explanation for violating the Court's Order.

Vision's Response completely ignores its failure to produce current statements for its bank accounts. Document Request Number 2 sought all of Vision's bank account statements for the past five years. [D.E. 131-1 at 7]. The most recent account statement Vision provided to the Class was for September 2013 for one account, and its production related to its other accounts were missing even more months of statements. Vision's failure to provide current account statements is also significant in thwarting the Class' writs of garnishment. Absent an agreement to the contrary, the Class can only garnish an account under the law for the period of time between when the writ is served and when the bank answers the writ. It is therefore critical for the Class to time the service of the writ with the payments made by Vision's contractors to Vision in order to garnish those payments. Vision's refusal to produce its current account statement prevents the Class from determining the timing of the payments, thereby making it more difficult for the Class to collect on them.

Vision does not contest its failure to produce any of these documents. Nor does it offer a legitimate explanation for failing to do so. Therefore, Vision should be sanctioned and held in contempt for violating the Court's Order on these grounds too.

C.  **VISION DID NOT PRODUCE ALL OF THE DOCUMENTS RELATED TO ITS OWNERSHIP AND SALE OF AUTOMOBILES OVER THE PAST FIVE YEARS.**

Vision challenges the evidence provided by the Class in support of its claim that Vision failed to produce all documents with respect to its ownership interest in automobiles and their sale or transfer over the past five years. Vision once again makes entirely unsupported representations challenging the Class' evidence while strategically offering none of its own to

210224

6

support its unsubstantiated claims. Vision's unsubstantiated claims should be given no weight considering Vision's prior efforts to mislead and deceive the Class and the Court.

Document Request Number 7 requested "[c]opies of all motor vehicle titles and registrations that relate to any motor vehicle in which Vision has an interest." [D.E. 362-1]. Vision produced titles for six vehicles. It argues that there are duplicative listings on the LexisNexis search submitted by the Class yet avoids responding to the fact that there are nine vehicles for which Vision did not produce any information listed on the LexisNexis search. When comparing what Vision produced, and after removing the duplicative listings, Vision has not produced any titles, registrations, or documentation related to the following vehicles: (1) Entry 2 – 2013 Ford F-150; (2) Entry 4 – Gray 2006 Chevrolet Silverado – Crew Pickup; (3) Entry 6 – 2001 Ford Explorer – 4 Door Wagon Sport Utility; (4) Entry 9 – 2006 Ford Econoline – Extended Sport Van; (5) Entry 10 – 2008 Mazda MAZDA5 – Hatchback 4 Door; (6) Entry 11 – 2010 GMC Yukon – 4 Door Wagon Sport Utility; (7) Entry 16 – 2003 Chrysler Town & Country Extended Sport; (8) Entry 19 – Lexus RX – 4 Door Wagon Sport Utility; and (9) Entry 22 – 2006 Chrysler PT Cruiser – Sports Van). [D.E. 363-12]. Again, Vision's production is deficient, which Vision tacitly acknowledged by failing to respond to this argument in the Class' Renewed Motion.

Vision's document production was also deficient in that it failed to produce any documents related to the sale or transfer of automobiles over the past five years. Document Request Number 6 sought "[b]ills of sale or other written evidence of the gift, sale, purchase, or other transfer of any property, personal, real, or otherwise to or from Vision for the past five years." [D.E. 361-2]. To the extent Vision has sold or transferred any of its interests in these vehicles, Vision was required to produce the responsive documents. However, Vision, in defiance of this Court's Order, produced nothing.

210224

7

### D. VISION FAILED TO IDENTIFY ALL OF ITS CONTRACTS AND PRODUCED NONE OF THEM.

Interrogatory Number 5 required Vision to "[i]dentify each and every contract Vision currently has with any Person under which Vision receives payment, in any amount for the past five years . . . ." [D.E. 363-2]. Vision only identified the MGM Contract. It failed to identify the contract it entered into with Travelspan and Dynamic Airways to offer flight services to Guyana. The Class was able to learn of the existence of this contract because there is evidence of it in the public domain. Vision claims that it was not required to identify this contract, even though it received payment under it in December 2013, because the Class' interrogatory was limited to contracts under which Vision is currently receiving payment and Vision claims it did not receive payment in January 2014. [D.E. 364 at 4-5]. Vision's interpretation of the interrogatory is contradicted by the plain language which seeks "each and every contract Vision currently has with any Person under which Vision receives payment." Vision currently has a contract with Travelspan and Dynamic Airways for which it has received payment over the last five years, and most recently in December 2013, while the Class' In Aid of Execution Interrogatories were outstanding. Accordingly, Vision was required to identify this and any other current contract it has with any party under which it has received payment over the past five years. This is yet another example of the games Vision plays with its discovery obligations and its overall lack of respect for this Court's Orders.

As noted above in Section I(B), Document Request Number 5 required Vision to produce all contracts identified in response to Interrogatory Number 5. Vision failed to produce either the MGM Contract or its contract with Travelspan and Dynamic Airways. Vision was required to produce both and failed to do so in violation of this Court's Order. Furthermore, Vision claims that the Class is complaining that Vision did not produce contracts that are not in Vision's possession but held by related third-parties or Acor-controlled companies. [D.E. 364-4]. It is

210224

8

not clear from Vision's argument what Vision is responding to precisely from the Class' Renewed Motion. To the extent Vision has in its possession other documents and contracts for its affiliated companies, which it surely does, the Class' definitions in its Document Request and Interrogatories included those entities in the definition of "Vision," and Vision was required to produce them. If Vision wanted to object to the definition that the Class used, it should have done so timely by providing written answers and objections. Of course, Vision did neither, and after being ordered by the Court to respond to the In Aid of Execution Discovery without objection, cannot now manipulate the definitions the Class used to avoid producing responsive documents and information.

E.  **VISION VIOLATED THE COURT'S ORDER BY NOT PRODUCING DOCUMENTS RELATED TO ITS INTEREST IN AIRCRAFT AND/OR THE TRANSFER OF THAT INTEREST IN AIRCRAFT.**

Vision again takes issue with the evidence offered by the Class demonstrating that Vision either currently owns aircraft or recently sold or transferred its interest in those aircraft. Yet, despite the evidence Vision would presumably have in its possession to rebut the Class' evidence if its claims were true, Vision tellingly offers none. Given Vision's history of deception, Vision's claims are suspect. However, even accepting Vision's unsubstantiated claim at face value, that all of its airplanes were repossessed by certain unidentified lenders and that the Class' records are incorrect, there still would be responsive documents subject to the Document Request that Vision failed to produce.

Document Request Number 8 required Vision to produce all aircraft titles and registrations for aircraft in which Vision has an interest. Document Request Number 6 required Vision to produce all bills of sale and other written evidence related to any transfer of property to or from Vision over the past 5 years. [D.E. 356-1]. The evidence submitted by the Class, which is unrebutted, demonstrates that Vision owned or currently owns aircraft, as to which it failed to provide documents in response to Document Request Number 8. To the extent that Vision's

210224                                9

aircraft were repossessed, there would have been documentation responsive to the transfer of those assets that Vision was required to produce in Response to Document Request Number 6. Again, Vision is violating this Court's Order.

### F. VISION'S DISCOVERY GAMESMANSHIP IS REFLECTED IN ITS ALLEGED PRODUCTION OF ITS 2012 TAX RETURN.

Vision's discovery gamesmanship is encapsulated in its alleged production of its 2012 tax return. Vision claims that it did not file its tax return for 2012 until January 14, 2014 and that it produced the 2012 tax return to the Class on February 7, 2014 – the date Vision filed its Response. [D.E. 364 at 5]. Despite Vision's claim, the Class, at the time this Reply was filed, has still not received a copy of Vision's 2012 tax return. What is even more disturbing is that the Class' Third Motion for Sanctions was originally filed on January 21, 2014. [D.E. 358]. The fact that Vision had violated the Court's Order by failing to produce its tax return figured prominently in the Class' Third Motion for Sanctions and alerted Vision and its counsel to this obvious deficiency (the 2012 tax return was responsive to Document Request Number 1). Despite having the 2012 tax return in hand, knowing that it was responsive to the Document Request, and aware that it was not previously produced, Vision nonetheless took the position in its Response to the Third Motion for Sanctions filed on January 28, 2014, two weeks after the 2012 tax return was allegedly filed, that its document production was complete. [D.E. 360 at 4-6]. This statement was knowingly false, and its falsehood was proven by Vision's alleged production of the return. Vision once again misrepresented the status of its production to the Class and the Court. The Class raised the issue with respect to Vision's 2012 tax return again in the Renewed Motion. In an effort to cure this obvious deficiency, Vision now claims to have produced it on the day it filed its Response.

### G. THE COURT HAS THE AUTHORITY TO HOLD VISION AND MR. ACOR IN CONTEMPT.

Vision claims in its Response that the Class' request to hold Vision in contempt fails

210224

10

because Fed. R. Civ. P. 42 addresses the topic of consolidation and separate trials. The Class does not dispute that Fed. R. Civ. P. 42 addresses the issue of consolidation and separate trials. However, as stated in the Renewed Motion, the Ninth Circuit has held that "Federal Rule of Criminal Procedure 42 defines procedural requirements for contempt proceedings. Although the rule is labeled 'criminal,' we have previously determined that the procedural safeguards established by Rule 42 apply equally to civil contempt proceedings." *U.S. v. Powers,* 629 F.2d 619, 624 (9th Cir. 1980).[1] Accordingly, Vision's argument is without merit. Regardless, the Class also moved for sanctions under Fed. R. Civ. P. 37, which would allow the Court to fashion the requested remedy.

Vision next argues that the Class' request that Mr. Acor be held in contempt was previously raised and denied by the Court and therefore precluded by the doctrine of *res judicata*. Vision offers no record citation or legal support for its claim. However, the Court previously held that it "has considered others sanctions including instigating criminal contempt proceedings against Mr. Acor for lying under oath directly to this Court, but declines to institute those *at this time*." [D.E. 339 at 11] (emphasis added). The Class' claim is not barred by the doctrine of *res judicata* because the Court never entered a final judgment on this issue, a requirement for the doctrine of *res judicata* to apply, and reserved its right to institute criminal proceedings at a later date. *Gary Fong, Inc. v. Halton,* 158 F.Supp.2d, 1012, 1014-15 (9th Cir. 2001) ("Under the doctrine of *res judicata*, a final judgment on the merits bars further claims by parties or their privities based on the same cause of action.") Furthermore, that Order was entered by the Court on July 12, 2013, long before the Class filed the Renewed Motion asking the Court to sanction and hold Vision and Mr. Acor in contempt for Vision's most recent

---

[1] The Class apologizes for any reference to Fed. R. Civ. P. 42, as it was intending to reference Fed. R. Crim. P. 42. Nonetheless, the Class requested the appropriate relief in the wherefore clause and throughout the motion and the case law cited by the Class makes clear that it was referring to Fed. R. Crim. P. 42 and its application in the civil context.

210224                                    11

discovery abuses, which the Court could not have addressed in that Order because they had not yet occurred.

Vision also claims that the Class cannot hold Mr. Acor in contempt for Vision's discovery misconduct. [D.E. 364 at 5-8]. Vision fails to cite any legal authority supporting its claim or to address the case law cited by the Class in the Renewed Motion. As the Class argued in the Renewed Motion, "an order to a corporation binds those who are legally responsible for the conduct of its affairs." *United States v. Laurins,* 857 F.2d 529, 535 (9th Cir. 1988); *NLRB v. Sequoia Dist. Council of Carpenters, AFL–CIO,* 568 F.2d 628, 633 (9th Cir. 1977) ("Generally, to be held liable in contempt, it is necessary that a non-party respondent must either abet the defendant or must be legally identified with him." (quotations omitted)). In *Frankl,* the court found that the Vice President and General Manager of a hotel were responsible for its affairs and could be held in civil contempt for disobeying a court order. *Frankl v. HTH Corp.,* 832 F. Supp. 2d 1179, 1213-14 (D. Haw. 2011) (citing *Sequoia Dist. Council of Carpenters, AFL–CIO,* 568 F.2d at 634) ("A command to a corporation is in effect a command to those who are officially responsible for the conduct of its affairs."). This law applies with equal force here.

Vision also claims, again without any legal authority, that the Court cannot impose a bond as a sanction for Vision's discovery misconduct. However, that is precisely what the Ninth Circuit affirmed in *Whittaker* as a contempt sanction. The court required the defendant to post a one million dollar bond to secure a court ordered sanction of $600,000 in attorney's fees for the plaintiff as a result of the defendant's contemptuous conduct. *Whittaker Corp. v. Execuair Corp.,* 953 F.2d 510, 517 (9th Cir. 1992). The relief the Class seeks here is of the same nature and type as the relief permitted by the Ninth Circuit under *Whittaker.*

## II. CONCLUSION

For the reasons set forth above, the Class respectfully requests that the Court grant the Renewed Motion.

210224

12

Respectfully submitted,

GROSSMAN ROTH, P.A.
2525 Ponce de Leon, Ste. 1150
Coral Gables, Florida 33134
Telephone: (305) 442-8666

By: /s/ David M. Buckner
   David M. Buckner
   Florida Bar No. 60550
   Brett E. von Borke
   Florida Bar. No. 0044802

**COUNSEL FOR PLAINTIFF AND THE CLASS**

13

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing has been served via the Court's CM/ECF system on February 10, 2014.

By: /s/ David M. Buckner
David M. Buckner

210224

14