**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| GERALD HESTER, on behalf of himself and all others similarly situated, | Case No.: 2:09-CV-00117-RLH-NJK |
| Plaintiff, | |
| v. | **ORDER GRANTING PRELIMINARY APPROVAL OF THE SETTLEMENT AGREEMENT** |
| VISION AIRLINES, INC., | |
| Defendant. | |

This Court has considered the Unopposed Motion for Preliminary Approval of the Settlement Agreement (#387, filed Mar. 20, 2014), which seeks an Order (1) preliminarily approving the proposed Settlement and Release Agreement (the "Settlement Agreement") between the Class and Vision Airlines ("Vision") settling the Class' remaining claims in this litigation; (2) certifying the Settlement Class for purposes of settlement; (3) approving the form and manner of notice to the Class Members of the proposed Settlement Agreement and their right to object to the Settlement Agreement; and (4) scheduling a fairness hearing to consider the final approval of the Settlement Agreement. For the reasons discussed below, the Court grants the preliminary relief sought in the Class' Unopposed Motion For Preliminary Approval of Settlement Agreement.

I.         **INTRODUCTION**

The Court has repeatedly set out the factual record in various Orders entered throughout this case. Thus, the Court will only summarize the facts underlying this lawsuit here. In the years after the September 11, 2001 attacks, the United States government sought contractors to provide logistical support to enhance its supply lines to Iraq and Afghanistan. One such mission involved establishing an air bridge using commercial aircraft to fly into the war zones in Baghdad and Kabul to deliver supplies for United States diplomatic posts and other related activities ("Air Bridge"). Accordingly, the United States government set aside additional payments known as hazard pay to compensate the civilian pilots and flight attendants completing these missions for the dangers they faced.

Vision, a government subcontractor, operated the Air Bridge from May 1, 2005 through July 31, 2012. Vision's pilots and flight attendants operated these flights and were supposed to receive the specifically earmarked hazard pay. Instead of paying the hazard pay to the Class, Vision retained the hazard pay for its own benefit. Plaintiff Gerald Hester filed the instant class action lawsuit (the "Lawsuit") on behalf of Vision's Air Bridge pilots and flight attendants to recover the hazard pay due and owed the Class. On September 6, 2013, this Court entered judgment against Vision for the hazard pay Vision collected from July 6, 2010 through July 31, 2012. (#344, 345). The Settlement resolves that judgment and any and all remaining claims against Vision arising out of this Lawsuit.

II.        **SUMMARY OF THE SETTLEMENT TERMS**

As required under controlling Ninth Circuit case law, the Court sets forth the terms of the Settlement Agreement, which are as follows:

1.         **The Settlement Class**

The proposed Settlement Class is an opt-out class under Rule 23(b)(3) of the Federal Rules of Civil Procedure. The Settlement Class, which the Court certifies for the reasons set forth in Section IV, is defined as:

> All Vision pilots and flight attendants who were crew members on flights to or from Iraq or Afghanistan between May 1, 2005 and July 31, 2012. Excluded from the Settlement Class are (a) Vision, its directors of flight operations, corporate officers and directors, and their immediate family members, and (b) any governmental entity.

**2.     The Settlement**

The Settlement consists of a $1,700,000.00 Settlement Payment (the "Settlement Fund") to be distributed to the Class that operated the Air Bridge flights from July 6, 2010 through July 31, 2012. (#387-1, at 2). Vision will pay those funds on the thirty-fifth (35th) day after final approval of the Settlement by the Court. (*Id.*) Should Vision fail to do so, the payment will be made by International Bank of Commerce ("IBC") based on a letter of credit issued by IBC for the benefit of the Class. (*Id.* at 3).

The Air Bridge Program was divided into four phases that correspond to the following time periods: (1) Phase I – June 2005 through April 30, 2006; (2) Phase II – May 1, 2006 through July 14, 2006; (3) Phase III – July 15, 2006 through July 31, 2007; and (4) Phase IV – August 1, 2007 through July 31, 2012. (#135, at 3). The Class previously collected and distributed the hazard pay obtained at trial that covered Air Bridge flights from May 1, 2006 through July 5, 2010. Accordingly, the Settlement Fund will be distributed to those Class members that operated Vision flights to and from Baghdad and Kabul from July 6, 2010 through July 31, 2012.

The Class' expert, Barry Mukamal, determined that from July 6, 2010 through July 31, 2012, Vision billed for and received $1,811,251.00 in hazard pay, which Vision did not pay to the Class members. The upstream contractors paid Vision different hourly hazard pay amounts for its pilots and flight attendants that operated the flights from the various European cities into and out of the war zones in Baghdad and Kabul during the period of July 6, 2010 through July 31, 2012. Using Vision's payroll and flight records for the time period of July 6, 2010 through July 31, 2012, Mr. Mukamal will identify specifically which pilots and flight attendants flew from the various European cities into and out of the war zones in Baghdad and Kabul. Mr. Mukamal will determine each Class members' damages from July 6, 2010 through

3

July 31, 2012 by multiplying each Class members' total number of hours flown from the European city into and out of the war zones of Baghdad and Kabul and back to the European city by the hourly hazard pay rate that Vision received for their benefit but did not pay to them. Once those amounts have been determined, Mr. Mukamal will adjust it by the appropriate pro-rata share based on the difference between the $1,811,251.00 judgment for hazard pay and the $1,700,000.00 Settlement Fund.

**3.     Releases**

As part of the Settlement, the Settlement Class members and Vision will, upon payment of the Settlement Fund, mutually release each other with regard to all claims connected in any way with the Lawsuit.  (#387-1, at 3-5).

**4.     Notice to the Settlement Class**

Given the relatively small size of the Settlement Class, and the fact that many of its members previously received a distribution from the earlier judgment against Vision, providing notice to the Settlement Class members should be relatively straight forward.  The notice is reasonably calculated under the circumstances to apprise the Class of settlement class certification, the Settlement terms, Class Counsel's fee application and request for a service award for Plaintiff, as well as the Settlement Class members' rights to opt-out of the Class or object to the Settlement.  Class counsel, through its work with a national claims administrator, has already confirmed addresses for nearly all of the Class members, which were obtained from Vision's books and records.  Relying on those addresses, Class counsel will provide notice (in the form attached at #387-2) to each Class member through first class mail.

**5.     Settlement Administration**

Class counsel will work with a national claims administrator to administer the Settlement Fund.  Once the amounts due and owed each Settlement Class member has been determined by the Class' expert, Mr. Mukamal, Class counsel will provide that information to the claims administrator.  Class counsel will also provide addresses for each individual Settlement Class member to the claims administrator.  Once the claims administrator receives

4

that information from Class counsel, the claims administrator will issue checks in the amount due and owed each individual Class member and will send those checks to each Class member via certified U.S. mail. To the extent a Class members' address is unknown, the claims administrator will assist Class counsel in identifying the Class members' address. The claims administrator will keep records related to the receipt of each certified letter containing the checks sent to the Class members. All costs associated with the settlement administration will be paid from the Settlement Fund.

### 6. Settlement Termination

The Settlement is conditioned on final approval by this Court. (#387-1, at 5). If final approval is denied, or if the appellate court rejects the Settlement, the Parties will return to the *status quo ante* before the Settlement Agreement was entered into by them. (*Id.*) In addition, if Class members to whom collectively payment under the Settlement is due in an amount totaling more than $50,000.00 timely and properly provide notice of their decision to opt-out of this Settlement, under the procedures set forth in the notice (#387-2), Vision has the right to notify the Court and the Class in writing that it wishes to terminate the Settlement Agreement. (#387-1, at 5).

### 7. Class Representative Service Award

The Class also seeks a service award of $5,000.00 for Mr. Hester, the lead Plaintiff in the Lawsuit. The Class proposes that this amount would be paid from the Settlement Fund, and would be in addition to the payment Mr. Hester would be entitled to under the terms of the Settlement. This award will compensate Mr. Hester for the time and effort he expended in guiding the prosecution of the Lawsuit since the first judgment, including attending mediation, preparing his testimony for trial on the Class' punitive damages claim, reviewing the Class' pleadings, and for the risks he assumed in prosecuting the Lawsuit against Vision.

### 8. Attorneys' Fees and Costs

Class Counsel seeks attorneys' fees of thirty percent (30%) of the Settlement Fund, plus reimbursement of all litigation costs and expenses.

5

### III. THE SETTLEMENT SATISFIES THE CRITERIA FOR PRELIMINARY APPROVAL

The Court finds that the terms of the Settlement satisfies the criteria for preliminary approval and preliminarily approves the Settlement. When determining whether a settlement is ultimately fair, adequate and reasonable, courts examine the following factors: "(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant;1 and (8) the reaction of the class members of the proposed settlement." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (citing *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). Courts have, at times, engaged in a "preliminary evaluation" of these factors to determine whether a settlement is fair, adequate, and reasonable. *See, e.g.*, *Harris v. U.S. Physical Therapy, Inc.*, No. 2:10–cv–01508–JCM–VCF, 2012 WL 3277278, at *1 (D. Nev. July 18, 2012).

#### 1. The Strength of Plaintiff's Case

While the Class stood a strong chance of prevailing at trial on its punitive damages claim, given the Class' success in the first trial of this Lawsuit, there is always risk inherent in a jury trial and that risk cannot be discounted. However, as counsel for Vision made clear at the hearing on March 10, 2014, the greatest risk by far to the Class' recovery was that Vision would declare bankruptcy immediately prior to, or at the end of, the Class' punitive damages trial. Indeed, counsel for Vision affirmed that he was in the process of preparing a bankruptcy petition when the Settlement was reached. Instead, upon final approval, the Class will receive nearly all of the remaining hazard pay its members are due. (*See* #345 at 1).

---

1 There is no government participant in this litigation.

Therefore, this factor supports this Court's finding that preliminary approval of the Settlement is appropriate.

### 2. The Complexity, Expense, and Duration of Litigation

This case has been actively litigated for six years. Vision's conduct has been the subject of repeated orders and sanctions by this Court, including as recently as March 4, 2014. As this Court has previously recognized, and supported by the Class' first fee petition, this litigation has been extremely expensive and time-consuming, including a trial on damages, an appeal for which the Ninth Circuit heard oral argument, and a second judgment entered on the basis of Vision's misconduct. This history strongly suggests that, in the absence of a settlement, the parties will litigate this matter for several additional years, if not longer. Instead, Class Counsel has obtained a settlement that, along with the original judgment secures for class members, recovers nearly all of Plaintiff  This factor too supports preliminary approval of the Settlement.

### 3. The Risk of Maintaining Class Action Status Throughout The Trial

This Court previously certified this as a class action on December 16, 2009. (#86). The Class maintained its class action status throughout the first trial on damages and all subsequent proceedings before this Court. Thereafter, Vision challenged the certification of this case as a class action in the Ninth Circuit Court of Appeals, which affirmed this Court's class certification. Accordingly, there is little risk to the Class in maintaining its class action status through trial.

### 4. The Amount Offered In Settlement

The $1,700,000 Settlement Fund represents nearly the entire amount of the $1,811,251.00 judgment owed the Class. In fact, it represents nearly a 94% recovery for the Class. As a result of the prior judgment and the Settlement Fund, the Class will have recovered nearly all of its damages as a result of this Lawsuit. Furthermore, the Class' Settlement will allow the Class to suspend its costly collection efforts in multiple jurisdictions, which have

further increased the Class' costs. Therefore, this factor militates in favor of preliminary approval of the Settlement.

### 5. The Extent of Discovery Completed and the Stage of the Proceedings

Courts consider the stage of proceedings at which settlement is achieved "to ensure that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1324 (S.D. Fla 2005). Plaintiff agreed to settle the remainder of the Lawsuit after nearly six years of litigation, a trial on damages, and a struggle to locate assets belonging to Vision that could be used to satisfy the second judgment. Accordingly, Plaintiff and Class counsel had sufficient information to enable them to make a reasoned judgment about the merits of the Settlement.

### 6. The Experience and Views of Counsel

Class counsel is very experienced in class actions and has litigated this case for six years. Given Vision's threat of bankruptcy as a result of this Lawsuit, Class counsel achieved the most favorable settlement possible under the circumstances, demonstrating the kind of judgment expected of Class counsel. The Class' settlement of $1,700,000.00 represents almost 94% of the Class' damages, resulting in the Class recovering nearly all of its losses. Thus, this factor supports preliminary approval of the Settlement.

### 7. The Reaction of the Class Members to the Proposed Settlement

The Class representative, Mr. Hester, approved the $1,700,000.00 settlement and believed that this represented the maximum amount the Class could recover given Vision's financial situation. While the Class has not been specifically informed about the settlement because the Court has not yet approved the notice, the Class members that have learned about the Settlement from Mr. Hester or others appear to be generally satisfied, and are eager to receive their hazard pay.

Based on the strength of the Class' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the

amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; and the reaction of the Class members of the proposed settlement, the Settlement Agreement is reasonable, fair and cost-effective, and therefore the Court grants preliminary approval of the Settlement Agreement.

## IV.   CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE

Certification of the Settlement Class is appropriate under Fed. R. Civ. P. 23(a) and (b).  Certification under Rule 23(a) of the Federal Rules of Civil Procedure requires that (1) the class be so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.  *See* Fed. R. Civ. P. 23(a).  Under Rule 23(b)(3), certification is appropriate if questions of law or fact common to the members of the class predominate over individual issues of law or fact and if a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Fed. R. Civ. P. 23(b).

The numerosity requirement of Rule 23(a) is satisfied because the Settlement Class consists of more than one hundred pilots and flight attendants, and joinder of all such persons is impracticable.  See Fed. R. Civ. P. 23(a)(1); *Rannis v. Recchia*, 380 Fed. App'x 646, 651 (9th Cir. 2010) (noting that numerosity is satisfied when the class includes at least forty members).

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and the plaintiff's common contention "must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (citation omitted).  Here, the commonality requirement is readily satisfied, as the Court previously found, because the Class members were

all deprived of their hazard pay in the same manner by the uniform scheme perpetrated by Vision.

For similar reasons, the Plaintiff's claims are coextensive with those of the absent Class members satisfying the typicality requirement under Rule 23(a)(3).  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) (asserting that typicality is satisfied when the claims and defenses of the representative parties are typical of the claims and defenses of the class); *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) ("The test of typicality is whether other members have the same or similar injury . . . and have been injured by the same course of conduct.") (internal citations omitted).  Plaintiff is typical of the absent Class members because he was denied hazard pay along with the rest of Vision's flight attendants and pilots in the same manner by Vision.

Plaintiff also satisfies the adequacy of representation requirement.  Adequacy under Rule 23(a)(4) relates to whether "(1) the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class . . . ." *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012) (citing *Hanlon*, 150 F.3d at 1020).  Plaintiff's interests are coextensive with, not antagonistic to, the interests of the Class because Plaintiff and the members of the Class have the same interest in the relief afforded by the Settlement, and the absent members of the Class have no diverging interests.  Further, Plaintiff is represented by qualified and competent counsel who have extensive experience and expertise prosecuting complex class actions. Class counsel has devoted substantial time and resources to the prosecution of this Lawsuit.

The predominance requirement of Rule 23(b)(3) requires that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001) (internal quotation marks omitted).  Plaintiff readily satisfies the Rule

23(b)(3) predominance requirement because liability questions common to all members of the Class substantially outweigh any possible issues that are individual to each member of the Class. Further, resolution of hundreds of claims in one action is far superior to individual lawsuits, because it promotes consistency and efficiency of adjudication.  *See* Fed. R. Civ. P. 23(b)(3). For these reasons, this Court finds certification of the Class is appropriate and certifies the following Class for settlement purposes:

> All Vision pilots and flight attendants who were crew members on flights to or from Iraq or Afghanistan between May 1, 2005 and July 31, 2012.  Excluded from the Settlement Class are (a) Vision, its directors of flight operations, corporate officers and directors, and their immediate family members, and (b) any governmental entity.

### V.     THE FORM AND MANNER OF CLASS NOTICE IS APPROPRIATE

"Rule 23(e)(1)(B) requires . . . notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." MANUAL FOR COMPLEX LITIG. § 21.312 (internal quotation marks omitted).  The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).  To satisfy this standard, notice "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard."  *In re Cement & Concrete Antitrust Litig.*, 817 F.2d 1435, 1140 (9th Cir. 1987) (citing *Mendoza v. Tucson School Dist.*, 623 F.2d 1338, 1352 (9th Cir. 1980) (internal quotation marks omitted); *see also* MANUAL FOR COMPLEX LITIG., § 21.312 (listing relevant information).

The Class' proposed notice satisfies all of these criteria.  The notice (#387-2) will inform the Class of the substantive terms of the Settlement.  It advises Class members of their rights to object or opt-out of the Settlement and how to obtain additional information about the

Lawsuit. The notice is designed to reach a high percentage of the Class because it will be sent by first class U.S. mail to their addresses, nearly all of which were confirmed during the prior distribution, and exceeds the requirements of constitutional due process. Therefore, this Court finds that the form and manner of the proposed Class Notice is appropriate.

**VI.     CONCLUSION**

IT IS HEREBY ORDERED that Plaintiff's Motion for Preliminary Approval of the Settlement Agreement (#387) is granted.

IT IS FURTHER ORDERED:

1. The Settlement Agreement is hereby preliminarily approved;
2. The Court certifies the Settlement Class as set forth in Section IV above;
3. The form of the Class Notice (#387-2) is approved and will be sent by first class U.S. mail to each Class member at his or her last known address; and
4. If necessary, the Court shall conduct a fairness hearing to consider final approval of the Settlement Agreement after the Class has moved for final approval of the Settlement.

DATED: April 7, 2014.

ROGER L. HUNT
United States District Judge