UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| GERALD HESTER, on behalf of himself<br>And all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>VISION AIRLINES, INC.,<br><br>    Defendant. | Case No. 2:09-CV-00117-RLH |

**THE CLASS' MOTION FOR APPROVAL OF
<u>*PRO RATA*</u> DISTRIBUTION OF UNCLAIMED FUNDS**

The Class in this case consists of pilots and flight attendants that operated flights for the United States government through a government subcontractor, Vision Airlines, Inc. ("Vision"), into and out of the war zones in Baghdad, Iraq and Kabul, Afghanistan. The claims in this case addressed Vision's failure to pay the Class the hazard pay that the United States government earmarked for them for flying into and out of those war zones. The case was litigated for many years with the Class obtaining a jury verdict of $4,509,268, defending that verdict on appeal, collecting on the bond that was posted to secure the judgment, and obtaining an additional $1.7 million settlement to settle the Class' punitive damages claim against Vision Airlines. The funds that Class Counsel collected were distributed to the Class members pursuant to the Court approved allocation plans. The Claims Administrator has informed Class Counsel that after distributing the money there remains $111,985.09 in unclaimed funds. The Class now seeks approval to initiate a second distribution of the funds *pro rata* to the Class members that previously cashed their checks.

1

## BACKGROUND

On November 9, 2010, the Class obtained a jury verdict in its favor in the amount of $4,509,268. [D.E. 222]. A final judgment of $5,270,230.06 was entered by the Court against Vision on February 22, 2011. [D.E. 264]. The Ninth Circuit Court of Appeals affirmed the jury verdict and remanded the case for a trial on punitive damages. [D.E. 297]. On December 19, 2012, the Court approved the distribution plan and shortly thereafter the funds obtained based on the jury verdict and final judgment were distributed to the Class members. [D.E. 306]. While Class Counsel was distributing those funds to the Class members, it was also actively litigating the punitive damages claim against Vision. Due to Vision's financial difficulties, the Class ultimately settled those claims with Vision for $1.7 million.

On March 20, 2014, this Court issued an order preliminarily approving the Class Action Settlement Agreement ("Settlement Agreement") reached between the Class and Vision, and directed the mailing of notice of the Settlement reached by the parties to the Class members. [D.E. 388]. On June 30, 2014, this Court held a fairness hearing for final approval of the settlement, and on July 7, 2014, the Court issued an order finally approving the terms of the Settlement Agreement, with distribution of the settlement proceeds to the Class pursuant to the court-approved plan of allocation. Accordingly, the settlement of $1.7 million was also distributed *pro rata* to the members of the Class.

The Claims Administrator has informed Class Counsel that $111,985.09 of the funds disbursed to the Class members remains unclaimed and that a second distribution to the Class would cost $5,000.[1] The Class' damages expert believes that he could calculate the amount owed

---

[1] The Claims Administrator has retained the addresses of the individual class members and upon this Court's approval of a second distribution, will send checks via U.S. mail to the class members who cashed the checks sent to them in the previous distributions.

to each Class member for a second distribution for an amount of $5,000. These proceeds, having been generated by the value of the Class member's claims, belong solely to the Class and should remain in the hands of the Class members to the greatest degree possible. At the cost of $10,000, Class Counsel can have the remaining funds distributed *pro rata* to those Class members that previously cashed checks. Therefore, because redistribution of the remaining funds is logistically and economically feasible, Class Counsel respectfully requests that the Court approve a second distribution of the remainder of the Settlement Fund *pro rata* to the Class members that previously cashed checks.

## ARGUMENT

"Federal courts have broad discretionary powers in shaping equitable decrees for distributing unclaimed class action funds." *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1307 (9th Cir. 1990). Routinely, federal courts hold that redistribution of unclaimed class action funds to existing class members is proper and preferred "[b]ecause the settlement funds are the property of the class . . . ." *Klier v. Elf Atochem N. Amer., Inc.*, 658 F.3d 468, 475 (5th Cir. 2011) (holding that additional *pro rata* distributions to class members should be made as until it was no longer feasible to do so). "Each class member has a constitutionally recognized property right in the claim or cause of action that the class action resolves. The settlement-fund proceeds, having been generated by the value of the class members' claims, belong solely to the class members." *Id.* at 474. Thus, "[w]here it is still logistically feasible and economically viable to make additional pro rata distributions to class members, the district court should do so . . . ." *Id.* at 475.

> If the settlement involves individual distributions to class members and funds remain after distributions (because some class members could not be identified or chose not to participate), the settlement should presumptively provide for further distributions to participating class members unless the amounts involved are too

>    small to make individual distributions economically viable or other specific reasons
>    exist that would make such further distributions impossible or unfair.

Am. Law. Inst., PRINCIPLES OF THE LAW OF AGGREGATE LITIG. § 3.07, cmt. b (2010).

*Pro rata* distributions are particularly appropriate because it "ensures that 100% of the [settlement] funds remain in the hands of class members" and, since class settlements rarely "pay individual class members the full value of their claims, . . . redistribution is more likely to bring the class members closer to that value rather than to be a windfall." William B. Rubenstein, 4 NEWBERG ON CLASS ACTIONS § 12:30 (5th ed.). Indeed, "[a]s a general matter, few settlements award 100 percent of a class member's losses, and thus it is unlikely in most cases that further distributions to class members would result in more than 100 percent recovery for those class members." *Klier*, 658 F.3d at 479 (internal quotations omitted) (holding that district court abused its discretion by ordering *cy pres* distribution of settlement residue instead of redistributing residue to class members). Accordingly, the majority of federal courts have determined *pro rata* redistributions to be the most appropriate method for addressing unclaimed settlement funds. *See* Rubenstein, *supra*, at n.13 (listing a number of federal courts that have followed the ALI's recommendation to redistribute *pro rata* unclaimed settlement funds). "Money not claimed by class members should be used for the class's benefit to the extent that is feasible." *Ira Holtzman, C.P.A. v. Turza*, 728 F. 3d 682, 689 (7th Cir. 2013).

Redistribution of the residual settlement proceeds to the Class is appropriate in this case. As set forth above, the proceeds "belong solely to the class members" and a second *pro rata* distribution to the Class properly "ensures that 100% of the settlement funds remain in the hands of class members." *Klier*, 658 F.3d at 474; Rubenstein, *supra*. An additional distribution will "bring the class members closer to [the full] value" of their claims. Rubenstein, *supra*. In addition, the comparatively low cost of $10,000 to administer the redistribution of the unclaimed proceeds

to the Class makes a second distribution "logistically feasible and economically viable" and, "[w]here it is still logistically feasible and economically viable to make additional pro rata distributions to class members, the district court should do so." *Klier*, 658 F.3d at 475. Accordingly, Class Counsel respectfully requests that the Court grant the Class' Motion and enter an Order approving a second distribution of the remainder *pro rata* to the Class, along with expenses for that in an amount not to exceed $10,000.

## CONCLUSION

WHEREFORE, the Class respectfully requests that this Court grant the Motion and enter an Order approving a second distribution of the remainder *pro rata* to the Class members who previously cashed checks, with expenses of administration and distribution not to exceed $10,000, and award the Class any further relief the Court deems just and proper.

Dated July 21, 2017.

Respectfully submitted,

Buckner + Miles
3350 Mary Street
Miami, Florida 33133
Telephone: 305.964.8003

s/*David M. Buckner*
David M. Buckner
Florida Bar No. 060550
david@bucknermiles.com
Brett E. von Borke
Florida Bar No. 0044802
vonborke@bucknermiles.com

*Counsel for Plaintiff and The Class*

**IT IS SO ORDERED.**
**DATED** this __22__ day of September, 2017.

_____
Gloria M. Navarro, Chief Judge
United States District Court

5

Case 2:09-cv-00117-RLH-NJK   Document 400   Filed 07/21/17   Page 6 of 6

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true copy of the forgoing has been served via the Court's CM/ECF system on July 21, 2017.

By: s/*David M. Buckner*
David M. Buckner